July 30, 2021

**Frank J. Sisca, PE**
15 Buttercup Lane • San Carlos, CA 94070
Frank_sisca@yahoo.com • 415.990.5866(C)

FILED
2021 AUG -4 AM 8: 34
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

The Honorable Judge Laurie Selber Silverstein
U.S. Bankruptcy Court – District of Delaware
824 North Market Street,
6th Floor, Courtroom #2
Wilmington, DE 19801

In re;
Crystallex International Corporation
Debtor in a Foreign Proceeding
Chapter 15
Case #: 1:11-bk-14074

Honorable Judge Laurie Selber Silverstein,

My name is Frank Sisca, an individual investor/stockholder/stakeholder (shareholder) in Crystallex International Corporation (Crystallex) for over 30 years. I started investing a significant portion of my retirement funds in Crystallex including funds from my IRA account some 35-40 years ago.

I invested heavily in Crystallex relying on and with the belief that this venture was represented honestly by their Press Releases, Prospectus, Financial Statements, etc. I relied on the truthfulness and accuracy of all publically available news they published, including Crystallex' own press releases and Crystallex' SEC filings, with the hopes of a return on my investment.

I have written letters of concern and discomfort as early as March of 2015, to Superior Court of Justice - Judge Frank Newbould, Ernst & Young (the monitor), Mr. Jay Swartz, DAVIES WARD PHILLIPS & VINEBERG LLP, GOWLING WLG (CANADA) LLP, BLANEY McMURTRY, JUSTIN C. FINE, the Superior Court of Justice – Civil/Commercial Court, Honorable Glenn A. Hainey, and the Delaware District Court the Honorable Judge Stark, expressing concerns of breach of fiduciary duty, self-dealing, fraud, Crystallex board and Tenor acting contrary to law in an effort to defraud the shareholders, and theft of the arbitration award by Tenor and the Crystallex board members, in each of those writings. I believe I have even copied Your Honor with copies.

As a matter of record, the Honorable Judge Stark in his case #1:17-mc-00151 **CRYSTALLEX INTERNATIONAL CORPORATION V. BOLIVARIAN REPUBLIC of VENEZUELA,** published my letter as docket #133.

Some of the concerns I expressed in those letters and express again in this writing to you are;

pg. 1

- Tenor was awarded the contract via a "best bid" process and was well aware of the inherent risk, upon entering into any contract with Crystallex
- Tenor should **not** have the right to renegotiate their terms ipso facto, as that negates the "best bid" process.
- Prior to Tenor, the shareholders had more of a stake in the company's future success, however, they are the last to be considered in the process and we are lacking a voice in this process.
- Upon entering into this contract, Tenor became a creditor, and should be paid out at the interest rate that was originally negotiated as said creditor.
- Tenor continues to request additional compensation by a % of the award, while no one is protecting the shareholders of Crystallex.
- The court ordered that Crystallex is hereby authorized and empowered to obtain and borrow under a credit facility from the DIP Lender (as hereinafter defined) pursuant to a credit agreement ("Credit Agreement") between Crystallex and Tenor Special Situation Fund I, LLC in order to finance Crystallex working capital requirements and other general corporate purposes, including without limitation in order to continue to manage, prosecute, pursue and pay the fees and disbursements of counsel and experts in connection with the Arbitration Proceedings provided that the principal amount borrowed under such credit facility shall not exceed US $36,000,000 unless permitted by further Order of this Court and a 35% of the net arbitration award as a ROI.
- The Court of Appeal ordered that any distribution from the Lender Additional Compensation Account (as defined in the Tenor DIP Loan) would be stayed pending a determination by the Supreme Court.
- Crystallex sought and obtained an Order **relieving them from its obligation to hold an annual meeting of shareholders** until further order of the Court, which took away any opportunity to plea this unfair financing that the shareholders would have voiced at a meeting.
- At this point the shareholders are **blind** with respect to the activities of the proceedings which are/have taken place.
- The DIP return on investment (ROI) percentage of the net award keeps growing to an **absurd** approximate cumulative total in access of 88% while the shareholders have **no** input and watching our investment disappear.
- **I strongly disagree** with this proposed additional compensation of 88%+ of the award amount to TENOR, which is unreasonably high and unwarranted, and would hope these court proceedings stop this absurd amount to Tenor and protects the shareholders from being denied their fair share of any award and protect their investments by not allowing the **theft** of the award by TENOR.
- Someone needs to consider the original investors in Crystallex, the shareholders, and protect them.
- I have requested a copy of the original agreement between Tenor and Crystallex and have been denied because that agreement has been sealed. From the early Monitors reports it appears Tenor, the DIP Lender, is getting 10%-12% interest annually on their money loaned plus an **exorbitant 88%** of the net Arbitration Award.
- Also from the early Monitors reports, **Tenor agreed 55% of the net Arbitration Award was promised to the shareholders.**

