FILED **ADELSO ADRIANZA**
113 Washington Street – Newton, MA 02458 – U.S.A.
2021 AUG 12 AM 10:38  rianza@gmail.com

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

August 10, 2021

The Honorable Judge L. Selber Silverstein
U.S. Bankruptcy Court – District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

Dear Judge Silverstein,

This communication is in reference to Crystallex International Corporation (the "Company") and the recent case filings at the CCAA Court proceeding by the Company and its Unsecured Lenders ("the Noteholders"). On June 21, 2021, the Company filed a motion asking the CCAA Court to seal financial information. (See Exhibit 1). This despite the February 2021 decision by the Ontario Court of Appeals ("ONCA") that confirmed the CCAA Court's ruling that the grounds for the sealing order the Company was seeking did not rise to the meritorious level required by Canadian law to warrant it (see Exhibit 1). A motion in opposition to a new CCAA Court sealing order filed by the Noteholders and the reply by the Company's CEO and Chairman of the Board of Directors ("BOD") provide relevant information regarding the Motion (to Appoint and Examiner and Legal Counsel for The Shareholders) by the undersigned filed on July 28, 2021 (D.I. No. 328).[1] What follows is intended to facilitate a clearer understanding of the facts and intricacies of this case.

## THE NOTEHOLDERS' ACTION

1) The Noteholders' recent action, the response and cross-motion for unsealing and disclosure filed on July 7, 2021, is in the same vein as the previous opposition to the sealing of basic information the Company is withholding from its stakeholders (See Exhibit 2). In the affidavit by Mr. Scott Reid, the President and Chief Investment Officer of Stornoway Portfolio Management Inc., one of the investments funds that compose the Noteholders' Committee, states the following:

17. In addition, Crystallex has elected not to pursue a CCAA plan of arrangement or other restructuring transaction that would allow it to emerge from these proceedings and has advised the Noteholder Committee it has no intention of pursuing a CCAA plan; rather, it has elected to remain in CCAA indefinitely, presumably to continue to benefit from the CCAA stay and the other protections the CCAA process affords it. Throughout the CCAA process, Crystallex has enjoyed all the benefits of CCAA rather, it has elected to remain in CCAA indefinitely, presumably to continue to benefit from the CCAA stay and the other protections the CCAA process affords it. Throughout the

[1] All capitalized terms used but not defined herein have the meanings given to them in the Motion for An Order Directing the Appointment of An Examiner and Independent Counsel for The Shareholders (DEBCC D.I. No. 328).

Adelso Adrianza 1 | P a g e

CCAA process, Crystallex has enjoyed all the benefits of CCAA protection while disclosing almost none of the financial information I have become used to receiving as a creditor in a public insolvency process.

26. Notwithstanding the decisions of this Court and of the Court of Appeal, counsel advised that Crystallex maintained its sealing request in respect of the November 2020 cash flow information and that it also intended to seek to seal the updated April 2021 cash flow information filed in connection with Crystallex's recent stay extension request.

29. I also understand from the Monitor's reports that in 2014 Tenor transferred some of its CVR entitlements to two of Crystallex's directors and officers, Robert Fung and Marc Oppenheimer. The amount of CVRs that were transferred, and the terms related thereto have never been publicly disclosed to stakeholders.

54. Messrs. Fung and Oppenheimer, plus two Tenor nominees, Robin Shah and Daniel Kochav, represent four of Crystallex's five directors. As detailed in my prior affidavits, given (i) the CVRs are subordinate to the Notes and the claims of other creditors, and (ii) the value of the CVRs (if any) is, in part, a function of the amount of Noteholder and other creditor claims, the Trustee and Noteholder Committee believe these directors have a significant conflict of interest in addressing, among other things, the rights and entitlements of the Noteholders and other creditors.

55. The fact there has not been fulsome disclosure of the CVR entitlements of Crystallex's directors and officers, particularly where those entitlements incentivize those same directors and officers to attempt to minimize the rights and entitlements of the Noteholders and other creditors, is very concerning to me.

65. I am also very concerned that Crystallex's continuing failure to make basic financial information available to its non-insider stakeholders is part of its strategy to keep the Noteholder Committee and other non-insiders "in the dark" as a means of achieving an advantage in any negotiations and the case generally, to the benefit of Tenor and the other CVR holders that control Crystallex.

