**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Crystallex International Corporation[1] | Case No. 11-14074 (LSS) |
| Debtor in a Foreign Proceeding. | **Ref. Docket No. 328** |
| | **Hearing Date: August 20, 2021 at 10:00 a.m. (ET)** |

**FOREIGN REPRESENTATIVE'S OBJECTION TO MOTION FOR AN
ORDER DIRECTING THE APPOINTMENT OF AN EXAMINER
AND INDEPENDENT COUNSEL FOR THE SHAREHOLDERS**

Crystallex International Corporation, in its capacity as the court-appointed foreign representative (the "Foreign Representative") for the above-captioned debtor (the "Debtor") in a proceeding (the "Canadian Proceeding") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), respectfully submits this objection (this "Objection") to the *Motion for an Order Directing the Appointment of an Examiner and Independent Counsel for the Shareholders* [Docket No. 328] (the "Motion"), filed on July 26, 2021, by Adelso Adrianza (the "Movant"). In support of this Objection, the Foreign Representative respectfully represents as follows:

---

[1] The last four digits of the Debtor's United States taxpayer identification number are 2628. The Debtor's executive headquarters are located at 8 King Street East, Suite 1201, Toronto, Ontario, M5C 1B5, Canada.

28457739.3

**PRELIMINARY STATEMENT**[2]

1. The Motion should be denied because it seeks unnecessary relief that is outside the statutory authority and scope of Chapter 15 of the Bankruptcy Code and antithetical to its underlying and fundamental principles.

2. First, there is no statutory authority in Chapter 15 for the appointment of an examiner, except at the request of a foreign representative.[3] Similarly, there is no statutory basis for Movant's request for the appointment of counsel to represent the Debtor's shareholders in connection with the Chapter 15 case. Accordingly, the Motion should be denied based on a plain textual interpretation of the Bankruptcy Code.

3. Second, assuming authority exists under the Bankruptcy Code to grant the Motion, it should nonetheless be denied because it conflicts with fundamental principles of Chapter 15, namely "international comity and respect for the laws and judgments of other nations."[4] The Motion is, at bottom, an effort to re-litigate issues already decided by the Canadian Court (and recognized by this Court), most prominently, the CCAA Financing Order and various amendments to the DIP Credit Agreement. In fact, Movant admittedly seeks relief in this Court because he has been unable to convince the Debtor, *the Monitor, or the Canadian Court* (among others) to accept his view regarding multiple issues that have been the subject of an extensive letter-writing campaign over the years.[5] Stated differently, Movant is requesting the Court override (or at least

---

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings given to such terms below.

[3] *See* 11 U.S.C. §§ 1519 & 1521 (providing that the Court may grant certain specified relief "at the request of the foreign representative…".)

[4] In re Vitro S.A.B. de CV, 701 F.3d 1031, 1053 (5th Cir. 2012).

[5] Motion, ¶ 65 ("The several unanswered communications to the Debtor, the Monitor and the CCAA Court since December 2017 (see Exhibit 1) raising the [sic] issued and requesting to review and redress the issues harming the

second-guess) the judgment of the Canadian Court and the Monitor regarding issues that, as Movant admits, have already been raised and in some cases litigated before the Canadian Court, as well as re-visit its own orders recognizing nearly all of those rulings. The requested relief would be extraordinary in light of the policies that underlie Chapter 15 of the Bankruptcy Code, and the circumstances do not warrant it here.

4.  Relatedly, the requested relief is unnecessary. The Canadian Proceeding is moving forward under the oversight of the Canadian Court and with the active participation of the Monitor – a statutory appointee and an officer of the Canadian Court charged with many of the same duties any examiner appointed by this Court would presumably undertake (among others). In addition, there is, in fact, already an ad hoc committee of equity security holders that has been active in the Canadian Proceeding with the assistance of counsel. There is no basis or need to duplicate these efforts or to incur the attendant costs.