pg. 2

- At this time, the shareholders Ad Hoc Committee need to see the original DIP agreement along with the confidential Affidavit of Robert Fung, sworn on March 20, 2012, and have a voice in the final distribution of any assets. We the shareholders will pursue protection of our asset investments.
- In general, I have found gaps in the **actual** cash flow reporting that were included in the monitor's reports. This causes me to be skeptical of what services we are paying for and who is checking these documents for correct information with respect of the shareholders interest.
- With the cash flow reporting included in the monitor's reports, and without all the reports, the shareholders Ad Hoc Committee will need to see a **detailed, audited** accounting.
- *In the 1st Monitor's Report dated January 18, 2012;*
  **Par 12**, the Monitor wrote;" While the ultimate outcome of the Arbitration Proceedings is not yet known, if successful in the Arbitration Proceedings, Crystallex would have sufficient proceeds to fully repay its creditors, including the Note holders {as defined and described below), **and provide substantial value to its shareholders."**
- *In the 3rd Monitor's Report dated April 12, 2012;*
  **Par 6**, the Monitor again wrote;" While the ultimate outcome of the Arbitration Proceedings is not yet known, if successful in the Arbitration Proceedings, Crystallex may have sufficient proceeds to fully repay its creditors, including the Note holders **and to provide substantial value to its shareholders."**
- **Par 118**, the Monitor wrote, "The Monitor accepts that the introduction of a third party, Tenor, with consent rights in relation to certain actions will add complexity to the negotiations of a CCAA Plan but also notes the Company's position that Tenor DIP Loan is intended to enable Crystallex to pursue the Arbitration Proceedings to an award which, if successful could allow it to pay out its unsecured creditors in full, including post filing interest, **and provide recovery for its shareholders. "**
- **Par 121**, the Monitor wrote; "Under the Tenor DIP loan, if the net arbitration award is in excess of $180 million, the Note holders would recover their full principal amount of the notes plus pre and post filing interest. **Existing shareholders would receive 55% of any net arbitration award after** the payment of the taxes, DIP (including interest) and the unsecured creditors' claims including both pre and post-filing interest."
- Prior to the arbitration and Tenor, the shareholders claimed 100% of a stake in the company's future success; however, they are not being considered in this process for compensation.
- During these arbitration proceedings the shareholders have been blind and voiceless with respect to the activities of the proceedings which are taking place.
- Crystallex did not provide any notice to its shareholders that it was seeking any additional financing. I became alarmed at the rate at which the Arbitration costs were mounting and the new agreements with Tenor.
- My biggest concern and opposition is to the hidden terms of the DIP lender agreement with Tenor. Tenor was awarded the contract via a "best bid" process and was well aware of the inherent risk, and the intention that **Existing shareholders would receive 55% of any net arbitration award after….etc.** upon entering into this contract with Crystallex. They provided the principal amount not to exceed US

pg. 3

- $36,000,000 unless permitted by further Order of this Court and a 35% of the net arbitration award as a ROI.
- With Crystallex asking for more money (2nd, 3rd, and other additional loans without backup accounting) Tenor continues to request more of the Net Arbitration Award for additional compensation, while no one is speaking of the minimum of **55% that should be awarded to the stockholders** of Crystallex. Tenor's previous advances of funds and the advances to Crystallex described to date total approximately $62.5 million (now plus) and have potentially earned Tenor an **absurd** cumulative total of 88% (now plus) of the Net Arbitration Award as additional compensation.
- In review of the DIP's motion of "VALIDITY AND PRIORITY OF CHARGE CREATED BY THIS ORDER" Tenor/Crystallex had/has **NO** intention to return any of the shareholders investments.
- I have opted in to the "Ad Hoc Committee" of shareholders.
- The Ad Hoc Committee needs to see all costs, the original DIP agreement, along with the confidential Affidavits of Robert Fung and others to have a voice in the final distribution of any assets. We the shareholders will pursue protection of our asset investments thru the "Ad Hoc Committee" of shareholders. Again, we the shareholders have been lacking a voice in this DIP lending agreement.
- I support a motion to lift the stay of proceedings to allow the Ad Hoc Committee of Shareholders to bring a claim against Crystallex and its DIP Lender relating to the oppression of Crystallex shareholders and a breach of the criminal interest rate provisions in the Canadian Criminal Code and vary the orders of Justice Newbould approving the DIP loans and the NAP Transfer Orders to allow our claim to be adjudicated. The mandate of the Committee is to represent the interests and maximize the recovery of the members of the Committee and the Opt-in Shareholders.
- Crystallex's shareholders have seen their interest in their only asset (Crystallex stock value) diluted to a very small percentage if any. All of this dilution has been for the benefit of Tenor and the Crystallex board of directors. No, other stakeholders of Crystallex have seen their interests compromised in this way without notice or a voice in the CCAA proceedings. Unless the Committee is permitted to bring the Oppression Claim, the interests of shareholders will be permanently prejudiced. Unless the special leave requirements unique to this case are waived, and any applicable stays of proceedings arising under the various court orders are lifted, shareholders will have no opportunity to challenge the excessive compensation that the DIP Lender has taken for itself and for the benefit of certain directors of Crystallex.