69. In my more than 20 years of experience in CCAA and other Canadian restructuring cases, I have never been involved in a case where the type of information the Trustee and Noteholder Committee seek access to has not been publicly disclosed. Where I have been involved in cases that involved sealing, that sealing has typically been on the consent of all key stakeholders and for a limited duration, following which the information has been disclosed.

89. Based on the information available to me, this concern [that the Company will run out money and have no means to fund the pursuit of the Award collection] makes no sense:

(a) Approximately one year ago, Crystallex had $116 million of cash on hand. Based on the cash burn disclosed in the Thirty-Third Report, it would take more than a

decade for Crystallex to exhaust its current cash resources. On top of this, Crystallex also holds securities that had a market value of at least $212.5 million at their time of receipt. Accordingly, if necessary, Crystallex is well funded to continue its pursuit of Venezuela for a significant further period of time,

91. I believe that access to this information is particularly critical given Crystallex has shown no inclination to try to advance this case or to engage with the Noteholder Committee, and because Crystallex is controlled by insiders who hold economic entitlements that incentivize them to take positions that are adverse to the interests of the Noteholders and other creditors.

[Emphasis added.]

2) It is important to point out that even though Mr. Reid's company is part of the Noteholders' Committee, he has not and would not sign a confidentiality agreement the Company requires to allow restricted access to the sealed information. Mr. Reid's reasons for this are twofold: first, doing so would limit his ability to properly manage the investors' funds his company manages. Second, even though the Noteholders' Committee' and the Trustee's legal counsel have signed the required confidentiality agreement, they have been denied access to information deem necessary for them to protect their interests.

3) The foregoing reiterates several of the issues raised in the Motion I filed on July 28, 2021 (D.I. No. 328). Namely:

   A. The four Interested Directors have conflicting interests contraposed to those of the Estate and its stakeholders. (See No. 29. 54. And 55. above).

   B. The DIP/BOD's continued failure to make available information that is necessary for its stakeholders to protect their interests has been a strategy from the outset to advance the interests of the Interested Directors and the DIP Lender. (See No. 65., 69. and 91. above).

   C. The DIP/BOD has no intention of pursuing a CCAA plan of arrangement. (See No. 17. above).

   D. The DIP/BOD received advanced payments from Venezuela on the Settlement Agreement (Nov. 2017) and the Amended Settlement Agreement (Nov. 2018). Of this amount, $US 150 million was in cash and over $US 200 million (market value) in securities. As of the beginning of 2020 it had cash worth $US 116 million. (See No. 89. above).

   E. The DIP/BOD insists on sealing and keeping secret information that the ONCA has ruled it does not meet the requirements set for by Canadian and U.S. law. (See No. 26. above and DEBCC D.I. 325).

I. **THE COMPANY'S RESPONSE TO THE NOTEHOLDERS' MOTION**

4) The Company's response to the Noteholders cross-motion is supported by an affidavit by Mr. Robert Fung, President and Chairman of the BOD (See Exhibit 3). In his affidavit, Mr. Fung confirms important previously undisclosed facts as he discusses the need for the continued sealing of the Company's financial and other data the DIP/BOD deems confidential, including the reasons for not disclosing the underlying reasons, as follows:

   4. In my Sealing Affidavits, I explain in significant detail why the Financial Information needs to be sealed at this time, and the harm that will befall the Company and its stakeholders if that information is publicly available to Venezuela. In particular, explain the many ways in which the Financial Information could be used at this particular time. My evidence is based in large part of the professional advice that Crystallex has received from its US litigation and enforcement counsel and other advisors, including Gibson Dunn & Crutcher LLP ("Gibson").

   5. Mr. Reid has claimed that he cannot respond to the evidence of harms and risks because that evidence has been redacted. Making public Crystallex's understanding of the serious risks and harms caused by disclosure would itself provide Venezuela (and other adversaries) with a roadmap for how to attack the Company. Despite this, I understand that Mr. Reid and the other members of the Ad Hoc Committee will not sign a confidentiality agreement to review that evidence. As a result, the Reid Affidavit does not respond in any meaningful way to the evidence in my Sealing Affidavits.