5.  For these reasons, set forth more fully below, the Court should deny the Motion.

## BACKGROUND

6.  On December 23, 2011 (the "Petition Date"), the Debtor commenced the Canadian Proceeding and the Canadian Court entered the Initial Order, pursuant to the CCAA, providing various forms of relief thereunder. Also on the Petition Date, the Foreign Representative commenced this proceeding by filing a verified petition on behalf of the Debtor, pursuant to sections 1504 and 1515 of the Bankruptcy Code, seeking recognition by this Court of the Canadian Proceeding as a "foreign main proceeding" under chapter 15.

---

Estate and the Shareholders attest to the futility of additional efforts to promote the resolution of the issues involved outside the courts and the need for the instant Motion."

7. Pursuant to the Initial Order, the Canadian Court appointed Ernst & Young Inc. as monitor (the "Monitor") pursuant to the CCAA. Generally, the Monitor is an officer of the Canadian Court charged with overseeing the Canadian Proceeding in a neutral fashion and reporting to the Canadian Court and stakeholders with respect to various aspects of the Debtor's restructuring efforts. To-date, the Monitor has filed 36 reports in the Canadian Proceeding, the most recent of which was filed on May 3, 2021 and is attached hereto as Exhibit A.

8. On January 20, 2012, the Court entered the *Order Granting Final Relief in Aid of Canadian Proceeding Pursuant to Section 105(a), 1517, 1520, and 1521 of the Bankruptcy Code* [Docket No. 44] (the "Recognition Order"). Pursuant to the Recognition Order, the Court (a) granted recognition of the Canadian Proceeding as a "foreign main proceeding" under section 1517 and (b) enforced in full the Initial Order on a permanent basis in the United States, including, without limitation, any extensions of the Stay Period granted by the Canadian Court.

9. On April 26, 2012, the Court entered the *Order Enforcing Financing Order of the Canadian Court* [Docket No. 111] (the "U.S. Financing Order"), which, among other things, (a) recognized and enforced the *CCAA Financing Order* of the Canadian Court, issued on April 16, 2012 (the "CCAA Financing Order"), including any amendments thereto, approving the DIP Credit Agreement (as defined in the CCAA Financing Order) and (b) granted to, and for the benefit of, the DIP Lender (as defined in the CCAA Financing Order) certain protections afforded by the Bankruptcy Code.

10. Some of the key features of the Debtor's court-approved DIP financing were: (i) an initial US $36 million principal amount loan (which was subsequently increased following several additional advances to US $75,733,333.33 of principal amount, such that the DIP loan principal and interest balance as of July 31, 2021 according to the DIP Lender is approximately US $164

million); (ii) at the time the DIP Financing Agreement was approved, the DIP Lender had also earned 35% of the Net Arbitration Proceeds (as defined in the DIP Financing Agreement and also called "NAP"), (which earned NAP amount was increased to 88.274% following additional DIP loan advances); (ii) the Debtor's board would be comprised of two Debtor directors, two nominees of the DIP Lender, and an independent director selected by mutual agreement of the Debtor and the DIP Lender; and (iii) Exhibit F to the DIP Financing Agreement set forth the court-approved waterfall setting out the priority and order of distributions of claims against the Debtor.

11. An ad hoc committee of the Debtor's senior unsecured noteholders (the "Noteholder Committee") vigorously opposed the Debtor's DIP financing on a number of grounds, including on the basis that the DIP Lender had been given control over the Debtor and its restructuring process. The Canadian Court carefully considered and then dismissed the Noteholder Committee's opposition, and the Noteholder Committee appealed that decision. On June 13, 2012, the Ontario Court of Appeal dismissed the Noteholder Committee's appeal and upheld approval of the DIP Financing.