I would also like to offer the following to further support those allegations;
1. Abuse of the CCAA ACT's objective and violation of the public interest protection intended by the Act.
2. Use of the CCAA process to evade the requirement set forth by Section 192 of the Canadian Business Corporation Act:
    - 1.02: *The Director endorses the position that the arrangement provisions of the Act are intended to be facilitative and should not be construed narrowly.* ***This position is subject to the express limitations in the Act and to the proviso that any proposed arrangement transaction must satisfy requirements of procedural and substantive fairness.***

pg. 4

3. The use of CCAA by the Company Fiduciaries, **Crystallex Management, BOD, and the Monitor**, to hide and facilitate the misappropriation of shareholders' assets and rights:
    - The potential distribution of the Award
    - Settlement % that the DIP lender **may be** entitled to
    - Issuance of equity shares in the company to the DIP lender without notice to shareholders
    - Transfer and sale of the mine data, which is the property of the company and its pre-existing shareholders, not the property of the DIP lender nor included in the terms of the DIP credit agreement
    - Wrongful expropriation of the economic value of the tax loss carry forwards, which were born by and the property of the pre-existing shareholders
    - Obtaining a Court Order removing the independence and intended fiduciary role of the Monitor in the CCAA process. (Monitor had to go to the Applicant for what information could and could not be made public to interested parties and stakeholders on the Monitor's website)
    - Failure of the Company Fiduciaries to recommend a Shareholder Committee to voice and protect shareholders interest in the CCAA process.
4. Failure of the Court's fiduciary, **The Monitor** to;
    - properly and timely provide notice and full transparency of activities and events occurring in the CCAA process
    - Failure to make timely postings to its website of motions, reports, and court orders in the early stages of the CCAA process.
5. Other misuses of the CCAA process by the Company Fiduciaries;
    - Evade fiduciary responsibilities and avoid the public interest protections afforded shareholders by the Ontario Securities Commission.
    - Usurp on shareholders rights
    - Hidden dilution through illegal issuance of equity without formal notification to pre-existing shareholders.
    - Concerted effort by DIP lender and Board of Directors members, both internal and externally, to self-deal the assets of the Company and its pre-existing shareholders
    - Compensation Agreements between the DIP Lender-Tenor, Robert Fung & Marc Oppenheimer, senior managers, and all Board of Director members.
6. Hidden change of control process through issuance of equity without formal notice to pre-existing shareholders;
    a. Voted upon by the Board of Directors where four of the five directors benefit from the dilution of pre-filing shareholders; or
    b. A Board of Directors meeting of one was held to vote for approval of the issuance and effective dilution of the pre-filing shareholders.
7. Concerted effort by DIP lender and Board of Directors members, both internal and externally, to self-deal the assets of the Company and its pre-existing shareholders such as:
    c. Las Cristinas Mine Data held by Crystallex International

      d. $400 million dollars plus of Tax Carry Forward Losses which are the property of the pre-filing shareholders, possessing a value in excess of $100 million dollars

8. Passed on opportunities for near term material recovery (Nomura Bond Attachment) for reasons of alluding Canadian Criminal Interests Rate Laws and further personal enrichment.

As stated earlier, I strongly disagree with this proposed financing with a bonus fee of 88% (now plus), which is unreasonably high, and not allowing the theft of the arbitration award by Tenor and Crystallex board members.

My understanding is that after an arbitration award, the courts retain jurisdiction on the review of the distribution of funds including greed of the board of directors, unsecured creditors, MIP's, stock options, and the DIP lender's absorbent fees and defrauding the original investors. Someone needs to consider the original investors in Crystallex, the shareholders, and protect them.