   6. The Ad Hoc Committee has instead chosen to have Mr. Reid provide his personal views on the risks of public disclosure through a single paragraph – paragraph 89 of the Reid affidavit. I will address those views in turn:

      (a) Publicly disclosing the Financial Information will not harm Crystal/ex because "it would take more than a decade for Crystal/ex to exhaust its current cash resources": This is simply not accurate. Crystallex is currently in the middle of an extremely active litigation period with Venezuela related to what is anticipated to be a complex and costly Sales Process for the PDVH Shares run by the Special Master. Crystallex is also attempting to settle its tax liabilities with the Canada Revenue Agency (the "CRA"). Crystallex is currently facing opposition to its enforcement efforts from two competing government regimes in Venezuela (the Maduro government and the Guaido government), significant multinational corporations including ConocoPhillips and other competing creditors, and by the U.S. government who has imposed Sanctions which may take years to resolve or be lifted. Venezuela has a long-standing and proven strategy of employing every avenue of litigation and procedural delay available to it and disclosure of Crystallex's resources at this time would give Venezuela (or other competing creditors of Venezuela) further ammunition they could use to intensify these efforts. ...

      (b) "I do not understand how Venezuela does not have access to what has been paid to Crystallex to date": As described and demonstrated in my May Affidavit (see paragraphs 60 through 67 thereof and the exhibits referred to therein),

the Guaido Government does not know the particulars of what was paid to Crystallex under the Settlements and has continually sought information about the payments and transfers from Venezuela under the Maduro regime, which requests Crystallex has repeatedly refused.

8.   I am confused by the claim that the Ad Hoc Committee lacks basic information about Crystallex. It appears from Mr. Reid's evidence that Stornoway and the other members of the Ad Hoc Committee have, or should have, based on the Company's public disclosures, a clear picture of the Company's financial and business circumstances. In particular, Stornoway and the other members of the Ad Hoc Committee are privy to the following information:

(b) the current principal balance on the DIP loan (being USO $75,733,333.33 million) and the interest rate on the loan (being 10% per annum). Since Mr. Reid swore his Affidavit, the Company has also disclosed the total amount of CVR earned by the DIP Lender (being 88.242%),

(e) Application of arbitration proceeds statements ("AAP Statements") which describe:
    (i) the total receipts from Venezuela under the Settlement Agreement (approximately USO $75 million),

(f) the notional amount of the Initial Payment received from Venezuela under the Amended Settlement Agreement (USD $425 million),

(h) that the Initial Payment Securities are currently the subject of the Sanctions and are therefore illiquid at this time and cannot be providently monetized,

(i) the Court-ordered waterfall attached to the DIP Credit Agreement, which prescribes the order in which proceeds recovered from Venezuela will be distributed in this CCAA Proceeding,

14. Notably, the Ad Hoc Committee has already extracted a significant premium on their claim. Following the delivery of the third plan of arrangement by the Noteholders, on June 5, 2013, this Court made an order approving a standstill agreement between Crystallex and the Ad Hoc Committee, which is attached to my Affidavit as Exhibit "D" (the "Standstill Order"). Among other things, the Standstill Order provided that interest accrued on the agreed principal of the Notes as at May 20, 2013 (being USD $123,383,269.90) at the rate of 20% for the Standstill Period, which represented a premium of 10. 625% above the contractual rate of interest on the Notes.

18.  Mr. Reid's position in this regard, however, ignores the important differences between the situation of Gold Reserve and Rusoro on the one hand, and Crystallex on the other. Specifically:

(b) <u>As public issuers rather than CCAA debtors, the reporting obligations of Gold Reserve and Rusoro are materially different from those of Crystallex - their disclosure is retrospective in nature, with forward-looking projections</u> *optional*. ...

(c) <u>Gold Reserve and Rusoro are both operating companies with ongoing sources of income. Both also have the ability to access capital by selling shares in the public market. This is not possible for Crystallex. As a result, Gold Reserve and Rusoro are inherently more resilient to wars of attrition compared to Crystallex, whose sole sources of cash at this time are entirely derived from its enforcement efforts.</u>

26. <u>I believe that there is a real and substantial risk that if the Financial Information is unsealed, [what follows is redacted]. These harms could result in Crystallex's stakeholders receiving zero recoveries.</u>

[Emphasis added.]