12. Below is a brief summary of the various financing-related recognition orders entered by the Court since the entry of the CCAA Financing Order and U.S. Financing Order:

    a. On June 19, 2013, this Court entered the *Order Recognizing the Additional Financing Order of the Canadian Court* [Docket No. 125] (the "First Additional U.S. Financing Order"), which, among other things, recognized and enforced the *Additional CCAA Financing Order* of the Canadian Court, issued on June 5, 2013 (the "First Additional CCAA Financing Order"), including any amendments thereto, approving the Second DIP Amendment (as defined in the First Additional U.S. Financing Order).

    b. On April 28, 2014, this Court entered the *Order Recognizing the Second Additional CCAA Financing Order* [Docket No. 138] (the "Second Additional U.S. Financing Order"), which, among other things, recognized and enforced the *Second Additional CCAA Financing Order* of the Canadian Court, issued on April 14, 2014 (the "Second Additional CCAA Financing Order"), including any amendments

    thereto, approving the Third DIP Amendment (as defined in the Second Additional U.S. Financing Order).

c.     On February 3, 2015, this Court entered the *Order Recognizing Approval Order* [Docket No. 162] (the "Third Additional U.S. Financing Order"), which, among other things, recognized and enforced the *Approval Order* of the Canadian Court, issued on December 18, 2014 (the "Third Additional CCAA Financing Order"), including any amendments thereto, approving the Fourth DIP Amendment (as defined in the Third Additional U.S. Financing Order).

d.     On December 27, 2016, this Court entered the *Order Recognizing and Enforcing the CCAA Extension and Amendment Order* [Docket No. 184] (the "U.S. Extension and Amendment Order"), which, among other things, recognized and enforced the *Order* of the Canadian Court, issued on December 14, 2016 (the "CCAA Extension and Amendment Order") approving the Extension and Amendment (as defined in the U.S. Extension and Amendment Order).

e.     On June 23, 2017, this Court entered the *Order Recognizing and Enforcing the CCAA Second Extension and Amendment Order* [Docket No. 189] (the "U.S. Second Extension and Amendment Order"), which, among other things, recognized and enforced the *Order* of the Canadian Court, issued on May 25, 2017 (the "CCAA Second Extension and Amendment Order") approving the Second Extension and Amendment (as defined in the U.S. Second Extension and Amendment Order).

f.     On February 15, 2018, this Court entered the *Order Recognizing and Enforcing the CCAA Bridge DIP Loan Order* [Docket No. 251] (the "U.S. Bridge Loan Order"), which, among other things, recognized and enforced the *Order* of the Canadian Court, dated December 20, 2017, approving the Bridge Loan Agreement and the Seventh Amendment Agreement (as such terms are defined in the U.S. Bridge Loan Order).

g.     On June 20, 2018, this Court entered the *Order Recognizing and Enforcing the CCAA Fifth Extension and Ninth Amendment Order* [Docket No. 260] (the "U.S. Fifth Extension and Ninth Amendment Order"), which, among other things, recognized and enforced the *Order* of the Canadian Court, dated May 9, 2018 (the "CCAA Fifth Extension and Ninth Amendment Order") approving the Ninth Amendment Agreement (as defined in the U.S. Fifth Extension and Ninth Amendment Order).

h.     On November 13, 2018, this Court entered the *Order Recognizing and Enforcing the CCAA Sixth Extension and Tenth Amendment Order* [Docket No. 275] (the "U.S. Sixth Extension and Tenth Amendment Order"), which, among other things, recognized and enforced the *Order* of the Canadian Court, dated October 29, 2018 (the "CCAA Sixth Extension and Tenth Amendment Order") approving the Tenth Amendment Agreement (as defined in the U.S. Sixth Extension and Tenth Amendment Order).

  i. On May 28, 2019, this Court entered the *Order Recognizing and Enforcing the CCAA Seventh Extension and Eleventh Amendment Order* [Docket No. 294] (the "<u>U.S. Seventh Extension and Eleventh Amendment Order</u>"), which, among other things, recognized and enforced the *Order* of the Canadian Court, dated May 3, 2019 (the "<u>CCAA Seventh Extension and Eleventh Amendment Order</u>") approving the Eleventh Amendment Agreement (as defined in the U.S. Seventh Extension and Eleventh Amendment Order).