Some items that Your Honor may find concerning from her Court's and perspective follow below:

1. The terms of the DIP loan agreement entered into by Crystallex's management/BOD and Tenor were sealed from Crystallex's shareholders by the CCAA court.
2. Tony Reyes, a CCAA lawyer and Crystallex shareholder who represented himself in the CCAA process as a shareholder, but quietly in his "own personal interest", appeared before Judge Walsh (Justice Silverstein's predecessor) in Chapter 15 and blessed Crystallex's selection of Tenor's DIP as in the best interest of Crystallex and its shareholders. Tony Reyes later through his CCAA council admitted in a CCAA court proceeding that Tony is an investor in Tenor's funds.
3. Shareholders, both Canadian and US, were allowed no due process in the CCAA process. The Ad Hoc Committee of Shareholders were not allowed to have motion brought to even be heard by the CCAA court.
4. Individual shareholders on their own, have contacted all the Canadian regulators surrounding the CCAA, only to have fallen on deaf ears.
5. The Monitor, who is entrusted to serve as an extension of the CCAA court and act as the "Court's eyes and ears in the CCAA process" is and has not acted in it assigned duty from the commencement of the CCAA process.
6. The discrepancies you found in Crystallex's reporting of its financial activities since entering the CCAA and your interaction with the Monitor after highlighting those discrepancies to the Monitor and the subsequent seal and redacting of information in the CCAA process.
7. That Bob Fung (Canadian Citizen, CEO and BOD of Crystallex) and Marc Oppenheimer ( US Citizen, former CEO of Crystallex and current BOD of Crystallex) are now receiving direct compensation from Tenor in the form of a participation in the CVR's of Tenor awarded for DIP loans taken by Crystallex and granted by the CCAA court.
8. That shareholders have never had adequate representation or participation in the CCAA or Chapter 15 legal processes.

pg. 6

9. That as an individual retail shareholder, there was no possible way for you to know of or afford legal representation for adequate participation in both the CCAA and Chapter 15 processes.
10. The hypocrisy and mocking of the Delaware Federal Court system, Judge Stark Chapter 15 court, that Crystallex's current Management (Bob Fung) and BOD (Fung, Oppenheimer, and Tenor) are using Judge Stark's bench to rightly, and justly, enforce US federal law upon VZ to pay their obligation for stealing Crystallex's asset, while Tenor and Crystallex's BOD have done the same actions to Crystallex's legacy shareholders.
11. The party that was damaged, creating the ICSID Judgment and Award, was Crystallex's legacy shareholders, not the DIP Lender and its current BOD.

The shareholders assumed a risk while investing in Crystallex; however we the shareholders have been lacking a voice in this DIP lending agreement and hope the "Ad Hoc Committee" is allowed a voice.

Respectfully,

Frank J. Sisca, Victim
(Working at age 73)
15 Buttercup Lane
San Carlos, CA 94070


Cc:  Chief Judge Leonard P. Stark
     J. Caleb Boggs Federal Building
     844 N. King Street
     Unit 26
     Room 6124
     Wilmington, DE 19801-3555
     Courtroom 6B

     **Superior Court of Justice**
     Osgoode Hall, 130 Queen Street West
     Toronto, Canada M5H 2N5
     Attn.: Judge Frank Newbould

     **Superior Court of Justice – Civil/Commercial Court**
     330 University Ave.
     7th Floor
     Toronto, ON M5G 1R7
     Attn.: The Honorable Glenn A. Hainey

     **DAVIES WARD PHILLIPS & VINEBERG LLP**
     155 Wellington Street West
     Toronto, ON M5V 3J7
     Lawyers for Crystallex International Corporation

Jay A. Swartz
iswartz@dwpv.com

**ERNST & YOUNG INC.**
222 Bay Street, P.O. Box 251
Toronto, ON M5K1J7
Court -appointed Monitor
Brian M. Denega
brian.m.denega@ca.ey.com

**GOWLING WLG (CANADA) LLP**
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON M5X 1G5
Clifton Prophet
clifton.prophet@gowHngwlg.com
Delna Contractor
delna.contractor@gowlingwlg.com

**BLANEY McMURTRY**
2 Queen Street East, Suite 1500
Toronto, Ontario MSG 3G5
Lawyers for the Members of the Ad Hoc Committee of Shareholders
Lou Brzezinski
lbrzezinski@blaney. Com

**JUSTIN C. FINE**
Thousand Oaks, California
Jcf.enif@iswest.com