5) The foregoing validates some of the issues raised in the Motion I filed on July 28, 2021 (D.I. No. 328). Specifically:

A. The Company received from Venezuela $US 500 million as advanced payments on the Settlement Agreement (Nov. 2017) and the Amended Settlement Agreement (Nov. 2018). Of this amount, $US 150 million was in cash and $US 350 million in securities (the market value then). (*See* 8 (e)(i) and (f)).

B. The $US 350 million in securities issued by Venezuela the Company received as an advanced payment of the Amended Settlement Agreement cannot be monetized and, therefore, do not meet the requirement of the arbitration Award that payment must be effective and transferable. (*See* 8 (h) above). The DIP/BOD's fiduciary responsibility and their duty of loyalty and care requires them to get full value for the Award and the money judgement against Venezuela. Nonetheless, they refuse to do so for unexplained reasons.

C. The BOD is committed to distribute the Estate's property using the MOD in the Credit Agreement. (*See* 8 (i) above). Distributing the Estate's property based on the MOD is impermissible because a) it is in form and essence a structured dismissal, b) it violates the APR and the Fair and Equitable treatment required by the Code, and it runs counter to the purpose of the Model Law.

D. The DIP bases its sealing order approval request on Mr. Fung's affidavits, which presumably enumerate the same reasons and arguments used in its appeal to the ONCA that declined to hear it because these did not rise to the meritorious level required by Canadian law. (*See* 4. and 5. above).

E. The DIP is attempting to settle its tax liability with the Canadian Revenue Service (CRS). In its 34th. Report dated August 9, 2020, the Monitor indicated that the Company had filed its

2019 tax return and that it did not pay tax or had to make a tax liability accrual. This could only be possible by using tax loss carry-forward benefits that belong to the Estate. (*See* 6. (a) above). The DIP/BOD currently pursuing a settlement with the CRS can only mean that a) the long-known impermissible use of the Estate property to benefit the DIP Lender did not pass unnoticed and b) the DIP/BOD wasted millions of U.S. dollars trying to execute a tax strategy it knew it was both illicit and against the best interest of the Estate.

F. The DIP has granted the Noteholders (unsecured creditors) post-petition interest at 20% interest p.a. as compensation for signing the Standstill Agreement whereby they gave up the right to put forward a plan of arrangement or liquidation. (*See* 14. above). This confirms that the DIP/ BOD breached the Canadian Interest Stops Rule (BIA Section 122(2)) and 11 U.S. Code § 502(b)(2).

G. The BOD acknowledges that Gold Reserve and Rusoro Mining are operating companies, public issuers, rather than CCAA debtors and able to access capital by selling shares. By acknowledging this fact, the DIP/BOD acknowledge their failure to live up to their fiduciary duty in pursuit of their self-interests. (See 18. C. above).

H. The DIP / BOD believes that, notwithstanding the judgement issued by U.S. Courts and confirmed by the U.S. Supreme Court, the collection of the Award currently underway at the Delaware District Court through the action of the CITGO shares managed by the court-appointed Special Master could yield zero recoveries for its stakeholders if the confidential information is disclosed. (See 26. Above). This is the case despite the fact that the Company holds a money judgement that has been confirm by U.S. Courts all the way to the Supreme Court.

## III. THE RELEVANCE OF THE NOTEHOLDERS' AND THE COMPANY'S AFFIDAVITTS

6) In the Motion the Movant made allegations that supported in part the need for the appointment of an Examiner and independent legal counsel to protect the interests of the Shareholders. The Noteholders' and the Company's affidavits discussed above have now validated some of these allegations as facts. Namely,

| Motion Section | Breaches of Law / Unmet Requirements | Hereinabove Para. No. |
|---|---|---|
| 1. A.-E. | Protection and maximization of the Debtor's assets. | 3. A., B. |
| 1. A.-E. | Facilitation of the rescue of a financially trouble business. | 5. B., C., E., F., G., 3. A., C. |
| 1. A. | International Obligations of the U.S.: U.S. – Canada Tax Treaty. | 5. B., C., E., F., G., 5. E. |
| 1. A.-E. | Public Policy Exception. | 3. A., B., C., E. 5. C., E. |
| 1. A.-E., 2. | Just treatment of all holders of claims against or interest in the Debtor's property. | 3. A., B., C. 5. C., E., F. |

| Motion Section | Breaches of Law / Unmet Requirements | Hereinabove Para. No. |
|---|---|---|
| 1. A.-E. | Preferential or fraudulent disposition of property of the Debtor. | 3. A., B., C. 5. C., E., F. |
| 1. A.-E. | Distribution of proceeds of the Debtor's property substantially in accordance with the order described by the statute. | 3. B., C. 5. C., E., F. |
| 1. A.-E. | The provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. | 3. C. 5. A., B., C., E., F., |
| 1. A.-E., 2. | The court may grant relief under section 1519 or 1521 or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected. | 3. A., B., C., D., E. 5. B., C., E., F., |