  j. On December 5, 2019, this Court entered the *Order Recognizing and Enforcing the CCAA Eighth Extension and Twelfth Amendment Order* [Docket No. 306] (the "<u>U.S. Eighth Extension and Twelfth Amendment Order</u>"), which, among other things, recognized and enforced the *Order* of the Canadian Court, dated November 4, 2019 (the "<u>CCAA Eighth Extension and Twelfth Amendment Order</u>") approving the Twelfth Credit Agreement Amendment (as defined in the U.S. Eighth Extension and Twelfth Amendment Order).

  k. On January 5, 2021, this Court entered the *Order Recognizing and Enforcing the CCAA Tenth Extension and Fourteenth Amendment Order* [Docket No. 320] (the "<u>U.S. Tenth Extension and Fourteenth Amendment Order</u>"), which, among other things, recognized and enforced the *Order* of the Canadian Court, dated November 3, 2020 (the "<u>CCAA Tenth Extension and Fourteenth Amendment Order</u>") approving the Fourteenth Credit Agreement Amendment (as defined in the U.S. Tenth Extension and Fourteenth Amendment Order).[6]

13. On November 24, 2017, the Canadian Court approved a settlement agreement between the Debtor and Venezuela pursuant to which the Debtor would receive certain payments from Venezuela; however, Venezuela failed to fulfill the terms of the agreement.

14. On September 10, 2018, the Debtor entered into an amended settlement agreement with Venezuela (the "<u>Amended Settlement Agreement</u>"), pursuant to which Venezuela agreed to pay approximately $1.265 billion to the Debtor, including an initial payment of $425 million. On September 17, 2018, the Canadian Court approved the Amended Settlement Agreement.

---

[6] Recognition by this Court of the Order entered by the Canadian Court granting a ninth extension of the stay to November 6, 2020 and approving the Thirteenth Amendment to the DIP Credit Agreement was not sought by the Foreign Representative. In addition, recognition by this Court of the Order entered by the Canadian Court granting an eleventh extension of the stay to November 5, 2021 and approving the Fifteenth Amendment to the DIP Credit Agreement has not been sought by the Foreign Representative.

**OBJECTION**

A. **The Motion Seeks Relief Outside of the Scope of Chapter 15 of the Bankruptcy Code and Should Therefore be Denied**

15. As noted by the Supreme Court in Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., in approaching questions of statutory interpretation courts "begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000) (quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Accordingly, where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989). Based on a review of the plain language of applicable provisions of the Bankruptcy Code, there is no statutory basis for granting Movant the relief requested in the Motion, which should therefore be denied.

> i. *There is no statutory basis for the appointment of an examiner in a Chapter 15 case, except at the request of a foreign representative.*

16. Movant asserts that the Court may, or is required to, appoint an examiner under sections 105(a), 1104, 1129, 1501(a)(4), 1505, 1522(c), 1526, and 1527 of the Bankruptcy Code. Objection, ¶ 14. However, certain of these sections are inapplicable in a Chapter 15 case, and none authorizes the Court to appoint an examiner upon the Movant's request.

17. First, sections 1104 and 1129 of the Bankruptcy Code only apply in a Chapter 11 case. 11 U.S.C. § 103(g) ("Except as provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter"). The Court cannot appoint an examiner under either of those sections because they are inapplicable to this proceeding.

18. Next, section 1501(a)(4) of the Bankruptcy Code merely states that one of the purposes of Chapter 15 of the Bankruptcy Code is the "protection and maximization of the value of the debtor's assets;" it does not authorize the Court to grant any relief.

19. Section 1505 of the Bankruptcy Code provides that "[a] trustee or another entity (including an examiner) may be authorized by the court to act in a foreign country on behalf of an estate created under section 541." While this section allows the Court to authorize a duly appointed examiner to take certain actions, it does not authorize the Court to ***appoint*** an examiner.