7) While the affidavits from the Noteholders and the Company are helpful in validating some of the issues raised in the Motion, they do little to help understand the roadmap the DIP/BOD are following to accomplish the main objective of the CCAA and Chapter 15 filings: reorganization or liquidation. In reading Mr. Fung's affidavit, collecting the Award seems to be the beginning and the end of all things. It is not. What we know thus far is that the DIP/BOD have told the Noteholders that there shall be no plan of arrangement and that it intends to use the MOD to effectuate the distribution of the Estate's property. We also know that the lack of a plan of arrangement leaves only one remaining option for the Company to come out of the Chapter 15 proceedings: liquidation, which is possible within the CCAA but not under Bankruptcy Code outside of the Chapter 7 statute. And a Chapter 7 liquidation is not possible under the terms of the MOD, given that it does not adhere to a condition sine qua non: the APR.

8) Equally puzzling is the DIP/BOD's posture with regards to the collectability of the Award and the seemingly imminent risk of failing to do so if/when its financial data is made public. Thus, in the CCAA Notice of Motion filed on June 21, 2021 (Exhibit 1), we have two entries to that effect:

7. A key component of Crystallex's U.S. enforcement strategy has been preventing Venezuela and other competing creditors from understanding Crystallex's financial position and using that information in litigation or otherwise to obstruct Crystallex's enforcement efforts.

8. Disclosure of the Financial Information represents a significant risk to the Company's enforcement efforts and would unduly prejudice the Company.

9) There are at least three factual reasons to consider the above statements platitudes:

i. If it came to be true, it would mean that the arbitration proceeding, its recognition by the U.S. Courts and the validation of the Judgement against Venezuela by the U.S. DE District Court, the Third Circuit Court of Appeals and the Supreme Court can all be ineffective,

ii. The Company has a money judgement confirmed by the U.S. Courts that is

currently being executed under the authority of the DE District Court through a writ of attachment on the CITGO shares,

iii. Short of the disclosure of illegal activity that would negate the arbitration Award, the U.S. Courts judgement, the Writ of Attachment or the recognition of the of the bankruptcy proceedings, there is no rational way to justify the continued sealing and secrecy being sought by the Company.

10) As matter of fact:

(a) As hard as the DIP/BOD has tried to prevent the Estate's stakeholders from learning about its financial affairs and position, it was required to disclose it when it failed to prove to the ONCA the nature and the extend of the alleged attending harm,

(b) Keeping the information about the composition and the provenance of the Venezuelan securities it received from the Maduro Government from the Guaido government - recognized by the U.S. government as the legitimate representative of Republic – is inexplicable. This is even more so once you realize that the DIP/BOD prefers to give up over \$US 200 million of the Award and cause the Estate such a loss by not disclosing this information and claiming the loss in market value of the securities involved,

(c) The latest attempt by the DIP/BOD to negate access to the Company's affairs and finances to its stakeholders appears to be a dilatory tactic borrowed from the Venezuelan legal defense playbook. Why would anyone genuinely interested in resolving a legal matter that has the potential to ruin you and your business would request a hearing in June to be held in October?

I believe the foregoing represents confirmation of the facts that underscore the harmed caused to the Estate and the Shareholders by some of the acts and omissions by the DIP/BOD enumerated in the Motion.

I thank you in advance for your time and consideration

Sincerely,

Adelso A. Adrianza

cc: The Honorable Mr. Justice Hainey, Ontario Superior Court of Justice
    Mr. Matthew B. Lunn, Young Conaway Stargatt & Taylor, LLP
    Mr. R. Fung, President & Chairman, Crystallex International Corp. (RFung@crystallex.com)
    Mr. Robin B. Schwill, Davies Ward Phillips & Vineberg LLP (rschwill@dwpv.com)
    Mr. Brian Denega, Ernst & Young Inc. (brian.m.denega@ca.ey.com)