20. Likewise, section 1522 of the Bankruptcy Code does not authorize the appointment of an examiner. Subsection (a) of section 1522 of the Bankruptcy Code provides:

(a) The court may grant relief ***under section 1519 or 1521***, or may modify or terminate relief under subsection (c), ***only if*** the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.

11 U.S.C. § 1522(a) (emphasis added). As highlighted here, this subsection limits the Court's discretion to grant relief under sections 1519 or 1521 of the Bankruptcy Code, or modify any such relief under section 1522(c) of the Bankruptcy Code, but it does not independently authorize the Court to grant any relief. And, importantly, sections 1519 and 1522 of the Bankruptcy Code only permit the Court to grant the relief specified therein "at the request of the foreign representative." *See* 11 U.S.C. §§ 1519(a); 1521(a), (b), & (c). Subsections (b) and (c) of section 1522 of the Bankruptcy Code similarly refer to relief previously granted – at the request of a foreign representative - under sections 1519 or 1521:

(b) The court may subject relief ***granted under section 1519 or 1521***, or the operation of the debtor's business under section 1520(a)(3), to conditions it considers appropriate, including the giving of security or the filing of a bond.

(c) The court may, at the request of the foreign representative or an entity ***affected by relief granted under section 1519 or 1521***, or at its own motion, modify or terminate ***such relief***.

11 U.S.C. § 1522(b) & (c) (emphasis added). Lastly, subsection (d) of section 1522 provides:

> (d)  Section 1104(d) shall apply to the appointment of an examiner under this chapter. Any examiner shall comply with the qualification requirements imposed on a trustee by section 322.

This subsection (by reference to sections 1104(d) and 322 of the Bankruptcy Code) addresses the qualifications of a duly appointed trustee or examiner and circumstances in which one is unable to fulfill its mandate; it does not authorize the Court to appoint an examiner.

21. Continuing on, sections 1526 and 1527 of the Bankruptcy Code address the means of cooperation and communication amongst the Court, the foreign court or foreign representative, and any entity authorized by the Court to act in a Chapter 15 case, including a trustee or examiner. *See* 11 U.S.C. 1526 & 1527. Again, these sections would govern the conduct of a duly appointed examiner, but they do not authorize the Court to appoint one.

22. The only sections of Chapter 15 of the Bankruptcy Code that authorize the Court to appoint an examiner are 1519 and 1521, but, as noted above, in each case the Court may do so only "at the request of the foreign representative." 11 U.S.C. §§ 1519(a); 1521(a), (b), & (c). Interpreting section 1519 or 1522 to allow ***Movant*** to request the appointment of an examiner is contrary to the plain language of those provisions and would render the words "at the request of the foreign representative" superfluous. See Rea v. Federated Invs., 627 F.3d 937, 941 (3d Cir. 2010) ("We will not contravene congressional intent by implying statutory language that Congress omitted . . . Nor will we interpret statutory language in a way that would render any part thereof superfluous.") (internal citations omitted).

23. Lastly, in light of the foregoing, Movant cannot rely on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."[7]  As the Supreme Court noted in Law v. Siegel, section 105(a) "confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere."[8]

24.     Through sections 1519 and 1522 of the Bankruptcy Code, Congress provided the bankruptcy courts with authority to grant specified relief in Chapter 15 cases and expressly provided that such relief could be granted only upon the request of a foreign representative.  The Foreign Representative respectfully submits that this limitation is clear and was deliberate, as it accords with the principles of comity and respect for foreign judgments that underlie Chapter 15.  The Motion, if granted, would contravene these principles (in addition to the plain language of the Bankruptcy Code) by allowing the Movant to seek relief in this Court that could significantly impact the Canadian Proceeding because he is dissatisfied with court-approved developments therein.  This is not the role that Congress envisioned for bankruptcy courts in a Chapter 15 case where the court has recognized the foreign proceeding as a foreign main proceeding, and thus the requested relief is neither necessary nor appropriate to carry out the provisions of the Bankruptcy Code.

---

[7] Law v. Siegel, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014) (quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013)).

[8] Id. (citations omitted).

> ii. There is no basis in Chapter 15 of the Bankruptcy Code for the appointment of counsel to represent the Crystallex shareholders.

25. Movant asks the Court to appoint legal counsel to represent the Debtor's shareholders under section 105(a) of the Bankruptcy Code.

26. Again, section 105(a) does not permit the Bankruptcy Court to override the specific mandates of other Bankruptcy Code sections, and it must only be used as necessary and appropriate to carry out other provisions of the Bankruptcy Code. As noted above, Congress specifically enumerated the forms of relief the bankruptcy court is permitted to grant in a Chapter 15 case and upon whose request such relief may be granted. Movant has not, and cannot, point to any provision in Chapter 15 that contemplates a bankruptcy court's appointment of, effectively, an official committee of equity security holders at the request of an individual shareholder.

27. Moreover, there is already a committee of equity security holders (the "Ad Hoc Committee of Shareholders") with independent legal counsel that has been active in the Canadian Proceeding, including by raising therein many of the same claims Movant asserts in the Motion. See, e.g., *Factum of Ad Hoc Committee of Shareholders of Crystallex International Corporation (Motion of the DIP Lender),* attached hereto as Exhibit B, at ¶ 9 ("The point of the Shareholders Variance Motion is to permit the Shareholders Committee to commence proceedings by way of an action against Crystallex and Tenor . . . to reduce or eliminate certain additional compensation . . . granted to Tenor in relation to its DIP loans through assignments of the Net Arbitration Proceeds …"); and ¶ 10 ("Ultimately the Shareholders Variance Motion and the Shareholders Claim are intended to redress a situation in which members of the Shareholders Committee have

seen their interest in Crystallex and the approximately $1.4 billion award . . . diluted.  The balance of the Net Proceeds has been taken by Tenor through its DIP lending arrangements.").[9]

28. The Ad Hoc Committee of Shareholders also moved in the Canadian Proceeding for official committee status, and the Canadian Court denied that motion as well.[10]

29. For the foregoing reasons, Movant's request for appointment of independent counsel to represent the Debtor's shareholders should also be denied.

**B.   The Motion Should Also be Denied Because the Relief Requested Contravenes the Principles of Comity and Respect for Foreign Judgments Underlying Chapter 15 of the Bankruptcy Code and is Unnecessary**

30. Assuming there is a statutory basis to grant it, the Motion should be denied because the relief requested contravenes the policies and principles underlying Chapter 15 of the Bankruptcy Code and is, in any event, unnecessary.

31. Congress enacted Chapter 15 of the Bankruptcy Code to "incorporate the Model Law on Cross–Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency," and with the express objectives of "cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses." In re SPhinX, Ltd., 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007); 11 U.S.C. § 1501(a)(1)-(5).

---

[9] The Shareholders Variance Motion was dismissed by the Canadian Court and the Ontario Court of Appeal dismissed the shareholders' motion for leave to appeal.

[10] A copy of the Ad Hoc Committee of Shareholders' motion for committee status is attached hereto as Exhibit C.

Thus, "a central tenet of Chapter 15 is the importance of comity in cross-border insolvency proceedings." In re Cozumel Caribe, S.A. de C.V., 482 B.R. 96 (Bankr.S.D.N.Y.2012). [11]

32. In contravention of these policies and principles, Movant requests the Court's assistance in his efforts to re-litigate, or collaterally attack, the CCAA Financing Order, certain amendments to the DIP Credit Agreement, the Amended Settlement Agreement, and other orders, all of which were approved by the Canadian Court and (with limited exceptions) recognized by this Court. *See, e.g.*, Objection at ¶ 5 (asserting challenge to the Mechanics of Distribution approved via the DIP Order and DIP amendments); ¶¶ 23-29 (expressing dissatisfaction with the terms of the Debtor's court-approved DIP financing); ¶¶ 30-33 (asserting that certain terms of the Debtor's court-approved DIP financing constitute fraudulent transfers and tax evasion); ¶¶ 34-35 (asserting that court-approved settlement agreement was a misappropriation of estate assets); ¶¶ 36-38 (taking issue with negotiated compromise approved by Canadian Court in connection with standstill agreement); ¶¶ 39-40 (asserting that court-approved settlement agreement constituted breach of duties of care and loyalty by Debtor's board of directors); ¶¶ 41-42 (asserting fraudulent misrepresentations in connection with court-approved DIP financing); ¶¶ 43-46 (expressing dissatisfaction with certain terms of court-approved settlement agreement). And, in fact, Movant admits that he is now seeking relief in this Court because he has been unable to obtain the "review and redress" he desires in the Canadian Proceeding. Objection, ¶ 65.

33. Of course, bankruptcy courts in Chapter 15 cases need not merely accept any judgment or order entered in a foreign main proceeding and, as Movant notes, may refuse to recognize and enforce orders under certain circumstances. See Objection, ¶ 64. But, those

---

[11] Webster's dictionary defines "comity of nations" as "the courtesy and friendship of nations marked especially by mutual recognition of executive, legislative, and judicial acts."

circumstances are not present here. First, this Court has already recognized nearly all of the orders Movant takes issue with in the Motion. Moreover, the cases cited by Movant concern orders or judgments described as "repugnant to public policy," "prejudicial to the interests of the United States," and "manifestly contrary to the public policy of the United States," none of which are remotely close to describing the relief that has been granted in the Canadian Proceeding. And even assuming any orders of the Canadian Court granted relief unavailable in the United States (and Movant has not demonstrated as such), as noted by the court in Vitro, "[g]iven Chapter 15's heavy emphasis on comity, it is not necessary, nor to be expected, that the relief requested by a foreign representative be identical to, or available under, United States law."

34. In light of the foregoing, the Motion conflicts with the principles of comity and cooperation by asking this Court to second-guess the judgment of the Canadian Court and the Monitor appointed to oversee the Canadian Proceeding (as well as re-visit its own rulings recognizing orders of the Canadian Court) where there is no credible basis for concluding that any relief granted by the Canadian Court would be prejudicial to the United States or manifestly contrary to its public policy. In further contravention of the aforementioned principles, the relief requested would cause inefficiency and uncertainty by introducing another court-appointed entity, in addition to the Monitor, to oversee and report upon these cross-border proceedings, leading to duplication of effort and potentially conflicting positions with respect to matters before the Canadian Court and this Court.

35. Lastly, aside from having no basis in law or fact, the relief requested in the Motion is simply unnecessary. As noted above, there is a represented committee of equity security holders that has been active in the Canadian Proceeding, and it has already asserted before the Canadian Court many of the same claims made by Movant in the Motion. Further, there is a court-appointed,

neutral party charged with monitoring the proceeding and reporting to the Canadian Court and interested parties on its progress - which is, in fact, doing so, as demonstrated by the 36 detail reports the Monitor has filed in the Canadian Proceeding to-date. If the Debtor were not acting appropriately, as Movant alleges, the Monitor, which has a duty to the Canadian Court as its officer, would have reported as such. To the contrary, however, the Monitor's reports have contained statements that the Debtor is making progress in the Canadian Proceeding and has acted in good faith. See, e.g., Exhibit A, ¶ 65 ("The Monitor is of the view that the Applicant has made progress and is continuing to act in good faith and with due diligence.").

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court deny the Motion and grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: August 13, 2021<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Shane M. Reil*<br>Matthew B. Lunn (No. 4119)<br>Shane M. Reil (No. 6145)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Mlunn@ycst.com<br>Sreil@ycst.com<br><br>*Counsel to the Foreign Representative* |