# EXHIBIT 1

## Supplemental Objection

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------- x
In re                                              :    Chapter 15
                                                   :
Crystallex International Corporation[1]             :    Case No. 11-14074 (LSS)
                                                   :
Debtor in a Foreign Proceeding.                    :    **Ref. Docket No. 328, 339 & 340**
                                                   :
                                                   :    **Hearing Date: TBD[2]**
                                                   :
---------------------------------------------------- x

**FOREIGN REPRESENTATIVE'S SUPPLEMENTAL OBJECTION TO**
**MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF AN**
**EXAMINER AND INDEPENDENT COUNSEL FOR THE SHAREHOLDERS**

Crystallex International Corporation, in its capacity as the Foreign Representative for the

Debtor in the Canadian Proceeding, respectfully submits this supplemental objection

(this "Supplemental Objection") to the *Motion for an Order Directing the Appointment of an*

*Examiner and Independent Counsel for the Shareholders* [Docket No. 328] (the "Motion"), filed

by Adelso Adrianza (the "Movant"), and in support of the Foreign Representative's objection

thereto [Docket No. 339] (the "Objection").[3]  In support of this Supplemental Objection, the

Foreign Representative respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      At the August 20th Hearing, the Court directed the Foreign Representative to

submit supplemental briefing regarding the Court's authority to grant the relief requested in the

Motion in light of its ruling in Better Place, and certain decisions cited therein, and to provide

---

[1] The last four digits of the Debtor's United States taxpayer identification number are 2628.  The Debtor's executive headquarters are located at 8 King Street East, Suite 1201, Toronto, Ontario, M5C 1B5, Canada.

[2] By agreement, the Foreign Representative's deadline to submit a supplemental objection is September 20, 2021 and Mr. Adrianza's deadline to submit a response is October 11, 2021.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Objection.

additional information concerning, among other things, the Debtor's DIP financing and the participation of the Debtor's shareholders in the CCAA Proceeding.

2.      The Foreign Representative respectfully submits that the Fourth Circuit's ruling in Jaffe (cited in Better Place) is distinguishable and maintains there is no statutory basis for the Court to appoint an equity committee or examiner upon the Movant's request.

3.      If, however, the Court determines that it does have authority to grant the Motion, it should nonetheless be denied under the balancing test described in Jaffe and Better Place.  The Debtor's shareholders have had (and continue to have) sufficient notice and opportunity to participate in the Canadian Proceeding.  However, for whatever reason, they failed or otherwise declined to participate when the orders they complain of were noticed, considered, and approved by the Canadian Court.  Indeed, the Foreign Representative is unaware of any effort by the Movant to participate in the Canadian Proceeding aside from his letter-writing campaign, which the Movant is or should be aware is not the proper procedural avenue for addressing issues before the Canadian Court (or this Court).  There is no justification to upend any relief granted by the Canadian Court or this Court, the majority of which was approved many years ago, particularly given the shareholders' failure to take appropriate action, at the appropriate time.

4.      Further, in 2017 and 2018, well after the Debtor's DIP financing and other complained-of orders had been approved, an ad hoc group of the Debtor's shareholders requested, by separate motions, that the Canadian Court (a) grant them official committee status and (b) reconsider certain of its prior orders and permit the shareholders to pursue claims and legal theories based on the same unfounded and disputed allegations levied in the Motion.  The Canadian Court denied both motions.  There has been no material change in circumstances since, and there is otherwise no reason to revisit the Canadian Court's decisions.

5.      To the extent the Movant ultimately seeks to overturn all or any portion of the DIP financing orders – which were entered based on the facts and circumstances that existed at that time, and upon which the parties have relied for years - it would "have a serious impact on the credit arrangements and would throw the CCAA proceedings into chaos".[4]  And in any event, if the Motion were granted, it would have a substantial negative effect on the Debtor's creditors and other stakeholders by creating unnecessary costs and inefficiencies that would impair the Debtor's restructuring efforts.

6.      For these and other reasons discussed more fully below and in the Objection, the Court should deny the Motion.

## BACKGROUND

**A.    General Background**

7.      On December 23, 2011 (the "Petition Date"), the Debtor commenced the Canadian Proceeding and the Canadian Court entered the Initial Order, pursuant to the CCAA, providing various forms of relief thereunder.   Also on the Petition Date, the Foreign Representative commenced this proceeding by filing a verified petition on behalf of the Debtor, pursuant to sections 1504 and 1515 of the Bankruptcy Code, seeking recognition by this Court of the Canadian Proceeding as a "foreign main proceeding" under chapter 15.

8.      Pursuant to the Initial Order, the Canadian Court appointed the Monitor pursuant to the CCAA.  Generally, the Monitor is an officer of the Canadian Court charged with overseeing the Canadian Proceeding in a neutral fashion and reporting to the Canadian Court and stakeholders with respect to various aspects of the Debtor's restructuring efforts.  To-date, the Monitor has filed

---

[4] See Exhibit G at ¶ 23.  In addition, the relief requested in the Motion, if granted, could in and of itself result in a default under the Debtor's DIP facility, which would have a substantial negative impact on the Debtor's stakeholders. And notably, no other constituency supports the Motion.

36 reports in the Canadian Proceeding, the most recent of which was filed on May 3, 2021 and

was attached to the Objection as Exhibit A.  As noted in the Objection, in its reports, the Monitor

has consistently found that the Debtor is making progress in its restructuring efforts and proceeding

in good faith.

9.      On January 20, 2012, the Court entered the Recognition Order [Docket No. 44].

Pursuant to the Recognition Order, the Court (a) granted recognition of the Canadian Proceeding

as a "foreign main proceeding" under section 1517 and (b) enforced in full the Initial Order on a

permanent basis in the United States, including, without limitation, any extensions of the Stay

Period granted by the Canadian Court.

**B.      The Financing Orders**

10.      On April 26, 2012, the Court entered the U.S. Financing Order [Docket No. 111],

which, among other things, (a) recognized and enforced the CCAA Financing Order, including

any amendments thereto, approving the DIP Credit Agreement (as defined in the CCAA Financing

Order) and (b) granted to, and for the benefit of, the DIP Lender (as defined in the CCAA

Financing Order) certain protections afforded by the Bankruptcy Code.

11.      Some of the key features of the Debtor's DIP financing were: (a) an initial US $36

million principal amount loan, which was subsequently increased following several additional

advances to US $75,733,333.33 of principal amount, such that the DIP loan principal and interest

balance as of July 31, 2021 was approximately US $162 million; (b) at the time the DIP Financing

Agreement was approved, the DIP Lender had also earned 35% of the Net Arbitration Proceeds

(as defined in the DIP Financing Agreement, and also referred to as the "NAP"), which was later

increased to 88.274% following additional DIP loan advances; (c) the Debtor's board would be

comprised of two Debtor directors, two nominees of the DIP Lender, and an independent director

selected by mutual agreement of the Debtor and the DIP Lender; and (d) Exhibit F to the DIP Financing Agreement set forth the court-approved waterfall to govern distributions of claims against the Debtor (the "<u>Mechanics of Distribution</u>").[5]    Accordingly, the Mechanics of Distribution formed part of what the Canadian Court approved when it approved the DIP financing by issuing the CCAA Financing Order as recognized by the U.S. Financing Order.

12.    As noted in the Objection, an ad hoc committee of the Debtor's senior unsecured noteholders (the "<u>Noteholder Committee</u>") vigorously opposed the Debtor's DIP financing on a number of grounds, including on the basis that the DIP Lender had been given control over the Debtor and its restructuring.  The Canadian Court carefully considered and then dismissed the Noteholder Committee's opposition, and the Noteholder Committee appealed that decision.  On June 13, 2012, the Ontario Court of Appeal dismissed the Noteholder Committee's appeal and upheld approval of the DIP Financing.

13.    Without the DIP financing, the Debtor would not have been able to pursue the arbitral award and, upon successfully achieving it after five years of arbitral proceedings, advance the enforcement of it.  The award and all recoveries achieved on it to date, are the Debtor's only asset.

14.    As requested by the Court, attached hereto as <u>Exhibit A</u> is a chart detailing the various amendments to the CCAA Financing Order and DIP Financing Agreement, including: (a) any incremental advances made by the DIP Lender; (b) the consideration provided to the DIP Lender in exchange therefor; and (c) whether the applicable CCAA order has been recognized by

---

[5] At the August 20th Hearing, the Court asked whether the Debtor would be required to obtain Canadian Court approval prior to making any distributions under the Mechanics of Distribution.  The Foreign Representative understands that the Debtor must make the appropriate application as Canadian Court approval of any material distributions will be required by both the Debtor's board of directors and the Monitor.

this Court.[6]  Also as requested, the Debtor's cash balance, as of August 31, 2021, is approximately $96.5 million.

## C.    The MIP and the NAP Transfer Agreement Order

15.    On April 16, 2012, the Canadian Court entered an order approving a Management Incentive Plan (the "MIP"), which provided incentive-based compensation for certain of the Debtor's executives.  The MIP provides for a pool of money consisting of a percentage of the NAP after payment of certain prior claims.  The executives' recoveries under the MIP are capped by a percentage recovery of the Debtor's shareholders (the "Residual Pool").

16.    As a result of the Second, Third and Fourth Amendments to the CCAA Financing Order, pursuant to which the DIP Lender advanced approximately $40 million in additional financing to the Debtor, as set forth on Exhibit A hereto, the DIP Lender's percentage participation in the NAP increased with a corresponding reduction in the Residual Pool.  Accordingly, the compensation payable to the debtor's executives under the MIP also decreased.

17.    In light of the foregoing and considering the critical role of the Debtor's executives in the pursuit of recovery against Venezuela and the Debtor's restructuring efforts, the Debtor, the DIP Lender, and the executives entered into an agreement (the "NAP Transfer Agreement"), in conjunction with the Fourth Amendment to the CCAA Financing Order, pursuant to which the DIP Lender transferred a portion of its additional compensation to be received pursuant to the Fourth Amendment to the executives.

---

[6] Every motion in the Canadian Proceeding is served on the service list maintained for the proceeding, and any interested party can request in writing at any time that they be placed on the service list.  Gowling WLG (Canada) LLP and Blaney McMurtry, attorneys for the members of the Shareholder Committee (defined below), remain on the service list to this day. The service list can be found on the Monitor's website.

18.     The NAP Transfer Agreement was approved by the Canadian Court by order dated December 18, 2014 (the "NAP Transfer Agreement Order").[7]

19.     On February 3, 2015, the Court entered an order recognizing the NAP Transfer Agreement Order [Docket No. 161].

**D.      The Amended Settlement Agreement**

20.     As of the Petition Date, the Debtor's primary asset consisted of an arbitral claim for US $3.8 billion dollars against the Bolivarian Republic of Venezuela for breach of an exclusive mining contract.    The primary purpose of the Debtor's DIP financing was to enable the continuation of this arbitral proceeding, including seeking recovery of any award or judgment, and to otherwise fund the Debtor's restructuring efforts.

21.     On November 24, 2017, the Canadian Court approved a settlement agreement between the Debtor and Venezuela pursuant to which the Debtor would receive certain payments from Venezuela; however, Venezuela failed to fulfill the terms of the agreement.

22.     On September 10, 2018, the Debtor entered into an amended settlement agreement with Venezuela (the "Amended Settlement Agreement"), pursuant to which Venezuela agreed to pay approximately $1.265 billion to the Debtor, including an initial payment of $425 million.  On September 17, 2018, the Canadian Court approved the Amended Settlement Agreement.

23.     The Debtor's collection efforts under the Amended Settlement Agreement are ongoing.

---

[7] A copy of the NAP Transfer Agreement Order is attached hereto as Exhibit B.

**E.       Shareholder Participation in the Canadian Proceedings**

24.       On October 29, 2015, an ad hoc group of the Debtor's shareholders (the "Shareholder Committee"),[8] through counsel, provided notice of a motion with the Canadian Court seeking official committee status (the "Committee Appointment Motion").  On April 4, 2016, the Shareholder Committee filed its factum in support of the Committee Appointment Motion.  On April 6, 2016, the Debtor and the DIP Lender each filed objections to the Committee Appointment Motion and, on April 8, 2016, the Shareholder Committee filed a reply.[9]

25.       On April 18, 2016, following a hearing held on April 11, 2016, the Canadian Court issued a written opinion denying the Committee Appointment Motion.[10]

26.       In December of 2017, the Shareholder Committee, through counsel, provided notice of a motion (the "Committee Variance Motion") seeking, among other things, relief from stay to commence and continue to pursue remedies for certain alleged breaches of the Canadian criminal code relating to allegedly usurious interest rates in respect of the DIP financing, as well as for the "variance" of certain orders that were approved years prior by the Canadian Court, including various DIP financing orders and the NAP Transfer Agreement Order.

27.       On February 22, 2018, the Debtor's Board of Directors and the DIP Lender each filed a response to the Committee Variance Motion, including a request that the Canadian Court dismiss the motion and order the Shareholder Committee to pay costs in connection therewith.  On

---

[8] The Shareholder Committee represented the interest of over 200 of the Debtor's shareholders who together held as much as 30% of the Debtor's common shares.

[9] Copies of the foregoing pleadings are attached hereto as Exhibit C.  Given the volume of the attachments, certain related documents, including notices and supporting affidavits, as applicable are not attached hereto. All related documents may be accessed at the Monitor's website, which is linked below.

[10] A copy of the Canadian Court's written opinion is attached hereto as Exhibit D.

March 8, 2018, the Shareholder Committee filed a reply in support of the Committee Variance Motion. On March 27, 2018, the DIP Lender filed a reply.[11]

28.    A hearing to consider the Committee Variance Motion was held on March 28, 2018. On May 22, 2018, the Canadian Court issued a written opinion indicating it would dismiss the Committee Variance Motion. On June 11, 2018, it entered an order dismissing the Committee Variance Motion in its entirety and directing certain Shareholder Committee members, jointly and severally, to reimburse the DIP Lender, the Debtor and the Debtor's Board of Directors for their respective costs incurred in connection therewith (in the amount of $50,000 in the aggregate).[12]

29.    The Shareholder Committee appealed to the Court of Appeal for Ontario, but the appeal was dismissed.[13] Among other things, the appeals court found that: (a) the Canadian Court had properly determined that there was no "slip or error in the expression of the [challenged orders]" and that the Shareholder Committee had not "alleged any fraud or newly discovered facts" in connection therewith; (b) that the Shareholder Committee members were provided notice of the complained-of orders, but "took no steps to participate and failed to attend the hearings in 2013 and 2014 when the orders were issued and granted," and had failed to take any steps to be placed on the service list for the Canadian Proceeding despite being aware of it since at least 2012; and (c) that there was no basis to interfere with the Canadian Court's conclusion that varying the

---

[11] Copies of the foregoing pleadings are attached hereto as Exhibit E. Given the volume of the attachments, certain related documents, including notices and supporting affidavits, as applicable are not attached hereto. All related documents may be accessed at the Monitor's website, which is linked below.

[12] Copies of the Canadian Court's opinion and the June 11, 2018 Order are attached hereto as Exhibit F.

[13] A copy of the Court of Appeal for Ontario's order is attached hereto as Exhibit G.

financing orders would "have a serious impact on the credit arrangements and would throw the CCAA proceedings into chaos." See Exhibit G.[14]

30.    In addition, the Movant has sent letters to this Court, the Canadian Court, the Delaware District Court, the Monitor, and perhaps others, making the same or substantially similar disputed allegations as those set forth in the Motion and Reply.  The Movant has previously been advised, in writing by the Debtor, that the proper way to address issues in the Canadian Proceeding is to bring a motion and that letters to the Canadian Court, the Monitor, and others do not form a part of the court's record.

31.    Further still, as noted in the Movant's reply, the Movant has written the Office of the Superintendent of Bankruptcies (the "OSB") in Canada to allege ethics violations by the Monitor.  See Reply at ¶16.  After conducting an investigation, the OSB responded to the Movant stating that it found no such violations had occurred.  More specifically, the OSB found, among other things, that the Monitor: (a) had "observed and participated as appropriate in the CCAA proceedings and provided the court with its independent views, analysis and advice"; (b) "brought substantive matters before the court for approval and kept the court aware of competing views amongst stakeholders and Crystallex"; (c) had "met its responsibilities under the CCAA" and had not been "compromised" by Crystallex as the Movant alleged; (d) had redacted portions of its reports "consistent with the CCAA Initial Order"; (e) had served and published notices to inform stakeholders of the CCAA proceedings and maintained a publicly available website where

---

[14] As noted by the appeals court, the Canadian Court dismissed the Shareholder Committee's claims that the DIP Financing Agreement contained "criminal" interest rate provisions, finding the opposite.  Id. at ¶ 15 ("Finally, [the Canadian Court] stated that the claims regarding the criminal interest rate were bound to fail because the DIP financing agreements did not require, and in fact prohibited, the payment of interest at a criminal rate.").

information regarding the proceedings could be accessed;[15] and (f) has "administered the Crystallex proceedings in accordance with the CCAA and the Code of Ethics for trustees."[16] In addition, the OSB advised the Movant that he may wish to consult with counsel and that "[a]s CCAA processes are court driven, all on-going matters and concerns pertaining to the administration of a CCAA filing must be addressed by the court." See Exhibit H.

E.    **The August 20, 2021 Hearing**

32.    On August 20, 2021 (the "August 20th Hearing"), the Court held a hearing to consider the Motion and all pleadings related thereto. At the conclusion of the hearing, the Court requested that the parties submit supplemental briefing regarding, among other things, the Court's authority to grant the relief requested in the Motion in light of the Court's ruling in In re Better Place, Inc., Case No. 13-11814 (Bankr. D. Del.) (Feb. 28, 2018) ("Better Place") and the authorities cited therein, including Jaffe v. Samsung Elecs. Co., 737 F.3d 14 (4th Cir. 2013) ("Jaffe").

## SUPPLEMENTAL OBJECTION

A.    **The Motion Seeks Relief Outside of the Scope of Chapter 15 of the Bankruptcy Code and Should Therefore be Denied**

33.    In determining that it could grant the relief requested in Better Place, though ultimately declining to do so, the Court relied, in part, on the Fourth Circuit's opinion in Jaffe. See Better Place, ¶¶ 23-24.

34.    The Jaffe decision is distinguishable and, as result, the Foreign Representative maintains that there is no statutory basis for granting the relief requested in the Motion.

---

[15] The Monitor's website may be accessed via the following web address: www.ey.com/ca/crystallex

[16] A copy of the OSB's letter to the Movant is attached hereto as Exhibit H.

35.     In <u>Jaffe</u>, the Fourth Circuit upheld a bankruptcy court order conditioning certain relief granted to the foreign representative under section 1521 of the Bankruptcy Code – namely, permitting the foreign representative to administer the debtor's US patents - on the application of section 365(n) of the Bankruptcy Code.  <u>Jaffe</u>, 737 F.3d at 32.  The bankruptcy court in <u>Jaffe</u> found that requiring the application of section 365(n) in that case was necessary to sufficiently protect the interests of U.S. patent licensees, and that the failure to do so would be manifestly contrary to the fundamental U.S. policy of promoting technological innovation.  <u>Id.</u>, at 18.

36.     As the Court noted at the August 20th Hearing and in <u>Better Place</u>, the Fourth Circuit determined that in granting any discretionary relief under section 1521 of the Bankruptcy Code, bankruptcy courts must consider "the question of sufficient protection under § 1522(a)." <u>Id.</u>, at 26; <u>Better Place</u>, at ¶ 23, fn. 41.  And, while it was true that the foreign representative in <u>Jaffe</u> had not specifically requested the relief at issue (that is, any relief under section 365 of the Bankruptcy Code), it ***had requested*** other relief pursuant to section 1521, which the Fourth Circuit determined triggered the bankruptcy court's section 1522(a) analysis. <u>Jaffe</u>, 737 F.3d at 26.

37.     The <u>Jaffe</u> decision is distinguishable for several reasons.

38.     ***First***, unlike in <u>Jaffe</u>, no specific relief requested by, or granted to, the Foreign Representative triggered the filing of the Motion or requires the Court to conduct a "sufficient protection" analysis under section 1522(a).  Rather, the Movant is seeking affirmative relief, untethered to any specific relief requested by the Foreign Representative, because he is generally dissatisfied with court-approved developments in the Canadian Proceeding and because the Canadian Court has declined to grant substantially similar relief when presented with the same disputed allegations set forth in the Motion.  Stated differently, the Movant is forum shopping. And particularly in light of the role of this Court in a chapter 15 proceedings, the Court should not

countenance the Movant's efforts to end-run the foreign main proceeding.  Section 1522(a) of the Bankruptcy Code was not intended to allow parties in interest to seek the broad affirmative relief requested by the Movant, nor is it a broad grant of authority along the lines of section 105(a) of the Bankruptcy Code; rather, it was intended to guide the Court's analysis if and when it was asked to grant relief to a foreign representative under sections 1519 and 1521.[17]

39.    ***Second***, <u>Jaffe</u> involved creditors whose property interests were directly impacted by specific relief requested by the foreign representative.  Namely, the foreign representative requested authority to control and administer the US patents, and the record reflected that the foreign representative had taken steps to invalidate certain US patent licenses under German law.  In fact, the issue in Jaffe was originally brought to the bankruptcy court ***on the foreign representative's request*** to amend a prior order granting it relief under section 1521 to remove references to section 365 of the Bankruptcy Code and thereby preclude arguments by the affected patent licensees that they were protected by section 365(n).  <u>See</u> Jaffe, 737 F.3d at 20 ("The letters from Samsung and Elpida prompted Jaffé to move to amend the bankruptcy court's July 22, 2009 Supplemental Order to delete entirely its reference to § 365).  In <u>Jaffe</u>, the court was considering specific relief that had been granted to a foreign representative under section 1521 and, pursuant to section 1522(a) of the Bankruptcy Code, tailored such relief to protect directly impacted creditors ***in connection with that specific relief***.

---

[17] The Foreign Representative acknowledges that the Court may, on its own motion, modify or terminate relief it has granted under section 1519 or 1521 of the Bankruptcy Code, pursuant to section 1522(c) of the Bankruptcy Code. However, the Foreign Representative does not understand the Court to have made such a motion and it is not clear what relief would be the target of any such termination or modification.  Further, the <u>Jaffe</u> decision did not address the scope of the Court's obligation (if any) to make such a motion or to reconsider prior orders where no further relief has been requested by the foreign representative.

40.    Unlike in <u>Jaffe</u>, the Movant has not identified any specific relief requested by, or granted to, the Foreign Representative under section 1521 of the Bankruptcy Code from which he requires protection.  Rather, the Movant has raised a slew of complaints with the Debtor's exercise of its business judgment and numerous orders that were approved many years ago by the Canadian Court, and has asked this Court to grant broad, generalized relief with no indication of how it would remedy any of the alleged issues.  Thus, the Foreign Representative respectfully submits that section 1522(a), on which the <u>Jaffe</u> ruling centered, is inapplicable here.[18]

41.    For the same reasons, the Movant has also not demonstrated that he is an "entity affected by" any specific relief that was granted to the Foreign Representative under section 1519 or 1521 of the Bankruptcy Code, or that the Court should "condition," "modify," or "terminate" any such relief pursuant to section 1522(b) or (c) of the Bankruptcy Code.  While the Movant is a shareholder of the Debtor, that does not in and of itself establish that he has been affected by any of the various orders of which he complains, let alone and specific relief that has been granted to the Foreign Representative by this Court under sections 1519 or 1521 of the Bankruptcy Code.  Nor has the Movant requested to modify or terminate any such relief.

42.    ***Third***, the bankruptcy court in <u>Jaffe</u> had a clear statutory basis to impose the condition that it did.  As noted above, the foreign representative in <u>Jaffe</u> sought authority to administer the debtor's US patents and, in connection therewith, was taking steps to invalidate

---

[18] Similarly, the United States Bankrupty Court for the Southern District of New York, in <u>In re Cozumel Caribe, S.A. de C.V.</u>, was considering a specific request by a foreign representative (a motion to stay an adversary proceeding) and, pursuant to section 1522(a), placed conditions on the parties in connection with that specific relief.  <u>See</u> 482 B.R. 96, 118 (Bankr. S.D.N.Y. 2012) (granting stay of adversary proceeding, but requiring the debtor and foreign representative to commence appropriate proceeding in foreign jurisdiction to determine parties interest in subject assets, within a certain time period, and to provide notice to the court and other interested parties in connection therewith).

certain US patent licenses under German law. Jaffe, 737 F.3d at 17. The bankruptcy court conditioned the foreign representative's ability to administer the US patents on the applicability of section 365(n) of the Bankruptcy Code, which demonstrates a clear Congressional intent to protect the rights of patent licensees, and limited the applicability of 365(n) to US patent licensees. Id. at 25, fn. 3. Accordingly, the bankruptcy court's order in Jaffe was plainly necessary, appropriate, and consistent with the policies and principles of the Bankruptcy Code, including the considerations of comity underlying Chapter 15.

43.     Conversely, as detailed in the Objection, there is no language in the Bankruptcy Code that specifically provides for the appointment of an equity committee or examiner in a Chapter 15 case at the request of an individual shareholder. To the contrary, sections 1519 and 1521 of the Bankruptcy Code detail specific relief bankruptcy courts may grant in a Chapter 15 "at the request of the foreign representative." 11 U.S.C. 1519 & 1521. If, in a Chapter 15 case, such affirmative relief could be granted at the request of any party in interest, the limitation "at the request of the foreign representative" would be rendered superfluous, in contravention of fundamental principles of statutory construction. See Rea v. Federated Invs., 627 F.3d 937, 941 (3d Cir. 2010) ("We will not contravene congressional intent by implying statutory language that Congress omitted . . . Nor will we interpret statutory language in a way that would render any part thereof superfluous.") (internal citations omitted).[19]

---

[19] At the August 20th Hearing, the Movant argued that the provisions of Chapter 11 are applicable in a Chapter 15 case, citing In re Qimonda AG Bankr. Litig., 433 B.R. 547 (E.D. Va. 2010). But that case involved the applicability of section 365(n) of the Bankruptcy Code, not any provisions of Chapter 11, and is therefore inapposite. As the Court is aware, Chapter 3 of the Bankruptcy Code in generally applicable, while Chapter 11 is not. In Qimonda, the court was resolving an inconsistency between sections 103 and 1520 of the Bankrupty Code, as it pertains to the applicability of sections 362 and 365 of the Bankruptcy Code in Chapter 15 cases, by applying the "basic principle of statutory construction that when two statutes are in conflict, a specific statute closely applicable to the substance of the controversy at hand controls over a more generalized provision." Qimonda, 433 B.R. at 561 (citations omitted). There is no such conflict, however, between section 103(g) of the Bankruptcy Code – which specifically addresses the applicability of the provisions of Chapter 11 - and any provisions of Chapter 15. 11 U.S.C. 103(g) ("Except as

44. Also as detailed in the Objection, the relief requested would frustrate the policies and purposes underlying Chapter 15 of the Bankruptcy Code, whereas in <u>Jaffe</u>, the opposite was true. For one, the principle of comity would be frustrated, because the Movant is forum shopping; requesting relief that was already denied by the Canadian Court (and, where applicable, upheld on appeal) from this Court. The goals of efficiency and certainty in cross-border proceedings would be frustrated for the same reason, and because any examiner would serve largely, if not entirely, the same function as the Monitor, leading to unnecessary costs, inefficiency, and uncertainty.

45. For the foregoing reasons, the Foreign Representative respectfully submits that there is no basis under the Bankruptcy Code to grant the Motion, including under section 105(a).

**B.    The Motion Should be Denied Because the Balancing Test Set Forth in Better Place and Jaffe Clearly Favors the Debtor**

46. If the Court determines, however, that it has authority to grant the Motion, it should nonetheless be denied under the balancing test described in <u>Better Place</u> and <u>Jaffe</u>.

47. According to the Fourth Circuit, section 1522(a) of the Bankruptcy Code requires the Court to undertake "a particularized balancing analysis that considers the 'interests of the creditors and other interested entities, including the debtor,' 11 U.S.C. § 1522(a), and . . . a weighing of the interests of the foreign representative [] in receiving the requested relief against the competing interests of those who would be adversely affected by the grant of such relief…." <u>Jaffe</u>, 737 F.3d at 29.

*48.* As noted above, the Movant has not identified any specific relief granted by this Court to the Foreign Representative under section 1519 or 1521 of the Bankruptcy Code from

provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter").

which he requires protection.  Instead, the Movant is seeking broad affirmative relief, presumably

on the basis that prior orders of the Canadian Court have caused him prejudice and that he is unable

to protect his interests without it.  *See, e.g.*, Objection at ¶ 5 (asserting challenge to the Mechanics

of Distribution approved via the DIP Order and DIP amendments); ¶¶ 23-29 (expressing

dissatisfaction with the terms of the Debtor's court-approved DIP financing); ¶¶ 30-33 (asserting

that certain terms of the Debtor's court-approved DIP financing constitute fraudulent transfers and

tax evasion); ¶¶ 34-35 (asserting that the court-approved settlement agreement was a

misappropriation of estate assets); ¶¶ 36-38 (taking issue with negotiated compromise approved

by Canadian Court in connection with standstill agreement); ¶¶ 39-40 (asserting that the court-

approved settlement agreement constituted breach of duties of care and loyalty by Debtor's board

of directors); ¶¶ 41-42 (asserting fraudulent misrepresentations in connection with court-approved

DIP financing); ¶¶ 43-46 (expressing dissatisfaction with certain terms of the court-approved

settlement agreement).

49.    Because the prejudice to the Debtor if the Motion were to be granted would

significantly outweigh any harm to the Movant if it were not, the Motion should be denied.

50.    First, the requested relief is not necessary to protect the Movant's interests.

51.    An examiner would unnecessarily complicate and duplicate the efforts of the

Monitor, a neutral party and officer of the Canadian Court, which is already overseeing the

Debtor's operations and restructuring efforts and routinely reporting to the Canadian Court and

interested parties on its progress.  While the Movant may be dissatisfied that he has not gained

traction with the Monitor by alleging the disputed "facts" set forth in the Motion that is not

evidence that the Monitor has been derelict in its duties.  In fact, there have been no credible

allegations that the Monitor is not fulfilling its duties, as demonstrated by (among other things) the OSB's complete dismissal of Movant's ethics complaint.

52.     Moreover, the appointment of an examiner to "investigate" the misguided allegations in the Motion would be a bridge to nowhere.  All of the orders of which the Movant complains are final and non-appealable.  They were entered years ago based on the facts and circumstances that existed at that time and have been relied on by the parties for years, including by the DIP Lender in extending credit to fund the Debtor's restructuring efforts.  As noted above, the same or substantially similar allegations were put before the Canadian Court in the Shareholder Committee's motions, both of which were denied after full briefing and a hearing (and, where applicable, upheld on appeal).

53.     Similarly, there is no basis for the appointment of an official shareholders committee, as the Canadian Court previously determined.  Again, the fact that the Shareholder Committee was unable to gain traction with the Canadian Court is not evidence that the Debtor's shareholders are unable to protect their interests, or that they have been deprived of due process; official shareholders committees are not appointed as a matter of course in Canada or in the United States.  Moreover, the record reflects the Movant and other shareholders have had every opportunity to advance their interests, but have largely neglected to do so.[20]  In fact, the Ontario Court of Appeals adopted the Canadian Court's finding that the shareholders did not appear and dispute the complained-of financing orders at the time they were considered and approved.  See Exhibit G, at ¶ 20 ("None of the shareholders now represented by the Committee took any steps

---

[20] Like here, Court hearings in Canada have been conducted by Zoom in light of the ongoing pandemic.  In addition, the Foreign Representative understands that the Movant has never requested to be added to the service list in the Canadian Proceeding, though some shareholders may have.

to be placed on the service list. They took no steps to participate and failed to attend the hearings in 2013 and 2014 when the orders in issue were granted. According to their own evidence, the shareholders knew of the CCAA proceeding since early 2012.").

54.     Indeed, despite being advised of the proper manner in which to address issues with the Canadian Court, the Movant does not appear to have taken any procedurally appropriate action in the Canadian Proceeding outside of any participation in the Shareholder Committee efforts, opting instead to engage in a letter-writing campaign. The Movant's failure or unwillingness to address issues before the Canadian Court is not grounds to appoint an official equity committee in this Chapter 15 case, and it is not evidence that Movant is unable to protect his interests. To the contrary, the fact that the Movant's repeated complaints to the Monitor, the OSB, or any of the other entities or agencies he has contacted, have not spurred any action by those entities serve only to show that the Movant's unsubstantiated allegations of fraud, tax evasion, and other bad acts are unfounded. Appointing an official committee to continue to pursue those theories at the estate's expense would be a fruitless and unnecessary drain on the Debtor's resources.

55.     Second, the relief requested, if granted, would significantly harm the Debtor's restructuring efforts. For one, it would require the Debtor's estate to bear the cost of an official shareholders committee and an examiner when, as noted above, neither is warranted under the facts and circumstances. Relatedly, appointing an examiner to perform similar functions to those the Monitor already performs as an officer of the Canadian Court would introduce unnecessary inefficiency.

56.     Moreover, to the extent the Movant is asking or intends to ask the Court to revisit its prior financing orders, varying those would substantially and negatively impact the Debtor's restructuring efforts, as the Canadian Court previously determined. Those orders, as well as the

others of which Movant complains, were considered and approved in light of the facts and circumstances that existed at the time, and the DIP Lender has relied on them in continuing to extend credit to the Debtor to fund its restructuring efforts and pursuit of the arbitration award against Venezuela.  Accordingly, to the extent the Movant (or any official committee) would seek to do so, having those orders unwound or "varied" could jeopardize the Debtor's DIP financing and, by extension, creditor recoveries.

57.    For the foregoing reasons, the balance of harms weighs in favor of the Debtor and the Court should therefore deny the Motion.

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that the Court deny the Motion and grant such other and further relief as it deems just and proper.

Dated:  September 20, 2021
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6145)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Mlunn@ycst.com
Sreil@ycst.com

*Counsel to the Foreign Representative*

# EXHIBIT A

**DIP Financing Chart**

**Debtor-in-Possession Credit Agreement**

| Agreement | Date of Final Order by the CCAA Court | Date of Recognition Order made in Ch. 15 | Principal Advanced | Interest | Additional Compensation |
|---|---|---|---|---|---|
| DIP Credit Agreement[1] | 4/16/2012 | 4/26/2012 [Docket No. 111] | US $36 million | 10% per annum, compounded semi-annually | 35% of Net Arbitration Proceeds[2] |
| Second Amendment Agreement[3] | 6/5/2013 | 6/19/2013 [Docket No. 125] | US $11.1 million | 10% per annum, compounded semi-annually | 14.874% of Net Arbitration Proceeds |
| Third Amendment Agreement[4] | 4/14/2014 | 4/28/2014 [Docket No. 138] | (a) US $12.1 million (b) US $3.333 million | 10% per annum, compounded semi-annually | (a) 16.214% of Net Arbitration Proceeds (b) 4.466% of Net Arbitration Proceeds |
| Fourth Amendment Agreement[5] | 12/18/2014 | 2/3/2015 [Docket No. 162] | US $13.2 million | 10% per annum, compounded semi-annually | 17.688% of Net Arbitration Proceeds[6] |

The DIP Credit Agreement has also been amended pursuant to orders made on the following dates to, among other things, extend the maturity date of the DIP loan: (a) December 14, 2016; (b) May 25, 2017; (c) December 20, 2017; (d) February 27, 2018; (e) May 9, 2018; (f) October 31, 2018; (g) May 3, 2019; (h) November 4, 2019; (i) May 4, 2020, (j) November 3, 2020, and (l) May 4, 2021.

[1] Senior Secured Credit Agreement, dated as of April 23, 2012 (the "DIP Credit Agreement").

[2] Pursuant to the Waterfall found as Exhibit "F" to the DIP Credit Agreement, the "Net Arbitration Proceeds" are calculated as the difference between the gross amount of any Arbitration proceeds received by the Company and the aggregate of the first five levels of the Waterfall (the "Net Arbitration Proceeds") being: (i) post-filing expenses, (ii) taxes payable or required to be withheld, (ii) the principal amount of the DIP loan, (iv) interest on the DIP loan, and (v) subject to the Override (as defined in the DIP Credit Agreement), all proven and allowed unsecured pre-filing claims against the Company.

[3] Second Credit Agreement Amendment Agreement, dated as of June 5, 2013.

[4] Third Credit Agreement Amendment Agreement, dated as of April 16, 2014.

[5] Fourth Credit Agreement Amendment Agreement, dated as of March 12, 2015.

[6] Subject to the Net Arbitration Proceeds Transfer Agreement.

# EXHIBIT B

**NAP Transfer Agreement Order**



Court File No. CV-11-9532-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

THE HONOURABLE MR.               )               THURSDDAY, THE 18th
JUSTICE NEWBOULD                 )               DAY OF DECEMBER, 2014

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION (the "**Applicant**")

## NET ARBITRATION PROCEEDS TRANSFER AGREEMENT ORDER

**THIS MOTION,** made by the Applicant, pursuant to the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the motion record of the Applicant, the affidavit of Harry Near dated December 15, 2014, the supplementary affidavit of Harry Near dated December 16, 2014, the Thirteenth Report of the Monitor, Ernst & Young Inc. (the "**Monitor**") dated December 13, 2014, and on hearing the submissions of counsel for the Applicant, counsel for Computershare Trust Company of Canada in its capacity as Trustee (the "**Trustee**") for the holders of Senior 9.375% Notes due December 23, 2011, issued by the Applicant (the "**Senior Notes**"), counsel for the Ad Hoc Committee (as defined below) and each beneficial owner of the Senior Notes that is part of the *ad hoc* committee of beneficial owners of the Senior Notes (as specified on Schedule "A" hereto) (the "**Ad Hoc Committee**") in all capacities, including, without limitation, as beneficial owners of the Senior Notes and, to the extent applicable, shareholders or holders of other equity interests of the Applicant, counsel for the Lender (as defined below), counsel for Greywolf Loan Participation LLC, as the holder of equity interests of the Applicant ("**Greywolf**"), counsel for the Monitor, and counsel for Juan Antonio Reyes:

**SERVICE**

**1.**    **THIS COURT ORDERS** that the time for service of the notice of motion and the motion record is hereby abridged and validated so that this motion is properly returnable today and hereby dispenses with further service thereof.

**DEFINITIONS**

**2.**    **THIS COURT ORDERS** that unless otherwise defined in this Order, capitalized terms used in this Order shall have the meanings given to them in the NAP Transfer Agreement (as defined below).

**LEAVE**

**3.**    **THIS COURT ORDERS** that the Applicant is granted leave to bring this motion.

**NET ARBITRATION PROCEEDS TRANSFER AGREEMENT**

**4.**    **THIS COURT ORDERS** that the Net Arbitration Proceeds Transfer Agreement among Crystallex International Corporation, Tenor KRY Cooperatief U.A. (the "**Lender**"), Robert Fung, and Marc Oppenheimer (the "**NAP Transfer Agreement**") and all transactions contemplated thereby are fair, reasonable and appropriate and are hereby approved and authorized in their entirety.

**5.**    **THIS COURT ORDERS** that the parties to the NAP Transfer Agreement (the "**NAP Agreement Parties**") are hereby authorized and directed to execute and deliver the NAP Transfer Agreement in substantially the form filed with the Court and any and all documents contemplated or required by the parties thereto in connection with the NAP Transfer Agreement. The NAP Agreement Parties (as may be applicable) are hereby authorized and directed to take such additional steps without further Court approval, as may be necessary or desirable for the completion of the transactions described in the NAP Transfer Agreement.

**6.**    **THIS COURT ORDERS AND DECLARES** that the provisions of the NAP Transfer Agreement shall not be rendered invalid or unenforceable and shall not otherwise be limited or impaired in any way by: (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the Bankruptcy and Insolvency Act, R.S.C. 1985, C. B-3 (the "**BIA**"), or any bankruptcy order made

pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes or any common law; or (e) any negative covenants, prohibitions or other similar provisions contained in any existing agreement (an "**Agreement**") which binds the Applicant and, notwithstanding any provision to the contrary in any Agreement:

(a)     none of the execution, delivery or performance of the NAP Transfer Agreement shall create nor be deemed to constitute a breach by the Applicant of any Agreement to which it is a party;

(b)     the Applicant shall not have any liability to any Person (as defined by the Initial Order) whatsoever as a result of any breach of any Agreement caused by or resulting from the execution, delivery or performance of the NAP Transfer Agreement; and

(c)     the transactions approved and made by the NAP Agreement Parties pursuant to the NAP Transfer Agreement and this Order do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law including common law.

**CONFIDENTIALITY**

**7.**     **THIS COURT ORDERS** that all materials filed in connection with this motion that have been labeled as "Confidential" (the "**Sealed Materials**") shall be sealed and not form any part of the public record in this proceeding.

**8.**     **THIS COURT ORDERS** that the Sealed Materials shall not be copied or disseminated beyond counsel or experts previously authorized in this proceeding or to be authorized by the Applicant or by further order of this Court.

**9.**     **THIS COURT ORDERS** that any party may apply to the Court on proper notice to all parties in interest to modify the provisions in paragraphs 7 and 8 of this Order and nothing in this Order shall be deemed to prejudice their rights to seek such modification or to assert that the Sealed Materials are not confidential.

**GENERAL**

10.    **THIS COURT ORDERS** this Order and its terms shall only become effective upon entry of a Final Order of the Court approving the Approval Order.  "Final Order" shall mean an Order of this Court from which all applicable appeal periods have expired and the Order is not subject to an application for leave to appeal, appeal, or further right of appeal or any stay, and the Order shall not have been reversed, vacated, or unless agreed by the Lender in writing, amended or modified in any manner.

11.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, including the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"),** to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicant and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Applicant in any foreign proceeding, or to assist the Applicant and the Monitor and their respective agents in carrying out the terms of this Order.

12.    **THIS COURT ORDERS** that each of the Applicant and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, including the Bankruptcy Court, for the recognition of this Order and for assistance in carrying out the terms of this Order.

13.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. (Toronto time) on the date of this Order.





DEC 1 9 2014

# SCHEDULE "A"

## BENEFICIAL OWNERS OF SENIOR NOTES PART OF AD HOC COMMITTEE

1.  QVT Fund LP

2.  Quintessence Fund LP

3.  Greywolf Loan Participation LLC

4.  Outrider Master Fund, LP

5.  Ravensource Fund

6.  Stornoway Recovery Fund LP

IN MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, c.0-36
AS AMENDED

Court File No: CV-11-9532-00CL

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX
INTERNATIONAL CORPORATION

| | |
|---|---|
| ***ONTARIO***<br><br>Proceeding commenced at Toronto | **SUPERIOR COURT OF JUSTICE —<br>COMMERCIAL LIST** |
| | **NET ARBITRATION PROCEEDS TRANSFER AGREEMENT<br>ORDER** |
| | **Davies Ward Phillips & Vineberg** LLP<br>155 Wellington Street West<br>Toronto, ON M5V 3J7<br><br>Jay Swartz (LSUC #15417L)<br>Bryan D. McLeese (LSUC #55607C)<br>Tel          416.863.0900<br>Fax:          416.863.0871<br><br>Lawyers for Crystallex International Corporation |

# **EXHIBIT C**

**Shareholder Committee Motion Papers**

Court File No. CV-11-9532-OOCL

# *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**BETWEEN:**

### IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

## FACTUM OF THE MOVING PARTIES

April 4, 2016

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Clifton Prophet**
Tel:      416-862-3509
Fax:      416-863-3509
clifton.prophet@gowlingwlg.com

**Nicholas Kluge**
Tel:      416-369-4610
Fax:      416-862-7661
nicholas.kluge@gowlingwlg.com

Lawyers for the proposed committee

TO:        **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers and Solicitors
130 Adelaide Street West
Suite 2600
Toronto ON  M5H 3P5

Tel:   416-865-9500
Fax:   416-865-9010

**Peter H. Griffin**
Tel:   416-865-2921
Fax:   416-865-3568
pgriffin@litigate.com

Lawyers for
McMillan LLP

AND TO:    **NORTON ROSE CANADA LLP**
Barristers and Solicitors
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
P.O.Box 84
Toronto ON  M5J 2Z4

Tel:   416-216-4000
Fax:   416-216-3930

**Robert Frank**
Tel:   416-202-6741
Fax:   416-360-8277
robert.frank@nortonrose.com

Lawyers for
Forbes & Manhattan Inc. and Aberdeen International Inc.

3

AND TO:    **CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto ON  M5H 3C2

Tel:    416-869-5300
Fax:    416-360-8877

**Shayne Kukulowicz**
Tel:      416-860-6463
Fax:      416-640-3176
skukulowicz@casselsbrock.com

Lawyers for
Tenor Capital Management


AND TO:    **THORNTON, GROUT, FINNIGAN**
Barristers and Solicitors
Canadian Pacific Tower
100 Wellington Street West, Suite 3200
P.O. Box 329, TD Centre
Toronto ON  M5K 1K7

Tel:    416-304-1616
Fax:    416-304-1313

**John T. Porter**
Tel:      416-304-0778
Fax:      416-304-1313
jporter@tgf.ca

Lawyers for
Juan Antonio Reyes

4

AND TO:    **GOODMANS LLP**
Barristers and Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

Tel:   416-979-2211
Fax:   416-979-1234

**Jay Carfagnini**
Tel:      416-597-4107
Fax:      416-979-1234
jcarfagnini@goodmans.ca

Lawyers for Computershare Trust Company of Canada, in its capacity as
Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex
International Corporation

AND TO:    **STIKEMAN ELLIOTT**
Barristers & Solicitors

Phone:  (416) 869-5500
Toll-Free: 1 877 973-5500
Fax: (416) 947-0866
Toronto ON  M5L 1B9

Tel:   877-973-5500
Fax:   416-947-0866

**David Byers**
Tel:      416-869-5697
Fax:      416-957-0866
dbyers@stikeman.com

Lawyers for
Ernst & Young Inc., in its capacity as the Monitor

AND TO:  **ERNST & YOUNG INC.**
222 Bay Street
P.O. Box 251
Toronto ON  M5K 1J7

Tel:    416-864-1234

**Brian M. Denega**
Tel:    416-943-3058
brian.m.denega@ca.ey.com

Court Appointed Monitor


AND TO:  **DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto ON  M5V 3J7

**Jay A. Swartz**
Tel:    416-863-5520
Fax:    416-863-0871
Email: jswartz@dwpv.com

**Natash MacParland**
Tel:    416-863-5567
Email: nmacparland@dwpv.com

Lawyers for Crystallex International Corporation

Court File No. CV-11-9532-OOCL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**BETWEEN:**

**IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

## FACTUM OF THE MOVING PARTIES

## PART I - INTRODUCTION

1.      This motion is brought by Steven Kosson, Robert Danial, David Werner, Colin Murdoch, Edesio Biffoni, Gerald Cantwell, Grant Watson, Justin Fine, and Lyn Goldberg (the **"Committee Members"**) to establish a committee (the **"Committee"**) to represent the interests of the shareholders of the Applicant, Crystallex International Corporation (**"Crystallex"**), in this ongoing CCAA proceeding.

2.      There is a real possibility that the shareholders of Crystallex will be entitled to funds in the event of success in the arbitration relating to the Las Cristinas mining project (the "**Arbitration**").  A decision in the Arbitration is imminent.  To date the shareholders of Crystallex have had no voice in this proceeding.  They are entitled to one.

## PART II - SUMMARY OF FACTS

## Purpose of the Committee

3.      The objective of the Committee is to ensure that the interests of shareholders are represented.  Although a few individual shareholders have appeared in the proceeding to date, no one purports to represent any group of shareholders.  As currently constituted, the Committee represents owners of approximately 10% of the outstanding shares of Crystallex.[1]

4.      The Committee will not represent any shareholder who does not elect to be represented by the Committee.

5.      There is a reasonable prospect that there will be an award in the Arbitration in favour of Crystallex.  Such an award could be as high as the amount claimed, being $3.4 billion, plus interest and costs.  If this occurs, there will be more than enough funds available in the estate of Crystallex to pay all of its creditors, and thereafter the shareholders would ordinarily be entitled to payment of any remaining funds on a *pro rata* basis.

6.      As a result of financing arrangements entered into between Crystallex and the DIP lender, and a management incentive plan in favour of certain key management persons, the Arbitration proceeds that would otherwise have been available to the shareholders following payment of creditors have been significantly reduced.  As of the date hereof the shareholders stand to receive only a small fraction of any proceeds from

---

[1] Transcript of the cross-examination of Justin Fine, page 22.

the Arbitration remaining after the payment of creditors, with the lion's share being paid to the DIP lender.

7.    Establishment of the Committee will provide an opportunity for the shareholders to obtain professional advice with respect to the:

    a)    dilution of the shareholders' interest in the Arbitration proceeds;

    b)    steps to be taken to realize upon any award in the Arbitration; and

    c)    distribution of any proceeds of the Arbitration.

**Committee By-Laws**

8.    Pursuant to the proposed Committee By-Laws, the Members have agreed to serve on the Committee in order to maximize recovery for Committee Members and those shareholders who opt in to be represented by the Committee and Committee Counsel.   Each Committee Member has agreed to act as a fiduciary of the Committee and the opt-in shareholders.

9.    The By-Laws establish protocols for keeping opt-in shareholders informed of the steps taken by the Committee. The Committee will keep a website to update the shareholders of its activities and deliberations.

**Gowlings as Committee Counsel**

10.    Gowlings lawyers have been in contact with Committee Members since the summer of 2015.   Gowlings has considerable experience in CCAA matters.   The

appointment of Gowlings as Committee Counsel will make available to the Committee a number of important services, including:

a)      information and advice as to the rights and interests of shareholders as the proceedings progress;

b)      advice with respect to the Committee's effective and efficient participation in the proceedings, including with respect to discussions and negotiations with other stakeholders and the Monitor;

c)      advice with respect to the information provided by other stakeholders and the Monitor, and its impact on the rights and interests of shareholders; and

d)      contributing to the efficiency of the proceedings by being the single point of contact between other stakeholders, the Monitor and the opt-in shareholders.

11.    Should the order constituting the committee and appointing Gowlings be made, Gowlings will enter into a contingency fee retainer agreement with the Committee.  Funding for the retainer is not being sought from the estate of Crystallex.  Any shareholder who elects to opt-in to being represented by the Committee will also be required to execute the contingency fee retainer agreement with Gowlings.

## PART III - STATEMENT OF ISSUES, LAW & AUTHORITIES

12.    The test to establish a committee to represent a class of stakeholders in a CCAA proceeding was discussed by Justice Wilton-Siegel in *US Steel Canada Inc. (Re)*, at

paragraphs 34 – 42.  The factors set out in that test support the establishment of the Committee and the appointment of Gowlings as Committee Counsel on terms to be determined with the Committee:

(1)     the shareholders are in the rare position of having a very real prospect of recovery on their shareholdings at the conclusion of this CCAA process. They are an important group of stakeholders and deserve to have their voices heard and interests protected. The lack of consultation and notification has left the shareholders vulnerable;

(2)     the Committee structure enhances efficiencies by ensuring that the interests of the opt-in shareholder group are brought before the Court as the positions of a class of stakeholders;

(3)     appointing a Committee will reduce the number of participants in the proceedings acting through separate counsel;

(4)     the balance of convenience favors the proposed order as it provides for notice and an opt-in process; and

(5)     proposed Committee Counsel, Gowling WLG, have considerable experience in CCAA proceedings and have been in regular contact with Committee Members since the summer.

## PART IV - ORDER REQUESTED

13.    The establishment of the Committee, the approval of the Committee By-Laws, and the appointment of Gowlings as Representative Counsel to the Committee.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 4th day of April, 2016.

_per Pentecta_

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Tel:    416-862-7525
Fax:    416-862-7661

**Clifton P Prophet**
Tel:    416-862-3509
Fax:    416-863-3509
clifton.prophet@gowlingwlg.com

**Nicholas Kluge**
Tel:    416-369-4610
Fax:    416-862-7661
nicholas.kluge@gowlingwlg.com

Lawyers for
the proposed committee members

**SCHEDULE "A"**

**LIST OF AUTHORITIES**

1.      *U.S. Steel Canada Inc. (Re)*, 2014 ONSC 6145 (Commercial List)

## SCHEDULE "B"

## TEXT OF STATUTES, REGULATIONS & BY – LAWS

**_Rules of Civil Procedure_,**

10.01(1) In a proceeding concerning,

   (a)    the interpretation of a deed, will, contract or other instrument, or the interpretation of a statute, order in council, regulation or municipal by-law or resolution;

   (b)    the determination of a question arising in the administration of an estate or trust;

   (c)    the approval of a sale, purchase, settlement or other transaction;

   (d)    the approval of an arrangement under the _Variation of Trusts Act_;

   (e)    the administration of the estate of a deceased person; or

   (f)    any other matter where it appears necessary or desirable to make an order under this subrule,

a judge may by order appoint one or more persons to represent any person or class of persons who are unborn or unascertained or who have a present, future, contingent or unascertained interest in or may be affected by the proceeding and who cannot be readily ascertained, found or served.  R.R.O. 1990, Reg. 194, r. 10.01(1).

_Order Binds Represented Persons_

(2)    Where an appointment is made under subrule (1), an order in the proceeding is binding on a person or class so represented, subject to rule 10.03.  R.R.O. 1990, Reg. 194, r. 10.01(2).

_Settlement Affecting Persons who are not Parties_
(3)    Where in a proceeding referred to in subrule (1) a settlement is proposed and some of the persons interested in the settlement are not parties to the proceeding, but,

   (a)    those persons are represented by a person appointed under subrule (1) who assents to the settlement; or
   (b)    there are other persons having the same interest who are parties to the proceeding and assent to the settlement,

2

the judge, if satisfied that the settlement will be for the benefit of the interested persons who are not parties and that to require service on them would cause undue expense or delay, may approve the settlement on behalf of those persons.  R.R.O. 1990, Reg. 194, r. 10.01(3).

(4)     A settlement approved under subrule (3) binds the interested persons who are not parties, subject to rule 10.03. R.R.O. 1990, Reg. 194, r. 10.01(4).


10.03   Where a person or an estate is bound by reason of a representation order made under subrule 10.01(1) or rule 10.02, an approval under subrule 10.01(3) or an order that the proceeding continue made under rule 10.02, a judge may order in the same or a subsequent proceeding that the person or estate not be bound where the judge is satisfied that,

(a)     the order or approval was obtained by fraud or non-disclosure of material facts;

(b)     the interests of the person or estate were different from those represented at the hearing; or

(c)     for some other sufficient reason the order or approval should be set aside.  R.R.O. 1990, Reg. 194, r. 10.03; O. Reg. 259/14, s. 3.


### Companies' Creditors Arrangement Act, RSC 1985, c C-36

11.     Despite anything in the Bankruptcy and Insolvency Act or the Winding-up and Restructuring Act, if an application is made under this Act in respect of a debtor company, the court, on the application of any person interested in the matter, may, subject to the restrictions set out in this Act, on notice to any other person or without notice as it may see fit, make any order that it considers appropriate in the circumstances.

Court File No. CV-11-9532-OOCL

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

| | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST**<br>PROCEEDING COMMENCED AT<br>TORONTO |
| | **FACTUM** |
| | **GOWLING WLG (CANADA) LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto ON M5X 1G5<br><br>Tel:   416-862-7525<br>Fax:   416-862-7661<br><br>**Clifton P Prophet (#34845K)**<br>Tel:      416-862-3509<br>Fax:      416-863-3509<br>*clifton.prophet@gowlingwlg.com*<br>**Nicholas Kluge (#44159T)**<br>Tel:      416-369-4610<br>Fax:      416-862-7661<br>*nicholas.kluge@gowlingwlg.com*<br><br>Lawyers for the proposed committee of shareholders<br><br>**File Number: T1006179** |

Court File No. CV-11-9532-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N :

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

_____

**RESPONDING FACTUM OF THE DIP LENDER**
**(Motion Returnable:  April 11, 2016)**

_____

April 6, 2016

**CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto, ON
M5H 3C2

Timothy Pinos LSUC #: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Shayne Kukulowicz LSUC #: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Ryan C. Jacobs LSUC #: 59510J
Tel:    416.860.6465
Fax:    416.640.3189
rjacobs@casselsbrock.com

Lawyers for the DIP Lender

2

TO:      **DAVIES WARD PHILLIPS & VINEBERG LLP**
         Barristers and Solicitors
         155 Wellington Street West
         40th Floor
         Toronto ON  M5V 3J7

         Jay Swartz  LSUC #: 15417L
         James Doris  LSUC #: 33236P
         Natalie Renner  LSUC #: 55954A
         Tel:    416.863.0900
         Fax:    416.863.0871

         Lawyers for Crystallex International Corporation

AND TO:  **STIKEMAN ELLIOTT LLP**
         Barristers and Solicitors
         5300 Commerce Court West
         199 Bay Street
         Toronto ON  M5L 1B9

         David Byers
         Tel:    416.869.5697
         Fax:    416.957.0866
         dbyers@stikeman.com

         Maria Konyukhova
         Tel:    416.869.5230
         Fax:    416.957.0866
         mkonyukhova@stikeman.com

         Lawyers for Ernst & Young Inc., in its capacity as the monitor

3

AND TO:    **GOODMANS LLP**
Barristers and Solicitors
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto ON  M5H 2S7

Jay Carfagnini
Tel:    416.597.4107
Fax:    416.979.1234
jcarfagnini@goodmans.ca

Robert Chadwick
Tel:    416.597.4285
rchadwick@goodmans.ca

Celia Rhea
Tel:    416.597.4178
crhea@goodsmans.ca

Chris Armstrong
Tel:    416.849.6013
carmstrong@goodmans.ca

Lawyers for Computershare Trust Company of Canada, in its capacity as Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex International Corporation

AND TO:    **THORNTON, GROUT, FINNIGAN**
Barristers and Solicitors
Canadian Pacific Tower
100 Wellington Street West, Suite 3200
P.O. Box 329, TD Centre
Toronto ON  M5K 1K7

John T. Porter
Tel:    416.304.0778
Fax:    416.304.1313
jporter@tgf.ca

Lawyers for Juan Antonio Reyes

Legal*24938799.2

4

AND TO:    **NORTON ROSE OR  LLP**
Barristers and Solicitors
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto ON  M5J 2Z4

Robert Frank
Tel:    416.202.6741
Fax:    416.360.8277
robert.frank@nortonrose.com

Ryan Hauk
Tel:    416.203.4468
Fax:    416.360.8277
ryan.hauk@nortonrose.com

Lawyers for Forbes & Manhattan Inc. and Aberdeen International Inc.

AND TO:    **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers and Solicitors
130 Adelaide Street West
Suite 2600
Toronto ON  M5H 3P5

Peter H. Griffin
Tel:    416.865.2921
Fax:    416.865.3568
pgriffin@litigate.com

Lawyers for McMillan LLP

AND TO:    **ERNST & YOUNG INC.**
222 Bay Street, P.O. Box 251
Toronto,ON  M5K 1J7

Brian M. Denega
Tel:    416.943.3058
Fax:    416.943-3300
brian.m.denaga@ca.ey.com

Fiona Han
Tel:    416.943.3739
Fax:    416.943-3300
Fiona.Han@ca.ey.com

Court-appointed Monitor

5

AND TO:     **GOWLING WLG (CANADA) LLP**
Barristers and Solicitors
1 First Canadian Place
100 King Street West
Suite 1600
Toronto ON  M5X 1G5

David Cohen
Tel:    416.369.6667
Fax:    416.862.7661
david.cohen@gowlings.com

Clifton Prophet
Tel:    416.862.3509
Fax:    416.862.7661
clifton.prophet@gowlings.com

Nicolas Kluge
Tel:    416.369.4610
Fax:    416.862.7661
nicolas.kluge@gowlings.com

Lawyers for the ad hoc committee of shareholders of Crystallex

AND TO:     **OSLER, HOSKIN & HARCOURT LLP**
Barristers and Solicitors
100 King Street West
1 First Canadian Place
Suite 4600, P.O. Box 50
Toronto ON  M5X 1B8

Alexander Cobb
Tel:    416.862.5964
Fax:    416.862.6666
acobb@osler.com

Lawyers for Greywolf Loan Participation LLC

Court File No. CV-11-9532-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

_____

**RESPONDING FACTUM OF THE DIP LENDER**
**(Motion Returnable:  April 11, 2016)**

_____

**PART I - OVERVIEW**

1.      The DIP Lender,[1] as provider of court-approved post-filing financing to the

Applicant, adopts and relies upon the Applicant's Factum and supports the Applicant's

position that the motion of the ad hoc committee of shareholders (the "**Ad Hoc**

**Committee**"), should be denied.

2.      An order of this Court is not necessary for the Ad Hoc Committee to continue to

effectively participate in these proceedings.  Ad hoc committees of stakeholders routinely

participate in CCAA proceedings and this committee has failed to provide any evidence

why their 'ad hoc' status will not allow them to achieve their objectives, whatever those

may ultimately be. The Ad Hoc Committee has conceded that funding by the Applicants

_____

[1] All terms not otherwise defined herein are as defined in the Factum of Crystallex International Corporation
(the "**Applicant's Factum**") filed in opposition to the motion of the Ad Hoc Committee (as defined herein)
seeking status as an "official" committee, returnable April 11, 2016 (the "**Ad Hoc Committee Motion**").

2

(with the exception of an amount they deem necessary for notice advertising, (the "**Notice**")) is not necessary for their participation, nor is an order of this Court necessary for the Ad Hoc Committee to work with sophisticated counsel (even on a private contingency fee basis).    In fact, the Ad Hoc Committee has been working with sophisticated counsel for some time.

3.      The Ad Hoc Committee Motion instead appears designed to obtain this Court's blessing for the group so as to legitimize their mandate, use that 'legitimacy' to solicit a larger membership and thereby increase the contingency fee opportunity (which has not been disclosed to this Court) for their counsel, whose principal job will be to seek to increase the recoveries to shareholders that are currently fixed under the Court-approved waterfall (the "**Waterfall**") in the DIP Agreement. The evidence before this Court is that the principal tool the Ad Hoc Committee will use to seek to achieve this result is to attempt to vary existing orders[2], and appeal future orders [3] of this Court, as may be necessary.

4.      Notwithstanding the significant harm that such potential litigation will have on these proceedings and all stakeholder recoveries, no special order of this Court is required for the Ad Hoc Committee to seek to carry out any of their stated objectives, for additional shareholders to "opt-in" to join the Ad Hoc Committee, or for the Ad Hoc Committee to hire and work with sophisticated counsel. For those reasons alone the relief should be denied.

---

[2] Affidavit of Justin Fine, sworn March 14, 2016 at para 5 ["**Fine Affidavit**"].
[3] *Crystallex International Corporation Deposition of Justin C. Fine* (29 March 2016), Los Angeles CV-11-9532-00CK (Ont Sup Ct [Commercial List] at pp 35-36 ["**Fine Transcript**"].

3

5.      The requested relief, if granted, would also put Crystallex in default under its DIP Agreement.  The Court should not, and has on multiple occasions refused, to make an order that would put a debtor company in default under its agreement with its DIP lender. For that reason the relief requested should also be denied.

## PART II - SUMMARY OF FACTS

### (A)    BACKGROUND

6.      The DIP Lender adopts and relies upon the facts as set out in the Applicant's Factum.

### (B)    THE AD HOC COMMITTEE AND THEIR INVOLVEMENT IN THESE PROCEEDINGS

7.      The Ad Hoc Committee is made up of nine shareholders holding approximately 10 percent of the Applicant's issued and outstanding shares.[4]

8.      Mr. Justin Fine, the affiant on behalf of the Ad Hoc Committee, is president and CEO of Enif & Company Incorporated, a financial and macroeconomic research firm. Mr. Fine also invests and manages personal and "family money", and is managing member of Xodarap Partners and Nemesis Partners, LLC, described as investment vehicles.[5] Mr. Fine admitted that he is a sophisticated investor.

9.      Since December 2011, Mr. Fine has taken an active role in informing himself of the events of these proceedings, including the relevant orders of this Court approving the DIP financing.[6]

---

[4] Fine Transcript, *supra* note 3 at p 22.
[5] *Ibid* at p 9.
[6] *Ibid* at pp 14, 17, 68-71, 75.

4

10.     Mr. Fine read the newspapers and the national assembly blogs in Venezuela,[7] spoke to investors and past employees of the Applicant,[8] reviewed orders by the Court,[9] monitored the Monitor's website after the Monitor was appointed,[10] was aware that the Company intended to hold a DIP financing auction,[11] was aware of the positions taken by the bondholders,[12] was in contact with the Company at the initial stages of the CCAA to express his views respecting DIP financing and the role of the noteholders,[13] and wrote an open letter to the board of directors dated January 30, 2012 criticizing the position of the bondholders and supporting the efforts of the Applicant to obtain adequate DIP Financing.[14]

11.     Mr. Fine continued to follow the process of the DIP auction, read the financing procedures published on the Monitor's website, made efforts to inform himself of the terms of the DIP financing, and continued to review the various Monitor reports.[15]  He also participated in a conference call with the Applicant's directors in April 2014 prior to the Second Additional CCAA Financing Order.[16]

12.     Despite this active monitoring of the Applicant and these proceedings, and direct communication with the Applicant and Monitor on numerous occasions, at no time did Mr. Fine seek to retain counsel to appear in these proceedings to represent his interests.[17]

---

[7] *Ibid* at p 17.
[8] *Ibid.*
[9] *Ibid* at p 14.
[10] *Ibid* at p 70.
[11] *Ibid.*
[12] *Ibid.*
[13] *Ibid.*
[14] *Ibid* at p 70-71.
[15] *Ibid* at p 75.
[16] *Ibid* at pp 48-49.
[17] *Ibid* at pp 81.

5

13.    In describing the Ad Hoc Committee members, Mr. Fine testified that in addition to himself six of the eight remaining committee members were sophisticated investors.[18] They are:[19]

    (a)    Edesio Biffoni, an Investor Relations Consultant, previously retained by Crystallex as a consultant;

    (b)    Colin Murdoch, a Technology Sales Manager holding a Master of Business Administration;

    (c)    Lyn Goldberg, an attorney educated at Princeton University and the University of Chicago, and former federal prosecutor with the U.S. Department of Justice;

    (d)    Steven Kosson, the founder and executive chairman of Puma Capital, specializing in distressed and special situations securities, described by Mr. Fine as "one of the most sophisticated investors in regards to Wall Street";

    (e)    Robert Daniel, a long-time real estate investor; and

    (f)    David Werner, another established real estate investor.

14.    Although he declined to comment on the financial wherewithal of the Ad Hoc Committee members, it is clear from the information provided in Mr. Fine's affidavit that

---

[18] *Ibid* at pp 26-27.
[19] *Ibid.*

6

not only are 7 of 9 Committee members sophisticated, they are successful professionals and undoubtedly persons of substance.[20]  No suggestion to the contrary is made.

15.    The Ad Hoc Committee has been consulting in connection with these proceedings with sophisticated counsel, Gowlings WLG (Canada) LLP ("**Gowlings**"), for quite some time.[21] Without any order of this Court recognizing their appointment, Gowlings has already established a comprehensive website to facilitate the activities of the Ad Hoc Committee.[22]

(C)    **THE COMMITTEE'S MANDATE AND INTENTIONS**

16.    Mr. Fine's affidavit in support of this motion describes the mandate and intentions of the Ad Hoc Committee as:

> …advising the shareholders, negotiation with other parties, researching the law, filing motions, appearing before the court, appealing orders where appropriate, and to act in connection with the collection and distribution of any amounts to which the Committee and Opt- In Shareholders become entitled.[23]

17.    In his cross-examination, before categorically refusing to expand on what was meant by this description of the Ad Hoc Committee's mandate, Mr. Fine made significant admissions respecting the potential real aim of the Ad Hoc Committee.

---

[20] Fine Affidavit, *supra* note 2 at Exhibit "B".
[21] Fine Transcript, *supra* note 3 at pp 41-42.
[22] ca.gowlingwlg.com/crystallex/
[23] Fine Affidavit, *supra* note 2 at para 5.

7

18.    Mr. Fine made it clear that the role of the Ad Hoc Committee will include, but is not limited to potentially applying to vary existing orders and appealing orders where appropriate[24]:

> **Mr. Doris**: Now, sir, paragraph 5 of your affidavit also references appealing orders where appropriate. Do you see that?
>
> **Mr. Kluge**: Yeah.
>
> **Mr. Doris**: And I take it that is a reference to appealing orders made in the future?
>
> […]
>
> **Mr. Kluge**: Because we might appeal orders, but we don't have any instructions to do so. So it could be appealing future orders that are being made. It could be old orders.
>
> **Mr. Doris**: It could be appeals of orders that have already been made?
>
> **Mr. Kluge**: Correct.
>
> **Mr. Doris**: Any orders? Any orders made years ago?
>
> **Mr. Kluge**: This proceeding?
>
> **Mr. Doris**: Yes.
>
> **Mr. Kluge**: Potentially. Sorry, I misspoke. Appealing, obviously, there's going to have been – time will have run with respect to certain orders. So it won't be appealing orders where it's statute barred, obviously.
>
> […]
>
> **Mr Doris**: So it won't be going back to December 2004 or prior to that?
>
> **Mr. Kluge**: Unless we receive instructions and leave is sought and granted. We could move to vary those. There are many different options here.

---

[24] Fine Affidavit, *supra* note 2 at para 5. See also Fine Transcript, *supra* note 3 at pp 34-36.

8

**PART III - STATEMENT OF ISSUES, LAW & AUTHORITIES**

19.    The DIP Lender adopts and endorses to the position and arguments of the Applicant in response the Ad Hoc Committee's Motion, and makes additional submissions as a significant creditor of the Applicant, that the order requested should not be granted because:

(a)    to do so may be seen to legitimize the mandate of a group that, based on the evidence before this Court, would appear to seek to hinder as opposed to  contribute to the efficient administration of these proceedings;

(b)    such an order would trigger an Event of Default under the DIP Agreement; and,

(c)    an order is not necessary for the Ad Hoc Committee to effectively participate in these proceedings or seek to accomplish any of their stated objectives.

(A)    **COURT-APPOINTED STATUS MAY BE SEEN TO LEGITIMIZE A LITIGATION AGENDA, FOSTERING AN ENVIRONMENT OF CHAOS IN THESE PROCEEDINGS**

20.    Based on the evidence, the DIP Lender is legitimately concerned that the granting of the relief requested will be seen to legitimize the Ad Hoc Committee's litigation mandate.  The resulting effect could be disastrous for all stakeholders of Crystallex, who have previously suffered as a result of prior and lengthy litigation with the noteholders.

21.    The Ad Hoc Committee has confirmed explicitly that upon receiving Court approval, they may work to appeal and vary any of the court orders made in the CCAA

9

proceedings.[25] They have refused to provide any further information as to their intended activities, but it can be inferred that in order to increase shareholder recoveries, they would have to challenge the DIP Lender's entitlement to proceeds from the arbitration award granted to Crystallex by the Additional Facility of International Centre for the Settlement of Investment Disputes (the "**Award**") as set out in the DIP Agreement and potentially the entitlement of others whose entitlement to Award proceeds currently ranks ahead of the Company in the Waterfall pursuant to the court orders approving the DIP financing (the "**Orders**").[26]

22.     This inference is confirmed by the fact of the contingency arrangement with the Ad Hoc Committee's counsel, which can only be contingent on counsel increasing the returns to shareholders over what is currently provided for under the existing Orders and Waterfall provision approved by this Court at the expense of other stakeholders.

23.     Granting the requested order for a group that includes in its mandate the intention to overturn previously granted court orders is in direct contradiction to the court's explicit intention that representative counsel be granted to streamline a CCAA process and contribute to the efficient administration of the estate.[27] Not only would this cause massive uncertainty for the DIP Lender who has infused significant resources into the Company based upon the approval of the DIP Agreement by the court (or to the management team who have been relying on their incentive plans), it would further

---

[25] Fine Affidavit, *supra* note 2 at para 5; Fine Transcript, *supra* note 3 at pp 34-36.
[26] *Ibid*
[27] *Re Canwest Publishing Inc.*, 2010 ONSC 1328 at para 21, 185 ACWS (3d) 865.

10

prolong the proceedings and cause protracted litigation at a time when efforts should be focused on enforcement and collection.[28]

(B)    **THE RELIEF REQUESTED WILL RESULT IN A DEFAULT UNDER THE DIP AGREEMENT**

24.    The DIP Agreement prohibits the Applicant from making expenditures that are not contemplated by the DIP budget or otherwise approved by the DIP Lender. The cost of the Notice is not contemplated or permitted under the Applicant's budget and therefore the Applicant does not have authorization to pay such costs. Making a payment to fund the Notice would put the Applicant in default under the DIP Agreement.

25.    The court has previously refused to make CCAA orders for payments by a debtor company that would cause a default under the debtor's DIP agreement.[29]

26.    Requiring the Applicant to fund the Notice would also grant the Ad Hoc Committee a priority over the assets of the Applicant, which shareholders would not otherwise be entitled to under the CCAA.

27.    The DIP Lender has made significant loans to the Applicant on the basis that they be given a priority charge over the assets of the Applicant. To allow the Ad Hoc Committee to circumvent this ranking and take priority for funding of the Notice would revoke the rights that the DIP Lender has bargained for with the Applicant, and create an uncertain precedent for DIP lenders extending credit under the CCAA.  This would also create a default under the DIP Agreement.

---

[28] *Lone Pine* Transcript of Proceedings, November 8, 2013, File No. CVQ13LONE3 at p 50.
[29] *Timminco Ltd., Re,* 2012 ONSC 4471 at para 56, 222 ACWS (3d) 932 [*Timminco*]; *Indalex Ltd., Re,* 55 CBR (5th) 64 at paras 3, 12, 179 ACWS (3d) 267 [*Indalex*]; *Smurfi-Stone Container Canada Inc., Re*, 61 CBR (5th) 92 at paras 25-28, 181 ACWS (3d) 854.

28.    The potential consequences to the Applicant if an Event of Default is triggered under the DIP Agreement are significant.

(C)    **THE ORDER REQUESTED IS NOT NECESSARY FOR THE AD HOC COMMITTEE TO EFFECTIVELY PARTICIPATE IN THESE PROCEEDINGS, SEEK TO ACCOMPLISH ANY OF THEIR MANDATE, OR RETAIN AND WORK WITH SKILLED COUNSEL**

29.    The Ad Hoc Committee and its counsel could accomplish every single one of their stated objectives without this Court granting the order requested (and without the significant risks attendant thereto). Specifically, an ad hoc committee of shareholders (and its counsel) can, and appears here in many cases to already have:

- advise its members;

- negotiate with other parties;

- research the law;

- file motions;

- appear before the court;

- appeal or seek to vary orders where appropriate; and

- act in connection with the collection and distribution of any amounts to which the ad hoc committee members become entitled.

Similarly, nothing prevents additional shareholders from joining the Ad Hoc Committee or for Gowlings from continuing to work with or be formally retained by the Ad Hoc Committee and provide effective counsel if the relief requested is not granted.

12

**PART IV - ORDER REQUESTED**

30.    For the reasons set out above, the DIP Lender respectfully requests that the Ad

Hoc Committee Motion be denied.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 6 day of April, 2016.

**CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto, ON
M5H 3C2

Timothy Pinos
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Shayne Kukulowicz
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Ryan C. Jacobs
Tel:    416.860.6465
Fax:    416.640.3189
rjacobs@casselsbrock.com

Lawyers for the DIP Lender

**SCHEDULE "A"**

**LIST OF AUTHORITIES**

**Tab**

1.  *Canwest Publishing Inc., Re*, 2010 ONSC 1328, 185 ACWS (3d) 865.

2.  *Lone Pine* Transcript of Proceedings, November 8, 2013, File No CVQ13LONE3.

3.  *Timminco Ltd., Re,* 2012 ONSC 4471, 222 ACWS (3d) 932.

4.  *Indalex Ltd., Re,* 55 CBR (5th) 64, 179 ACWS (3d) 267.

5.  *Smurfit-Stone Container Canada Inc., Re*, 61 CBR (5th) 92, 181 ACWS (3d) 854.

2

## SCHEDULE "B"

## TEXT OF STATUTES, REGULATIONS & BY - LAWS

N/A

| | |
|---|---|
| **IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED**<br><br>**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION** | Court File No. CV-11-9532-00CL |

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT
TORONTO

**FACTUM**

**Cassels Brock & Blackwell LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Timothy Pinos  LSUC #: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Shayne Kukulowicz LSUC #: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Ryan C. Jacobs LSUC #: 59510J
Tel:    416.860.6465
Fax:    416.640.3189
rjacobs@casselsbrock.com

Lawyers for the DIP Lender

**Court File No. CV-11-9532-00CL**

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**BETWEEN:**

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT**
**ACT, 1985, C.c-36 AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR**
**ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

---

**RESPONDING FACTUM OF CRYSTALLEX INTERNATIONAL CORPORATION**
**(Motion Returnable January 11, 2016)**

---

**Davies Ward Phillips & Vineberg** LLP
155 Wellington Street West
Toronto, ON  M5V 3J7

**Jay Swartz** (LSUC #15417L)
**Natalie Renner** (LSUC #55954A)
Tel:    416.863.0900
Fax:   416.863.0871

Lawyers for Crystallex International
Corporation

TO:    **STIKEMAN ELLIOTT LLP**
Barristers and Solicitors
5300 Commerce Court West
199 Bay Street
Toronto, ON M5L 1B9

David Byers
Tel: 416.869.5697
Fax: 416.957.0866
dbyers@stikeman.com

Maria Konyukhova
Tel: 416.869.5230
Fax: 416.957.0866
mkonyukhova@stikeman.com
Lawyers for Ernst & Young Inc., in its capacity as the monitor

AND TO:    **GOODMANS LLP**
Barristers and Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

Jay Carfagnini
Tel: 416.597.4107
Fax: 416.979.1234
jcarfagnini@goodmans.ca

Robert Chadwick
Tel: 416.597.4285
rchadwick@goodmans.ca

Celia Rhea
Tel: 416.597.4178
crhea@goodmans.ca

Chris Armstrong
Tel: 416.849.6013
carmstrong@goodmans.ca

Lawyers for Computershare Trust Company of Canada, in its capacity as
Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex
International Corporation

- 2 -

AND TO: **THORNTON, GROUT, FINNIGAN**
Barristers and Solicitors
Canadian Pacific Tower
100 Wellington Street West, Suite 3200
P.O. Box 329, TO Centre
Toronto, ON M5K 1K7

John T. Porter
Tel: 416.304.0778
Fax: 416.304.1313
jporter@tgf.ca

Lawyers for Juan Antonio Reyes

AND TO: **NORTON ROSE OR LLP**
Barristers and Solicitors
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, ON M5J 2Z4

Robert Frank
Tel: 416.202.6741
Fax: 416.360.8277
robert.frank@nortonrose.com

Ryan Hauk
Tel: 416.203.4468
Fax: 416.360.8277
ryan.hauk@nortonrose.com

Lawyers for Forbes & Manhattan Inc. and Aberdeen International Inc.

AND TO: **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Suite 2600
130 Adelaide Street West
Toronto ON M5H 3P5

Peter H. Griffin
Tel: +1 (416) 865-2921
Fax: (416) 865-3568
pgriffin@litigate.com

Lawyers for McMillan LLP

- 3 -

AND TO:    **CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto ON M5H 3C2

Shayne Kukulowicz
Tel: (416) 860-6463
Fax: (416) 640-3176
skukulowicz@casselsbrock.com

Ryan C Jacobs
Tel: (416) 860-6465
Fax: (416) 640-3189
rjacobs@casselsbrock.com

Michael Wunder
Tel: (416) 860-6484
Fax: (416) 640-3206
mwunder@casselsbrock.com

Lawyers for Tenor Capital Management

AND TO:    **ERNST & YOUNG INC.**
222 Bay Street, P.O. Box 251
Toronto, ON M5K 1J7

Brian M. Denega
Tel: (416) 943-3058
Fax: (416) 943-3300
brian.m.denega@ca.ey.com

Fiona Han
Tel: (416) 943-3739
Fax: (416) 943-3300
Fiona.Han@ca.ey.com

Court-appointed Monitor

- 4 -

AND TO:    **GOWLING LAFLEUR HENDERSON LLP**
Barristers and Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario M5X 1G5

David Cohen
Tel:   416-369-6667
Fax:   416-862-7661
david.cohen@gowlings.com

Clifton Prophet
Tel:   416-862-3509
Fax:   416-862-7661
clifton.prophet@gowlings.com

Nicolas Kluge
Tel:   416-369-4610
Fax:   416-862-7661
nicholas.kluge@gowlings.com
Lawyers for Steven Kosson, Robert Danial, David Werner, Colin Murdoch,
Edesio Biffoni, Gerald Cantwell, Grant Watson, Justin Fine, and Lyn
Goldberg

AND TO:    **OSLER, HOSKIN & HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 4600, P.O. Box 50
Toronto, ON  M5X 1B8

Alexander Cobb
Phone: (416) 862-5964
Fax: (416) 862-6666
E-mail: acobb@osler.com

Lawyers for Greywolf Loan Participation LLC

**Court File No. CV-11-9532-00CL**

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

BETWEEN:

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

~~AND IN THE MATTER OF A PLAN OF COMPROMISE OR~~
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL
CORPORATION

---

### RESPONDING FACTUM OF CRYSTALLEX INTERNATIONAL CORPORATION
### (Motion Returnable January 11, 2016)

---

## PART I ~ OVERVIEW

1.    Steven Kosson, Robert Danial, David Werner, Colin Murdoch, Edesio Biffoni, Gerald Cantwell, Grant Watson, Justin Fine and Lyn Goldberg (collectively, the **"Committee Members"**) bring this motion to establish a committee (the **"Committee"**) to represent the interests of the shareholders (the **"Shareholders"**) of the Applicant, Crystallex International Corporation (**"Crystallex"** or the **"Company"**).

2.    They do so in circumstances where the Company has advised Gowling Lafleur Henderson LLP, proposed counsel for the Committee (**"Gowlings"**), that while they are supportive of the idea of a committee of Shareholders, they cannot support the current form of order being sought due to issues surrounding the mechanics for determining which Shareholders are represented by the Committee, the powers afforded to the Committee, the limited visibility around the fee structure, the lack of liability of Gowlings

- 2 -

and the Committee and the costs associated with notifying Shareholders of the existence of the Committee, each of which are described in greater detail below.

3.      Accordingly, until the foregoing issues are resolved, the Company respectfully requests that this motion be adjourned.

## PART II ~ THE FACTS

### A.      Background

4.      On December 23, 2011 the Honourable Mr. Justice Newbould made an order (the "**Initial Order**") granting Crystallex protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") and appointing Ernst & Young Inc. as court-appointed monitor of Crystallex (the "**Monitor**").   On December 28, 2011 Crystallex obtained recognition under chapter 15 of the United States *Bankruptcy Code* (such proceeding together with the CCAA proceeding the "**Restructuring Proceedings**").

5.      Crystallex was previously engaged in the business of exploring and developing the Las Cristinas gold project in Venezuela until the Venezuelan government expropriated the mine in 2011 and purported to terminate the mining operation contract that gave rise to the Company's mining rights.  The Company is currently arbitrating the matter (the "**Arbitration Proceeding**") before the Additional Facility of International Centre for the Settlement of Investment Disputes (the "**Tribunal**") against Venezeula and is seeking, among other things, compensation of US$3.8 billion for the loss in value of its investment (the "**Arbitration Claim**").   The Arbitration Claim is the Company's principal asset.   The Company's participation in the current phase of the Arbitration Proceeding is substantially complete and Crystallex is currently awaiting the final and

- 3 -

binding arbitration award from the Tribunal and devising a strategy to pursue and realize such award.

6.     Following the Initial Order, Crystallex entered into a senior secured credit agreement dated April 23, 2012 pursuant to which Tenor Special Situation Fund I, LLC made available debtor-in-possession financing.  The credit agreement was amended by way of first credit agreement amending and confirming agreement dated May 15, 2012, second amendment agreement dated June 5, 2013, the third credit agreement amendment agreement dated as of April 16, 2014 and the fourth amendment agreement dated March 12, 2015 (as amended, the "**DIP Agreement**") and assigned to Luxembourg Investment Company 31 S.a.r.l. (the "**DIP Lender**").

7.     The DIP Agreement contains a "waterfall" provision, which provides a mechanism for distributing the proceeds of an award of the Tribunal amongst the Company's creditors and any amounts amount payable to Crystallex thereafter, which would indirectly be for the benefit of the Shareholders.

8.     In October 2015, the Company was served with motion materials by Gowlings seeking an order to establish the Committee.  Upon receipt of the materials, the Company engaged in discussions with Gowlings regarding the role of the Committee, the constitution and funding of the Committee and other issues.  On December 21, 2015, Gowlings served amended motion materials returnable December 23, 2015.  On December 23, 2015, the motion was adjourned to allow the parties the opportunity to try to resolve some of the issues raised herein.  On January 7, 2015, the Company was served with, among other things, a revised form of order constituting the Committee and

- 4 -

appointing Gowlings as counsel for the Committee (the "**Order**"). The Order addressed some of the concerns raised by Crystallex in December but the issues described herein remain unresolved.

## PART III ~ THE ISSUES

9.      The Company submits that the sole issue on this motion is whether the Court should approve the Order or whether this motion should be further adjourned.

10.     Crystallex is of the view that the Order sought is not appropriate for the following reasons, which are described in greater detail below:

(a)     The mechanism for determining which Shareholders are represented by the Committee is overly broad and inappropriate in the circumstances;

(b)     The opt-out mechanism (described below) is inappropriate in light of the powers afforded to the Committee and lack of visibility on fee arrangements;

(c)     There is necessity for transparency, oversight and discretion relating to any fee arrangement;

(d)     The Committee and Gowlings should not be absolved of liability; and

(e)     The Company should not be required to pay the costs of the Notice.

- 5 -

## PART IV ~ ARGUMENT

**A.      The Mechanism for Including Members in the Committee is Overly Broad and Inappropriate in the Circumstances**

11.      The Order currently contemplates that all Shareholders, other than those who are currently represented ("**Participating Shareholders**") will automatically become represented by the Committee and Gowlings, unless, within 45 days of publication of a notice (the "**Notice**") advising of the existence of the Committee, a Shareholder notifies the Monitor and Gowlings in writing that they are opting out of representation by the Committee and Gowlings (each such Shareholder, an "**Opt-Out**").   The Committee proposes to publish the Notice on both the Gowlings' and the Monitor's websites and in the *Globe and Mail*, *Wall Street Journal* and *La Presse*.

12.      Crystallex has concerns about the efficacy of the Notice.  There are over 10,000 Shareholders, many of whom are located outside North America and will not have access to the newspapers where Gowlings proposes to publish the Notice.   The Shareholders have not been provided with prior notice of this motion and it is not reasonable to assume that the Shareholders would see the Notice on websites maintained by Gowlings or the Monitor within 45 days of the Order.   In the circumstances, it will be impossible to determine with any certainty whether the Shareholders (or any portion of them) actually receive the Notice.

13.      Crystallex also has concerns about the structure and appropriateness of the opt-out mechanism.  In addition to being a disparate group, the Shareholders have varying levels of sophistication and 45 days is not a sufficient amount of time for them to become aware of the Notice, understand the mandate of the Committee, how it may affect their rights and if desired, exercise their opt-out rights.

- 6 -

14.     It is acknowledged that the Order allows Shareholders to seek leave of the Court to be designated as an Opt-Out after the expiration of the 45-day period.  However, this places an unfair burden on Shareholders to apply to the Court at their own expense to seek such a declaration.    It is likely that many Shareholders will not have the wherewithal to do so.

15.     As described in greater detail below, Shareholders who fail to opt-out will be burdened by the costs relating to the Committee and its advisors and bound by the decisions of the Committee.  There is not however, any apparent advantage to joining the Committee; recoveries in the Restructuring Proceedings will be the same for all of the Shareholders, regardless of whether they join the Committee or opt-out.  Sophisticated Shareholders with an in-depth understanding of the Restructuring Proceedings are most likely to opt-out because they will appreciate this fact and receive the benefits (if any) of the work that the Committee does on behalf of the Shareholders without sharing in the costs.  This is inherently unfair to those Shareholders who, either from lack of notice, or lack of understanding, fail to recognize this fact.  There is a risk that the most vulnerable Shareholders will be disadvantaged, rather than protected, by the existence of the Committee as it is currently envisioned.

16.     Crystallex believes that an *ad hoc* committee could be equally effective in representing the interests of those Shareholders who wish to participate in these proceedings and there will be no need for the Committee to bind a broader group of Shareholders without their consent.  As an alternative, the Committee could implement an opt-in approach, which would provide Crystallex with the desired certainty about which Shareholders received notice of the Committee or otherwise became aware of its

existence and made an informed decision before agreeing to by represented by the Committee.

**B.    The Opt-Out Mechanism is Inappropriate in Light of the Powers afforded to the Committee and Lack of Visibility on Fee Arrangements**

17.    In its current iteration, the Order and the By-Laws permit the Committee Members to represent, make decisions on behalf of, and bind all of the Shareholders, other than Participating Shareholders and Opt-Outs.[1]

18.    The fact that each Shareholder would be deemed to be represented by the Committee and thereby bound by its decisions, potentially without his/her/its knowledge, is particularly troubling in light of the powers afforded to the Committee and the lack of visibility about fee arrangements.

19.    In paragraph 12 of their factum, the Committee Members note that funding is not being sought from the estate of the Company and that Gowlings will enter into an agreement with the Committee as to the terms of its retainer *after* the Order is made. Other than this statement and despite requests to Gowlings for clarity on this point, Crystallex has no visibility on how the fees of Gowlings will be paid and whether these fees will have any relationship to the work to be performed or value created or preserved for the Shareholders.  There is also no visibility on whether the fee structure will promote conduct that may add additional significant costs to all parties to the Restructuring Proceedings.

---

[1]  See paragraphs 6 and 7 of the Order and sections 2.3 and 4.5 of the By-Laws.

- 8 -

20.    Nothing in the Order or By-Laws requires the Committee to seek Court approval of a fee arrangement with Gowlings or requires Gowlings to seek approval of its fees throughout the Restructuring Proceedings, with the result that Gowlings and the Committee could enter into a contingency fee arrangement which would be binding on all Shareholders (other than Participating Shareholders and Opt-Outs).

21.    Crystallex is concerned that an undisclosed contingency fee arrangement would erode the value of any equity for Shareholders who did not knowingly become represented by the Committee.

22.    The Committee and Gowlings should be required to detail their fee arrangement to the Court, the Monitor and those who would be affected by it, prior to the Order being made so that the Shareholders can make an informed decision about whether they wish to be represented by the Committee

**C.    There is Necessity for Oversight and Discretion Relating to any Fee Arrangement**

23.    Crystallex be would supportive of a fee arrangement that was disclosed and approved in advance and required the Committee, on notice to all parties, to seek Court approval of Gowlings' fees before any distributions are made to the Shareholders so the parties can assess what Gowlings did to enhance or protect value for the Shareholders.

24.    In their materials, Committee Members state that it is in the best interests for all stakeholders in the Restructuring Proceedings to appoint the Committee, for among other things, the following reasons:

- 9 -

(a)     the Committee would promote and represent the interests of the Shareholders in the Restructuring Proceedings and provide for a balanced process;

(b)     the Committee will give the Shareholders' interests more weight and credibility, in comparison to individual Shareholders acting alone;  and

(c)     the Committee will help create a level playing field as between the Shareholders and other stakeholders.

25.     At present, it is not clear what role the Committee would have in the Restructuring Proceedings and whether there is any real opportunity to promote the interests of the Shareholders or enhance value.  As noted in the Committee Members' factum and above, the Company's participation in the current phase of the Arbitration is substantially complete and Crystallex is currently awaiting a final and binding award of the Tribunal.  Once the award is received, the Company (through its board of directors and advisors) will devise a strategy to pursue and realize any such award.  At this juncture (and following a decision of the Tribunal), there will not likely be any significant strategic role for the Shareholders.

26.     The proposed structure of the Committee, its stated goals, the opt-out mechanic for being represented by the Committee and the fee arrangement mirror the approach taken in class action law suits.  However, unlike a class action law suit where representative counsel assert claims to create value for a group of claimants, there is already a fixed asset in this case (being an award of the Tribunal) and a fixed distribution mechanic for that award (being the Court approved "waterfall" provision

under the DIP Agreement[2]).  At best, the Committee would be protecting for Crystallex the existing distribution scheme contained in the DIP Agreement as opposed to creating new value.

27.    Furthermore, all of the stated goals of the Committee and perceived benefits could easily be achieved if the Committee operated as an *ad hoc* committee, in which case many of the issues described herein would be moot.  It is doubtful that the Committee's arguments will be more influential merely because there is a representation order, which in its current form would not benefit a significant number of Shareholders in any event.

28.    Therefore, unless there is oversight as to fees and the fee structure, there is a risk that the Shareholders will have (unknowingly in some cases) agreed to pay Gowlings without receiving any real benefit from the Committee, which is something Crystallex cannot support.

**D.    The Committee and Gowlings Should Not Be Absolved of Liability**

29.    Paragraph 16 of the Order provides that the Committee and Gowlings shall have no liability as a result of its appointment or the fulfillment of its duties in carrying out the provisions of the By-Laws and the Order, save and except for gross negligence or wilful misconduct.

30.    There is a considerable amount of material, non-public information that would be made available to Gowlings and any members of the Committee who signed a non-disclosure agreement with the Company, which if disclosed, could significantly harm the

---

[2]    The DIP Agreement and waterfall, as amended by the fourth amending agreement, was approved by an Order of this Court on December 18, 2014.

- 11 -

Company's position in the Arbitration Proceeding and any realization strategy it employs. It is critical, that if Gowlings or a Committee member discloses any material, non-public information, through inadvertence or otherwise, Crystallex should have the ability to pursue them legally for any damages without having to establish gross negligence or wilful misconduct.

31.     Furthermore, if Gowlings or the Committee are absolved of all liability, other than for gross negligence or wilful misconduct, there is nothing to dissuade them from bringing costly and frivolous motions in the Restructuring Proceedings. In fact, they may have an economic interest to do so, particularly if their fees are not subject to oversight by the Court. The Restructuring Proceedings have been mired with costly litigation and Crystallex wants to discourage any further litigation to the extent possible and focus its resources on pursuing the realization of the Arbitration Claim and any potential award in relation thereto.

**E.      The Company Should not be Required to Pay Costs of the Notice**

32.     The Order, in paragraph 10, provides that the costs of the Notice shall be a distribution from the estate of Crystallex in an amount not to exceed Cdn.$50,000.

33.     As previously disclosed to this Court, the DIP Agreement prohibits the Company from making expenditures that are not set out in their budget, or otherwise approved by the DIP Lender. The cost of the Notice is not provided for in the Company's budget and Crystallex does not have authorization to pay such costs. If Crystallex was ordered to pay the costs of the Notice, it would trigger a default under the DIP Agreement.

- 12 -

34.     As mentioned above, Crystallex is expecting an award of the Tribunal in the near future and is attempting to conserve cash so that it can devote all of its resources to devising a strategy to pursue and realize such award, which is beneficial to all of its stakeholders.

35.     In the circumstances, Crystallex does not see any benefit to funding the costs associated with the Notice particularly, in light of the fact that the Notice would not be an effective means of advising Shareholders of the existence of the Committee and their participation rights.  No such costs would be necessary if this was an *ad hoc* committee.

## PART V ~ RELIEF REQUESTED

36.     On the above basis, Crystallex respectfully requests that the motion of the Committee be adjourned.

ALL OF WHICH IS RESPECTFULLY SUBMITTED THIS 8TH DAY OF JANUARY, 2016.

Jay Swartz

Natalie Renner

Lawyers for the Applicant

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

Court File No. CV-11-9532-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**RESPONDING FACTUM OF CRYSTALLEX INTERNATIONAL CORPORATION**

**Davies Ward Phillips & Vineberg** LLP
155 Wellington Street West
Toronto, ON  M5V 3J7

Jay Swartz (LSUC #15417L)
Natalie Renner (LSUC #55954A)
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Crystallex International Corporation

Court File No.  CV-11-9532-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

BETWEEN:

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, C.c-36 AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

---

**RESPONDING FACTUM OF CRYSTALLEX INTERNATIONAL CORPORATION**
**(Motion Returnable April 11, 2016)**

---

**Davies Ward Phillips & Vineberg LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

**Jay Swartz** (LSUC #15417L)
**Bryan McLeese** (LSUC #55607C)
**Natalie Renner** (LSUC #55954A)
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Crystallex International
Corporation

TO:      **STIKEMAN ELLIOTT LLP**
Barristers and Solicitors
5300 Commerce Court West
199 Bay Street
Toronto, ON M5L 1B9

David Byers
Tel: 416.869.5697
Fax: 416.957.0866
dbyers@stikeman.com

Maria Konyukhova
Tel: 416.869.5230
Fax: 416.957.0866
mkonyukhova@stikeman.com
Lawyers for Ernst & Young Inc., in its capacity as the monitor

AND TO:    **GOODMANS LLP**
Barristers and Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

Jay Carfagnini
Tel: 416.597.4107
Fax: 416.979.1234
jcarfagnini@goodmans.ca

Robert Chadwick
Tel: 416.597.4285
rchadwick@goodmans.ca

Celia Rhea
Tel: 416.597.4178
crhea@goodmans.ca

Chris Armstrong
Tel: 416.849.6013
carmstrong@goodmans.ca

Lawyers for Computershare Trust Company of Canada, in its capacity as Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex International Corporation

- 2 -

AND TO:    **THORNTON, GROUT, FINNIGAN**
Barristers and Solicitors
Canadian Pacific Tower
100 Wellington Street West, Suite 3200
P.O. Box 329, TO Centre
Toronto, ON M5K 1K7

John T. Porter
Tel: 416.304.0778
Fax: 416.304.1313
jporter@tgf.ca

Lawyers for Juan Antonio Reyes

AND TO:    **NORTON ROSE OR LLP**
Barristers and Solicitors
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, ON M5J 2Z4

Robert Frank
Tel: 416.202.6741
Fax: 416.360.8277
robert.frank@nortonrose.com

Ryan Hauk
Tel: 416.203.4468
Fax: 416.360.8277
ryan.hauk@nortonrose.com

Lawyers for Forbes & Manhattan Inc. and Aberdeen International Inc.

AND TO:    **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Suite 2600
130 Adelaide Street West
Toronto ON M5H 3P5

Peter H. Griffin
Tel: +1 (416) 865-2921
Fax: (416) 865-3568
pgriffin@litigate.com

Lawyers for McMillan LLP

- 3 -

AND TO:    **CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto ON M5H 3C2

Shayne Kukulowicz
Tel: (416) 860-6463
Fax: (416) 640-3176
skukulowicz@casselsbrock.com

Ryan C Jacobs
Tel: (416) 860-6465
Fax: (416) 640-3189
rjacobs@casselsbrock.com

Michael Wunder
Tel: (416) 860-6484
Fax: (416) 640-3206
mwunder@casselsbrock.com

Lawyers for Tenor Capital Management

AND TO:    **ERNST & YOUNG INC.**
222 Bay Street, P.O. Box 251
Toronto, ON M5K 1J7

Brian M. Denega
Tel: (416) 943-3058
Fax: (416) 943-3300
brian.m.denega@ca.ey.com

Fiona Han
Tel: (416) 943-3739
Fax: (416) 943-3300
Fiona.Han@ca.ey.com

Court-appointed Monitor

- 4 -

AND TO:    **GOWLING LAFLEUR HENDERSON LLP**
Barristers and Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario M5X 1G5

David Cohen
Tel:    416-369-6667
Fax:    416-862-7661
david.cohen@gowlings.com

Clifton Prophet
Tel:    416-862-3509
Fax:    416-862-7661
clifton.prophet@gowlings.com

Nicolas Kluge
Tel:    416-369-4610
Fax:    416-862-7661
nicholas.kluge@gowlings.com

Lawyers for Steven Kosson, Robert Danial, David Werner, Colin Murdoch, Edesio Biffoni, Gerald Cantwell, Grant Watson, Justin Fine, and Lyn Goldberg

AND TO:    **OSLER, HOSKIN & HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 4600, P.O. Box 50
Toronto, ON  M5X 1B8

Alexander Cobb
Phone: (416) 862-5964
Fax: (416) 862-6666
E-mail: acobb@osler.com

Lawyers for Greywolf Loan Participation LLC

# Index

Court File No.  CV-11-9532-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**BETWEEN:**

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

**PART I ~ OVERVIEW**..................................................................................1

**PART II ~ THE FACTS**.................................................................................3

    A.    Background .........................................................................3

**PART III ~ LAW AND ARGUMENT** ..............................................................5

    A.    The Order Sought is Unnecessary Because an Equity Committee Can Be Formed *Ad Hoc* ...................................................................7

    B.    There is No Benefit of the Committee and its Approval Will Result in Inefficiency and Unfairness to Creditors and Other Stakeholders .........................8

    C.    The Committee and Gowlings Should Not Be Absolved of Liability..........12

    D.    The Company Should not be Required to Pay Costs of the Notice..........13

    E.    The US Steel/Canwest Factors Weigh Against Approval of the Order Sought....................................................................14

**PART IV ~ RELIEF REQUESTED**.............................................................17

Court File No.  CV-11-9532-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

BETWEEN:

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL
CORPORATION

---

**RESPONDING FACTUM OF CRYSTALLEX INTERNATIONAL CORPORATION**
**(Motion Returnable April 11, 2016)**

---

### PART I ~ OVERVIEW

1.        A group of shareholders holding about 10 percent of Crystallex's equity bring this motion to have the Court approve an equity committee.  This motion is brought even though there is nothing preventing the group of shareholders from forming and participating in these proceedings through an *ad hoc* committee.  The motion is brought at a time when there is very little left for any shareholder committee to do, except to try and increase the amount of net arbitration proceeds that may ultimately be available to shareholders by appealing or moving to vary orders previously issued by this Court.

2.        This motion, therefore, is not about whether these shareholders have the right to form a committee, but whether it should be authorized by this Court by way of the Order sought.  In particular, the Order seeks to have Cystallex fund the committee's attempts to attract additional members and, remarkably, seeks to pre-

emptively immunize the committee and its counsel from any future liability except in the extreme cases of gross negligence or wilful misconduct.

3.           Notwithstanding the recognized ability of shareholders to form an *ad hoc* committee without court approval and the virtually unprecedented relief being sought as part of the committee's approval, the committee has refused to provide the parties or the Court with any substantive evidence as to its intended purpose.  Other than stating the proposed committee will protect the interests of shareholders, the moving parties have refused to provide any details regarding the committee's mandate.  The committee does not purport to represent a class or defined group of stakeholders, merely those who chose to be represented by it.  In fact, it specifically states that it does not represent certain shareholders.

4.           At this stage of the proceeding, the arbitration concerning the Las Cristinas mine in Venezuela (such arbitral claim being Crystallex's sole asset) is complete, and an award has just been issued.  The entitlement of the shareholders to any arbitration proceeds collected will be determined according to a "waterfall" provision, which has previously been approved by this Court.  The formation of an equity committee at this time will create no apparent benefit to the shareholders, or other stakeholders in respect of amounts available under the waterfall.

5.           As a result, the Court is left to surmise what the purpose of the committee may be, based on the little information disclosed.  While the committee has also refused to divulge its fee arrangement with its counsel, it has revealed that its counsel is being paid on a contingency basis.  The obvious inference to be drawn is

that, whatever the committee's true purpose, it will necessarily lead to additional litigation, or threats of litigation, in the current proceeding.  Otherwise, given the fixed, Court-approved entitlements of Crystallex's equityholders to their portion of the net arbitration proceeds, there would be no way for the committee's counsel to realize on its contingency fee, assuming that the contingency on which the fee is based relates to increasing the shareholders' recovery beyond their current entitlement.

6.          Essentially, the committee seeks a Court order confirming its existence and its governance structure for unstated purposes, which can only include further litigation at the expense of Crystallex and its stakeholders, and immunization against liability for its members and its counsel in its pursuit of such litigation.  In these circumstances, Crystallex opposes the order being sought.

## PART II ~ THE FACTS

### A.    Background

7.          On December 23, 2011 the Honourable Mr. Justice Newbould made an order (the "**Initial Order**") granting Crystallex International Corporation ("**Crystallex**" or the "**Company**") protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") and appointing Ernst & Young Inc. as court-appointed monitor of Crystallex (the "**Monitor**").  On December 28, 2011 Crystallex obtained recognition under chapter 15 of the United States *Bankruptcy Code* (such proceeding together with the CCAA proceeding the "**Restructuring Proceedings**").

8.          Crystallex was previously engaged in the business of exploring and developing the Las Cristinas gold project in Venezuela until the Venezuelan

- 4 -

government expropriated the mine in 2011 and purported to terminate the mining operation contract that gave rise to the Company's mining rights.  The Company has completed the arbitration of the matter before the Additional Facility of International Centre for the Settlement of Investment Disputes against Venezuela and is seeking, among other things, compensation for the loss in value of its investment (the "**Arbitration Claim**").  The Arbitration Claim is the Company's principal asset.  The Company's participation in the current phase of the arbitration proceeding is complete[1] and, while this motion has been pending, the arbitral tribunal has just recently issued its ruling in favour of Crystallex.  Pursuant to the arbitral award, Crystallex is entitled to damages of USD$1.386 Billion.[2]  Therefore, Crystallex (through its board of directors and advisors) must now proceed to develop and implement a strategy to attempt to realize on the award.

9.        Following the Initial Order, Crystallex entered into a senior secured credit agreement dated April 23, 2012 pursuant to which Tenor Special Situation Fund I, LLC made available debtor-in-possession financing.  The credit agreement was amended by way of first credit agreement amending and confirming agreement dated May 15, 2012, second amendment agreement dated June 5, 2013, the third credit agreement amendment agreement dated as of April 16, 2014 and the fourth amendment

---

[1]      See, *e.g.* Affidavit of Robert Fung, sworn March 14, 2016 at paras. 3, 6-8 ("Fung Stay Affidavit"), Motion Record of the Applicant re: Stay Extension, Tab 2.

[2]      Affidavit of Patricia Lattimore, sworn April 5, 2016, Exhibit "A", Supplemental Motion Record of the Applicant re: Committee Approval, Tab 1.

- 5 -

agreement dated March 12, 2015 (as amended, the "**DIP Agreement**") and assigned to Luxembourg Investment Company 31 S.a.r.l. (the "**DIP Lender**").[3]

10.        The DIP Agreement contains a "waterfall" provision, which provides a mechanism for distributing the proceeds of an award of the tribunal amongst the Company's creditors and any amounts amount payable to Crystallex thereafter, which would indirectly be for the benefit of the Shareholders.[4]   The DIP Agreement was approved by this Court.

11.        By way of the current motion, originally filed on October 30, 2015, Steven Kosson, Robert Danial, David Werner, Colin Murdoch, Edesio Biffoni, Gerald Cantwell, Grant Watson, Justin Fine and Lyn Goldberg (collectively, the "**Committee Members**") bring this motion to establish a committee (the "**Committee**") to represent the interests of certain shareholders of the Applicant.   The motion also seeks to appoint Gowling Lafleur Henderson LLP ("**Gowlings**") as counsel to the Committee and to have Crystallex fund the publication of a notice (the "**Notice**") regarding the formation of the Committee.

## PART III ~ LAW AND ARGUMENT

12.        The sole issue on this motion is whether proposed Committee should be approved by way of the Order sought, including provisions whereby Crystallex would fund the costs of the Notice and Gowlings and the Committee would be absolved from most potential liabilities.

---

[3]     *Crystallex International Corp. (Re)*, Approval Order of the Honourable Justice Newbould dated December 18, 2014, CV-11-9532-00CL (Ont. S.C.J. [Commercial List]) at para. 3 and Schedule "A" [*Approval Order*], Brief of Authorities of Crystallex, Tab 1.

[4]     *Ibid.*

13.        Crystallex is not aware of a prior decision dealing with the precise issue before the Court.  Crystallex submits that, prior to granting such an order, the moving parties must establish that the relief sought is necessary and appropriate in the circumstances.  Crystallex further submits that the moving parties have failed to establish that there is any need to appoint an equity committee by court order at this relatively late stage of the proceeding.  No purpose is served by such a committee and the relief the committee is seeking other than to arm and immunize Committee Members and their counsel in their efforts to increase the share of the net arbitration proceeds available to shareholders.

14.        The Committee Members rely on the factors considered in *Canwest Publishing Inc. (Re)*[5] and *US Steel Canada Inc. (Re)*[6] in the context of requests to appoint and fund counsel to represent certain groups of employees.  They assert that these factors comprise the "test to establish a committee to represent a class of stakeholders in a CCAA proceeding".[7]

15.        In *US Steel* and *Canwest* (as well as in, for example, *TBS Acquireco Inc. (Re)*)[8], what the Court was chiefly considering was whether to appoint representative counsel, and to have that counsel funded by the company's estate.  Those cases, therefore, differ from the present motion, which does not seek funding from the estate (aside from funding for the Notice) and does not seek approval for representation of

---

[5]    2010 ONSC 1328 at para. 21 (Commercial List) [*Canwest*], Brief of Authorities of Crystallex, Tab 2.

[6]    2014 ONSC 6145 at paras. 34-42 (Commercial List) [*US Steel*], Brief of Authorities of Crystallex, Tab 3.

[7]    See para. 13.

[8]    2013 ONSC 4663 at para. 36 (Commercial List) [*TBS Acquireco*], Brief of Authorities of Crystallex, Tab 4.

stakeholders aside from the specifically identified Committee Members (and others who subsequently opt in). While instructive, the factors identified in those cases are therefore intended to address materially different circumstances than those before the Court. Accordingly, the analysis contemplated by these factors does not address, for example, whether a court appointed, as opposed to an *ad hoc,* equity committee is necessary or appropriate. Nor do those cases address whether the Committee and Gowlings should be entitled to near-complete protection from liability (which are addressed separately below).

16.         In Crystallex's submission, while it is acknowledged that this Court has the jurisdiction to approve the Order sought, it should not do so in the present case because it is not necessary to appoint an equity committee by court order and doing so will lead to increased costs, inefficiencies and unfairness to creditors. In the alternative, and in any event, as discussed below, nearly all of the factors in *US Steel/Canwest* weigh against the approval of the Committee as requested.

**A.     The Order Sought is Unnecessary Because an Equity Committee Can Be Formed *Ad Hoc***

17.         It is entirely open to the Committee Members to form an *ad hoc* committee rather than have the Committee appointed by court order. Certain holders of Senior Notes have, in fact, constituted such an *ad hoc* committee and have participated actively in these proceedings.

18.         No real reason is given for why a court-appointed committee is necessary. In fact, only two paragraphs of the Order sought require the Court's approval in order to be implemented by the Committee: (i) the Company's funding of

the Notice and (ii) the immunization of Gowlings and the Committee from potential liability.   Neither of these specific requests for relief should be approved for the reasons discussed below and, therefore, do not constitute a proper basis for the appointment of the Committee by order of the Court.

**B.**     **There is No Benefit of the Committee and its Approval Will Result in Inefficiency and Unfairness to Creditors and Other Stakeholders**

19.          In addition to there being no need for the Court to appoint an equity committee, there is also no apparent benefit to the approval of the Committee and, based on the proposed structure contemplated, the Order sought presents significant risks to Crystallex and its creditors.[9]

20.          In *TBS Acquireco*, Brown J. (as he then was) relied on the factors set out *Canwest* to deny a request by certain terminated employees for appointment of representative counsel.  In doing so, he stated:

> While the loss of a job by any person is devastating to that person, **the remedies available** to a terminated employee **are defined in the law**.  In the present case no money will be available for pre-filing unsecured claims.  The Monitor submitted that a bankruptcy will follow upon the completion of the transition of business operations to the purchaser, and [*Wage Earner Protection Program Act*] claims can be advanced at that time.  Given that [the *Wage Earner Protection Program Act*] imposes duties on a trustee in respect of such claims, **I have difficulty understanding what significant extra "value-added" representative counsel could bring to the employment-related claims process at this very late stage of this proceeding**.[10]

---

[9]       These reasons for refusing the motion sought are also relevant to a number of the factors set out in *US Steel* and *Canwest* (which are discussed below) and in particular speak to: (i) the effect on the efficiency of the proceeding; (ii) fairness to creditors; and (iii) the balance of convenience.

[10]      *TBS Acquireco, supra* note 7 at para. 37.

- 9 -

21.        While the context is different, the reasoning above is applicable to this motion.  At present and at this relatively late stage of the proceeding, there is little role for an equity committee to play, other than to seek to undo and reverse or vary previous orders of this Court.  As noted in the Committee Members' factum and above, Crystallex's participation in the current phase of the Arbitration is complete and an award has been made.  Now, the Company will develop and implement a strategy to pursue and realize upon the award.

22.        At this juncture, there will not likely be any role (strategic or otherwise) for an equity committee to play.  Presently, there is already a fixed asset in this case (being an award of the tribunal) and a fixed distribution mechanism for that award (being the Court approved "waterfall" provision under the DIP Agreement).[11]  As was the case in *TBS Acquireco*, there are already numerous represented parties with a vested interest in maximizing the recovery to stakeholders (including shareholders), and so there is no "value-add" to be offered by additional counsel or parties with the same goal.  In addition, unlike other cases where committees have received Court approval at an early stage in the CCAA proceeding and where there was a much larger role to play, the proposed Committee here is coming in at the very end after virtually all significant steps have been taken.

23.        Moreover, the Committee Members have refused to disclose almost anything regarding the proposed purposes of the Committee except to say that they

---

[11]        The DIP Agreement and waterfall, as amended by the fourth amending agreement, was most recently approved by way of the Approval Order, supra note 2.

- 10 -

intend to "protect the interests of shareholders".[12]  Specifically, the Committee's affiant refused to disclose:

(a)     what topics the Committee Members may wish to advise other shareholders about;[13]

(b)     what areas or matters on which they would negotiate with other parties (or which parties);[14]

(c)     what matters the Committee may wish to raise before this Court by way of motions; and[15]

(d)     perhaps most informatively, whether or not they intended to appeal,[16] vary or set aside any existing CCAA orders made in the Restructuring Proceedings.[17]

24.        Requests for the moving parties to provide correspondence exchanged among Committee Members that speaks to the mandate of the Committee have similarly been refused.[18]  Importantly, the Committee Members have also refused to disclose their fee arrangement with Gowlings.[19]

---

[12]    See, *e.g.* Transcript of the Cross-Examination on Affidavit of Justin Fine dated March 29, 2016 at p. 36 ("Fine Transcript").

[13]    *Ibid.* at pp. 63-64.

[14]    *Ibid.* at pp. 64-65.

[15]    *Ibid.*

[16]    *Ibid.* at pp. 35-36.

[17]    *Ibid.* at p. 67.

[18]    *Ibid.* at pp. 60-61.

[19]    *Ibid.* at pp. 42-43.

25.        While the Court has discretion to grant appropriate orders in a CCAA proceeding, it is Crystallex's submission that a party seeking such an order has a duty to be transparent and provide full disclosure.  As noted above, the Committee has refused to disclose its purpose or its fee arrangements and in the absence of such disclosure the Court should not exercise its discretion.  In Crystallex's submission, these refusals alone should be sufficient to defeat the current motion.

26.        Additional inferences can be drawn from little information that has been provided.  The Committee Members have indicated that Gowlings will be paid by way of a contingency fee arrangement.  As described above, the Crystallex shareholders are entitled to a fixed portion of the arbitration proceeds according to a Court-approved waterfall.  Gowling's contingency fee arrangement must, therefore, be tied to increasing the percentage recovery to shareholders beyond their current entitlement.

27.        There is no way, however, for the Committee Members or Gowlings to alter this entitlement without attempting to re-litigate long settled issues in the Restructuring Proceedings relating to, for example, the terms of the DIP financing arrangements.  Such re-litigation, in Crystallex's submission, would be an abuse of process and, given the numerous parties and counsel involved in this matter, would be extraordinarily costly to the Company and, assuming more DIP financing is ultimately required to respond to this litigation, to Crystallex's creditors and other shareholders.

28.        Accordingly, not only is no purpose served by appointing an equity committee by court order, it is clear that the real purpose of the Committee is to create mischief and seek to appeal or vary previous orders of this Court with the objective of

increasing the percentage of net arbitration proceeds ultimately available to shareholders. Authorizing such a committee by court order will only fuel further litigation and drain further resources from the Company and its stakeholders.

### C.    The Committee and Gowlings Should Not Be Absolved of Liability

29.         Paragraph 14 of the proposed Order provides that the Committee and Gowlings shall have no liability as a result of their appointment or the fulfillment of their duties in carrying out the provisions of the Committee by-laws and the Order, save and except for gross negligence or wilful misconduct. Neither the Committee nor Gowlings is acting as a representative of a class. This is unprecedented and completely unnecessary. Such relief has not been sought or granted to any other party to this proceeding or its counsel.

30.         Granting the relief requested is fraught with risk and potential harm to the Company. One such risk arises as there is a considerable amount of material, non-public information that would be made available to Gowlings and any members of the Committee who signed a non-disclosure agreement with the Company, which if disclosed, could significantly harm the Company's position in any strategy it employs to realize upon the arbitration award. It is critical that if Gowlings or a Committee member discloses any material, non-public information, through inadvertence or otherwise, Crystallex should have the ability to pursue them legally for any damages without having to establish the much higher threshold of gross negligence or wilful misconduct.

31.         Furthermore, if Gowlings or the Committee are absolved of all liability, other than for gross negligence or wilful misconduct, there is nothing to dissuade them

- 13 -

from bringing costly and frivolous motions in the Restructuring Proceedings (and they have refused to disclose whether they intend to do so, as discussed above).  In fact, they may have an economic interest to do so, particularly if their contingency fees are not subject to oversight by the Court.  These proceedings have, to date, been mired with costly litigation, involving numerous counsel and further litigation should be discouraged to the greatest extent possible so that Crystallex can focus its resources on pursuing the realization of the Arbitration Claim and the recent award arising therefrom.  There is simply no basis to immunize members of the Committee from potential liabilities for costs orders that may be granted by the Court.

## D.    The Company Should not be Required to Pay Costs of the Notice

32.        In paragraph 9, the requested Order provides that the costs of the Notice shall be a distribution from the estate of Crystallex in an amount not to exceed CAD$50,000.

33.        As previously disclosed to this Court, the DIP Agreement prohibits the Company from making expenditures that are not set out in its budget, or otherwise approved by the DIP Lender.  The cost of the Notice is not provided for in the Company's budget and Crystallex does not have authorization to pay such costs.  If Crystallex was ordered to pay the costs of the Notice, it could trigger a default under the DIP Agreement.

34.        Presently, Crystallex is attempting to conserve cash so that it can devote all of its resources to devising a strategy to pursue and realize upon the arbitration award, which is beneficial to all of its stakeholders.

35.        In the circumstances, Crystallex does not see any benefit to funding the costs associated with the Notice particularly in light of the fact that the Notice would not be an effective means of advising shareholders of the existence of the Committee and their participation rights therein.  No such approval would be necessary if this was an *ad hoc* committee.  Nor is the Notice practically necessary.  As the Committee's affiant acknowledged on cross examination, the Committee Members have already been in contact with in excess of 20-25 separate shareholders, who have come forward to the Committee Members in the past 18-24 months without any additional notice being required.[20]  Moreover, such an expense would more appropriately be borne by the Committee Members or Gowlings (who did not canvass the Committee Members to see if they would contribute to the cost of such a notice before requesting the funds).[21]  Gowlings, in particular, stands to benefit most from the Notice as they would receive the benefit of any additional clients and, therefore, increased contingency fees if it was effective.

36.        It is also noted that since the contingency fee arrangement is not known, the purpose of the Notice would be to attract prospective participants who would not know the terms of the retainer before contacting the Committee or Gowlings.

E.    **The US Steel/Canwest Factors Weigh Against Approval of the Order Sought**

37.        As stated above, the Committee Members rely on the factors considered in *Canwest* and *US Steel* in support of their request for the appointment of an equity committee.  Crystallex's position is that these cases and the factors listed therein do

---

[20]    Fine Transcript, *supra* note 11 at pp. 22-25.

[21]    *Ibid.* at p. 97.

- 15 -

not directly apply; however, to the extent they are applicable, Crystallex submits that they weigh against approval of the Order sought.

38.        The factors identified by the courts in *Canwest* and *US Steel* are as follows:

(a)    the vulnerability and resources of the group sought to be represented;

(b)    any benefit to the companies under CCAA protection;

(c)    any social benefit to be derived from the representation of the group;

(d)    the facilitation of the administration of the proceedings and efficiency;

(e)    the avoidance of a multiplicity of retainers;

(f)    the balance of convenience, including whether it is fair and just including to the creditors of the estate;[22] and

(g)    experience of proposed representative counsel.[23]

39.        Beginning with the first factor, the Committee Members have not presented any evidence concerning their resources and, indeed, the Committee's affiant acknowledged on cross-examination that he did not canvass the Committee

---

[22]    *Canwest, supra* note 4 at para. 21.

[23]    *US Steel, supra* note 5 at para. 41.

Members to see whether they would be willing to fund the Notice[24] and was unaware of the financial situations of the other Committee Members.[25]

40.         The little evidence there is concerning the alleged vulnerability of members of the Committee is that most of the Committee Members are sophisticated investors, including a CEO of a financial research firm, an investor relations consultant, a distressed equity specialist and other investment professionals.[26]  The Committee suggests that it will review information and be a source of explanation for shareholders, but unlike typical representative counsel, they will only do this for those who retain them.

41.         With respect to the second and third factors, the Committee Members do not assert that there is any social benefit or benefit to Crystallex of the formation of the Committee.

42.         Regarding the last factor, Crystallex does not take issue with Gowlings' experience or ability to act as Committee counsel.   The formation of an equity committee represented by one set of counsel may also reduce multiple retainers, but no more so than an *ad hoc* committee.

43.         The remaining factors identified by the courts in *Canwest* and *US Steel* all weigh strongly against the approval of the proposed Committee by way of the Order sought, for the many reasons discussed above.  There is no need or advantage

---

[24]      Fine Transcript, *supra* note 11 at p. 97

[25]      *Ibid.* at p. 28.

[26]      Affidavit of Justin Fine, sworn March 14, 2016, Exhibit "B", Motion Record of the Committee re: Committee Approval, Tab 2B.

- 17 -

to the appointment of the Committee by court order and it is clear that the likely result of the appointment of the Committee is further litigation at a significant cost to the Company and its other stakeholders.    The Court should not also not exercise its discretion to sanction or authorize the Committee in circumstances where there has been a failure to disclose its purpose or the fee arrangements which will necessarily inform the conduct of the Committee and its counsel.    Crystallex submits, therefore, that the balance of convenience weighs against the approval of the Order.

## PART IV ~ RELIEF REQUESTED

44.        For the reasons set out above, Crystallex respectfully requests that the motion of the Committee be dismissed.

ALL OF WHICH IS RESPECTFULLY SUBMITTED THIS 6TH DAY OF APRIL, 2016.

_____

Davies Ward Phillips & Vineberg LLP
Lawyers for the Applicant

# TAB A

## SCHEDULE "A" - LIST OF AUTHORITIES

1.  *Crystallex International Corp. (Re)*, Approval Order of the Honourable Justice Newbould dated December 18, 2014, CV-11-9532-00CL (Ont. S.C.J. [Commercial List]).

2.  *Canwest Publishing Inc. (Re)*, 2010 ONSC 1328 (Commercial List).

3.  *US Steel Canada Inc. (Re)*, 2014 ONSC 6145 (Commercial List).

4.  *TBS Acquireco Inc. (Re)*, 2013 ONSC 4663 (Commercial List).

# TAB B

## SCHEDULE "B" – RELEVANT STATUTES

Nil

Court File No. CV-11-9532-00CL

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**RESPONDING FACTUM OF CRYSTALLEX INTERNATIONAL CORPORATION**

**Davies Ward Phillips & Vineberg** LLP
155 Wellington Street West
Toronto, ON  M5V 3J7

Jay Swartz (LSUC #15417L)
Bryan McLeese (LSUC #55607C)
Natalie Renner (LSUC #55954A)
Tel:   416.863.0900
Fax:   416.863.0871

Lawyers for Crystallex International Corporation

Court File No. CV-11-9532-OOCL

### *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**BETWEEN:**

### IN THE MATTER OF THE COMPANIES' CREDITORS
### ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR
### ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

## REPLY FACTUM OF THE MOVING PARTIES

April 8, 2016

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Clifton Prophet**
Tel:      416-862-3509
Fax:      416-863-3509
clifton.prophet@gowlingwlg.com

**Nicholas Kluge**
Tel:      416-369-4610
Fax:      416-862-7661
nicholas.kluge@gowlingwlg.com

Lawyers for the proposed committee

2

TO:          **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
             Barristers and Solicitors
             130 Adelaide Street West
             Suite 2600
             Toronto ON  M5H 3P5

             Tel:    416-865-9500
             Fax:    416-865-9010

             **Peter H. Griffin**
             Tel:       416-865-2921
             Fax:       416-865-3568
             pgriffin@litigate.com

             Lawyers for
             McMillan LLP

AND TO:      **NORTON ROSE CANADA LLP**
             Barristers and Solicitors
             Royal Bank Plaza, South Tower
             200 Bay Street, Suite 3800
             P.O.Box 84
             Toronto ON  M5J 2Z4

             Tel:    416-216-4000
             Fax:    416-216-3930

             **Robert Frank**
             Tel:       416-202-6741
             Fax:       416-360-8277
             robert.frank@nortonrose.com

             Lawyers for
             Forbes & Manhattan Inc. and Aberdeen International Inc.

AND TO:    **CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto ON  M5H 3C2

Tel:   416-869-5300
Fax:  416-360-8877

**Shayne Kukulowicz**
Tel:     416-860-6463
Fax:     416-640-3176
skukulowicz@casselsbrock.com

Lawyers for
Tenor Capital Management


AND TO:    **THORNTON, GROUT, FINNIGAN**
Barristers and Solicitors
Canadian Pacific Tower
100 Wellington Street West, Suite 3200
P.O. Box 329, TD Centre
Toronto ON  M5K 1K7

Tel:   416-304-1616
Fax:  416-304-1313

**John T. Porter**
Tel:     416-304-0778
Fax:     416-304-1313
jporter@tgf.ca

Lawyers for
Juan Antonio Reyes

4

AND TO:    **GOODMANS LLP**
Barristers and Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

Tel:    416-979-2211
Fax:    416-979-1234

**Jay Carfagnini**
Tel:      416-597-4107
Fax:      416-979-1234
jcarfagnini@goodmans.ca

Lawyers for Computershare Trust Company of Canada, in its capacity as
Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex
International Corporation

AND TO:    **STIKEMAN ELLIOTT**
Barristers & Solicitors

Phone:  (416) 869-5500
Toll-Free: 1 877 973-5500
Fax: (416) 947-0866
Toronto ON  M5L 1B9

Tel:    877-973-5500
Fax:    416-947-0866

**David Byers**
Tel:      416-869-5697
Fax:      416-957-0866
dbyers@stikeman.com

Lawyers for
Ernst & Young Inc., in its capacity as the Monitor

AND TO:    **ERNST & YOUNG INC.**
222 Bay Street
P.O. Box 251
Toronto ON  M5K 1J7

Tel:    416-864-1234

**Brian M. Denega**
Tel:      416-943-3058
brian.m.denega@ca.ey.com

Court Appointed Monitor


AND TO:    **DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto ON  M5V 3J7

**Jay A. Swartz**
Tel:      416-863-5520
Fax:      416-863-0871
Email: jswartz@dwpv.com

**Natasha MacParland**
Tel:      416-863-5567
Email: nmacparland@dwpv.com

Lawyers for Crystallex International Corporation

Court File No. CV-11-9532-OOCL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

## REPLY FACTUM OF THE MOVING PARTIES

**INTRODUCTION**

1.      The statements of this Court approving the CCAA application of Crystallex over

the application of the noteholders are instructive:

> The CCAA is intended to provide a structured environment for negotiation
> of compromises between a debtor company and its creditors for the
> benefit of both.  Where a debtor company realistically plans to continue
> operating or to otherwise deal with its assets but it requires the protection
> of the Court in order to do so and it is otherwise too early for the Court to
> determine whether the debtor company will succeed, relief should be
> granted under the CCAA.   <u>The benefit to a debtor company could,
> depending upon the circumstances, mean a benefit to its shareholders.</u>

> It is clear that the CCAA serves the interests of broad constituency of
> investors, creditors, and employees.  Thus <u>it is appropriate at this stage to
> consider the interests of the shareholders of Crystallex.</u>

> …

> Crystallex has spent over $500M on the project.   <u>In the event that
> Crystallex only recovered that amount, without interest and without any
> compensation for the loss of the ability to develop the project, Crystallex
> would still have more than enough to pay all of its debts and have
> substantial value left over for its shareholders.</u>

> …

> In my view, what the Noteholders propose at this stage, including the cancellation of the common shares held by the shareholders of Crystallex, is not a fair balancing of the interests of all stakeholders.[1]

2.    At the commencement of the CCAA, the Company owed its creditors a total of $110 million. [2]

3.    Although the precise amount advanced by the DIP Lender is unknown to the members of the proposed committee, the Thirteenth Report of the Monitor[3] shows that it may be up to ███████████, in exchange for which the Lender has taken up to ██████ of the net arbitration award.[4]

4.    Judgment in the Las Cristinas arbitration has been rendered in favour of the Company in the amount of $1.386 billion.  The return on the DIP Lender's loan is staggering.  If the Company were to collect the full amount of the award, <u>after all creditors were paid all amounts to which they were legally entitled,</u> the DIP Lender (assuming full advance of the Fourth DIP) would be entitled to ███████████.

5.    This windfall benefit to the DIP Lender has accrued to the detriment of the shareholders alone.

6.    The only stakeholders who might suffer diminution of their legal interest in the arbitration award if the committee is established, and prosecutes unsuccessful

---

[1] *Re Crystallex International Corporation*, 2011 ONSC 7701 at paragraphs 20-26, supplemental book of authorities tab 1.
[2] *Re Crystallex International Corporation*, 2011 ONSC 7701 at paragraph 10, supplemental book of authorities tab 1.
[3] 13th Report, supplemental book of authorities tab 2.
[4] The proposed committee members do not know whether the amounts advanced were in USD or CAD. For the purposes of this factum, it has been assumed that all amounts are in USD.

3

proceedings, would be the shareholders themselves and the DIP Lender.  All other stakeholders stand to receive the full amounts to which they are legally entitled.

7.    The Order will legitimize the purpose for which the committee has been founded, to protect and potentially expand the small remaining interest of the shareholders in the arbitration award, and will sanction the role of the committee to speak for the interests of the participating shareholders.   The committee will be an effective and united voice on behalf of this critical and heretofore unrepresented stakeholder group.

8.    Both the Company and the DIP Lender argue that an Order recognizing and sanctioning the committee and its organizational rules is unnecessary.  They take the position that the interests in play may be represented just as effectively by an ad hoc group who retain one counsel.  This is incorrect.

9.    A committee recognized and sanctioned by Order of this Court will confer benefits for the shareholders as a group and for the process as follows:

(a)    A Committee sanctioned and approved by this Court will provide for continuity with respect to the interests represented, insofar as changes in the shareholders represented by the committee will have no effect on the status of the party before the Court or its relationship with counsel; and

(b)    A committee sanctioned and approved by this Court will also lend certainty to the process insofar as any decisions made or settlements approved by this Court will bind all parties opting in to the committee structure, without the necessity of them being directly before the Court.

10.     The only stakeholders opposing the Order are the DIP Lender and the Company. The inference that must be drawn is that all stakeholders with a beneficial interest in the arbitration award, save the DIP Lender, see value in granting the Order to establish the committee.

## RESPONSE TO THE FACTUM OF THE COMPANY

11.     At paragraph 3 the Company complains that "the Committee does not purport to represent a class or defined group of stakeholders, merely those who choose to be represented by it."   As this Court is well aware, this concession was made by the proposed committee in response to the complaint of the Company that the committee ought not to be constituted on an "opt-out" basis.

12.     It is telling that the Company now opposes the very structure put forward in its original factum as an acceptable alternative to the "opt-in" structure then sought by the committee:

> As an alternative, the Committee could implement an opt-in approach, which would provide Crystallex with the desired certainty about which Shareholders received notice of the Committee or otherwise became aware of its existence and made an informed decision before agreeing to be represented by the Committee.[5]

13.     At paragraphs 16 and 19 the Company argues that granting the Order would "lead to increased costs, inefficiencies and unfairness to creditors", and warns of "risks" to the Company and its creditors.   There is absolutely no evidence, nor can an inference be drawn, that the interests of any stakeholders other than the DIP Lender and the shareholders might be affected by the activities of the proposed committee.   To

---

[5] Responding Factum of Crystallex International Corporation (Motion Returnable January 11, 2016), paragraph 16, Supplemental book of authorities Tab 3.

reiterate, all Company creditors will be paid their full legal entitlements should the arbitration award be collected.

14.    The *TBS Acquireco* decision the Company relies upon at paragraph 20 is distinguishable from the present circumstances.  In that case:

(a)    The employees of the company were seeking representative counsel whose fees would be paid out of the estate;

(b)    There were no funds available to pay the pre-filing claims of the employees; and

(c)    Any amounts to which the employees were entitled were already fixed in law.  The amount of the arbitration award to which shareholders may be entitled in this case may not be.

15.    At paragraph 22 the Company argues that "there are already numerous represented parties with a vested interest in maximizing the recovery to stakeholders (including shareholders)".  The only stakeholders whose interests have been diluted through the CCAA process are the shareholders.  Whichever stakeholder(s) have been seeking to maximize shareholder recovery to date have failed.

16.    At paragraphs 22-25 the Company argues that the refusal of the committee to speculate as to what it will do in the future is fatal to the motion. As stated on cross-examination, the present intentions of the committee members are irrelevant to what instructions may be given at some future time following disclosure of currently unknown information and the advice of counsel with respect to that information.[6]

6

17.    At paragraph 28 the Company argues that "it is clear the real purpose of the Committee is to create mischief and seek to appeal or vary previous orders of this Court with the objective of increasing the percentage of net arbitration proceeds ultimately available to shareholders".  This is a fundamental mischaracterisation of the potential actions of the committee, which may include seeking:

(a)    To vary the DIP orders to ensure that the terms of the DIP agreement do not entitle the DIP Lender to a criminal rate of interest in breach of section 347 of the *Criminal Code*, in accordance with the reasons of this Court in *Re Essar Steel Algoma Inc.*;[7]

(b)    A determination as to whether clause 6 of the Net Arbitration Proceeds Transfer Agreement Order[8] renders any otherwise unlawful terms of the DIP agreement legally permissible and unactionable; and

(c)    A determination as to whether the failure to provide the shareholders an opportunity to participate in the fourth DIP financing arrangement, as contemplated by paragraph 43 of the Eleventh Report of the Monitor,[9] was unduly unfair and oppressive to the shareholders, such that the terms of the fourth DIP should be revisited.

18.    The proposed committee has, appropriately, declined to foreclose or specifically address any potential rights or remedies that may be open to it until such time as:

---

[6] Justin cross-examination at pages 63-67, supplemental book of authorities, Tab 4.
[7] Re Essar Steel Algoma Inc., (16 November 2015) Toronto CV-11169-00CL (Commercial List), supplemental book of authorities, Tab 5.
[8] Supplemental book of authorities, Tab 6.
[9] Supplemental book of authorities, Tab 7.

(a)      It has been established;

(b)      Currently sealed information relevant to its decision-making has been disclosed to its members and to its counsel; and

(c)      It has received the advice of its counsel.

**REPLY TO THE FACTUM OF THE DIP LENDER**

19.    Paragraph 12 states: "at no time did Mr. Fine seek to retain counsel to appear in these proceedings to represent his interests".  This is a misstatement of his evidence, as the answers relied upon by the DIP Lender relate to only the first round of DIP financing.[10]  Although not in evidence, Mr. Fine unsuccessfully sought representation for the shareholders in these proceedings for an extended period prior to the retention of Gowling WLG.

20.    At paragraph 20 the DIP Lender states that it is:

> legitimately concerned that the granting of the relief requested will be seen to legitimize the Ad Hoc Committee's litigation mandate.  The resulting effect could be disastrous for all stakeholders of Crystallex, who have previously suffered as a result of prior and lengthy litigation with the noteholders.

To reiterate, the only stakeholders whose interests may be affected by establishment of the committee are the DIP Lender and shareholders themselves.  All other stakeholders will have their legal claims against the company paid in full.

---

[10] Cross-examination pages 80-81, supplemental book of authorities, Tab 4.

21.     At paragraphs 24 through 28 the DIP Lender argues that the payment of costs of notice of the formation of the committee would result in a default under the DIP agreement.

22.     The DIP agreement is not available to the committee.    Members of the committee, and their counsel, have requested copies of the DIP agreement without success.  It is inappropriate and self-serving for the DIP Lender to argue that the order ought not to be granted for reasons arising out of evidence they refuse to disclose.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 8th day of April, 2016.

_____

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Tel:    416-862-7525
Fax:    416-862-7661

**Clifton P Prophet**
Tel:      416-862-3509
Fax:      416-863-3509
clifton.prophet@gowlingwlg.com

**Nicholas Kluge**
Tel:      416-369-4610
Fax:      416-862-7661
nicholas.kluge@gowlingwlg.com

Lawyers for the proposed committee

**SCHEDULE "A"**

**LIST OF AUTHORITIES**

24.    Re Crystallex International Corporation, 2011 ONSC 7701


25.    *Re Essar Steel Algoma Inc.,* (16 November 2015) Toronto CV-11169-00CL

(Commercial List)


26.    *Re Crystallex International Corporation, (*18 December 2014) Toronto, CV-11-

9532-00CL (Commercial List)

## SCHEDULE "B"

## TEXT OF STATUTES, REGULATIONS & BY – LAWS

Court File No. CV-11-9532-OOCL

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

| | |
|---|---|
| | **ONTARIO**<br>**SUPERIOR COURT OF JUSTICE**<br><br>**COMMERCIAL LIST**<br>PROCEEDING COMMENCED AT<br>TORONTO |
| | **REPLY FACTUM OF THE MOVING PARTIES** |
| | **GOWLING WLG (CANADA) LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto ON M5X 1G5<br><br>Tel:    416-862-7525<br>Fax:   416-862-7661<br><br>**Clifton P Prophet (#34845K)**<br>Tel:    416-862-3509<br>Fax:   416-863-3509<br>*clifton.prophet@gowlingwlg.com*<br>**Nicholas Kluge (#44159T)**<br>Tel:    416-369-4610<br>Fax:   416-862-7661<br>*nicholas.kluge@gowlingwlg.com*<br><br>Lawyers for the proposed committee of shareholders<br><br>**File Number: T1006179** |

TOR_LAW\ 8921461\1

Court File No. CV-11-9532-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

_____

### REPLY FACTUM OF THE DIP LENDER
### (Motion Returnable:  April 11, 2016)

_____

April 10, 2016

**CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto, ON
M5H 3C2

Timothy Pinos LSUC #: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Shayne Kukulowicz LSUC #: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Ryan C. Jacobs LSUC #: 59510J
Tel:    416.860.6465
Fax:    416.640.3189
rjacobs@casselsbrock.com

Lawyers for the DIP Lender

2

TO: **DAVIES WARD PHILLIPS & VINEBERG LLP**
Barristers and Solicitors
155 Wellington Street West
40th Floor
Toronto ON  M5V 3J7

Jay Swartz  LSUC #: 15417L
James Doris  LSUC #: 33236P
Natalie Renner  LSUC #: 55954A
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Crystallex International Corporation

AND TO: **STIKEMAN ELLIOTT LLP**
Barristers and Solicitors
5300 Commerce Court West
199 Bay Street
Toronto ON  M5L 1B9

David Byers
Tel:    416.869.5697
Fax:    416.957.0866
dbyers@stikeman.com

Maria Konyukhova
Tel:    416.869.5230
Fax:    416.957.0866
mkonyukhova@stikeman.com

Lawyers for Ernst & Young Inc., in its capacity as the monitor

3

AND TO:    **GOODMANS LLP**
Barristers and Solicitors
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto ON  M5H 2S7

Jay Carfagnini
Tel:    416.597.4107
Fax:    416.979.1234
jcarfagnini@goodmans.ca

Robert Chadwick
Tel:    416.597.4285
rchadwick@goodmans.ca

Celia Rhea
Tel:    416.597.4178
crhea@goodsmans.ca

Chris Armstrong
Tel:    416.849.6013
carmstrong@goodmans.ca

Lawyers for Computershare Trust Company of Canada, in its capacity as Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex International Corporation

AND TO:    **THORNTON, GROUT, FINNIGAN**
Barristers and Solicitors
Canadian Pacific Tower
100 Wellington Street West, Suite 3200
P.O. Box 329, TD Centre
Toronto ON  M5K 1K7

John T. Porter
Tel:    416.304.0778
Fax:    416.304.1313
jporter@tgf.ca

Lawyers for Juan Antonio Reyes

AND TO:    **NORTON ROSE OR  LLP**
Barristers and Solicitors
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto ON  M5J 2Z4

Robert Frank
Tel:    416.202.6741
Fax:   416.360.8277
robert.frank@nortonrose.com

Ryan Hauk
Tel:    416.203.4468
Fax:   416.360.8277
ryan.hauk@nortonrose.com

Lawyers for Forbes & Manhattan Inc. and Aberdeen International Inc.

AND TO:    **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers and Solicitors
130 Adelaide Street West
Suite 2600
Toronto ON  M5H 3P5

Peter H. Griffin
Tel:    416.865.2921
Fax:   416.865.3568
pgriffin@litigate.com

Lawyers for McMillan LLP

AND TO:    **ERNST & YOUNG INC.**
222 Bay Street, P.O. Box 251
Toronto,ON  M5K 1J7

Brian M. Denega
Tel:    416.943.3058
Fax:   416.943-3300
brian.m.denaga@ca.ey.com

Fiona Han
Tel:    416.943.3739
Fax:   416.943-3300
Fiona.Han@ca.ey.com

Court-appointed Monitor

AND TO:    **GOWLING WLG (CANADA) LLP**
Barristers and Solicitors
1 First Canadian Place
100 King Street West
Suite 1600
Toronto ON  M5X 1G5

David Cohen
Tel:    416.369.6667
Fax:    416.862.7661
david.cohen@gowlings.com

Clifton Prophet
Tel:    416.862.3509
Fax:    416.862.7661
clifton.prophet@gowlings.com

Nicolas Kluge
Tel:    416.369.4610
Fax:    416.862.7661
nicolas.kluge@gowlings.com

Lawyers for the ad hoc committee of shareholders of Crystallex

AND TO:    **OSLER, HOSKIN & HARCOURT LLP**
Barristers and Solicitors
100 King Street West
1 First Canadian Place
Suite 4600, P.O. Box 50
Toronto ON  M5X 1B8

Alexander Cobb
Tel:    416.862.5964
Fax:    416.862.6666
acobb@osler.com

Lawyers for Greywolf Loan Participation LLC

Court File No. CV-11-9532-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

_____

**REPLY FACTUM OF THE DIP LENDER**
**(Motion Returnable:  April 11, 2016)**

_____


**PART I - OVERVIEW AND ARGUMENT**

1.      On the eve of this motion there were two significant events which necessitated this

reply by the DIP Lender:

(a)     The Ad Hoc Committee, in its reply, for the first time disclosed its specific

intent to pursue a litigation strategy aimed at seeking to vary certain critical

orders of this Court (including the DIP Orders) and confirmed that they need

this Court's order to "legitimize" that strategy;

(b)     There was a significant (and potentially harmful) breach of confidentiality by

members of the Ad Hoc Committee and/or its counsel, Gowling WLG

(Canada) LLP ("Gowlings") through service of the Ad Hoc Committee's

reply factum which disclosed highly sensitive financial information which

was protected by Order of this Court.[1]  Gowlings confirmed the breach and subsequently notified the service list.

Each of these events confirm the position of the DIP Lender that this Court's approval of this committee (which can always act "ad hoc") is not appropriate.  The detailed reasons for this follow.

2.      Since this motion was commenced in October 2015, the Ad Hoc Committee has carefully avoided declaring its intended actions if it were sanctioned by this Court.  None of the Notice of Motion, the affidavits of Mr. Justin Fine, the cross-examination of Mr. Fine, or the 4-page factum filed by the Ad Hoc Committee contain any specifics of the intended actions of the Ad Hoc Committee, if Court-approved.

3.      Despite this, both Crystallex and the DIP Lender have concluded, and urged the Court to conclude that the agenda of the Ad Hoc Committee is to litigate to disrupt the established order with the aim of a contingent fee recovery for counsel.  In these circumstances, the DIP Lender has submitted that the appointment of an Ad Hoc Committee is unnecessary, and certainly Court sanction is not appropriate.

---

[1] Two members of the Ad Hoc Committee, Mr. Justin Fine and Mr. Lyn Goldberg (the "Restricted Shareholders") signed confidentiality agreements with the Applicant following this Court's December 20, 2014 Approval Order. Gowlings, as counsel to the Ad Hoc Committee, has never  signed a confidentiality agreement with the Applicant.  Pursuant to the terms of their confidentiality agreements, the Restricted Shareholders received unredacted versions of the Monitor's 13th Report which contained highly sensitive financial information related to the DIP financing. The reply factum of the Ad Hoc Committee, served by Gowlings, contained some of the sensitive financial information from the 13th Report. Either one or both of the Restricted Shareholders breached their confidentiality agreement by sending the information or the 13th report to Gowlings, or Gowlings as designated counsel for the Restricted Shareholders caused the breached of the confidentiality agreement by publicly serving the reply factum with this information. In either case, there was a serious and potentially harmful breach of the confidentiality agreement by members of the Ad Hoc Committee or Gowlings.  Further, the confidentiality agreements require that before any filing of a document which refers to confidential information, that Crystallex be notified and a protective order be issued and entered.  That did not happen in this case, in further breach of the confidentiality agreements. See Affidavit of Hilary Fender, sworn April 10, 2016 ("Fender Affidavit") Exhibit B.

3

4.      Now at the 11th hour in this motion, the Ad Hoc Committee in its Reply finally confirms that its late intervention in this CCAA proceeding is for the purpose of litigating with Crystallex and the DIP Lender in respect of the established CCAA DIP financing as confirmed by the Orders of this Court dating back to 2012, and commencing other serious litigation against Crystallex to address undisclosed perceived harms. The orders of this Court that are targeted by the Ad Hoc Committee's disclosed litigation strategy have been relied upon by Crystallex, the DIP Lender, and other stakeholders who, unlike the Ad Hoc Committee members that were also aware of these proceedings and major events, have appeared and participated at each stage on a timely basis.

5.      The litigation agenda now disclosed by the Ad Hoc Committee includes:

(a)     Generally, challenging the alleged "windfall" to the DIP lender as a consequence of the Award in an arbitration process that it financed with Court approval for over 4 years at its sole risk (when all other stakeholders refused to provide financing), and against a nation, known for resisting arbitration awards, which is on the verge of defaulting on its international obligations[2];

(b)     Overturning the established DIP Orders on the basis of an alleged and unparticularized breach of the Criminal Code, four years after any issues related to the DIP financing could have been raised when the DIP financing structure was proposed and approved;

---

[2]      Fender Affidavit, Exhibits H and I

(c)      Challenging the legal effect of the Net Arbitration Proceeds Transfer Order which confirms the validity of the NAP Agreement at law, while ignoring similar provisions in each CCAA Financing Order which confirm the validity at law of each CCAA DIP Agreement; and

(d)      Foreshadowing the bringing of an oppression remedy-like proceeding to challenge a round of DIP Financing that has already been approved by Court Order, within a DIP financing structure that has been approved repeatedly.

6.      The disclosure of this litigation agenda still leaves unanswered one critical question: **Why is this Court's approval of the Ad Hoc Committee required?**  None of the disruptive actions contemplated by the Ad Hoc Committee require that this Court approve a committee before such actions can be sought to be initiated, and such actions are clearly within the ability of the sophisticated and well-resourced and counselled members of this committee acting on an 'ad hoc' basis.  Similarly, this Court's approval is not required for the Ad Hoc Committee to retain or engage counsel.  The DIP Lender's fears that the Ad Hoc Committee was seeking this Court's blessing to legitimize its litigation strategies and agenda were confirmed at paragraph 7 of their reply:  "**The order will legitimize the purpose for which the committee has been founded**..."

7.      The late-disclosed, disruptive and wasteful litigation agenda of this Ad Hoc Committee is not something that this Court should endorse or in any way assist in legitimizing.  Unnecessary litigation within these CCAA proceedings must be avoided. The Ad Hoc Committee acknowledges that it is indifferent to the negative impact of its

unsuccessful proceedings on other shareholders, stating at paragraph 6 of their reply that "the only stakeholders who might suffer diminution of their legal interest in the arbitration award if the committee is established, and prosecutes unsuccessful proceedings, would be the shareholders themselves and the DIP Lender."  The Court should not approve a committee representing a minority of shareholders, and legitimize its agenda, that will put at risk the recoveries available to the majority of non-participating shareholders.

8.      Finally, the clear beach of confidentiality by the Ad Hoc Committee and/or its counsel cannot afford the Court any confidence that the members of this committee and/or its counsel will act appropriately, diligently and in the best interests of all the shareholders.  This is particularly the case where the Ad Hoc Committee is seeking to limit its liability and the liability of its counsel at a time when there has already been a breach of the existing confidentiality agreements by one or more members of the Committee and counsel.

## PART II - ORDER REQUESTED

9.      For the reasons set out above, the DIP Lender respectfully requests that the Ad Hoc Committee's Motion be dismissed.

6

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 10th day of April, 2016.

_____

Cassels Brock & Blackwell LLP
Lawyers for the DIP Lender


**CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto, ON
M5H 3C2

Timothy Pinos
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Shayne Kukulowicz
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Ryan C. Jacobs
Tel:    416.860.6465
Fax:    416.640.3189
rjacobs@casselsbrock.com

Lawyers for the DIP Lender

**SCHEDULE "A"**

**LIST OF AUTHORITIES**

**Tab**

2

## SCHEDULE "B"

## TEXT OF STATUTES, REGULATIONS & BY - LAWS

N/A

| IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED<br><br>AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION | Court File No. CV-11-9532-00CL |
| --- | --- |

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT
TORONTO

---

**FACTUM**

---

**Cassels Brock & Blackwell LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Timothy Pinos  LSUC #: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Shayne Kukulowicz LSUC #: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Ryan C. Jacobs LSUC #: 59510J
Tel:    416.860.6465
Fax:    416.640.3189
rjacobs@casselsbrock.com

Lawyers for the DIP Lender

## **EXHIBIT D**

**Order of Canadian Court Denying Shareholder Committee Appointment Motion**

Court File Number: _CV-11-9532-00CL_

**Superior Court of Justice**
Commercial List

## FILE/DIRECTION/ORDER

_In Crystallex International Corporation_
_____
Plaintiff(s)

AND

_____
Defendant(s)

Case Management ☐ Yes ☐ No  by Judge: _____

| Counsel | Telephone No: | Facsimile No: |
|---------|---------------|---------------|
| _See attached counsel slip._ | | |
| | | |

☐ Order  ☐ Direction for Registrar **(No formal order need be taken out)**
☐ Above action transferred to the Commercial List at Toronto **(No formal order need be taken out)**

☐ Adjourned to: _____
☐ Time Table approved (as follows):

_Heard April 11, 2016_

_April 18, 2016_

_Nine Shareholders holding approximately 10%_
_of the outstanding shares of Crystallex have_
_moved to (i) have themselves appointed as a_
_committee to represent the interests of shareholders_
_of Crystallex who opt in to be represented by the_
_committee; (ii) approve the By-laws of the committee;_
_3(iii) appoint Gowling WLG (Canada) LLP as_

_____          _____
Date                                              Judge's Signature

☐ Additional Pages _1 of 8_

Court File Number: _____

**Superior Court of Justice**
Commercial List

## FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
|---|

counsel to the Committee; (iv) ordering Crystallex to pay the cost of publishing notice to all shareholders of the order not to exceed $50,000; and (v) granting immunity from liability to Committee members and their counsel save for gross negligence or wilful misconduct.

For the reasons that follow, the motion is dismissed.

A decision of the arbitration panel in the dispute between Crystallex and Venezuela was released recently in which judgment was rendered ordering Venezuela to pay to Crystallex $1.386 billion plus interest. There are obviously prospects that if this amount is collected, there will be some amount available for the shareholders. The DIP agreement contains a waterfall provision which provides a mechanism for distributing the proceeds of the arbitration to the creditors and to the company.

When this motion was brought, and until

Page __2__ of __8__                    Judges Initials _____

Court File Number: _____

**Superior Court of Justice**
Commercial List

# FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
|---|

the reply factum of the proposed Committee was
delivered on April 8, 2016. The Committee refused
to disclose what actions it would take if
appointed by the Court. This led Crystallex and the
DIP lender to question the need for a court
order appointing a committee whose purpose was
undeclared. They said an ad hoc committee could act without
court order.

In the reply factum, the proposed Committee
stated its intentions which included possible
~~terms~~ litigation to challenge the waterfall
contained in the DIP agreement as being in
breach of the Criminal Code and challenging
the fourth DIP financing approved by the Court
on the basis that the shareholders were not
provided an opportunity to participate in that
financing.

There would be nothing stopping the
Applicants from forming an ad hoc committee
without court order and approving their own by-laws
and from notifying all shareholders of the

Page ___3___ of ___8___                    Judges Initials _____

Court File Number: _____

**Superior Court of Justice**
Commercial List

## FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
|---|

formation of the committee and determining
whether the shareholders wish the committee to
represent them and be bound by the committee's
actions taken on their behalf. The order
sought does no more than sanction that
process.

The applicants would not benefit directly
from other shareholders opting into the
committee's plans. Each shareholder will receive
a pro rata distribution based on their shareholdings.
A larger shareholder group would benefit
Goodmans who have agreed to act on a
contingency basis. The more shareholders the
larger the fees to Goodmans (the exact terms
of the contingency agreement have not been
disclosed, but Goodmans does not contest this
fact). I recognize that the larger the shareholder
group represented by Goodmans, the larger the
incentive might be for Goodmans to pursue litigation.
In saying that, I do not in any way suggest

Page ___4___ of ___8___            Judges Initials _____

Court File Number: _____

**Superior Court of Justice**
Commercial List

## FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
| --- |

that Goodings would not act appropriately for their clients.

The applicants state in their factum that the order sought "will legitimize the purpose for which the committee has been found". I agree with Crystallex, the DIP lender and Mr. Reyes, a shareholder who opposes the motion, that the Court at this stage should remain neutral as to the prospects of any litigation that the committee might see fit to bring, and that to make the order sought will be used by the committee to legitimize its purpose in the eyes of the shareholders by referring to the order made establishing the committee. The Court should avoid that if at all possible, and be completely neutral on the prospects of future litigation that would have to be decided by the Court.

There is no need for an order appointing a committee for the committee to take the actions it wishes, or put the other way, there is no benefit to such to the company by

Page _____5_____ of ___8___          Judges Initials _____

Court File Number: _____

**Superior Court of Justice**
Commercial List

## FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
| --- |

an order. The applicants do not seek to have
their legal costs paid by the company (other
than $50,000 for notice to the shareholders).

The authority to make the order sought is
a discretionary matter under section 11 of the CCAA
which permits a court to make any order which
it considers appropriate in the circumstances.
What is appropriate obviously must depend
on the circumstances of any particular case.

The applicants have referred to Re: Canwest
Publishing Inc 2010 ONSC 1328 in which
a representative counsel was appointed to
represent former salaried employees and
retirees of Canwest. Pepall J. (as she then was)
listed factors that had been considered in
granting representation orders for former employees
in other cases. I do not quarrel with the
list of factors considered in these cases, but it
must be recognized that Justice Pepall was not
purporting to define a list of factors that must

Page __6__ of __8__                    Judges Initials _____

Court File Number: _____

**Superior Court of Justice**
Commercial List

## FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
| --- |

be considered in all cases. Some factors may be relevant and some may not be in any particular case. A matter of discretion such as an order under section 11 of the CCAA cannot be codified.

It is argued that the balance of convenience favours the applicants as no funding is sought from the company and the litigation issues will be solely a matter between the shareholders and the DIP lender. This ignores, however, the liability of the company for the DIP lenders expenses and the Monitors expenses that would be incurred. It cannot be said that the order would benefit the company.

The applicants are sophisticated investors. Some are well heeled. There is no evidence they are vulnerable or in need of so. No to provide notice to shareholders. They are quite able to do this without Crystallex money and without a court order.

In the circumstances, and taking into account

Page _7_ of _8_                    Judges Initials _____

Court File Number: _____

**Superior Court of Justice**
Commercial List

# FILE/DIRECTION/ORDER

| Judges Endorsement Continued |
|---|
| the matters that I have discussed, I do not find it appropriate to make the orders sought. I do not need to discuss the request for immunities for liability, sought for the applicants and their counsel. |
| The motion is dismissed. |
| _[signature]_ |

Page ___8___ of ___8___          Judges Initials _____

# 4

10:00 am

---

## COUNSEL SLIP (COMMERCIAL MOTIONS)

No On List: 4
Court File No CV-11-9532-CL        DATE:    APR 11 2016
Title of Proceeding:

Crystallex International v Forbes & Manhattan
et al

COUNSEL FOR
Plaintiff(s):
Applicant(s):
Petitioner(s):                                           PHONE NO. & FAX

---

Proposed Committee                          P  416 369 7200
Clifton Prophet                             f  416 862 7661
Nicholas Kluge
Delmy Contractor

---

MARIA KONTUKHOVA                    416. 869. 5230
FOR MONITOR                         416. 947. 0866

---

COUNSEL FOR
Defendant(s):
Respondent(s)                                      PHONE NO. & FAX

Jay Swartz          Crystallex          P: 416 863 0900
Natalie Renner      International       F: 416-863-0871
                    Corporation
J. Porter      T. Reyes      F 416-304-0798
                             F 416-304-1313
Timothy Pinos                      416 869.5784
R Shayne Kukulowicz    DIP          T4 416 350 6903
R. Jacobs              Lender

A. Cobb  — Greywolf        416-862-5984
                      (f) 416-862-6666
RELIEF SOUGHT:
Robert P. Chadwick   (p) 416-597-4285
Chris Armstrong      (f) 416-979-1234
for Ad Hoc
Committee of Noteholders

**<u>EXHIBIT E</u>**

**Committee Variance Motion Papers**

Court File No.:  CV-11-9532-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF** THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF** A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

**NOTICE OF MOTION**

**THE MOVING PARTIES**, Edesio Biffoni, Gerald Cantwell, Robert Danial, Justin Fine, Steven Kosson, Colin Murdoch, Grant Watson, David Werner (collectively the "**Ad-Hoc Committee**"), will make a motion to the Court on a date to be set at a 9:30 scheduling attendance, at 330 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING:** The motion is to be heard orally.

**THE MOTION IS FOR:**

(1)     An Order granting leave to bring this motion;

(2)     If necessary, an Order that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable on the hearing date, and that further service on any interested party may be dispensed with;

(3)     An Order lifting the stay of proceedings herein to allow the Ad Hoc Committee to commence and continue the claims below with respect to

- 2 -

oppression of the shareholders of Crystallex International Corporation ("**Crystallex**") and a breach of the criminal interest rate provisions in the Canadian *Criminal Code*, all as set out in the draft statement of claim attached to the affidavit of Justin Fine, or a substantially similar pleading;

(4)    An Order varying the following Orders of the Honourable Justice Newbould to the extent necessary to permit the claims to be commenced and continued:

(a)    the Order dated June 5, 2013 approving the terms of the Second Credit Agreement dated June 5, 2013 (the "**Second DIP Approval Order**" and the "**Second DIP Loan**")

(b)    the Order dated April 14, 2014 approving the terms of the Third Credit Agreement Amendment dated April, 2014 (the "**Third DIP Approval Order**" and the "**Third DIP Loan**"); and,

(c)    the Order dated December 18, 2014 approving the terms of the Fourth Credit Agreement Amendment dated December, 2014 (the "**Fourth DIP Approval Order**" and the "**Fourth DIP Loan**"); and,

(d)    the Order dated December 18, 2014 approving the Net Arbitration Proceeds Transfer Agreement among the Applicant, the DIP Lender (as defined below), Robert Fung and Marc Oppenheimer; and,

(5)    such further and other relief as this Honourable Court may deem just.

**THE GROUNDS** for the motion are:

**Leave for Motion**

- 3 -

(1)  By Order of the Honourable Justice Newbould dated June 5, 2013 (the **"Stay Extension and Standstill Order"**), this Court directed that no party bring a motion in these proceedings without leave of the Court, such leave to be sought after consultation with the Monitor concerning any proposed motion;

(2)  By endorsement dated June 7, 2016, the Honourable Justice Newbould further directed that any party seeking to bring a motion in these proceedings was to provide the motion materials in draft to counsel for the Applicants and request that counsel for the Applicants make arrangements to appear at a chambers appointment to address the scheduling and hearing of the motion (the "**Motion Protocol**");

(3)  The Ad Hoc Committee has provided its draft motion materials for this motion, including a draft of its statement of claim, to counsel for the Applicant and has requested a scheduling attendance, all in compliance with the Motion Protocol;

(4)  The Crystallex shareholders have an economic interest in the Applicant in view of the US$1.202 billion arbitration award ("**Arbitration Proceeds**") made in favour of Crystallex against the Bolivarian Republic of Venezuela ("**Venezuela**") as a result of Venezuela's expropriation of Crystallex's valuable mining rights and in view of the pre-filing creditor claims against the Applicant, which creditor claims were valued at approximately US$112 million by the Monitor in January, 2012;

- 4 -

(5)     The Honourable Justice Hainey approved a contract of Transaction and Settlement dated November 15, 2017 between the Applicant and Venezuela, which contract the Monitor of Crystallex described in paragraph 27 of its Twenty-Second Report as providing "significant value to the Applicant over time beyond the quantum of asserted creditor claims against the Applicant";

(6)     As particularized in the draft statement of claim, shareholders' interests have been diluted such that they currently represent a very small percentage of the net Arbitration Proceeds, which are the only remaining asset of the Applicants;

(7)     The dilution of shareholders' interests has been caused or effected by DIP lending arrangements conferring ever-increasing percentages of net Arbitration Proceeds on Luxembourg Invest Company 31 S.a.r.l., the current holder of the DIP loans advanced to the Applicant (the "**DIP Lender**"). These arrangements were approved by the Court without any effective notice to shareholders and in circumstances in which the Applicants, their directors and the DIP Lenders acted in a manner that was oppressive, unfairly prejudicial to and in unfair disregard of the interests of shareholders;

(8)     Unless leave to bring this motion is granted to allow the claims as set out in the Statement of Claim to proceed, the shareholders will have no opportunity to be heard in relation to the severe dilution of their interests

- 5 -

and will lose very significant value, potentially in the hundreds of millions of dollars;

(9)     The shareholders will be denied access to justice if the Ad Hoc Committee is not granted leave to bring this motion;

## Lift Stay re Oppression Claim

(10)    The Ad Hoc Committee seeks to issue and proceed with a claim which alleges, among other things, that the granting of compensation to the DIP Lenders in the form of percentage interests in the net proceeds of the Arbitration Award ("**NAA**"), which interests now total almost 90% of the NAA, was oppressive, in unfair disregard of, and unfairly prejudicial to the interests of shareholders (the "**Oppression Claim**");

## Lift Stay re Breach of Criminal Interest Rate

(11)    The Oppression Claim further alleges, among other things, that the compensation provided to the DIP Lender is in breach of the provision of the Criminal Code of Canada

## Vary Orders to Allow the Claim to be Brought

(12)    section 11 of the CCAA;

(13)    rules 2.03, 3.02, 37 and 59 of the Rules of Civil Procedure;

(14)    section 138 of the Courts of Justice Act; and

(15)    such further and other grounds as counsel may advise.

- 6 -

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

(1)    the Affidavits of Justin Fine and Gerald Cantwell, to be sworn;

(2)    such further and other evidence as counsel may advise and this Honourable

Court may permit.


**GOWLING WLG (Canada) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Clifton Prophet**
Tel:    416-862-3509
Fax:    416-862-7661
clifton.prophet@gowlingwlg.com

**David Cohen**
Tel:    416-369-6667
Fax:    416-862-7661
david.cohen@gowlingwlg.com

**Nicholas Kluge**
Tel:    416-369-4610
Fax:    416-862-7661
nicholas.kluge@gowlingwlg.com

**Delna Contractor**
Tel: 416-862-4322
Fax: 416-862-7661
delna.contractor@gowlingwlg.com


**TO:    THE ATTACHED SERVICE LIST**

Court File No. CV-11-9532-OOCL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

## FACTUM OF AD HOC COMMITTEE OF SHAREHOLDERS OF
## CRYSTALLEX INTERNATIONAL CORPORATION
### (Motion of the DIP Lender)

March 9, 2018

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Tel:    416-862-7525
Fax:    416-862-7661

**Clifton P Prophet (#34845K)**
Tel:       416-862-3509
Fax:       416-863-3509
clifton.prophet@gowlingwlg.com
**Nicholas Kluge (#44159T)**
Tel:       416-369-4610
Fax:       416-862-7661
nicholas.kluge@gowlingwlg.com
**Delna Contractor (#68693E)**
Tel: 416-862-4322
Fax: 416-862-7661
delna.contractor@gowlingwlg.com

Lawyers for the Ad Hoc Committee of
Shareholders of Crystallex International
Corporation

TO:      **THE SERVICE LIST**

Court File No. CV-11-9532-OOCL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**BETWEEN:**

### IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

## RESPONDING PARTY'S FACTUM

### PART I - INTRODUCTION

1.      The fundamental question raised by the motion of the Ad Hoc Committee (the "**Shareholders Committee**") of the shareholders of Crystallex International Corporation ("**Crystallex**") to vary certain DIP approval orders in this insolvency (the "**Shareholders Variance Motion**") is whether it is necessary in the interests of justice for this Court to grant those variances.[1]

2.      The premature motion to dismiss (the "**Tenor Motion**") brought by Crystallex's DIP lender, Tenor KRY Coöperatief U.A. and affiliates ("**Tenor**") and supported by Crystallex is misconceived and ignores the applicable law and essential principles governing motions to vary or set aside prior Court orders.

---

[1] All capitalized terms in this factum that are not defined are given the same definition as the terms in the affidavit of Justin fine, sworn December 15, 2017 [the "**Fine Affidavit**"] at Tab 3 of the Compendium of the Ad-hoc Committee of Crystallex Shareholders [the "**Shareholder Compendium**"].

3.     Motions to vary or set aside prior orders, such as the Shareholders Variance Motion, and particularly motions like it which rely upon Rule 59.06, [2] require the court to take a contextual approach to determine what is just in the circumstances. Fixed formulas and rigid approaches are to be avoided, and the analysis mandated by the Court of Appeal on such motions necessitates the weighing of evidence and the finding of facts.

4.     Contrary to the positions asserted in the facta filed by Tenor and the Company, the facts which must be addressed by this Court to decide the Shareholders Variance Motion are significantly contested and cannot be decided without an evidentiary record. This Court cannot apply the governing law and determine what the interests of justice require in relation to the Shareholders Variance Motion in a vacuum, as is sought on the Tenor Motion.

## PART II - SUMMARY OF FACTS

5.     The Shareholders Committee represents the interests of over 218 shareholders who together hold close to 30% of the common shares of Crystallex.[3] Many of these "Complaining Shareholders" – as they are referred to in Tenor's factum - are individuals who have suffered severe financial harm as a result of Crystallex and Tenor severely diluting the shareholders' interest in the ICSID Arbitration Award (defined below).

6.     Referring to these individuals as the "Complaining Shareholders" is insensitive, unnecessary and consistent with Tenor and Crystallex's complete disregard for the interests of the Company's shareholders throughout this insolvency.

---

[2] *Rules of Civil Procedure*, RRO 1990 Reg 194, Rule 59.06.
[3] Fine Affidavit at para 6, **Tab 3** of the Shareholder's Compendium.

3

**Shareholders Variance Motion and Shareholders Claim**

7.    The Shareholders Variance Motion seeks leave to:

    (a)    bring the motion itself; [4]

    (b)    leave by way of relief from the stay of proceedings under the Initial Order to bring the motion and commence the Shareholders Claim (described below); and

    (c)    an order varying four prior orders approving three amendments to the DIP lending arrangements in place between Tenor and Crystallex and an order approving a transfer of certain arbitration proceeds to Company management.

8.    Even launching the Shareholders Variance Motion has been challenging because of the multiple barriers established in this proceeding as a result of motions brought by the Company, including the special motion procedure orders summarized in footnote 4 below and the onerous and highly restrictive limitations placed on the dissemination of basic information about the case through multiple sealing orders and the very significant redaction of critical information. [5] In addition, attempts to enter into confidentiality

---

[4] By order of the Court dated June 5, 2013 no party may bring a motion even within the ongoing CCAA proceedings without leave of the Court, which can only be sought after consultation with the Monitor. An endorsement of the Court dated June 7, 2016, further required that any party seeking to bring a motion within Crystallex's CCAA proceedings provide motion materials in draft to counsel for the Company and request that the Applicants make arrangements to appear in chambers to address the scheduling and hearing of the motion.

[5] Fine Affidavit, at paras 56 – 59.

4

arrangements in favour of the Company and to obtain the partial information available were made difficult by the Company and took an inordinate length of time.[6]

9.      The point of the Shareholders Variance Motion is to permit the Shareholders Committee to commence proceedings by way of an action against Crystallex and Tenor (the "**Shareholders Claim**")**.** The Shareholders Claim seeks to reduce or eliminate certain additional compensation **(**the "**Additional Compensation**") granted to Tenor[7] in relation to its DIP loans through assignments of the Net Arbitration Proceeds arising from Crystallex's arbitration claims (the "**ICSID Proceedings**") against the Bolivarian Republic of Venezuela (**"Venezuela**").  The Shareholders Claim pleads that:

   (a)    the Additional Compensation was obtained through acts or omissions that were oppressive, unfairly prejudicial to - or in unfair disregard of -  the interests of the Shareholders; and

   (b)    to the extent that the Additional Compensation and/or other rights in relation to the DIP Loans provide Tenor with a rate of return in excess of 60% per annum in relation to the said loans, Tenor is not entitled to receive such excess payments in contravention of section 347 (2) of the *Criminal Code*.[8]

10.     Ultimately, the Shareholders Variance Motion and the Shareholders Claim are intended to redress a situation in which the members of the Shareholders Committee

---

[6] Fine Affidavit, paras 74 – 76.

[7] The Shareholders Claim is limited to claims against the additional compensation granted to Tenor by way of assignment of the Net Arbitration Proceeds in relation to the Second, Third and Fourth DIP loan amendments and the related court orders approving them. The Shareholders Claim does not seek to set aside the additional compensation granted to Tenor under its original DIP Loan agreement and the court order approving it

[8] RSC 1985, c C-46.

have seen their interest in Crystallex and the approximately US $1.4 billion award ( the "**ICSID Arbitration Award**") made against Venezuela in the ICSID Proceedings diluted to ▮▮▮ or less of the net proceeds realized after creditor claims. The balance of the Net Proceeds has been taken by Tenor through its DIP lending arrangements.

## PART III - STATEMENT OF ISSUES, LAW & AUTHORITIES

### A. The Rule 21 Standard Applies to this Motion

11.    In this motion, Tenor seeks to have the Shareholders Variance Motion struck prior to the creation of the evidentiary record necessary for the Court to make a determination on its merits.  In essence, Tenor is bringing a Rule 21 motion to strike the Shareholders Committee's notice of motion on the basis that there is no chance of success. As such, the standard applicable in a Rule 21 should be applied to this motion: in order for the Tenor Motion to succeed, there must be no chance of success for the Shareholders Variance Motion.

12.    In a Rule 21 motion, a claim will only be struck if it is plain and obvious that the pleading discloses no reasonable prospect of success.[9] The pleading must also be read generously in favour of the plaintiff, with allowances for drafting deficiencies.[10]

13.    In other words, the Court must find that regardless of what evidence might arise in the course of cross examinations and other pre-hearing steps in relation to the Shareholders Variance Motion, it has absolutely no possibility whatsoever of success.

---

[9] *Knight v. Imperial Tobacco Canada Ltd.*, 3 SCR 45 at paras 17 **Tab 1** of the Shareholder's Brief of Authorities.
[10] *McCreight v. Canada (Attorney General),* 2013 ONCA 483 at para 39, **Tab 2** of the Shareholder's Brief of Authorities.

14.    Based on the: (1) evidence already adduced in support of the Shareholders Variance Motion; (2) the number of areas where the evidence and issues are already contested; and (3) the facts which may arise out of the process leading up to a hearing of the Shareholders Variance Motion, it cannot be said that the Motion is doomed to fail.

### B. The Variation Motion under Rule 59.06 can be successful

15.    Contrary to paragraphs 42 and 43 of Tenor's factum, motions to vary prior court orders under Rule 59.06 are **not** limited to cases where there has been fraud or where new facts have arisen or been discovered after the order in issue was made. This is clear from the face of the Rule:

**AMENDING, SETTING ASIDE OR VARYING ORDER**

***Amending***

59.06 (1) An order that contains an error or arising from an accidental slip or omission or requires amendment in any particular on which the Court did not adjudicate may be amended on a motion in the proceeding.

***Setting Aside or Varying***

(2) A party who seeks to,

(a) have an order set aside or varied on the ground of fraud or of facts arising or discovered after it was made;

(b) suspend the operation of an order;

(c) carry an order into operation; or

(d) obtain other relief than that originally awarded,

may make a motion in the preceding for the relief claimed. [emphasis added]

16.    In the leading case interpreting Rule 59.06 (decided in 2016), the Court of Appeal for Ontario rejected arguments against setting aside or varying an order which were advanced based on the same misconception of the law espoused by Tenor on this motion. Writing on behalf of a unanimous Court in *Clatney v. Quinn Thiele Minealt Grodzki LLP* (*"**Clatney**"*), Epstein JA held as follows:[11]

> 55    The Respondent submits that the application judge's comment in the brief hearing before him that there was a lack of evidence of "fraud, slip, [or] mistake" is fatal to the appellant's claim to have the Consent Order set aside. Furthermore, say the respondents, the objectives of finality and certainty would be undermined if the Consent Order were disturbed.

> 56    I disagree.

> 57    Courts are, with good reason, cautious about setting aside orders, particularly those made on consent. Finality is important in litigation. And, when dealing with the consent order, the objective that parties be held to their agreements is also an important consideration.

> 57    However, as this Court remarked in *Tsaoussis (Litigation Guardian of) v. Baetz* (1998) 41 O.R. (3d) 257 (Ont. C.A.) at P. 272, <u>there are ways, two in fact, by which an individual who would otherwise be bound by a previous order can seek to have that order set aside</u>…

> 59    <u>The role of r. 59.06 is to provide an expeditious procedure for setting aside Court orders. However, it does not prescribe or delineate a particular test</u>: *Mohammed v. York Fire & Casualty Insurance Co….*, Ultimately, under. 59.06 or within a separate action, an individual seeking to set aside an order is required to show "circumstances which warrant deviation from the fundamental principle that a final [order], unless appealed, marks the end of the litigation line. [emphasis added]

---

[11] *Clatney v. Quinn Thiele Minealt Grodzki,* 2016 ONCA 377 at paras 55-59, **Tab 3** of the Shareholder's Brief of Authorities ["**Clatney**"].

17.    The approach taken to Rule 59.06 by the Courts in *Clatney* and companion decisions regarding the same Rule (*Tsaoussis  v. Baetz*[12] and *Mohammed v. York Fire & Casualty*[13]) are also consistent with the more general principles articulated in *Finlay v. Van Paassen* ("**Finlay**") concerning the interpretation of the *Rules of Civil Procedure.* *Finlay* was a successful appeal from a motion judge's decision to dismiss a request to set aside a registrar's order dismissing the appellant's personal injury claim.

18.    Writing for a unanimous Court in *Finlay*, Laskin JA overturned the motion judge's decision and granted an order setting aside the registrar's dismissal, holding as follows:[14]

> In effect, on the motion judge's approach, in order to set aside the registrar's order Finlay had to satisfy each of the four factors. In approaching the motion that way, the motion judge made the very error identified by Goudge J.A. in *Scaini v. Prochnicki…,* There, Goudge J.A. rejected as too "rigid" the notion that to set aside a registrar's dismissal order, a moving party must satisfy each factor. Instead he favoured a "contextual" approach in which the court weighs all relevant considerations to determine the result that is just:
>
>> [21] More importantly, I do not agree that the case law reviewed in *Reid*, *supra*, yields the proposition that an appellant must satisfy each relevant criterion in order to have the registrar's order set aside. None of the cases referred to say so expressly and several proceed on a more contextual basis. For example, in *Steele v. Ottawa-Carleton (Regional Municipality)…,* Master Beaudoin, at para. 17, described the guiding principle in deciding whether to set aside a rule 48.14 dismissal by the registrar as follows:
>>
>>> Ultimately, the Court will exercise its discretion upon a consideration of the relevant factors and will attempt to balance the interests of the parties.

---

[12] *Tsaoussis  v Baetz*, [1998] OJ No 3516 (ONCA), **Tab 4** of the Shareholder's Brief of Authorities.
[13] *Mohammed v York Fire & Casualty*, [2006] OJ No 547 (ONCA), **Tab 5** of the Shareholder's Brief of Authorities.
[14] *Finlay v Van Paassen*, 2010 ONCA 204 at para 27, **Tab 6** of the Shareholder's Brief of Authorities.

[22] I agree with Master Beaudoin.

[23] In my view, a contextual approach to this question is to be preferred to a rigid test requiring an appellant to satisfy each one of a fixed set of criteria.

19.    After a careful and thorough consideration of the facts in issue in *Finlay,* Laskin JA summarizes his reasoning in support of setting aside the dismissal order by stating that "in my view it is in the interests of justice to do so".[15] This clearly identifies the nature of the contextual and flexible approach to be taken to the *Rules* as they apply to situations where parties seek to vary prior orders.

20.    The approach to Rule 59.06 mandated by the appellate cases referenced above, being a contextual, non-delineated analysis to determine what the interests of justice require based on the specific facts in issue, gives meaning to the totality of 59.06, rather than picking and choosing specific rigid elements as Tenor urges. While the Shareholders Committee acknowledges that the finality of orders is a relevant consideration, it is not the only consideration. The overriding focus of the court must be the interests of justice.

21.    In disregard of the applicable law summarized above, paragraph 43 of the Tenor factum incorrectly describes Rule 59.06 as applying solely in "two limited exceptional circumstances…, (i) fraud, or (ii) new facts [which] have arisen or been discovered after the order was made."  In contrast, the Court of Appeal for Ontario in *Clatney* states the rule to be the contrary with remarkable clarity:

60    Thus, a court is not limited to setting aside an order in instances of fraud or facts arising or discovered after the order has been made. This is reflected in a review of this court's decisions, which demonstrates a willingness to depart from finality and set aside

---

[15] *Finlay*, *ibid* at para 30.

court orders <u>where it is necessary in the interests of justice to do so</u>…[16] [emphasis added]

22.    In order to apply the interpretive approach to Rule 59.06 described above and determine whether setting aside or varying the order in issue was in the interests of justice, the Court of Appeal in *Clatney* undertook a thorough analysis of the evidence and facts relating to the making of the impugned order. In so doing, the Court noted that the original application to set aside the order <u>took place with "a complete record and arguments of the parties"</u>.[17]

23.    The Shareholders Variance Motion requires a significant evidentiary record and argument.  Particularly in circumstances where, as here:

(a)    significant information has not been readily available to the moving parties;[18] and

(b)    the moving parties intend to obtain further evidence, including evidence from Tenor and Company representatives concerning the DIP Approval Orders and the circumstances in which they were made,

this Court cannot apply the principles articulated in *Clatney* and related jurisprudence on a summary motion such as the Tenor Motion  The Tenor Motion is therefore ill-conceived and cannot succeed.

---

[16] *Clatney* at para 60, **Tab 3** of the Shareholder's Brief of Authorities.
[17] *Ibid* at para 53.
[18] See for example Fine Affidavit, at paras 56 – 59 and paras 74 – 76.

24.    Tenor brought this motion to demonstrate that the Shareholders Committee has no chance of success in its Variance Motion and, therefore, should not be given the opportunity to adduce evidence and have the Motion heard. In support of this position, Tenor and Crystallex rely on the very facts that the Shareholders Committee contests in its Variance Motion materials. Tenor and Crystallex also rely on the absence of evidence on certain issues in the Variance Motion, despite the fact that the Shareholders Committee has until June 1, 2018 to adduce its evidence under the timetable referenced in Justice Hainey's Endorsement, dated January 30th, 2018 (the "**Motion to Vary Timetable**"). [19] Examples of these contested facts and the additional evidence the Committee intends to adduce are provided below.

### C. Contested Facts and Further Evidence

### i.    Prejudice to Shareholders

25.    In its factum, Crystallex states that the Shareholders "have suffered no prejudice, let alone any unfair prejudice required by the provisions of the oppression remedy "because the reduction in the shareholders'' interest in the Arbitration Award is the "direct result of Crystallex's need to raise financing to fund the prosecution of the Arbitration as well as the enforcement and collection of the Award."[20]

26.    Crystallex's argument on absence of prejudice takes as its starting point that the exact DIP lending arrangements which the Company permitted are the only DIP arrangements that were possible. In other words, it was inevitable from the beginning of

---

[19] **Tabs 5 and 6** of the Shareholders' Compendium.
[20] Factum of Crystallex International Corporation (The "**Crystallex Factum**") at para 4.

the case that ███ of the net arbitration proceeds would be sacrificed to a DIP lender. This states a conclusion rather than an argument.

27.     The Shareholders Committee has suffered prejudice as a result of the dilution of their interest in the Net Arbitration Proceeds. If the Shareholders Committee's position is correct (which must be assumed on a motion like the Tenor Motion), the prejudice suffered is the failure of the Company to fairly protect shareholder interests <u>while obtaining DIP financing</u>. It is a key contention of the Shareholders Committee that the Company and Tenor failed to properly explore alternatives after the first DIP loan and that the Company effectively became hostage to Tenor's ever-increasing demands over the course of the further rounds of DIP lending. The prejudice to shareholders is the loss of any opportunity to obtain better terms and preserve more of the Net Arbitration Proceeds for shareholders, as was the stated intention of the Company at the commencement of the CCAA proceedings.[21]

### ii.     Participation of Shareholders

28.     In its factum, Crystallex states that the Shareholders should be barred from bringing their Variance Motion because "at any time"  the Shareholders' could have stepped forward and offered to provide the Company with the required financing in order to protect and maintain their interest, "but declined to do so".[22] This is directly contrary to

---

[21] Fine Affidavit at para 22 and 30.
[22] The Crystallex Factum at para 5.

the evidence put forward in Mr. Fine's Affidavit and contrary to additional evidence the Committee will file in accordance with the Motion to Vary Timetable.[23]

29.    For example, in his Affidavit, Mr. Fine describes his attempts to marshal a group of shareholders to provide additional funding in the summer of 2013, which were thwarted by the Company.[24]

> 42. In the later summer of 2013, I learned that Crystallex was seeking approximately $3-4 million in further funding.  Shortly thereafter, I spoke with Richard Marshall and offered to contact large Crystallex shareholders and determine whether they would be interested in providing the additional financing. After receiving preliminary commitments to fund, I advised Marc Oppenheimer, the former Crystallex CEO and a member of the Crystallex Board of Directors, that a group of shareholders were willing to provide the additional $3-4 million in funding sought by the company.

> 43. In or around December, 2013 I was advised by Richard Marshall that the need for additional financing had increased from $3-4 million to $15 million. I was alarmed at the sudden increase in the amount of financing sought. I arranged for a phone call with Mr. Oppenheimer to discuss the matter and I expressed my view that it appeared that Crystallex was taking actions that were resulting in breaches of its DIP loan arrangements (particularly breaches of the budget required under the DIP) and creating circumstances that allowed the DIP Lender to increase its funding and seek a larger portion of the Arbitration award. Mr. Oppenheimer asked me how many shares I owned and I gave him

---

[23] **Tabs 5 and 6** of the Shareholders' Compendium.
[24] Fine Affidavit at paras 42-44, and 46, at **Tab 3** of the Shareholders Compendium.

this information.  Mr. Oppenheimer subsequently made arrangements for me to speak with Crystallex board members on a conference call. In advance of that call, Mr. Oppenheimer told me that an offer would be made to pay me $3 – 4 million and that it was quite important that Tony Reyes, another Crystallex shareholder, be on the call.

44. On or about, March, 2014, I participated in a call with Mr. Oppenheimer, Tony Reyes and David Kay, one of the DIP Lender's two appointees to the Crystallex Board. I understand from statements made on that call that privilege may be asserted by the other participants with respect to the matters discussed on that call, and as such I am not disclosing the substance of what transpired. I am prepared to give evidence as to the contents of the discussion if the other participants do not object to me doing so.

…

46. Crystallex did not provide any formal notice to shareholders that it was seeking additional financing nor did it issue any press releases on its website about the Third DIP Loan.  I was unaware of the Third DIP Approval Order until I saw the Order when it was eventually posted on the Ernst & Young Monitor's website.

30.    Tenor also contends that there was nothing to stop shareholders from protecting against the dilution of their interests in the Net Arbitration Proceeds by participating in DIP financing rounds. The contemporaneous evidence on behalf of the Company reveals just the opposite. In an affidavit sworn April 9, 2014 in connection with the Third DIP Loan amendment by Robert Fung, which was not available to Mr. Fine or any other shareholder

at the time of the approval of the Third DIP Loan, Mr. Fung indicates that other than unsolicited offers of financing which the Company rejected:

> The Company did not engage in another formal process to solicit additional financing from alternative sources because there are certain structural impediments to financing for the reasons that follow.[25]

31.     The structural impediments described by Mr. Fung arise from Tenor's credit agreement with Crystallex. They include requirements to obtain Tenor's consent before incurring any additional priority indebtedness, Tenor's existing entitlements to Net Arbitration Proceeds, restrictions on incurring even subordinated debt and provisions requiring that 50% of proceeds of subordinated debt raised in excess of US $10 million be paid to Tenor.

32.     Tenor's unsupported factual contention that the shareholders could participate in DIP financing is further contradicted by the actual events surrounding the Fourth DIP Loan amendment. As noted in the Monitor's 11th Report, it was contemplated that existing equity holders or noteholders would be permitted to subscribe to further financing arrangements to provide funding to Crystallex. The 11th Report goes on to describe a process by which existing equity holders and noteholders would be given formal notice of an opportunity to provide Crystallex with financing and would have five days to provide their share of such financing, subject to certain other prescribed terms. There is no

---

[25] The Eleventh Report of the Monitor, see Fine Affidavit, **Tab 3** of the Shareholders' Compendium at **Exhibit K**.

evidence to suggest that any notice was provided to permit participation in the Fourth DIP Loan. Mr. Fine has sworn that no such notice was given to his knowledge.[26]

33.     Tenor also contends that some sort of proxy notice was given to shareholders through the participation of Mr. Reyes and another shareholder who is also a noteholder. While Tenor does not specify the identity of the shareholder/noteholder allegedly on notice of DIP financing approvals, an entity named Greywolf is on the service list and the Shareholders Committee understands that Greywolf is both a shareholder and a noteholder. Contrary to Tenor's factual contention, neither Mr. Reyes nor Greywolf are representatives of any other shareholders. Further, Greywolf's interests as both a noteholder and a shareholder are fundamentally different than the interests of the equity holders who comprise the Shareholders Committee. Mr. Reyes' counsel recently advised the court that Mr. Reyes has at some point in time also become a participant in a Tenor fund.

### iii.    Notice

34.     Tenor argues that the Shareholders Committee should be barred from bringing their Variance Motion because they failed to appeal the orders approving the DIP Loans "despite having had notice and many opportunities to do so".[27]  This is contested by the Shareholders Committee in the Statement of Claim, [28] the Fine Affidavit, [29] and in

---

[26] Fine Affidavit at para 51.
[27] Factum of the DIP Lender, at paras 4 and 7.
[28] Exhibit B to the Fine Affidavit, **Tab 3 – B** of the Shareholders Compendium.
[29] The Fine Affidavit at paras 37, 29, 40, 46, 52, 78 at **Tab 3** of the Shareholders Compendium.

additional evidence that will be adduced by the Committee in accordance with the Motion to Vary Timetable.

35.    In his Affidavit, Mr. Fine also notes that Crystallex did not provide any notice that it was seeking additional financing prior to moving for approval of the Second, Third and Fourth DIP Loans nor did it issue any press releases to that effect, despite the fact that it issued unrelated press releases after its CCAA filing.[30] Mr. Fine did not become aware of the Second, Third, or Fourth DIP Loan approval Orders until after they were made.[31]

36.    Whether or not the Shareholders had notice of the orders they seek to vary, before those orders were granted, is a critical question in determining what is in the interests of justice.

iv.    **Awareness of the Proceedings**

37.    In its factum, Tenor relies on the allegation that the Shareholders Committee was aware of the proceedings shortly after the granting of the Initial Order.[32] The Shareholders Committee intends on adducing evidence to the contrary as it is permitted to do under the Motion to Vary Timetable.[33]

38.    The inconsistencies between Tenor and Crystallex's version of events and the Committee's version of events is significant for two reasons. First, because Tenor and Crystallex are relying on facts that are contested to argue that the Shareholders Committee should not be permitted to adduce evidence and bring the Variance Motion

---

[30] Fine Affidavit, at paras 37, 29 at **Tab 3** of the Shareholders' Compendium.
[31] Fine Affidavit, at paras 39, 40, 46 and 49 – 52.
[32] Tenor Factum at para 49.
**[33] Tabs 5 and 6,** respectively of the Shareholders' Compendium.

because it has no chance of success on the basis of the very factual allegations the Shareholders Committee disputes.  This kind of bootstrapping should not be permitted.

39.    The inconsistencies between the evidence of the Shareholders Committee and the positions put forward (as facts) in Tenor and Crystallex's facta are also significant because the test applicable on the Shareholders Variation Motion requires the court to consider what is in the interests of justice. To answer this question, the Court must first making findings as to the facts of the case. Particularly, with respect to critical facts that go to the culpability of the parties involved.

### D.  A Motion to Vary under Rule 37.14 can be successful

40.     The Ontario Court of Appeal has confirmed that the relief sought under Rule 37.14(1)(a) is discretionary, requires balancing of the interests of the parties involved, and depends on the evidence in each particular case. It is designed to "address and remedy possible injustice resulting from temporary suspension of the normal adversarial process".[34]

41.    The requirement that a motion under Rule 37.14 be brought forthwith has also been given a broad interpretation. When considering the "forthwith" requirement in Rule 37.14, Chief Justice Strathy concluded that the court must consider the purpose of the rule itself, the purpose of the requirement for prompt action, the length of the delay, the reasons and circumstances of the delay, and all the surrounding circumstances of the

---

[34] *Wayne v. 1690416 Ontario Inc.,* 2012 ONSC 4861 at para 67, aff'd 2013 ONCA 108, **Tabs 7 and 8** of the Shareholder's Brief of Authorities.

<u>case</u>".[35] These are contextual inquires that cannot be made without a full evidentiary record.

### E. The Limitation Period has not Expired

42.    The Court of Appeal has confirmed that where there is ongoing oppressive conduct the limitations clock will not commence with the incidence of the first oppressive act.[36]

43.    The Shareholders Claim alleges that, among other things, the granting of the compensation to Tenor in the form of percentage interests in the Net Arbitration Proceeds Award was oppressive, in unfair disregard of, and unfair prejudicial to the interests of the shareholders. This oppression is ongoing and has yet to be remedied. As such, the limitation period with respect to the Shareholders Claim has not yet commenced.

### F. Section 142 does not Apply

44.    Section 142 of the *Courts of Justice Act* states that a "person is not liable for an act done in good faith in accordance with an order or process of a court in Ontario."[37] This section is not applicable in this case because neither the Shareholder Variation Motion nor the Shareholder Claim contemplate an imposition of liability on the Company or on Tenor.

45.    A liability is a debt or an obligation. Section 142 can only be used to avoid liability, it cannot be used to secure an entitlement. In *Paul v Sasso*, the Court highlights this

---

[35] *Ontario (Attorney General) v 15 Johnswood Crescent*, [2009] OJ No 3971 at para 45, **Tab 9** of the Shareholder's Brief of Authorities.
[36] *Maurice v Alles,* 2016 ONCA 287 at paras 52-54, **Tab 10** of the Shareholder's Brief of Authorities.
[37] *Courts of Justice Act*, R.S.O. 1990, c. C.43 at s. 142.

distinction between liability and entitlement in the context of the fundamental principle that witnesses and parties are entitled to absolute immunity from subsequent liability for their testimony in judicial proceedings.[38]

46.     The Court concludes that while the principal of witness immunity can be applied to immunize an expert witness from liability where the expert's client sues her for damages arising from negligent testimony, it cannot be used by the expert to compel payment for an outstanding invoice. [39] In essence, it can be used as a shield, but not a sword.

47.     The distinction between entitlement and liability is applicable to section 142, which on its face only grants immunity from liability, it does not allow a person to secure an entitlement. Neither the Variation Motion nor the Shareholders Claim seek to impose liability on either Crystallex or Tenor. They only seek to reduce Tenor's entitlement in the ICSID Award. Section 142 cannot be used for that purpose. Furthermore, section 142 should not be applied because the Shareholders Committee is moving to vary the very orders that are relied on by Tenor and Crystallex under section 142.

## PART IV - ORDER REQUESTED

48.     Tenor, and somewhat surprisingly given its duties to shareholders, the Company seek to prevent the Shareholders Committee from placing a full evidentiary record before this Court so that a fair hearing can be granted in relation to the Shareholders Variance Motion. They take this approach in the face of contested facts and serious, substantiated arguments by the Shareholders Committee that a drastic dilution of equity interests has

---

[38] *Paul v. Sasso*, 2016 ONSC 7488 at para 16, **Tab 11** of the Shareholder's Brief of Authorities.
[39] *Ibid*, at para 4.

occurred unfairly and without notice to those who stand to be most affected. The law applicable to the Shareholders Variance Motion does not permit this.

49.     The Shareholder Committee request that the Tenor Motion be dismissed, with costs payable by Tenor.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 9th day of March, 2018.

_____
Clifton P Prophet

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Tel:    416-862-7525
Fax:    416-862-7661

**Clifton P Prophet (#34845K)**
Tel:       416-862-3509
Fax:       416-863-3509
clifton.prophet@gowlingwlg.com

**Nicholas Kluge (#44159T)**
Tel:       416-369-4610
Fax:       416-862-7661
nicholas.kluge@gowlingwlg.com

**Delna Contractor (#68693E)**
Tel: 416-862-4322
Fax: 416-862-7661
delna.contractor@gowlingwlg.com

Lawyers for the Ad Hoc Committee of
Shareholders of Crystallex Corporation Ltd.

## SCHEDULE "A"

## LIST OF AUTHORITIES

1.  *Knight v Imperial Tobacco Canada Ltd*, [2011] 3 SCR 45

2.  *McCreight v Canada (Attorney General),* 2013 ONCA 483

3.  *Clatney v Quinn Thiele Minealt Grodzki LLP*, 2016 ONCA 377

4.  *Tsaoussis  v Baetz*, [1998] OJ No 3516 (ONCA)

5.  *Mohammed v York Fire & Casualty,* [2006] OJ No 547 (ONCA)

6.  *Finlay v Van Paassen,* 2010 ONCA 204

7.  *Wayne v 1690416 Ontario Inc*, 2012 ONSC 4861

8.  *Wayne v 1690416 Ontario Inc*, 2013 ONCA 108

9.  *Ontario (AG) v 15 Johnswood Crescent*, [2009] OJ No 3971 (OSCJ)

10.  *Maurice v Alles*, 2016 ONCA 287

11.  *Paul v Sasso*, 2016 ONSC 7488

**SCHEDULE "B"**

**TEXT OF STATUTES, REGULATIONS & BY – LAWS**

**Rule 21 of the *Rules of Civil Procedure*, RRO 1990 Reg 194**

21.01 (1) A party may move before a judge,

(a) for the determination, before trial, of a question of law raised by a pleading in an action where the determination of the question may dispose of all or part of the action, substantially shorten the trial or result in a substantial saving of costs; or

(b) to strike out a pleading on the ground that it discloses no reasonable cause of action or defence,

and the judge may make an order or grant judgment accordingly.  R.R.O. 1990, Reg. 194, r. 21.01 (1).

(2) No evidence is admissible on a motion,

(a) under clause (1) (a), except with leave of a judge or on consent of the parties;

(b) under clause (1) (b).  R.R.O. 1990, Reg. 194, r. 21.01 (2).

**Rule 37.14 of the *Rules of Civil Procedure*, RRO 1990 Reg 194**

37.14 (1) A party or other person who,

(a) is affected by an order obtained on motion without notice;

(b) fails to appear on a motion through accident, mistake or insufficient notice; or

(c) is affected by an order of a registrar,

may move to set aside or vary the order, by a notice of motion that is served forthwith after the order comes to the person's attention and names the first available hearing date that is at least three days after service of the notice of motion.  R.R.O. 1990, Reg. 194, r. 37.14 (1); O. Reg. 132/04, s. 9.

(2) On a motion under subrule (1), the court may set aside or vary the order on such terms as are just.  R.R.O. 1990, Reg. 194, r. 37.14 (2).

(3) A motion under subrule (1) or any other rule to set aside, vary or amend an order of a registrar may be made to a judge or master, at a place determined in accordance with rule 37.03 (place of hearing of motions).  R.R.O. 1990, Reg. 194, r. 37.14 (3).

2

(4) A motion under subrule (1) or any other rule to set aside, vary or amend an order of a judge may be made,

    (a) to the judge who made it, at any place; or

    (b) to any other judge, at a place determined in accordance with rule 37.03 (place of hearing of motions).  R.R.O. 1990, Reg. 194, r. 37.14 (4).

(5) A motion under subrule (1) or any other rule to set aside, vary or amend an order of a master may be made,

    (a) to the master who made it, at any place; or

    (b) to any other master or to a judge, at a place determined in accordance with rule 37.03 (place of hearing of motions).  R.R.O. 1990, Reg. 194, r. 37.14 (5).

(6) A motion under subrule (1) or any other rule to set aside, vary or amend an order made by a judge or panel of the Court of Appeal or Divisional Court may be made,

    (a) where the order was made by a judge, to the judge who made it or any other judge of the court; or

    (b) where the order was made by a panel of the court, to the panel that made it or any other panel of the court.  R.R.O. 1990, Reg. 194, r. 37.14 (6); O. Reg. 82/17, s. 4, 17.


**Rule 59.06 of the *Rules of Civil Procedure*, RRO 1990 Reg 194**

59.06 (1) An order that contains an error arising from an accidental slip or omission or requires amendment in any particular on which the court did not adjudicate may be amended on a motion in the proceeding.  R.R.O. 1990, Reg. 194, r. 59.06 (1).

(2) A party who seeks to,

    (a) have an order set aside or varied on the ground of fraud or of facts arising or discovered after it was made;

    (b) suspend the operation of an order;

    (c) carry an order into operation; or

    (d) obtain other relief than that originally awarded,

may make a motion in the proceeding for the relief claimed.  R.R.O. 1990, Reg. 194, r. 59.06 (2).

**Section 142 of the *Courts of Justice Act*, RSO 1990 c C.43**

142 A person is not liable for any act done in good faith in accordance with an order or process of a court in Ontario.  R.S.O. 1990, c. C.43, s. 142.


**Section 347 of the *Criminal Code*, RSC 1985 c C-46.**

**Criminal interest rate**

**347 (1)** Despite any other Act of Parliament, every one who enters into an agreement or arrangement to receive interest at a criminal rate, or receives a payment or partial payment of interest at a criminal rate, is

> **(a)** guilty of an indictable offence and liable to imprisonment for a term not exceeding five years; or

> **(b)** guilty of an offence punishable on summary conviction and liable to a fine not exceeding $25,000 or to imprisonment for a term not exceeding six months or to both.

**(2)** [definitions]

**(3)** Where a person receives a payment or partial payment of interest at a criminal rate, he shall, in the absence of evidence to the contrary, be deemed to have knowledge of the nature of the payment and that it was received at a criminal rate.

**(4)** In any proceedings under this section, a certificate of a Fellow of the Canadian Institute of Actuaries stating that he has calculated the effective annual rate of interest on any credit advanced under an agreement or arrangement and setting out the calculations and the information on which they are based is, in the absence of evidence to the contrary, proof of the effective annual rate without proof of the signature or official character of the person appearing to have signed the certificate.

**(5)** A certificate referred to in subsection (4) shall not be received in evidence unless the party intending to produce it has given to the accused or defendant reasonable notice of that intention together with a copy of the certificate.

**(6)** An accused or a defendant against whom a certificate referred to in subsection (4) is produced may, with leave of the court, require the attendance of the actuary for the purposes of cross-examination.

**(7)** No proceedings shall be commenced under this section without the consent of the Attorney General.

**(8)** This section does not apply to any transaction to which the *Tax Rebate Discounting Act* applies.

Court File No. CV-11-9532-OOCL

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED**
**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION**

| | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST**<br><br>PROCEEDING COMMENCED AT TORONTO |
| | **FACTUM OF AD HOC COMMITTEE OF**<br>**SHAREHOLDERS**<br>**(Motion of the DIP Lender)** |
| | **GOWLING WLG (CANADA) LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto ON M5X 1G5<br><br>Tel:    416-862-7525<br>Fax:    416-862-7661<br><br>**Clifton P Prophet (#34845K)**<br>Tel:     416-862-3509<br>Fax:    416-863-3509<br>*clifton.prophet@gowlingwlg.com*<br>**Nicholas Kluge (#44159T)**<br>Tel:     416-369-4610<br>Fax:    416-862-7661<br>*nicholas.kluge@gowlingwlg.com*<br>**Delna Contractor (#68693E)**<br>Tel: 416-862-4322<br>Fax: 416-862-7661<br>delna.contractor@gowlingwlg.com<br><br>Lawyers for Ad Hoc Committee of Shareholders of Crystallex<br>International Corporation<br>**File Number: T1006179** |

Court File No. CV-11-9532-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

---

**FACTUM OF THE DIP LENDER**
**(Returnable March 28, 2018)**

---

February 23, 2018

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSO#: 20027U
Tel:    416.869.5784
Fax:   416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSO#: 59510J
Tel:     416.860.6465
Fax :    416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSO#: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Lara Jackson  LSO #: 41858M
Tel:     416.860.2907
Fax:     416.640.3108
ljackson@casselsbrock.com

Jane Dietrich  LSO #: 49302U
Tel:     416.860.5223
Fax:     416.640.3144
jdietrich@casselsbrock.com

Lawyers for the Moving Parties, Tenor KRY
Cooperatief U.A.,Tenor Special Situation I, LLC
and Luxembourg Investment Company 31 S.a.r.l.

Court File No. CV-11-9532-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

---

**FACTUM OF THE DIP LENDER**
**(Returnable March 28, 2018)**

---

Page No.

PART I - OVERVIEW ...........................................................................................................1

PART II - FACTS ...............................................................................................................4

    (A)    LAS CRISTINAS GOLD PROJECT ............................................................ 4

    (B)    THE CCAA PROCEEDINGS .................................................................... 5

    (C)    COURT-APPROVED DIP FINANCING ...................................................... 6

    (D)    ARBITRATION AWARD .........................................................................10

    (E)    SHAREHOLDER MOTION ......................................................................10

PART III - ISSUES ...........................................................................................................11

PART IV - LAW AND ARGUMENT ...................................................................................12

    (A)    THE FINAL ORDERS ARE A COMPLETE BAR TO THE PROPOSED CLAIMS.....12

    (B)    NO BASIS IN LAW FOR VARYING THE FINAL ORDERS......................................12

    (i)    Inherent Jurisdiction ...............................................................................14

    (ii)    No Basis Under Rule 59.06(2) .................................................................15

    (iii)    No Basis Under Rule 37.14......................................................................15

    (a)    Notice Effected ......................................................................................16

    (b)    Failure to Move "Forthwith" ....................................................................17

    (C)    LEGAL BARRIERS TO VARIATION.......................................................18

    (i)    Reliance on Final Orders .........................................................................19

    (ii)    Claims Barred by the Courts of Justice Act .............................................20

    (iii)    Claims Barred by the Limitations Act ......................................................20

    (iv)    Claims regarding criminal interest rate are bound to fail.......................21

PART V - CONCLUSION AND ORDER REQUESTED ..............................................................22

Court File No. CV-11-9532-00CL

***ONTARIO***
***SUPERIOR COURT OF JUSTICE***
***COMMERCIAL LIST***

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

---

**FACTUM OF THE DIP LENDER**
**(Returnable March 28, 2018)**

---

## PART I - OVERVIEW

Notwithstanding liberal opportunities to appeal, <u>our judicial system
operates on the principle that final judgments are intended to be
just that – final. If judgments did not, in general, have finality, the
consequences would be at least as serious as the fact that an
injustice may have been done. These consequences include the
disturbance of the parties' reliance on judgments</u> and the erosion
of the moral authority of the judicial system as final arbiter of legal
disputes. Related to this is how promptly the objection is raised,
for the parties' reliance on a judgment and the strength of the
judgment's moral authority are to an important degree a function
of the length of time during which a judgment's finality remains in
limbo. [emphasis added]

*- Ontario Court of Appeal in HOJ National Leasing Corp. (Re)
2008 ONCA 390,* para 30 (DIP Lender BOA, Tab 5)

- 2 -

1.      The DIP Lender[1] has relied on final orders of this Court[2] (the "**Final Orders**") to advance and permit Crystallex International Corporation ("**Crystallex**") access to over US$75 million of principal amount of loans pursuant to a DIP Credit Agreement, as amended by a series of court-approved Amendment Agreements (as hereinafter defined).

2.      The Final Orders, made over the last four years in these proceedings under the *Companies' Creditors Arrangement Act*[3] ("**CCAA**"), declared that the terms of the DIP Credit Agreement, including the Amendment Agreements, are fair, reasonable and appropriate and that payment of the DIP Lender's entitlements by Crystallex would not constitute oppressive conduct or otherwise be challengeable or voidable under any applicable law.

3.      The Final Orders were critical factors for the DIP Lender (and its investors) in making very difficult and risky investment decisions over many years in respect of Crystallex's arbitration claim against the government of Venezuela (the "**Arbitration Claim**").  As a result of the efforts of Crystallex, and the support and financing provided by the DIP Lender, there is finally a real prospect of recovery in respect of the Arbitration Claim, with an unprecedented arbitration award of US$1.3 billion and a subsequent settlement with Venezuela.

4.      Meanwhile, the members of the Ad-Hoc Shareholder Committee (the "**Complaining Shareholders**") have sat on the sidelines and failed to participate in this CCAA proceeding, despite having had notice and many opportunities to do so.  After the appeal periods for the Final Orders have long since expired, years have passed and there is now a greatly improved

---

[1] Tenor KRY Cooperatief U.A., Tenor Special Situation I, LLC and Luxembourg Investment Company 31 S.a.r.l (collectively, the "DIP Lender").
[2] Order re Additional CCAA Financing, dated June 5, 2013, ("Second Amendment Agreement Order"), Motion Record and Compendium of the DIP Lender ("DIP Lender Compendium") Tab 16, p. 251; Order re Second Additional CCAA Financing, dated April 14, 2014 ("Third Amendment Agreement Order") dated April 14 2014, DIP Lender Compendium Tab 24, p. 340; Approval Order, dated December 18, 2014 ("Fourth Amendment Agreement Order"), DIP Lender Compendium Tab 34, p. 406 (collectively, the "Final Orders").
[3] *Companies' Creditors Arrangement Act*, RSC 1985, c. C-36, as amended (the "CCAA").

prospect for recovery, the Complaining Shareholders are seeking not simply to vary, but overturn the terms of the Final Orders. They would retrospectively eliminate the entitlements which the DIP Lender earned and relied upon in advancing the financing and extending the maturity of its debt on numerous occasions.

5.      The Complaining Shareholders seek to commence litigation asserting oppression and claims based on breach of the interest provisions of the *Criminal Code*[4] (the "**Proposed Claims**"); relief that is in direct conflict with the explicit terms of the Final Orders.  As a result, the Final Orders are a complete bar to the Proposed Claims.

6.      Further, the delay by the Complaining Shareholders in bringing their motion and the corresponding reliance by the DIP Lender, among others, on the Final Orders, are similarly dispositive of the Complaining Shareholders' attack on the Final Orders.

7.      Finally, the Complaining Shareholders rely on vague assertions of lack of notice and unfairness as the foundation to completely unwind the Final Orders so that the Complaining Shareholders can proceed to commence the Proposed Claims.  The Complaining Shareholders had the requisite notice and elected to do nothing until this opportunistic challenge.

8.      Accordingly, the pending motion of the Complaining Shareholders (the "**Shareholder Motion**") should be summarily dismissed because:

> (a)      the Proposed Claims cannot be asserted in the face of the Final Orders;

> (b)      the Shareholder Motion fails to assert any tenable basis in law for this Court to vary or amend the Final Orders to enable the Proposed Claims to proceed; and

---

[4] RSC 1985, c. C-46, ("*Criminal Code*") s. 347.

- 4 -

(c)    there are additional legal barriers which prevent the variation of the Final Orders, including the fact that the Proposed Claims are statute-barred and are otherwise bound to fail, and that the parties have relied in good faith on the Final Orders over the past four years.

9.    There is simply no basis to upset the remarkable progress and potential success of this CCAA proceeding.  On the other hand, failing to clearly uphold the finality and enforceability of final CCAA financing orders would throw into doubt the ability of <u>any</u> DIP lender in any CCAA proceeding to rely upon Court approval of the terms and priority of DIP financing. This would in turn reduce, if not eliminate the availability of DIP financing in Canada, all to the frustration of the purposes and goals of the CCAA.  As the Supreme Court of Canada observed in a similar context, it would "destabilize the certainty which is essential for commercial affairs and which is particularly important in financing a workout for an insolvent corporation."[5]

**PART II - FACTS**

**(A)    LAS CRISTINAS GOLD PROJECT**

10.    Crystallex's need for CCAA protection and the financing provided by the DIP Lender arose from a dispute with Venezuela regarding Crystallex's Las Cristinas Gold Project (the "**Project**").  In February 2011, Venezuela unilaterally and unlawfully rescinded Crystallex's rights to the Project without compensation and Crystallex submitted the Arbitration Claim of US$3.8 billion against Venezuela.[6]

---

[5] *Sun Indalex Finance, LLC v United Steelworkers,* 2013 SCC 6, para. 240, DIP Lender Book of Authorities ("BOA") Tab 1.
[6] First Report of the Monitor, dated January 18 2012, paras. 8-10, DIP Lender Compendium Tab 5, p. 37.

- 5 -

**(B)     THE CCAA PROCEEDINGS**

11.     Other than pursuit of the Arbitration Claim, Crystallex had no assets (aside from surplus processing equipment) or operations to provide value to its stakeholders and provide any recovery for its creditors.   Crystallex was insolvent with debts due and owing in excess of US$100 million and had no source of income to pursue the Arbitration Claim. [7]

12.     On December 23, 2011, this Court made an order (the "**Initial Order**") which granted protection to Crystallex under the CCAA and appointed Ernst & Young Inc. as monitor (the "**Monitor**").[8]

13.     Certain of Crystallex's noteholders (the "**Noteholders**") opposed the CCAA application and brought their own counter-application under the CCAA which proposed, among other things, the cancellation of all existing common shares.   The Court rejected the Noteholders' application, and granted the application of Crystallex.[9]

14.     As required by the Initial Order and the CCAA, the Monitor published notices of the CCAA proceeding and created a website on which it posted its reports, Court Orders and motion materials.[10]   Crystallex also issued a press release with respect to the CCAA filing and the Initial Order, which referenced the Monitor's website.[11]

15.     Parties who filed Notices of Appearances within the CCAA proceeding were added to the Service List maintained by the Monitor (including two shareholders represented by separate

---

[7] First Report of the Monitor, dated January 18, 2012, paras. 12-13, DIP Lender Compendium Tab 5, p. 38.
[8] Initial Order, December 23, 2011, DIP Lender Compendium Tab 3, p. 9.
[9] Reasons of Justice Newbould re Initial Order, DIP Lender Compendium Tab 4, pp. 1-2.
[10] First Report of the Monitor, dated January 18, 2012, paras. 17-20 and Appendix C, DIP Lender Compendium Tab 5, pp. 39-40.
[11] Affidavit of Justin Fine, sworn December 15, 2017 ("Fine Affidavit") Exhibit "H", DIP Lender Compendium Tab 50, p. 587.

counsel, Juan Antonio Reyes and Greywolf Capital Management LP).  After being placed on the Service List, parties were thereafter served with motion materials in this proceeding.

**(C)    COURT-APPROVED DIP FINANCING**

16.    Following the Initial Order, Crystallex commenced an auction process, in conjunction with its financial advisor and under the supervision of the Monitor, to seek DIP financing primarily to fund pursuit of the Arbitration Claim.[12]  At the conclusion of that competitive process, the DIP Lender's bid was selected.[13]  Since then, no noteholder or shareholder has offered to provide the Company financing.[14]

17.    On April 16, 2012, this Court approved the original DIP Credit Agreement. The Noteholders strenuously opposed this approval, and their objections were considered by this Court and the Ontario Court of Appeal, and dismissed.[15]   One shareholder, Mr. Reyes, appeared by counsel and supported the approval of the DIP Credit Agreement.[16]

18.    A key feature of the DIP Credit Agreement was the DIP Lender's earned entitlement to a percentage of the Net Arbitration Proceeds ("**NAP**"), which are the proceeds from the Arbitration Claim after payment of certain expenses, principal and interest on the DIP loan, taxes and unsecured creditor claims (including the Noteholder claims).

---

[12] Third Report of the Monitor, dated April 3, 2012, paras. 38-62, DIP Lender Compendium Tab 7, pp. 69-74.
[13] Third Report of the Monitor, dated April 3, 2012, para. 127, DIP Lender Compendium Tab 7, p. 87.
[14] Tenth Report of the Monitor, dated June 4, 2013, paras. 48-50, DIP Lender Compendium Tab 15, pp. 243-244; Eleventh Report of the Monitor, dated April 12, 2014, paras. 40-41, DIP Lender Compendium Tab 23, p. 40-41; Unofficial Typed Endorsement of Justice Newbould, pp. 2-3, 7, DIP Lender Compendium Tab 37, p. 439.
[15] Decision of the Court of Appeal for Ontario, dated June 13, 2012, DIP Lender Compendium Tab 12; leave to appeal to the Supreme Court of Canada refused, *Crystallex International Corp. Re*, (2012) SCCA No. 254, DIP Lender Compendium Tab 13.
[16] Endorsement of Justice Newbould, dated April 16, 2012, para. 3, DIP Lender Compendium Tab 10, p. p.110.

19.    Over the following three years, Crystallex required additional funding, primarily to continue to pursue the Arbitration Claim.  The DIP Lender and Crystallex negotiated the terms of a series of amendments to the DIP Credit Agreement (the "**Amendment Agreements**"). Each of the Amendment Agreements were supported by the Monitor and approved by this Court.  The chart below summarizes key financial terms of the original DIP Credit Agreement and the Amendment Agreements:

| Agreement | Date of Final Order | Principal Advanced | Interest | Additional Compensation |
|---|---|---|---|---|
| DIP Credit Agreement[17] | April 16, 2012 | US$36 million | 10% per annum, compounded semi-annually | 35% of NAP |
| Second Amendment Agreement[18] | June 5, 2013 | US$11.1 million | 10% per annum, compounded semi-annually | 14.874% of NAP |
| Third Amendment Agreement[19] | April 14, 2014 | (a) US$12.1 million (b) US$3.333 million | 10% per annum, compounded semi-annually | (a) 16.214% of NAP (b) 4.466% of NAP |
| Fourth Amendment Agreement[20] | December 18, 2014 | US$██████ | 10% per annum, compounded semi-annually | ██% of NAP[21] |

20.    On the same date as the Order approving the Fourth Amendment Agreement, the Court issued an Order (the "**NAP Transfer Agreement Order**")[22] approving the terms of the Net Arbitration Proceeds Transfer Agreement (the "**NAP Transfer Agreement**") among Crystallex,

---

[17] Senior Secured Credit Agreement, dated as of April 23, 2012 (the "DIP Credit Agreement"), DIP Lender Compendium Tab 11.
[18] Second Credit Agreement Amendment Agreement, dated as of June 5, 2013 (the "Second Amendment Agreement"), DIP Lender Compendium Tab 21.
[19] Third Credit Agreement Amendment Agreement, dated as of April 16, 2014 (the "Third Amendment Agreement"), DIP Lender Compendium Tab 28.
[20] Fourth Credit Agreement Amendment Agreement, dated as of March 12, 2015 (the "Fourth Amendment Agreement"), DIP Lender Compendium Tab 38.
[21] Subject to the NAP Transfer Agreement, described in para. 20.
[22] DIP Lender Compendium Tab 35.

the DIP Lender, Robert Fung and Marc Oppenheimer.[23] Under the NAP Transfer Agreement, the DIP Lender transferred a portion of its NAP entitlement earned pursuant to the Fourth Amendment Agreement to Robert Fung and Marc Oppenheimer.[24]

21.      The motion materials and Monitor's reports for approval of the Final Orders were served on the Service List. Although certain court materials were significantly redacted, those redactions were approved by the Court based on the circumstances at that time in order to protect the Arbitration Claim. However, all motion materials and certain Monitor's reports, other than those related to the Fourth Amendment Agreement, publicly disclosed the amounts of the additional loans and percentage of the NAP earned by the DIP Lender.[25]

22.      The court materials with respect to the Fourth Amendment Agreement did not publicly disclose the amount of the additional loan or the percentage of the NAP earned by the DIP Lender.   Those redactions were approved by the Court, over the objections of both the Noteholders and a shareholder, in order to protect the value of the Arbitration Claim.[26]  In any event, the Final Order approving the Fourth Amendment Agreement contained a provision that any creditor or shareholder could obtain a copy of the terms from Crystallex, on such terms as Crystallex and the Monitor agreed, or on further order of the Court.[27]

---

[23] DIP Lender Compendium Tab 39.

[24] The amount of NAP entitlement transferred by the DIP Lender was ██% of the NAP to Mr. Fung and ██% of the NAP to Mr. Oppenheimer.

[25] *Second Amendment Agreement*: Applicants' Redacted Motion Record (returnable June 5, 2013), dated May 31, 2013, DIP Lender Compendium Tab 14, p. 224-225 and 2-3; Tenth Report of the Monitor, dated June 4, 2014, paras. 2.iii and 39, DIP Lender Compendium Tab 15, p. 238-239.
*Third Amendment Agreement*:  Supplemental Motion Record, (returnable April 14, 2014), dated April 11, 2014, DIP Lender Compendium Tab 22, pp. 317-318; Eleventh Report of the Monitor, dated April 12, 2014, para. 16 (a) and (d); DIP Lender Compendium Tab 23, p. 327.

[26] Unofficial Typed Endorsement of Justice Newbould, dated December 18, 2014, pp. 5-7, DIP Lender Compendium Tab 37, p. 442-444.

[27] Fourth Amendment Agreement Order, para. 4, DIP Lender Compendium Tab 34, p. 407.

23.     Each of the Final Orders contained the following provisions:

    (a)     **Service**:

        "...time for <u>service</u> of the notice of motion and the motion record <u>is hereby abridged and validated so that this motion is properly returnable today and hereby dispenses with further service thereof</u>."[28]

    (b)     **Approval and Entitlement to NAP**:

        "…the <u>DIP Lender is entitled</u>, and in accordance with the provisions of the Amendment Agreement, to the [percentage of NAP] (as defined by the Amendment Agreement) equivalent <u>to [the %] of the Net Arbitration Proceeds</u> (as defined by the Credit Agreement), <u>that such amount is fully earned by the DIP Lender at the time the [additional amount of the DIP loan] is advanced</u> by the DIP Lender…";[29]

    (c)     **Fair and Reasonable / Shall not be rendered invalid or unenforceable:**

        "the Credit Agreement, the Amendment Agreement, the other Credit Documents, the DIP Charge and the [additional compensation charge], and any advances made in good faith by the DIP Lender under the Credit Agreement, as amended by the Amendment Agreement, (including the [additional amount of the DIP loan]), and [Crystallex's] <u>agreement to pay (and the payment of) the [percentage of NAP] are fair reasonable and appropriate and shall not be rendered invalid or unenforceable and the rights and remedies of the DIP Lender shall not be rendered invalid or unenforceable and the rights and remedies of the DIP Lender shall not be limited or impaired in any way by: … (d) the provisions of any federal or provincial statutes</u> …";[30] and

    (d)     **Not oppressive or challengeable**:

        "the <u>payments made</u> by [Crystallex] pursuant to this Order, the Credit Agreement, as amended by the Amendment Agreement, or the other Credit Documents <u>(including the payment by [Crystallex] of the [percentage of NAP]), do not and will not constitute preferences, fraudulent conveyances, transfers at</u>

---

[28] Second Amendment Agreement Order, para. 1, DIP Lender Compendium Tab 16, p. 252; Third Amendment Agreement Order, para. 1, DIP Lender Compendium Tab 24, p. 341; Fourth Amendment Agreement Order, para. 1, DIP Lender Compendium Tab 34, p. 407.

[29] Second Amendment Agreement Order, para. 7, DIP Lender Compendium Tab 16, p. 253; Third Amendment Agreement Order, para. 9, DIP Lender Compendium Tab 24, p. 343; Fourth Amendment Agreement Order Approval Terms, para. 7, DIP Lender Compendium Tab 34, p. 414.

[30] Second Amendment Agreement Order, para. 9, DIP Lender Compendium Tab 16, p. 254; Third Amendment Agreement Order, para. 11, DIP Lender Compendium Tab 24, p. 344; Fourth Amendment Agreement Order Approval Terms, para. 7, DIP Lender Compendium Tab 34, p. 414.

undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law."[31]

[emphasis added]

**(D)    ARBITRATION AWARD**

24.    On April 4, 2016, the arbitration tribunal issued its award for damages to Crystallex in the amount of US$1.202 billion, plus interest (the "**Arbitration Award**").[32]

25.    On November 15, 2017, Crystallex and Venezuela reached a voluntary settlement agreement (the "**Settlement Agreement**") respecting payment of the Arbitration Award, which was approved by this Court on November 24, 2017.[33]

**(E)    SHAREHOLDER MOTION**

26.    The Complaining Shareholders have been aware of Crystallex's CCAA proceeding since early 2012.[34]  They were aware of the Monitor's website and information posted thereon.[35]

27.    The Complaining Shareholders, however, only took steps to actively participate in this proceeding when they served a notice of motion in October 2015 seeking this Court's approval to act as representative of all shareholders.  That motion was heard on April 11, 2016, and was dismissed by this Court on April 18, 2016.[36]

28.    Long thereafter, on December 15, 2017, after the Arbitration Award was issued and the Settlement Agreement was approved by this Court, the Complaining Shareholders served on

---

[31]Second Amendment Agreement Order, para. 9(c), DIP Lender Compendium Tab 16, p. 255; Third Amendment Agreement Order, para. 11(c), DIP Lender Compendium, Tab 24, p. 345; Fourth Amendment Agreement Order Approval Terms, para. 7(c), DIP Lender Compendium Tab 34, p. 415.
[32] Sixteenth Report of the Monitor, dated April 9, 2016, para. 9, DIP Lender Compendium Tab 43, p. 526.
[33] Twenty-Second Report of the Monitor, dated November 23, 2017, para. 23, DIP Lender Compendium Tab 46, p. 545; Order re Approval of Settlement Agreement, dated November 24, 2017, para. 3, DIP Lender Compendium Tab 47, p. 550.
[34] Fine Affidavit, para. 35, DIP Lender Compendium Tab 50, p. 566.
[35] Cross-Examination of Justin Fine dated March 29, 2016, pp. 69-70, DIP Lender Compendium Tab 42, p. 517-518.
[36] Unofficial Typed Reasons of Justice Newbould dated April 18, 2016, pp. 1-2, DIP Lender Compendium Tab 45, pp. 540-541.

Crystallex and the Monitor a draft of the Shareholders' Motion seeking to lift the CCAA stay of proceedings to permit the Complaining Shareholders to issue a Statement of Claim against Crystallex and the DIP Lender, asserting the Proposed Claims and seeking an order varying the Final Orders to the extent necessary to permit the Proposed Claims to proceed.[37]    The Proposed Claims themselves seek declarations with respect to oppression and breaches of the interest provisions of the *Criminal Code*, and orders denying the DIP Lender its earned entitlement to a percentage of the NAP pursuant to the Amendment Agreements.[38]

29.    The only discernible grounds asserted in support of the motion to vary the Final Orders are the allegations that the shareholders had no "effective notice" of the motions leading to the Final Orders, and that the percentage of the NAP earned by the DIP Lender as approved by those orders is somehow unfair.[39]

**PART III - ISSUES**

30.    The issues to be determined on this motion are whether:

    (a)    the Final Orders are a complete bar to the Proposed Claims;

    (b)    the Shareholder Motion asserts any tenable basis in law for this Court to vary or amend the Final Orders to enable the Proposed Claims to proceed; and

    (c)    even if the answer to (b) is yes, there are legal barriers that would prevent the variation of the Final Orders.

---

[37] Shareholders' Notice of Motion, pp. 1-2, DIP Lender Compendium Tab 49, p. 558-559.
[38] Fine Affidavit, Ex. B, Draft Statement of Claim, paras. 1 and 5, DIP Lender Compendium Tab 50, pp. 572-573.
[39] Shareholders' Notice of Motion, p. 4 DIP Lender Compendium Tab 49, p. 561.

- 12 -

## PART IV - LAW AND ARGUMENT

### (A)    THE FINAL ORDERS ARE A COMPLETE BAR TO THE PROPOSED CLAIMS

31.    The Proposed Claims, specifically the claims of oppression and/or breach of the interest provisions of the *Criminal Code*, directly conflict with the explicit terms of the Final Orders.  As such, the Final Orders are a complete bar to the Proposed Claims.

32.    In granting the Final Orders, this Court approved the terms of the Amendment Agreements between Crystallex and the DIP Lender, including the percentage of the NAP earned by the DIP Lender and declared that the Amendment Agreements and the entitlements of the DIP Lender thereunder were "fair, reasonable and appropriate" and did not constitute "preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law."[40]   These declarations preclude any finding of oppression or a breach of section 347 of the *Criminal Code*.

33.    The Proposed Claims are directly contrary to the explicit terms of the Final Orders, which were granted by this Court after full hearings.  As such, the Proposed Claims cannot go forward in the face of the Final Orders.

### (B)    NO BASIS IN LAW FOR VARYING THE FINAL ORDERS

34.    Once an order of the Court is issued and entered, the Court becomes *functus officio*; it no longer has the power to reconsider the merits of the order made.[41]

35.    As stated by the Supreme Court, "*The principle ensures that subject to an appeal, parties are secure in the reliance on the finality of superior court decisions.*"[42]   Accordingly, the

---

[40] See para. 23, above.
[41] P.M. Perell and J.W. Morden, *The Law of Civil Procedure in Ontario, Third Edition,* LexisNexis ("Perell & Morden"), para. 11.37, DIP Lender BOA Tab 2.
[42] *Doucet-Boudreau v Nova Scotia (Department of Education)*, 2003 SCC 62, ("*Doucet-Boudreau*") para. 115, (citing Pépin and Ouellette, *Principes de contentieux administratif,* (2001)) DIP Lender BOA Tab 3.

doctrine of *functus officio* provides that "... *only in strictly limited circumstances can a court revisit an order or judgment...*"[43]

36.    The only relevant limited circumstances available here for varying a final, issued and entered order are:

> (a)    the Court's inherent jurisdiction to correct slips or errors in expression;

> (b)    rule 59.06 of the *Rules of Civil Procedure* (the "**Rules**"); and

> (c)    rule 37.14 of the Rules.

37.    This Court's inherent jurisdiction and power to vary as prescribed by the Rules cannot be used as a backdoor to reopen and re-litigate issues that were already determined and orders that were made binding by this very Court in open and at times contested hearings more than three years ago. Bald assertions that financing arrangements entered into and approved at that time are now unjust or unfair are nothing more than an effort to reargue matters already adjudicated by the Court and which were not appealed.  Such allegations do not provide a basis recognized at law to vary final orders or excuse the failure to participate at the hearings where the Orders were made.  It is in the interests of the parties and the administration of justice that there be a definite and discernible end to legal disputes.[44]

---

[43] *Doucet-Boudreau,* para. 116, DIP Lender BOA Tab 3.
[44] *Tsaoussis (Litigation Guardian of) v Baetz*, 1998 CanLII 5454 (ON CA), pp. 11-12, DIP Lender BOA Tab 4.

#### (i)    Inherent Jurisdiction

38.    The power of a Court to vary an order after it has been issued and entered is limited to making the order conform to the judgment pronounced or intended to be pronounced. The Complaining Shareholders do not seek to correct a slip or error in the expression of the judgement – rather they seek a direct overturning of key provisions of the Final Orders.  As such, the law is clear that this Court has no inherent jurisdiction to review or vary the Final Orders in the manner requested by the Complaining Shareholders.[45]

39.    The limited power to vary orders once the court is *functus officio* is to be distinguished from the slightly broader power of the Court to set aside a consent order on motion of one of the parties to the consent.[46]  Since consent orders are a contract elevated to the status of an order without a judicial determination on the merits, they may be set aside on the grounds on which a contract can be set aside or rectified.[47]  The Court's power to vary a consent order is not relevant here, as none of the Final Orders were consent orders.  For each of the Final Orders the Court was required to, and did, exercise its powers and supervisory jurisdiction under the CCAA.

40.    In any event, no grounds are offered as to why the arrangements approved by the Final Orders are unjust or unfair, and no such basis exists.

41.    The fairness and reasonableness of the terms of the transactions contemplated by the original DIP Credit Agreement as amended by the Amendment Agreements fell to be determined (and were determined) at the time they were approved, and before the DIP Lenders and Crystallex relied and acted upon those approvals.  A complaint that a shareholding interest

---

[45] Perell & Morden, para.11.39, DIP Lender BOA Tab 2.
[46] Perell & Morden, para.11.40, DIP Lender BOA Tab 2.
[47] *Clatney v Quinn Thiele Mineault Grodzki LLP*, 2016 ONCA 377 ("*Clatney*"), para. 92, DIP Lender BOA Tab 6;

that arguably had no value upon the CCAA filing in 2011 may be worth more now, following six years of DIP Lender support and effort by Crystallex to create value for stakeholders, is not evidence of an injustice but rather smacks of sour grapes on the part of the Complaining Shareholders.

### (ii)     No Basis Under Rule 59.06(2)

42.     There are no allegations that, if proved, would permit the Court to amend or vary the Final Orders pursuant to the limited exceptional circumstances under Rule 59.06(2) of the Rules.

43.     The two limited exceptional circumstances under Rule 59.06(2) are (i) fraud, or (ii) new facts have arisen or been discovered after the order was made.

44.     The Shareholder Motion does not make any allegations of fraud or new facts that would enable this Court to reopen and vary the Final Orders. Instead, the Shareholder Motion is, on its face, an attempt to re-litigate the merits of the Final Orders based on arguments that could have been advanced when the Final Orders were made over three and four years ago.  No new facts have arisen, or are alleged to have arisen, since the Final Orders were made.

### (iii)     No Basis Under Rule 37.14

45.     There is no basis to amend or vary the Final Orders under Rule 37.14 of the Rules.  The Court may only vary an order where "no notice or insufficient notice" has been provided to an affected party and where the party affected by the order moves *forthwith* to vary the order.

### (a)      Notice Effected

46.      Service and notice in this CCAA proceeding were effected in compliance with the Initial Order and section 23 of the CCAA.  There is no requirement in the CCAA or the Initial Order in this case to give any other or specific notice to shareholders.  Further, unlike the requirement for notice to secured creditors prior to the granting of a priority charge for interim financing, no similar requirement exists for shareholders under section 11.2 of the CCAA.

47.      Under the consistent and well-known practice in CCAA matters, it was open to any stakeholder, including any shareholder, to file a notice of appearance and be added to the Service List. In fact, counsel for two shareholders were added to the Service List, received notice of all subsequent proceedings, and made submissions at a number of hearings including in respect of the Final Orders now under attack in the Shareholder Motion.

48.      Conversely, the Complaining Shareholders did nothing to be added to the Service List. The motion materials for the Final Orders were served on the Service List and the Final Orders themselves provide that no further service was required.[48]

49.      In fact, the evidence of the Complaining Shareholders is that they were aware of the proceedings shortly after the granting of the Initial Order, they had various discussions with representatives of Crystallex, the Monitor and amongst themselves and they were aware of the Monitor's website.

50.      The Complaining Shareholders also knew or ought to have known about the Final Orders shortly after they were issued and entered and were in a position to have known the amounts of the additional DIP Loans and the percentage of the NAP earned by to the DIP

---

[48] In *HOJ Leasing,* the Ontario Court of Appeal observed that the impugned order validated service of the underlying motion and dispensed with further service thereof in a manner similar to the Final Orders here: *HOJ Leasing,* para 16, DIP Lender BOA Tab 5.

Lender.  Each of the Final Orders was posted on the Monitor's public website after being issued and entered. The Final Orders approving the Second and Third Amendment Agreements contained the amounts of the additional DIP loans and the percentage of the NAP earned by the DIP Lender for the whole world to see. The order approving the Fourth Amendment Agreement contained a term allowing any creditor or shareholder to obtain a copy of the relevant terms from Crystallex, on such terms as Crystallex and the Monitor agree, or on further order of the Court.

51.     Accordingly, any Complaining Shareholder was in a position to obtain the necessary information to advance the allegations now asserted had they exercised even modest due diligence in response to the Initial Order or following the dates on which any of the Final Orders were made.[49]

>     (b)     Failure to Move "Forthwith"

52.     The Complaining Shareholders did not move "forthwith", as required by rule 37.14, despite the fact that they were aware, or could have been aware, of the Final Orders, prior to or at the time they were made, or shortly thereafter once posted on the Monitor's website.

53.     Service of the Shareholder Motion in December 2017, seeking to commence litigation to vary the Final Orders made, issued, entered and posted publicly between June 2013 and December 2014, is simply not "forthwith".  As stated by this Court "...*the defendants waited for over three years before bringing their motion to set aside – by any definition, not conduct falling within the category of "forthwith"*".[50]

---

[49] *Re Country Style Food Services Inc., et al.,* 2002 CanLII 41751 (ON CA), paras. 8 and 13, DIP Lender BOA Tab 7.
[50] *413554 Ontario v Pine Valley Developments,* 2011 ONSC 6193, para. 15, DIP Lender BOA Tab 8.

54.      Accordingly, the Complaining Shareholders' failure to move "forthwith" is a bar to the variation of the Final Orders pursuant to Rule 37.14.

**(C)      LEGAL BARRIERS TO VARIATION**

55.      Even if there were a tenable basis for this Court to vary the Final Orders (which there is not), the following legal barriers prevent variation of the Final Orders:

(a)      a court will not disturb final orders (and particularly DIP financing orders) upon which parties have acted and relied upon;

(b)      the Proposed Claims are barred by section 142 of the *Courts of Justice Act*;

(c)      the Proposed Claims are statute-barred pursuant to the *Limitations Act*; and

(d)      the Proposed Claims respecting an alleged agreement to pay or receive interest at a criminal rate are bound to fail.

*(i)*      ***Reliance on Final Orders***

56.      CCAA jurisprudence is consistent that final orders that have been relied upon by parties to the proceedings will not be disturbed.  Justice Newbould held that a court should be loath to vary an order if persons relying on the order would be materially prejudiced.[51] Even with respect to CCAA initial orders, when discussing a comeback motion, Justice Farley wrote, "Comeback relief, however, cannot prejudicially affect the position of parties who have relied *bona fide* on the previous order in question".[52]

57.      More recently, in *Target,* Justice Morawetz rejected a plan of arrangement that would conflict with a final order made in the CCAA proceeding, stating:

> The CCAA process is one of building blocks.  In this proceedings *[sic]*, this court has made a number of orders.  It is essential that court orders made during CCAA proceedings be respected… Certain parties now wish to restate the terms of the negotiated orders.  Such a development would run counter to the building block approach underlying these proceedings since the outset.[53]

58.      In the case at hand, Crystallex and the DIP Lender have relied in good faith on the Final Orders.  In particular, the DIP Lender has advanced and permitted Crystallex to continue to use in excess of US$75 million of principal amount of loans in reliance on the Final Orders.

59.      Varying the Final Orders would throw the entire CCAA proceeding into chaos, result in a default under the DIP Credit Agreement and the Amendment Agreements and undermine the commercial certainty and reliability of the DIP financing process in every CCAA case.  Under no circumstances can the Court entertain a bid to upset the Final Orders which have been relied

---

[51] *DBCD Spadina Ltd et al v Norma Walton et al*, 2015 ONSC 870, para. 16, DIP Lender BOA Tab 9.
[52] *Muscletech Research and Development Inc., (Re)*, (2006) 19 CBR (5th) 54, para. 5, DIP Lender BOA Tab 10.
[53] *Target Canada Co. (Re)*, 2016 ONSC 316, para. 81, DIP Lender BOA Tab 11.

upon by parties in good faith while taking significant risks and expending substantial resources to maximize value, all while the Complaining Shareholders chose to sit on the sidelines.

### (ii)    *Claims Barred by the Courts of Justice Act*

60.    Section 142 of the *Courts of Justice Act* provides that a person is not liable for any act done in good faith in accordance with a court order.  There is no allegation of bad faith here.  At all times, the DIP Lender acted in good faith on the basis of the Final Orders.  It cannot now be liable for oppression or otherwise for the Proposed Claims having done so.

### (iii)    *Claims Barred by the Limitations Act*

61.    The Proposed Claims as they relate to the claim for oppression and breach of section 347 of the *Criminal Code* respecting an agreement to pay interest at a criminal rate are statute barred by the *Limitations Act*.[54] A claimant is presumed to have known of the loss or damage on the day the act or omission on which the claim is based took place, unless the contrary is proved.[55]  The claimant has an obligation to show that it was highly unlikely, if not impossible, with reasonable due diligence, to have obtained the necessary information within the limitation period.[56] No such allegation is made here.

62.    As described above, the Complaining Shareholders knew or ought to have known about the Final Orders at the time they were made and posted on the Monitor's web site or shortly thereafter.[57] They had ample opportunity to challenge or oppose these terms but instead, failed to act forthwith or with reasonable diligence, or at all, within the limitation period.

---

[54] *Limitations Act,* ss.  2 and 4.
[55] *Limitations Act,* s. 5.
[56] *Galota v Festival Hall Developments Limited*, 2016 ONCA 585, paras. 21-22, DIP Lender BOA Tab 12.
[57] *Holley v Northern Trust Co., Canada*, 2014 ONSC 889, paras 99,155-156, DIP Lender BOA Tab 13;
*Holley v Northern Trust Co., Canada*, 2014 ONCA 719, para 14, DIP Lender BOA Tab 14.

*(iv)*    ***Claims regarding criminal interest rate are bound to fail***

63.    Section 347(1) of the *Criminal Code* provides that "every one who enters into an agreement or arrangement to receive interest at a criminal rate, or receive a payment or partial payment of interest at a criminal rate" is guilty of an offence.

64.    In order for there to be an offence, the agreement or arrangement in question must, on its face, require payment of interest at a criminal rate. The DIP Credit Agreement does not require, and in fact expressly prohibits, the payment of interest at a criminal rate:

(a)    the parties to the DIP Credit Agreement specifically agreed to comply with enumerated and detailed procedures for the adjustment, if necessary, of interest payable under the DIP Credit Agreement in any given year to ensure that "no receipt by the [DIP] Lender of any payments to the [DIP] Lender hereunder would result in a breach of section 347 of the *Criminal Code* (Canada)";[58] and

(b)    the law is clear that where a payment that might be considered interest[59] is not fixed, but is dependent upon future events (like the collection of the Arbitration Award) which may or may not cause it to exceed the criminal rate prohibition, the agreement is not one which requires payment of interest at a criminal rate.[60]

65.    Further the claim for <u>receipt</u> of interest by the DIP Lender at a criminal rate is premature and hypothetical, as no interest has been received to date.  A claim based on alleged receipt of

---

[58] DIP Credit Agreement, s. 10.13 and Exhibit F, DIP Lender Compendium Tab 11.
[59] The DIP Lender does not concede that the additional NAP entitlement is considered to be interest for purposes of the *Criminal Code* provisions.
[60] *Garland v Consumers' Gas Co.*, 1998 CanLII 766 (SCC), para. 59, DIP Lender BOA Tab 15; *Great Basin Gold Ltd. (Re)*, 2012 BCSC 1459, paras. 155-157, DIP Lender BOA Tab 16; *Degelder Construction v Dancorp Developments,* (1998) 3 SCR 90. ("*Degelder*")*,* para. 28-29, DIP Lender BOA Tab 17.

- 22 -

interest at a criminal rate is a "wait-and-see" cause of action. It cannot accrue until interest has been paid and its timing and quantum are known so as to permit the calculation of the effective rate of interest.[61]

## PART V - CONCLUSION AND ORDER REQUESTED

66.    The relief sought by the Complaining Shareholders is extreme and unprecedented. They are seeking to unwind CCAA financing arrangements first approved in 2012 and subsequently approved multiple times, all on a final basis.  All of the approved DIP financing has been advanced by the DIP Lender and has been spent by Crystallex, in reliance on each of those final Court approvals.

67.    The DIP financing has served as the building blocks for the success that has been achieved to date. Variation of the Final Orders would destroy the very foundation of this proceeding.

68.    Accordingly, the DIP Lender submits that this Court ought to dismiss the Shareholder Motion in its entirety with costs payable to the DIP Lender on a substantial indemnity basis.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 23rd day of February, 2018.

_____

Cassels Brock & Blackwell LLP
Lawyers for the DIP Lender

---

[61] *Degelder,* paras. 28 and 34, DIP Lender BOA Tab 18.

February 23, 2018

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSO#: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSO#: 59510J
Tel:    416.860.6465
Fax :    416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSO#: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Lara Jackson  LSO#: 41858M
Tel:    416.860.2907
Fax:    416.640.3108
ljackson@casselsbrock.com

Jane Dietrich  LSO#: 49302U
Tel:    416.860.5223
Fax:    416.640.3114
jdietrich@casselsbrock.com

Lawyers for the Moving Parties, Tenor KRY
Cooperatief U.A.,Tenor Special Situation I, LLC
and Luxembourg Investment Company 31 S.a.r.l.

- 24 -

## SCHEDULE A – LIST OF AUTHORITIES

<u>Case Law</u>

1. *Sun Indalex Finance, LLC v United Steelworkers,* 2013 SCC 6

2. *Doucet-Boudreau v Nova Scotia [Minister of Education]*, 2003 SCC 62

3. *Romspen v Edgeworth*, 2014 ONSC 4340

4. *Tsaoussis (Litigation Guardian of) v Baetz* 1998 CanLII 5454 (ON CA)

5. *Clatnay v Quinn Thiele Mineault Grodzki LLP*, 2016 ONCA 377

6. *Re Country Style Food Services Inc., et al.,* 2002 CanLII 41751 (ON CA)

7. *413554 Ontario v Pine Valley Developments,* 2011 ONSC 6193

8. *DBCD Spadina Ltd et al v Norma Walton et al*, 2015 ONSC 870

9. *Muscletech Research and Development Inc., [Re]* (2006) 19 CBR (5th) 54 (ONSC)

10. *Target Canada Co. [Re]*, 2016 ONSC 316

11. *Galota v Festival Hall Developments Limited*, 2016 ONCA 585

12. *Holley v Northern Trust Co., Canada*, 2014 ONSC 889

13. *Holley v Northern Trust Co., Canada*, 2014 ONCA 719

14. *Garland v Consumers' Gas Co.*, 1998 CanLII 766 (SCC)

15. *Great Basin Gold Ltd. [Re]*, 2012 BCSC 1459

16. *Degelder Construction v Dancorp Developments,* [1998] 3 SCR 90

<u>Legislation</u>

1. *Companies' Creditors Arrangement Act,* RSC 1985, c C-36, as amended

2. *Criminal Code*, RSC 1985, c C-46

3. *Rules of Civil Procedure*, RRO 1990, Reg 194

4. *Courts of Justice Act*, RSO 1990, c C.43

5. *Limitations Act, 2002*, S.O. 2002, c. 24, Sched. B

<u>Secondary Resources</u>

   1.  P.M. Perell and J.W. Morden, *The Law of Civil Procedure in Ontario,* Third Edition, 2017
      LexisNexis

## SCHEDULE B – LEGISLATION

### *Canada Business Corporations Act*, RSC 1985, c C-44

*Application to court re oppression*

241 (1) A complainant may apply to a court for an order under this section.

*Grounds*

(2) If, on an application under subsection (1), the court is satisfied that in respect of a corporation or any of its affiliates

(a) any act or omission of the corporation or any of its affiliates effects a result,

(b) the business or affairs of the corporation or any of its affiliates are or have been carried on or conducted in a manner, or

(c) the powers of the directors of the corporation or any of its affiliates are or have been exercised in a manner

that is oppressive or unfairly prejudicial to or that unfairly disregards the interests of any security holder, creditor, director or officer, the court may make an order to rectify the matters complained of.

### *Companies' Creditors Arrangement Act*, RSC 1985, c C-36

*Interim financing*

11.2 (1) On application by a debtor company and on notice to the secured creditors who are likely to be affected by the security or charge, a court may make an order declaring that all or part of the company's property is subject to a security or charge — in an amount that the court considers appropriate — in favour of a person specified in the order who agrees to lend to the company an amount approved by the court as being required by the company, having regard to its cash-flow statement. The security or charge may not secure an obligation that exists before the order is made.

*Duties and functions*

23 (1) The monitor shall

(a) except as otherwise ordered by the court, when an order is made on the initial application in respect of a debtor company,

(i) publish, without delay after the order is made, once a week for two consecutive weeks, or as otherwise directed by the court, in one or more newspapers in Canada specified by the court, a notice containing the prescribed information, and

(ii) within five days after the day on which the order is made,

(A) make the order publicly available in the prescribed manner,

(B) send, in the prescribed manner, a notice to every known creditor who has a claim against the company of more than $1,000 advising them that the order is publicly available, and

…

(j) make the prescribed documents publicly available in the prescribed manner and at the prescribed time and provide the company's creditors with information as to how they may access those documents; and

### *Courts of Justice Act*, RSO 1990, c C.43

142 A person is not liable for any act done in good faith in accordance with an order or process of a court in Ontario.

### *Criminal Code*, RSC 1985, c C-46

347 (1) Despite any other Act of Parliament, every one who enters into an agreement or arrangement to receive interest at a criminal rate, or receives a payment or partial payment of interest at a criminal rate, is

(a) guilty of an indictable offence and liable to imprisonment for a term not exceeding five years; or

(b) guilty of an offence punishable on summary conviction and liable to a fine not exceeding $25,000 or to imprisonment for a term not exceeding six months or to both.

### *Limitations Act*, SO 2002, c 24, Schedule B

2 (1) This Act applies to claims pursued in court proceedings other than,

(a) proceedings to which the *Real Property Limitations Act* applies;

(b) proceedings in the nature of an appeal, if the time for commencing them is governed by an Act or rule of court;

(c) proceedings under the *Judicial Review Procedure Act*;

(d) proceedings to which the *Provincial Offences Act* applies;

(e) proceedings based on the existing aboriginal and treaty rights of the aboriginal peoples of Canada which are recognized and affirmed in section 35 of the *Constitution Act, 1982*;

(f) proceedings based on equitable claims by aboriginal peoples against the Crown; and

(g) proceedings to which the Limitation Convention or the Amended Limitation Convention, as defined in the *International Sales Conventions Act*, applies.

4 Unless this Act provides otherwise, a proceeding shall not be commenced in respect of a claim after the second anniversary of the day on which the claim was discovered.

5 (1) A claim is discovered on the earlier of,

> (a) the day on which the person with the claim first knew,

>> (i) that the injury, loss or damage had occurred,

>> (ii) that the injury, loss or damage was caused by or contributed to by an act or omission,

>> (iii) that the act or omission was that of the person against whom the claim is made, and

>> (iv) that, having regard to the nature of the injury, loss or damage, a proceeding would be an appropriate means to seek to remedy it; and

(b) the day on which a reasonable person with the abilities and in the circumstances of the person with the claim first ought to have known of the matters referred to in clause (a).

(2) A person with a claim shall be presumed to have known of the matters referred to in clause (1) (a) on the day the act or omission on which the claim is based took place, unless the contrary is proved.


**Rules of Civil Procedure, RRO 1990, Reg 194**


37.14 (1) A party or other person who,

> (a) is affected by an order obtained on motion without notice;

> (b) fails to appear on a motion through accident, mistake or insufficient notice; or

> (c) is affected by an order of a registrar,

may move to set aside or vary the order, by a notice of motion that is served forthwith after the order comes to the person's attention and names the first available hearing date that is at least three days after service of the notice of motion.

(2) On a motion under subrule (1), the court may set aside or vary the order on such terms as are just.


59.06 (1) An order that contains an error arising from an accidental slip or omission or requires

- 29 -

amendment in any particular on which the court did not adjudicate may be amended on a motion in the proceeding.

 (2) A party who seeks to,

> (a) have an order set aside or varied on the ground of fraud or of facts arising or discovered after it was made;

> (b) suspend the operation of an order;

> (c) carry an order into operation; or

> (d) obtain other relief than that originally awarded,

may make a motion in the proceeding for the relief claimed.

| | |
|---|---|
| IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED<br><br>AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION | Court File No. CV-11-9532-00CL |

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT TORONTO

**FACTUM OF THE DIP LENDER**
**(Returnable March 28, 2018)**

**Cassels Brock & Blackwell LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSO#: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSO#: 59510J
Tel:      416.860.6465
Fax :    416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSO#: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Lara Jackson  LSO#: 41858M
Tel:      416.860.2907
Fax:      416.640.3108
ljackson@casselsbrock.com

Jane Dietrich  LSO#: 49302U
Tel:      416.860.5223
Fax:      416.640.3114
jdietrich@casselsbrock.com

Lawyers for the Moving Parties, Tenor KRY Cooperatief U.A.,Tenor Special Situation I, LLC and Luxembourg Investment Company 31 S.a.r.l

Court File No. CV-11-9532-00CL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
(Commercial List)

**IN THE MATTER OF** THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF** A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

### FACTUM OF ROBERT FUNG AND
### MARC OPPENHEIMER
### (In Support of the Motion of the DIP Lender)
### (Redacted Version)
Returnable March 28, 2018

February 23, 2018

**FASKEN MARTINEAU DuMOULIN LLP**
Bay Adelaide Centre
333 Bay Street, Suite 2400
Bay Adelaide Centre, Box 20
Toronto, ON  M5H 2T6

Aubrey E. Kauffman  [LSUC#:  18829N]
Tel:  868 3538
Fax:  416 364 7813
E-Mail:  akauffman@fasken.com

Lawyers for Robert Fung and
Marc Oppenheimer

TO:         The Service List

**IN THE MATTER OF A PLAN OF ARRANGEMENT OR ARRANGEMENT
OF CRYSTALLEX INTERNATIONAL CORPORATION
SERVICE LIST**

| | FIRM | ATTENTION |
|---|---|---|
| TO | **DAVIES WARD PHILLIPS & VINEBERG LLP**<br>155 Wellington Street West<br>Toronto, ON  M5V 3J7<br><br>Lawyers for Crystallex International Corporation | Jay A. Swartz<br>Tel:    (416) 863-5520<br>Fax:    (416) 863-0871<br>jswartz@dwpv.com<br><br>Natasha MacParland<br>Tel:    (416) 863-5567<br>nmacparland@dwpv.com<br><br>Natalie Renner<br>Tel:    (416) 367-7489<br>nrenner@dwpv.com |
| AND TO | **GOODMANS LLP**<br>Barristers and Solicitors<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON  M5L 2S7<br><br>Lawyers for Computershare Trust Company of Canada, in its capacity as Trustee for the Holders of 9.375% Senior Unsecured Notes of Crystallex International Corporation | Jay Carfagnini<br>Tel:    (416) 597-4107<br>Fax:    (416) 979-1234<br>jcarfagnini@goodmans.ca<br><br>Robert Chadwick<br>Tel:    (416) 597-4285<br>rchadwick@goodmans.ca<br><br>Celia Rhea<br>Tel:    (416) 597-4178<br>crhea@goodmans.ca<br><br>Chris Armstrong<br>Tel:    (416) 849-6013<br>carmstrong@goodmans.ca |
| AND TO | **THORNTON, GROUT, FINNIGAN**<br>Barristers and Solicitors<br>Canadian Pacific Tower<br>100 Wellington Street West, Suite 3200<br>P.O. Box 329, TO Centre<br>Toronto, ON  M5K 1K7<br><br>Lawyers for Juan Antonio Reyes | John T. Porter<br>Tel:    (416) 304-0778<br>Fax:    (416) 304-1313<br>jporter@tgf.ca |

6793686 v1

| | FIRM | ATTENTION |
|---|---|---|
| AND TO | **FORBES & MANHATTAN**<br>Suite 805, 65 Queen Street West<br>P.O. Box 71<br>Toronto, ON  M5H 2M5<br><br>Lawyers for Forbes & Manhattan Inc. and Aberdeen International Inc. | Patrick J. Gleeson<br>Tel:    (416) 861-5800<br>Fax:    (416) 861-8165<br>pgleeson@gleesonlegal.com |
| AND TO | **KBA LAW**<br>43 Front Street E., Suite 400<br>Toronto, ON  M5E 1B3<br><br>Lawyers for Robert Crombie | Kimberly Boara Alexander<br>Tel:    (416) 855-7076<br>kalexander@kbalaw.ca |
| AND TO | **CASSELS BROCK & BLACKWELL LLP**<br>2100 Scotia Plaza<br>40 King Street West<br>Toronto, ON  M5H 3C2<br><br>Lawyers for Tenor Capital Management | Timothy Pinos<br>Tel:    (416) 869-5784<br>Fax:    (416) 350-6903<br>tpinos@casselsbrock.com<br><br>Shayne Kukulowicz<br>Tel:    (416) 860-6463<br>Fax:    (416) 640-3176<br>skukulowicz@casselsbrock.com<br><br>Ryan C. Jacobs<br>Tel:    (416) 860-6465<br>Fax:    (416) 640-3189<br>rjacobs@casselsbrock.com<br><br>Michael Wunder<br>Tel:    (416) 860-6484<br>Fax:    (416) 640-3206<br>mwunder@casselsbrock.com<br><br>Lara Jackson<br>Tel:  (416) 860-2907<br>Fax: (416) 640-3108<br>ljackson@casselsbrock.com |
| AND TO | **ERNST & YOUNG INC.**<br>222 Bay Street, P.O. Box 251<br>Toronto, ON  M5K 1J7<br><br>Court –appointed Monitor | Brian M. Denega<br>Tel:    (416) 943-3058<br>Fax:    (416) 943-3300<br>brian.m.denega@ca.ey.com<br><br>Fiona Han |

| FIRM | ATTENTION |
|------|-----------|
| | Tel:    (416) 943-3739<br>fiona.han@ca.ey.com |
| **AND TO**<br><br>**GOWLING WLG (CANADA) LLP**<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, ON  M5X 1G5<br><br>Lawyers for the proposed committee | Clifton Prophet<br>Tel:    (416) 862-3509<br>Fax:    (416) 862-7661<br>clifton.prophet@gowlingwlg.com<br><br>Nicholas Kluge<br>Tel:    (416) 369-4610<br>nicholas.kluge@gowlingwlg.com<br><br>Delna Contractor<br>Tel:    (416) 862-4322<br>delna.contractor@gowlingwlg.com |
| **AND TO**<br><br>**BLANEY McMURTRY**<br>2 Queen Street East, Suite 1500<br>Toronto, Ontario M5C 3G5<br><br>Lawyers for the Members of the Ad Hoc Committee of Shareholders | Lou Brzezinski<br>Tel:    (416) 593-2956<br>Fax:    (416) 594-5084<br>lbrzezinski@blaney.com |
| **AND TO**<br><br>**OSLER, HOSKIN & HARCOURT LLP**<br>1 First Canadian Place, Box 50<br>Toronto, Ontario  M5X 1B8<br><br>Lawyers for Greywolf Capital Management LP | Alexander Cobb<br>Tel:    (416) 862-5964<br>Fax:    (416) 862-6666<br>acobb@osler.com<br><br>Catherine Gleason-Mercier<br>Tel: (416) 862-4247<br>cgleasonmercier@osler.com |

- 4 -

| TO | FIRM | ATTENTION |
|---|---|---|
| | **STIKEMAN ELLIOTT LLP**<br>5300 Commerce Court West<br>199 Bay Street<br>Toronto, Ontario M5L 1B9<br><br>Lawyers for the Monitor | David R. Byers<br>Tel:    (416) 869 5697<br>Fax:    (416) 947 0866<br>dbyers@stikeman.com |

Court File No. CV-11-9532-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
(Commercial List)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

### FACTUM OF ROBERT FUNG AND MARC OPPENHEIMER
### (In Support of the Motion of the DIP Lender)

### PART I - OVERVIEW

1.        This factum is filed in support of the motion of the DIP Lender and adopts the definitions set out in the factum of the DIP Lender.

2.        Robert Fung ("**Fung**") is the Chairman and CEO of Crystallex and is a director of the corporation.   Marc Oppenheimer ("**Oppenheimer")** is a director and former CEO of Crystallex. (Fung and Oppenheimer are collectively referred to as the "**Executives**")   The Executives have been instrumental in the successful prosecution of the Arbitration Claim leading to the Arbitration Award and in achieving the Settlement Agreement with Venezuela approved by this Court on November 24, 2017.

3.        The participation of the Executives in the arbitration process and in these CCAA proceedings was absolutely essential to Crystallex's successes to date.

4.        The Executives provided their unique and irreplaceable services in reliance upon compensation arrangements authorized by this Court pursuant to the Management Incentive Plan

- 2 -

Approval Order dated April 16, 2012 and the NAP Transfer Agreement Order dated December 14, 2014.

5.          The Complaining Shareholders are now seeking to vary Final CCAA Orders herein, including the NAP Transfer Agreement Order.

6.          The effect of such *ex post facto* variation would be to deprive the Executives of the compensation they bargained for and the Court approved.  The Executives properly relied upon the Final CCAA Orders in rendering years of critical assistance to the successful prosecution of the Arbitration Claim, obtaining the Arbitration Award and reaching the Settlement Agreement with Venezuela.

7.          Such a variation, sought at this point in time, is not permitted by law.  Moreover, such a variation, if granted after all critical services have been rendered, would be oppressive, unfairly prejudicial and would unfairly disregard the interests of the Executives.

### PART II - THE FACTS

8.          The Executives adopt and support the assertion of facts as set out in the factum of the DIP Lender herein.

9.          The following are additional facts relied upon by the Executives.

## A.    The Role of the Executives

10.        Fung is the Chairman and CEO of Crystallex.  He has been a director of Crystallex since 1996.  Fung was a crucial fact witness in the Arbitration Claim and was the major interface between Crystallex and Freshfields.[1]

11.        In addition to his critical role in the Arbitration Claim, Fung has provided evidence to this Court, on behalf of Crystallex, throughout these CCAA proceedings including, most recently, by way of example, an affidavit dated December 14, 2017 in relation to the approval of the Bridge DIP Loan.

12.        Oppenheimer is a director of Crystallex and was, prior to Fung, its CEO. Oppenheimer was the primary non-witness contact with Freshfields and was designated as the party representative for the Arbitration Claim by Freshfields, meaning that he was not excluded from any portion of the Arbitration Claim.  Oppenheimer's command of detail and operational knowledge made him instrumental to the Arbitration Claim.[2]

13.        The critical role played by the Executives is summarized in an affidavit of Harry Near, an independent director of Crystallex, sworn December 15, 2014 (the "**Near Affidavit**") and filed in support of the NAP Approval Order herein after described:



---

[1] Affidavit of Johan Van't Hof sworn March 21, 2012 (paragraphs 4-10 and 14-23) filed in support of the Management Incentive Plan Approval Order Motion (the "**Van't Hof Affidavit**"), DIP Lender Compendium Tab 6 approved by the Endorsement of Mr. Justice Newbould dated April 16, 2012 (paragraph 106) (the "**Newbould Endorsement**"), DIP Lender Compendium Tab 10.

[2] Van't Hof Affidavit; Newbould Endorsement.

- 4 -



## B.    Final CCAA Orders Approving Compensation for the Executives

### MIP Approval Order

14.        By order dated April 16, 2012 (the "**MIP Approval Order**"), Mr. Justice Newbould approved a Management Incentive Plan ("**MIP**") which provided for, *inter alia*, compensation to the Executives relating to the Arbitration Claim and the CCAA proceedings.

15.        Simplistically, the MIP provides for a pool of money consisting of a percentage of the net proceeds recovered in the Arbitration after payment of defined prior claims.  Importantly, the recovery of the Executives under the MIP is capped by a percentage of the recovery of shareholders (the "**Residual Pool**").[4]

### NAP Transfer Agreement Order

16.        As set out in more detail in the factum of the DIP Lender, as a result of the Second Amendment Agreement, the Third Amendment Agreement and the Fourth Amendment Agreement, the participation of the DIP Lender in the NAP increased - with a corresponding decrease in the Residual Pool.

17.        The effect of the reduction of the Residual Pool was to lower the compensation payable to the Executives under the MIP.

---

[3] Near Affidavit, DIP Lender Compendium Tab 22.
[4] Van't Hof Affidavit; Newbould Endorsement; MIP Approval Order, DIP Lender Compendium Tab 9.

18.        In order to address this issue, in conjunction with the Fourth Amendment Agreement, Crystallex, the DIP Lender and the Executives entered into the NAP Transfer Agreement dated March 12, 2015.  Under this Agreement, the DIP Lender transferred a portion of its additional compensation received pursuant to the Fourth Amendment Agreement to the Executives.

19.        The NAP Transfer Agreement was approved of by the Court in the NAP Transfer Agreement Order dated December 18, 2014.[5]

20.        In his Endorsement dated December 18, 2014 made in relation to the NAP Transfer Agreement Order, Justice Newbould stated:



## C.    The Relief Sought by the Complaining Shareholders

21.        In their notice of motion the Complaining Shareholders seek an order varying certain Final CCAA Orders, including the NAP Transfer Agreement Order.

22.        Particulars of the proposed variation can be found in the draft Statement of Claim attached as Exhibit "B" to the Affidavit of Justin Fine.  The Complaining Shareholders seek an

---

[5] NAP Transfer Agreement Order, DIP Lender Compendium Tab 35.
[6] Endorsement of Mr. Justice Newbould dated December 18, 2014, DIP Lender Compendium Tab 36.

- 6 -

order, *inter alia*, varying the NAP Approval Order by ordering Crystallex not to pay the DIP Lender any "Additional Compensation".

23.        The effect of granting the above relief would be to deprive the Executives, *ex post facto*, of the benefit of the NAP Transfer Agreement as approved of by the NAP Transfer Agreement Order thereby substantially reducing the compensation payable to the Executives. The Complaining Shareholders seek to reap the benefit of the years of work of the Executives and retroactively expropriate the Executives' reward.

## PART III - ISSUE

24.        The Executives adopt the issues to be determined as set out in Part III of the DIP Lender's factum.

## PART IV - THE LAW AND ARGUMENT

25.        The Executives adopt and support the Law and Argument as set out in Part IV of the DIP Lender's factum, *mutatis mutandis.*

## PART V - RELIEF REQUESTED

26.        The Executives submit that this Court ought to dismiss the Shareholders' Motion with costs payable to the Executives on a substantial indemnity basis.

RESPECTFULLY SUBMITTED THIS 23RD DAY OF FEBRUARY, 2018.

Aubrey E. Kauffman
Lawyer for Robert Fung and Marc Oppenheimer

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C. 35, AS AMENDED

**AND IN THE MATTER OF** A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

Court File No.:  CV-11-9532-00CL

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

Proceedings commenced at Toronto

---

**FACTUM OF ROBERT FUNG AND**
**MARC OPPENHEIMER**
**(In Support of the Motion of the DIP Lender)**
**(Redacted Version)**

---

**FASKEN MARTINEAU DuMOULIN LLP**
Barristers and Solicitors
333 Bay Street - Suite 2400
Bay Adelaide Centre, Box 20
Toronto, ON  M5H 2T6

**Aubrey E. Kauffman [LSUC# 18829N]**
Tel:  416 868 3538
Fax:  416 364 7813
Email:  akauffman@fasken.com

Lawyers for Robert Fung and
Marc Oppenheimer

Court File No. CV-11-9532-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

---

**REPLY FACTUM OF THE DIP LENDER**
**(Returnable March 28, 2018)**

---

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSO#: 20027U
Tel:    416.869.5784
Fax:   416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSO#: 59510J
Tel:    416.860.6465
Fax :   416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSO#: 30729S
Tel:    416.860.6463
Fax:   416.640.3176
skukulowicz@casselsbrock.com

Lara Jackson  LSO#: 41858M
Tel:    416.860.2907
Fax:    416.640.3108
ljackson@casselsbrock.com

Jane Dietrich  LSO#: 49302U
Tel:    416.860.5223
Fax:    416.640.3114
jdietrich@casselsbrock.com

Lawyers for the Moving Parties, Tenor KRY
Cooperatief U.A.,Tenor Special Situation I,
LLC and Luxembourg Investment Company
31 S.a.r.l.

Court File No. CV-11-9532-00CL

***ONTARIO***
***SUPERIOR COURT OF JUSTICE***
***COMMERCIAL LIST***

B E T W E E N:

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

_____

**REPLY FACTUM OF THE DIP LENDER**
**(Returnable March 28, 2018)**

_____


**PART I - OVERVIEW**

1.      In response to the DIP Lender Motion, the Complaining Shareholders:

(a)     Acknowledge that the test on this motion is whether the Shareholder
        Motion has a reasonable prospect of success, but fail to allege facts
        which, if proved, could satisfy this threshold;

(b)     Assert that factual conflicts exist which are not present or are not
        relevant;

(c)     Incorrectly suggest that the test to vary the Final Orders is entirely
        discretionary and "contextual", when in fact the law requires the
        satisfaction of one or more substantial "gateway" criteria before the Court
        can proceed to consider the exercise of its discretion;

- 2 -

    (d)    Promise additional unspecified evidence "to come", which cannot be relevant to whether the facts alleged disclose a reasonable prospect of success;

    (e)    Ignore the clear requirements of the rules they rely upon to seek to vary the Final Orders;

    (f)    Assert a general equitable jurisdiction on the part of the Court to vary the Final Orders, when no such jurisdiction exists; and

    (g)    Fail to respond in any way to the longstanding legal principles respecting the finality of orders of this Court, and the consistent refusal of this Court sitting in insolvency matters to disturb such orders.

2.    The Complaining Shareholders seek the extraordinary remedy of varying final CCAA orders and, aside from ignoring the legal principles designed to protect other parties relying on such orders, the main response from the Complaining Shareholders is that they would like more time to manufacture factual controversies. There is simply no demonstrated justification to embark on an unprecedented and unwarranted process that will put this CCAA proceeding in jeopardy.

## (A)    THE SHAREHOLDER MOTION HAS "NO REASONABLE PROSPECT OF SUCCESS"

3.    The Complaining Shareholders characterize the DIP Lender Motion as akin to a rule 21 motion.  Whether it is considered a rule 21 motion, or an exercise of the Court's supervisory jurisdiction under the CCAA, the test is the same: whether the Shareholder Motion has a reasonable prospect of success.  The DIP Lender submits that this Court has the necessary

facts and law before it to find that the Shareholder Motion has <u>no reasonable prospect of</u> <u>success</u>.[1]

4.      The Complaining Shareholders are assumed to have set out in their motion record and affidavits the facts alleged in support of the relief they seek, and those facts alleged are, for the purpose of the DIP Lender Motion, assumed to be true.[2]  The objective facts of this case as recorded in the historical record of the Court's orders in this proceeding, its reasons therefore, the Monitor's Reports, and the proceedings relating to each hearing (motion record service, website posting, and hearing appearances) are likewise incontrovertible facts for the purpose of this motion.

5.      The Complaining Shareholders argue that there are "contested facts" relevant to this motion which require further evidence.  This is not the case.  The DIP Lender Motion assumes the relevant facts as set forth in the Shareholder Motion, and argues that even if they are true, they do not come close to satisfying essential elements of the test for varying Court orders.

6.      The following so-called "contested facts" alleged in the Complaining Shareholders' factum are assumed by the DIP Lender to be true for the purposes of its motion, and viewed against their context in the record of the proceeding:

> (a)      *The Complaining Shareholders suffered prejudice by way of a diminution* *of their share value as a result of the Amending Agreements approved in* *the Final Orders.*
>
> Background Context: The Complaining Shareholders are in no different a position than any stakeholder in any CCAA proceeding where DIP

---

[1] *Knight v Imperial Tobacco Canada* 2011 SCC 42 *("Knight"),* para. 17, Shareholders' BOA, Tab 1; See also *Currie v Halton Regional Police Board* 2003 CanLII 7815 (ONCA), paras. 11, 17, 18, DIP Lender Supplemental Book of Authorities ("DIP Lender Supp BOA"), Tab 1.
[2] *Knight,* para 17.

- 4 -

financing is required and the DIP Lender is accorded priorities which potentially dilute the interests of stakeholders.

(b)    *Shareholders did not have the opportunity to provide financing to the Company.*

Background context:  None of the Complaining Shareholders submitted a formal financing proposal nor did any appear in this proceeding to assert such intention.

(c)    *The Complaining Shareholders did not receive personal service or other actual notices of motions relating to the DIP financing and the Amending Agreements.*

Background context: Notice of motions was provided in accordance with the Initial Order and on the Service List, in accordance with the established CCAA process, and was deemed to be effective.

(d)    *The Complaining Shareholders were not fully aware of the orders before they were made.*

Background context:  The Complaining Shareholders acknowledge that they were aware of the CCAA proceedings and the Monitor's website where documents were contemporaneously posted.

7.    None of these so-called "contested facts", assumed to be true, assist the Complaining Shareholders in satisfying <u>any</u> essential prerequisites under the law for this Court to exercise its power to vary or set aside the Final Orders.  Specifically, the facts alleged and assumed to be true do not satisfy any of the prerequisites or "gateways" under the rules:

(a)    "an error arising from an accidental slip or admission"  (rule 59.06(1));

(b)     a required "amendment … on which the court did not adjudicate" (rule 59.06(1));

(c)     "fraud"  (rule 59.06(2)(a));

(d)     "facts arising or discovered after [the order] was made" (rule 59.06(2)(a));

(e)     failure "to appear on a motion through accident mistake, or insufficient notice" (rule 37.14(1)(b)); or

(f)     "move … forthwith"  (rule 37.14(1)).

Accordingly, the Shareholder Motion has no reasonable prospect of success and should be dismissed.

8.      Further, it is disingenuous for the Complaining Shareholders to now suggest that there "may" be additional evidence to support the Shareholder Motion, when they do not specify what that additional evidence may be.  Regardless, the facts alleged (irrespective of whether they are provable) are assumed to be true, and promises of more evidence are accordingly irrelevant to the Court's analysis.[3]  There is no justification for them to say, in response to this motion, "please, wait and see".

9.      No amount of additional evidence can possibly change the following incontrovertible facts drawn from the record of proceedings in this case and set out in the DIP Lender Factum, and which have not been challenged by the Complaining Shareholders in their motion record or factum:

---

[3] *Knight*, para. 17, Shareholders' BOA, Tab 1.

(a)     Notice of the CCAA proceeding was published as required by the Initial Order and the CCAA;[4]

(b)     Parties who filed Notices of Appearance were added to the Service List;

(c)     Motion materials and Monitor reports for the Final Orders were served on the Service List and contemporaneously posted on the Monitor's website, together with the Final Orders;

(d)     Certain shareholders in fact appeared in their distinct capacity as shareholders, and by separate counsel, at motions approving the Final Orders;[5]

(e)     None of the Final Orders were appealed; and

(f)     The DIP Lender and Crystallex have relied and acted for years in good faith on the Final Orders in compliance with their terms.

10.     These incontrovertible facts, taken with the facts alleged by the Complaining Shareholders, lead this Court to the inevitable conclusion that the Shareholder Motion has no reasonable prospect of success.

---

[4] First Report of the Monitor, dated January 18, 2012, paras. 17-20 and Appendix C, DIP Lender Compendium Tab 5, pp. 39-40; Affidavit of Justin Fine, sworn December 15, 2017 ("Fine Affidavit"), para. 38, Motion Record of the Shareholders.
[5] Endorsement of Justice Newbould, dated April 16, 2012, para. 3, DIP Lender Compendium Tab 10, p. 110; Counsel List Attendance, June 5, 2013, DIP Lender Compendium Tab 20, p. 284; Counsel List Attendance, April 14, 2014, DIP Lender Compendium Tab 27, p. 353; Counsel List Attendance, December 17, 2017, DIP Lender Compendium Tab 33, p. 405.

**(B)    THERE IS NO GENERAL DISCRETION TO VARY FINAL ORDERS UNDER RULE 59.06**

11.    The bald assertion by the Complaining Shareholders that the Court has a general discretion under Rule 59.06(2) to vary final orders "in the interests of justice" is simply wrong.

12.    As summarized in paragraph 7, above, the structure and explicit wording of rule 59.06(2) enumerates specific "gateways" that the party seeking to vary an order must pass through before a court considers whether it is in the interests of justice to vary the order.

13.    The Complaining Shareholders rely on several cases in support of their argument that a court has general discretion to vary an order, which they say necessitates a contextual consideration of all the relevant facts and evidence. Each of those cases in fact illustrate the exact opposite: that a moving party must first establish the existence of one of the gateways before the court can proceeds to consider the exercise of its discretion.

14.    As submitted above, the Complaining Shareholders fail to make any allegations of fact which would satisfy one of the gateway criteria and bring themselves within the rule. Accordingly, there are no facts alleged or legal bases available on which to set aside the Final Orders.[6]

15.    Although it is unnecessary to deal with the general allegation of injustice given the complete absence of any "gateway" to support a variation, it is nevertheless important to emphasize there is absolutely nothing alleged in this case that constitutes an injustice to shareholders or that remotely rises to the level which requires a remedy in the "interests of justice".

---

[6] *Hebditch v Birnie*, 2017 ONCA 169 ("*Hebditch*"), para. 13, DIP Lender Supp BOA Tab 2

16.     Finally, the reliance by the Complaining Shareholders on *Finlay v Van Paassen* ("***Finlay***"),[7] is completely irrelevant to the interpretation of rule 59.06.  By contrast to the specific gateways set out in rule 59.06, the provision of rule 37.14(1)(c) applicable in *Finlay* only requires that the moving party be affected by an order of the registrar.  The entirety of the Court's decision in *Finlay* consists of a discussion of the exercise of the discretion to set aside and not the application of any gateway criterion.

**(C)     PRINCIPLES REGARDING VARYING OF CONSENT ORDERS ARE INAPPLICABLE TO THIS CASE**

17.     The reliance by the Complaining Shareholders on the "interests of justice" reference in *Clatney v Quinn Thiele Minealt Grodxki LLP* ("***Clatney***") is inappropriate, as the Court of Appeal in that case was considering a consent order, and relied on a line of authorities dealing with consent orders.[8]  The Court of Appeal has explicitly recognized the distinction between consent orders and adjudicated orders with respect to motions or set aside or vary.[9]

18.     It is simply not appropriate to conflate consent orders with adjudicated orders as the framework of analysis and the criteria applied by the Court differ markedly.  A consent order is not a judicial determination on the merits of a case but rather, an agreement elevated to the power of an order based on the consent of the parties to the agreement.[10]  By contrast, adjudicated orders – like the Final Orders – involve the exercise of independent judgment and the discretion of a presiding judge and a determination of what is appropriate in the circumstances.

---

[7] 2010 ONCA 204, Shareholders' BOA, Tab 6.
[8] *Clatney v Quinn Thiele Mineault Grodzki LLP*, 2016 ONCA 377 ("*Clatney*"), para. 92, DIP Lender BOA Tab 6; *Stoughton Trailers Canada Corp. v. James Expedite Transport Inc.*, 2008 ONCA 817, DIP Lender Supp BOA Tab 3; *Cookish v. Paul Lee Associates Professional Corp.*, 2013 ONCA 278, 305 O.A.C. 359, para. 54  DIP Lender Supp BOA Tab 4.
[9] *Hebditch*, para 13, DIP Lender Supp BOA Tab 2.
[10] *Rick v Brandsema*, 2009 SCC 10, para. 64, DIP Lender Supp BOA Tab 6; *Clatney*, para. 92, DIP Lender BOA Tab 6; *Monarch Construction Ltd. v. Buildevco Ltd.*, 1990 CarswellOnt 369, para. 3, DIP Lender Supp BOA Tab 5.

- 9 -

19.    The Complaining Shareholders cite to paragraph 60 in *Clatney*, however that passage is taken out of context and omits the Court's preceding discussion of the gateways required by rule 59.06.   Further, it is clearly in the sole context of consent orders.   Their reliance on paragraph 60 of *Clatney* is misplaced and not relevant to this motion.

**(D)    RULE 37.14 RELIEF IS SUBJECT TO SPECIFIC THRESHOLD REQUIREMENTS PRIOR TO ANY EXERCISE OF DISCRETION**

20.    The Complaining Shareholders allege that the relief sought under Rule 37.14(a) is discretionary, requires a balancing of the interests of the parties involved, and depends on the evidence in each particular case.   The suggestion that an application of Rule 37.14 is nothing more than an exercise of overall discretion is incorrect and not supported by the clear words of the rule and the cases interpreting it, including those decisions cited and relied upon by the Complaining Shareholders.

21*.*    In *Wayne v 1690416 Ontario Inc.*, the motions judge first considered the "threshold question" as to whether the moving party satisfied one of the gateways under Rule 37.14(1) since if it did not, the motions judge would have no power to grant the relief sought.   Only after finding that the gateway was satisfied did the Court consider whether to exercise its discretion to vary the order.[11]

**(E)    THE OPPRESSION CLAIMS ARE STATUTE BARRED**

22.    The Complaining Shareholders incorrectly allege that the limitation period in respect of its claims for oppression has not expired since the oppression is ongoing and has yet to be remedied.

---

[11] *Wayne v 1690416 Ontario Inc.*, 2012 ONSC 4861, paras. 37 and 38,  aff'd 2013 ONCA 108, Shareholders' BOA, Tabs 7 and 8.

23.      Courts are careful not to convert singular oppressive actions into ongoing oppressive claims in an effort to avoid the limitations period, as to do so, "would create a special rule for oppression remedy claims."[12]   Here, there are no allegations of ongoing oppressive conduct. Each of the Second, Third and Fourth Amendment Agreements were singular events that gave rise to the start of a new two-year limitation period, the last of which expired on March 12, 2017, the two year anniversary of the Fourth Amendment Agreement.[13]

24.      The Court of Appeal's decision in *Maurice v Alles*[14] does not assist the Complaining Shareholders.   In that decision, the Court found that the party alleged to have committed the oppressive act engaged in subsequent new conduct which gave rise to a new cause of action for oppression. This is not the case here. Each of the Second, Third and Fourth Amendment Agreements were independent single acts in time, not further to or based upon previous allegedly oppressive acts.

25.      Further, there is no basis for the Complaining Shareholders' submission that the oppression remedy limitation period does not commence until the allegedly oppressive conduct is remedied.   The relevant limitation period begins when the cause of action arises, not when it is remedied.[15]

**(F)      SECTION 142 OF THE COURTS OF JUSTICE ACT IS APPLICABLE**

26.      The Complaining Shareholders seek to avoid the clear application of section 142 of the *Courts of Justice Act* on the basis that neither the Shareholder Motion nor the Shareholder Claim contemplate an imposition of liability on the Company or on the DIP Lender.   In fact and contrary to their argument, the Shareholder Claim, on its face, seeks to impose <u>liability</u> on the

---

[12] *Maurice v Alles*, 2016 ONCA 287("*Maurice*"), para. 49, Shareholders' BOA Tab 10.
[13] The limitation period for the Second Amendment Agreement expired on June 5, 2015; the limitation period for the Third Amendment Agreement expired on April 14, 2016.
[14] 2016 ONCA 287, Shareholders' BOA, Tab 10.
[15] *Maurice,* para. 48, Shareholders' BOA Tab 10.

DIP Lender for acts alleged to be oppressive and in violation of section 347(1) of the *Criminal Code*.  The liability they seek to impose is forfeiture of the DIP Lender's Court-approved right to percentages of the NAP pursuant to the Amendment Agreements.

27.     Further, the DIP Lender is not using section 142 as a sword but rather as a shield.  The Divisional Court has confirmed that the protection of section 142 applies to acts done in good faith in compliance with the specific dictates of a court order.[16]  Given the explicit and mandatory provisions of the Final Orders, that protection applies here to the DIP financing provided in reliance on the Final Orders.

**PART II - CONCLUSION**

28.     Aside from the Complaining Shareholders not providing any discernable basis to justify the variation of this Court's orders, it is noteworthy, but not surprising, that the Complaining Shareholders have completely failed to respond to the DIP Lender's reliance on the fundamental principle of finality of orders and the *functus officio* rule.  Critically, they fail to respond to the application of that principle and rule in this Court, which has consistently held that it will not disturb final CCAA orders which parties have relied upon to their detriment.

29.     The DIP Lender has made a series of credit decisions to advance in excess of US$75 million, and extend the maturity of those debt obligations on multiple occasions over a five year period of time, in complete reliance on the Final Orders of this Court, on each occasion acting in good faith on the terms of those orders. That alone is a sufficient basis to grant the DIP Lender Motion and dismiss the Shareholder Motion.

30.     Accordingly, for the reasons set out in the DIP Lender factum, as supplemented by this reply, the Court should dismiss the Shareholder Motion.

---

[16] *Canada (Attorney General) v. Tremblay*, 2011 ONSC 3763, para. 19, DIP Lender Supp BOA, Tab 7.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 24th day of March, 2018.

_____
Cassels Brock & Blackwell LLP
Lawyers for the DIP Lender

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSO#: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSO#: 59510J
Tel:    416.860.6465
Fax :   416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSO#: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Lara Jackson  LSO#: 41858M
Tel:    416.860.2907
Fax:    416.640.3108
ljackson@casselsbrock.com

Jane Dietrich  LSO#: 49302U
Tel:    416.860.5223
Fax:    416.640.3114
jdietrich@casselsbrock.com

Lawyers for the Moving Parties, Tenor KRY
Cooperatief U.A.,Tenor Special Situation I, LLC
and Luxembourg Investment Company 31 S.a.r.l.

## SCHEDULE A – LIST OF AUTHORITIES

1.  *Currie v Halton Regional Police Service Board* 2004 CarswellOnt 4674

2.  *Hebditch v Birnie*, 2017 ONCA 169

3.  *Stoughton Trailers Canada Corp. v. James Expedite Transport Inc.*, 2008 ONCA 817

4.  *Cookish v. Paul Lee Associates Professional Corp.*, 2013 ONCA 278

5.  *Monarch Construction Ltd. v Buildevco Ltd. et al.*, 1988 CarswellOnt 369

6.  *Rick v Brandsema*, 2009 SCC 10

7.  *Canada (Attorney General) v. Tremblay*, 2011 ONSC 3763

| | |
|---|---|
| IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, 1985, C.c-36 AS AMENDED<br><br>AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION | Court File No. CV-11-9532-00CL |

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT TORONTO

**REPLY FACTUM OF THE DIP LENDER**

**Cassels Brock & Blackwell LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSO#: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSO#: 59510J
Tel:      416.860.6465
Fax :     416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSO#: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Lara Jackson  LSO#: 41858M
Tel:      416.860.2907
Fax:      416.640.3108
ljackson@casselsbrock.com

Jane Dietrich  LSO#: 49302U
Tel:      416.860.5223
Fax:      416.640.3114
jdietrich@casselsbrock.com

Lawyers for the Moving Parties, Tenor KRY Cooperatief U.A.,Tenor Special Situation I, LLC and Luxembourg Investment Company 31 S.a.r.l

# **EXHIBIT F**

**Canadian Court's Opinion and Order Denying Committee Variance Motion**

**CITATION:** Crystallex International Corporation (Re), 2018 ONSC 2443
**COURT FILE NO.:** CV-11-9532-00CL
**DATE:** 20180522

## SUPERIOR COURT OF JUSTICE – ONTARIO
## (COMMERCIAL LIST)

**RE:**      IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C., 1985, c. C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CRYSTALLEX INTERNATIONAL CORPORATION

Applicant

**BEFORE:**    HAINEY J.

**COUNSEL:**   *James Doris*, for the Applicant, Crystallex International Corporation

*David Byers* and *Lesley Mercer*, for the Monitor

*Timothy Pinos, Ryan Jacobs* and *Shayne Kukulowicz*, for the DIP Lender

*Aubrey G. Kauffman*, for Robert Fung and Marc Oppenheimer

*Clifton Prophet* and *Delna Contractor*, for the Ad Hoc Committee of Shareholders

*Chris Armstrong*, for the Ad Hoc Committee of Noteholders

**HEARD:**    March 28, 2018

## ENDORSEMENT

### Overview

[1]    This is a motion by the Ad Hoc Committee of Shareholders of Crystallex International Corporation ("Ad Hoc Committee") for the following relief:

    a) An order lifting the stay of proceedings to allow the Ad Hoc Committee to commence and continue the claims below with respect to alleged oppression of the shareholders of Crystallex International Corporation ("Crystallex") and a breach of the criminal interest rate provisions in the *Criminal Code of Canada*;

    b) An order varying the following orders of Newbould J. (collectively "Final Orders") to the extent necessary to permit the claims to be commenced and continued:

(i)    Order dated June 5, 2013 approving the terms of the Second Credit Agreement Amendment dated June 5, 2013;

(ii)    Order dated April 14, 2014 approving the terms of the Third Credit Agreement Amendment dated April 16, 2014;

(iii)    Order dated December 18, 2014 approving the terms of the Fourth Credit Agreement Amendment dated March 12, 2015; and,

(iv)    Order dated December 18, 2014 approving the Net Arbitration Proceeds Transfer Agreement among the Applicant, the DIP Lender, Robert Fung and Marc Oppenheimer dated Mach 12, 2015.

[2]    The grounds for the motion are as follows:

***Leave Motion***

a)    On June 5, 2013, Newbould J. directed that no party is to bring a motion in these proceedings without leave of the court after consultation with the Monitor;

b)    On June 7, 2016, Newbould J. further directed that any party seeking to bring a motion in this proceeding is to provide draft motion material to counsel for the Applicant and request arrangements be made to appear at a chambers appointment to address the scheduling and hearing of the motion (the "Motion Protocol");

c)    The Ad Hoc Committee has provided its draft motion material to counsel for the Applicant and has requested a scheduling attendance, in compliance with the Motion Protocol;

d)    Crystallex's shareholders have an economic interest in the Applicant in view of the US$1.202 billion arbitration award ("Arbitration Proceeds") made in favour of Crystallex against the Bolivarian Republic of Venezuela ("Venezuela");

e)    I approved a contract of Transaction and Settlement dated November 15, 2017 between the Applicant and Venezuela described by the Monitor in paragraph 27 of its Twenty-Second Report as providing "significant value to the Applicant over time beyond the quantum of asserted creditor claims against the Applicant";

f)    As particularized in the Ad Hoc Committee's draft statement of claim, Crystallex's shareholders' interests have been diluted such that they currently represent a very small percentage of the Net Arbitration Proceeds ("NAP"), which are the Applicant's only remaining asset;

g)    The dilution of Crystallex's shareholders' interests has been caused by DIP credit agreements that confer ever-increasing percentages of NAP on the DIP Lender. These arrangements were approved by the court without any effective notice to Crystallex's shareholders and in circumstances in which the Applicant, is directors and the DIP

Lender acted in a manner that was oppressive, unfairly prejudicial to and in unfair disregard of the interests of Crystallex's shareholders;

h) Unless leave to bring this motion is granted to allow the claims set out in the Ad Hoc Committee's statement of claim to proceed, Crystallex's shareholders will have no opportunity to be heard in relation to the severe dilution of their interests and they will lose very significant value and be denied access to justice;

### *Lift Stay re Oppression Claim*

i) The Ad Hoc Committee seeks to issue and proceed with a claim which alleges, among other things, that the granting of compensation to the DIP Lender in the form of percentage interests in the NAP that are very substantial, was oppressive, in unfair disregard of, and unfairly prejudicial to the interests of Crystallex's shareholders (the "Oppression Claim");

### *Lift Stay re Breach of Criminal Interest Rate*

j) The Oppression Claim further alleges that the compensation provided to the DIP Lender is in breach of the *Criminal Code of Canada*.

**Issue**

[3]    The Ad Hoc Committee represents the interests of over 218 shareholders ("Complaining Shareholders") who together hold almost 30% of the common shares of Crystallex. According to the Ad Hoc Committee the fundamental question raised by this proposed motion is whether it is in the interests of justice for the court to vary the Final Orders.

[4]    I have concluded that the answer to this fundamental question is "no" for the following reasons.

**Analysis**

[5]    The Final Orders made over the last five years approving amendments to the DIP credit agreements were all declared to be fair, reasonable and appropriate by Newbould J. The DIP Lender relied upon these orders to advance and permit Crystallex to access over $75 million to pursue its claim against Venezuela. Its claim resulted in an arbitration award of approximately US$1.3 billion. This would not have occurred without the substantial financial support from the DIP Lender.

[6]    The Complaining Shareholders have been aware of this CCAA proceeding since early 2012. They were aware of the Monitor's website where information concerning the motions to amend the DIP credit agreements and the Final Orders was readily available. They took no steps to participate in this proceeding or to challenge any of the orders sought by the DIP Lender to amend the DIP credit agreements despite having notice and many opportunities to do so.

[7]    The Complaining Shareholders now seek to overturn the Final Orders long after the applicable appeal periods have expired to the serious detriment of the DIP Lender who relied upon the orders in advancing a significant amount of financing so that Crystallex could pursue is claim against Venezuela.

[8]    In my view, in light of this background, the Final Orders, which were made following full hearings in court, and were issued and entered long ago, are a complete bar to the Ad Hoc Committee's proposed claim.

[9]    Further, I have concluded that there is no basis in law to vary the Final Orders as the Ad Hoc Committee seeks to do. The Supreme Court of Canada made it clear in *Doucet-Boudreau v. Nova Scotia (Minister of Education)*, 2003 SCC 62 at paras. 115 and 116 that, "... subject to an appeal, parties are secure in the reliance on the finality of superior court decisions" and "only in strictly limited circumstances can a court revisit an order or judgment..."

[10]    The only "limited circumstances" available for varying a final, issued and entered order are the following:

    a)  The court's inherent jurisdiction to correct slips or errors in expression;

    b)  Rule 59.06(2) of the *Rules of Civil Procedure* (the "Rules"); and

    c)  Rule 37.14 of the Rules.

***Inherent Jurisdiction***

[11]    The power of a court to vary an order after it has been issued and entered is limited to making the order conform to the judgment pronounced or intended to be pronounced. The Complaining Shareholders are not seeking to correct a slip or an error in the expression of a judgment. Rather, they are seeking to overturn key provisions of the Final Orders. The applicable jurisprudence is clear that this court does not have the inherent jurisdiction to review or vary these Final Orders in the manner requested by the Ad Hoc Committee.

[12]    The fairness and reasonableness of the terms of the transactions contemplated by the original DIP credit agreement as amended by the Final Orders was determined at the time the orders were approved by the court. This was before the DIP Lender and Crystallex relied and acted upon those court approvals. A complaint that a shareholding interest that arguably had no value upon the CCAA filing in 2011 may be worth more now, following six years of DIP Lender support and effort by Crystallex to create value for stakeholders, is not evidence of an injustice to the Complaining Shareholders that warrants overturning the Final Orders.

[13]    For these reasons, I am not prepared to vary the orders on the basis of my inherent jurisdiction.

***Rule 59.06(2)***

[14]    There are no allegations that, if proved, would permit me to amend or vary the Final Orders pursuant to the limited exceptional circumstances under Rule 59.06(2) of the Rules.

[15]    The two limited exceptional circumstances under Rule 59.06(2) are: (i) fraud, or (ii) new facts that have arisen or have been discovered after the order was made.

[16]    The Ad Hoc Committee's motion does not make any allegations of fraud or of new facts that would permit me to reopen and vary the Final Orders under this rule. Instead, the motion is an attempt to re-litigate the merits of the Final Orders based on arguments that could have been advanced when the Final Orders were sought and granted many years ago. No new facts have arisen, or are alleged to have arisen, since the Final Orders were made.

[17]    I am, therefore, not prepared to vary the Final Orders on the basis of Rule 59.06(2).

### *Rule 37.14*

[18]    There is also no basis to amend or vary the Final Orders under Rule 37.14 of the Rules. Under this Rule, the court may only vary an order where "no notice or insufficient notice" has been provided to an affected party and where the party affected by the order moves forthwith to vary the order.

### *Notice Effected*

[19]    Service and notice in this CCAA proceeding were effected in compliance with the Initial Order and s. 23 of the CCAA. There is no requirement in the CCAA or the Initial Order to give any other specific notice to shareholders.

[20]    It was open to any one of the Complaining Shareholders to file a notice of appearance and to be added to the Service List. In fact, counsel for two shareholders were added to the Service List and, therefore, received notice of all subsequent proceedings, and made submissions at hearings dealing with the Final Orders now under attack by the Ad Hoc Committee.

[21]    The Complaining Shareholders did nothing to be added to the Service List. The motion material for the Final Orders was served upon everyone on the Service List. The Final Orders provide that no further service is required.

[22]    Mr. Justin Fine, who testified on behalf of the Ad Hoc Committee, confirmed that the Complaining Shareholders were aware of the proceedings shortly after the granting of the Initial Order. They also had various discussions with representatives of Crystallex and the Monitor and they were aware of the Monitor's website.

[23]    The Complaining Shareholders also knew or ought to have known about the Final Orders shortly after they were issued and entered. They were in a position to have known the amounts of the additional DIP loans and the percentage of the NAP to be earned by the DIP Lender. Each of the Final Orders was posted on the Monitor's website after being issued and entered. The Final Orders approving the Second and Third Credit Agreement Amendments contained the amounts of the additional DIP loans and the percentage of the NAP to be earned by the DIP Lender. The order approving the Fourth Credit Agreement Amendment contained a term allowing any creditor or shareholder to obtain a copy of the relevant terms from Crystallex, on such terms as Crystallex and the Monitor agreed, or on further order of the court.

[24]    Accordingly, the Complaining Shareholders were in a position to obtain the necessary information to advance the allegations now asserted had they exercised modest due diligence in response to the Initial Order or following the dates on which any of the Final Orders were made.

[25]    I am, therefore, satisfied that the Complaining Shareholders had sufficient notice concerning the Final Orders.

### Failure to Move "Forthwith"

[26]    The Complaining Shareholders did not move "forthwith", as required by Rule 37.14, despite the fact that they were aware, or could have been aware, of the Final Orders, prior to or at the time they were made, or at least shortly thereafter once posted on the Monitor's website.

[27]    Serving this motion in December 2017, seeking to vary the Final Orders that were issued, entered and posted publicly between June 2013 and December 2014, was clearly not done "forthwith".

[28]    I have concluded that the Complaining Shareholders' failure to move forthwith is also a bar to the variation of the Final Orders pursuant to Rule 37.14.

### Legal Barriers to Variation

[29]    I have also concluded that the following legal barriers prevent the variation of the Final Orders sought by the Ad Hoc Committee:

a)  a court will not disturb a final order if parties have acted and relied upon it;

b)  the Ad Hoc Committee's claims are barred by s. 142 of the *Courts of Justice Act*;

c)  the Ad Hoc Committee's claims are statute-barred pursuant to the *Limitations Act*; and

d)  the Ad Hoc Committee's claim based upon a criminal interest rate is bound to fail.

### Reliance on Final Orders

[30]    CCAA jurisprudence is consistent that final orders that have been relied upon by parties to the CCAA proceeding will not be disturbed. In *DBCD Spadina Ltd. et al. v. Norma Walton et al.*, 2015 ONSC 870, at para. 16, Newbould J. held that a court should be loath to vary an order if persons relying on the order would be materially prejudiced. With respect to CCAA initial orders, Farley J. commented on comeback motions in *Muscletech Research and Development Inc., (Re)*, 2006 ONSC 316 at para. 5 as follows:

> Comeback relief, however, cannot prejudicially affect the position of parties who have relied *bona fide* on the previous order in question.

[31]    More recently, in *Target Canada Co. (Re)*, 2016 ONSC 316, Morawetz R.S.J. rejected a plan of arrangement that would conflict with a final order made in the CCAA proceeding, stating as follows at para. 81:

> The CCAA process is one of building of blocks. In this [sic] proceedings, a stay has been granted and a plan developed. During these proceedings, this court has made a number of orders. It is essential that court orders made during CCAA proceedings be respected... Certain parties now wish to restate the terms of the negotiated orders. Such a development would run counter to the building block approach underlying these proceedings since the onset.

[32]    In this case Crystallex and the DIP Lender have relied in good faith on the Final Orders. In particular, the DIP Lender has advanced and permitted Crystallex to use in excess of US$75 million in reliance on the Final Orders.

[33]    In my view, to vary the Final Orders now would turn this entire CCAA proceeding into chaos, result in a default under the DIP credit agreement and the amendment agreements and undermine the commercial certainty and reliability of the DIP financing process in every future CCAA proceeding. I am not prepared to vary the Final Orders which have been relied upon by parties in good faith who have taken significant risks and expended substantial resources to maximize value. Particularly since throughout this proceeding the Complaining Shareholders chose to sit on the sidelines.

## Claims Barred by the Courts of Justice Act

[34]    Section 142 of the *Courts of Justice Act* provides that a person is not liable for any act done in good faith in accordance with a court order. There is no allegation of bad faith here. At all times, the DIP Lender acted in good faith in reliance upon the Final Orders. In my view, it cannot now be liable for oppression for having done so.

## Claims Barred by the Limitations Act

[35]    I have also concluded that the Ad Hoc Committee's claims for oppression and breach of s. 347 of the *Criminal Code* are statute-barred by the *Limitations Act*. A claimant is presumed to have known of the loss or damage on the day the act or omission on which the claim is based took place, unless the contrary is proved. To prove the contrary, the claimant must show that it was highly unlikely, if not impossible, with reasonable due diligence, to have obtained the necessary information within the limitation period. The Ad Hoc Committee has not demonstrated this.

[36]    As described above, the Complaining Shareholders knew or ought to have known about the Final Orders at the time they were made and posted on the Monitor's website or shortly thereafter. They had ample opportunity to challenge or oppose these terms but instead, failed to act forthwith or with reasonable diligence within the limitation period.

## Claims regarding criminal interest rate are bound to fail

[37]    Section 347(1) of the *Criminal Code* provides that "every one who enters into an agreement or arrangement to receive interest at a criminal rate, or receive a payment or partial payment of interest at a criminal rate" is guilty of an offence.

[38]    In order for there to be an offence, the agreement or arrangement in question must, on its face, require payment of interest at a criminal rate. The DIP credit agreement does not require, and in fact expressly prohibits, the payment of interest at a criminal interest rate:

a)   the parties to the DIP credit agreement specifically agreed to comply with enumerated and detailed procedures for the adjustment, if necessary, of interest payable under the DIP credit agreement in any given year to ensure that "no receipt by the [DIP] Lender of any payments to the [DIP] Lender hereunder would result in a breach of section 347 of the *Criminal Code (Canada)*"; and

b)   the law is clear that where a payment that might be considered interest is not fixed, but is dependent upon future events (like the collection of the Arbitration Award) which may or may not cause it to exceed the criminal interest rate prohibition, the agreement is not contrary to s. 347(1) of the *Criminal Code.*

[39]    Further, the claim for receipt of interest by the DIP Lender at a criminal interest rate is premature because no interest has yet been received. A claim based on the alleged receipt of interest at a criminal rate is a "wait-and-see" cause of action. It cannot accrue until interest has actually been paid and its timing and quantum are known so as to permit the calculation of the effective rate of interest.

**Conclusion**

[40]    For all of these reasons the Ad Hoc Committee's motion is dismissed.

[41]    If the parties cannot agree on costs they may schedule a 9:30 a.m. attendance with me.

[42]    I thank counsel for their helpful submissions.

HAINEY J.

**Date:** May 22, 2018

Court File No. CV-11-9532-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

THE HONOURABLE        )            TUESDAY THE 22nd DAY

                          )

MR. JUSTICE HAINEY       )                   OF MAY, 2018



**IN THE MATTER OF** the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c.C-36 as amended

**AND IN THE MATTER OF** a Plan of Compromise or Arrangement of Crystallex International Corporation

### CRYSTALLEX INTERNATIONAL CORPORATION

Applicant

## ORDER

**THIS MOTION**, made by Tenor KRY Cooperatief U.A., Tenor Special Situation I, LLC and Luxembourg Investment Company 31 S.a.r.l. (collectively, "**the DIP Lender**"), seeking the dismissal of the Motion commenced by Edesio Biffoni, Gerald Cantwell, Robert Danial, Justin Fine, Steven Kosson, Colin Murdoch, Grant Watson and David Werner (the "**Ad Hoc Shareholder Committee**"), the Notice of Motion for which is attached as Schedule A (the "**Ad Hoc Committee Motion**"), was heard on March 28, 2018 at 330 University Avenue, Toronto, Ontario.

**ON READING** the Motion Record and Compendium of the DIP Lender, the Motion Record and Compendium of the Ad Hoc Shareholder Committee, the Factum and Reply Factum of the DIP Lender, the Facta of the Ad Hoc Shareholder Committee, the Applicant, and Marc Oppenheimer and Robert Fung, and hearing the submissions

of counsel on behalf of the DIP Lender, the Ad Hoc Shareholder Committee, the Applicant, Marc Oppenheimer and Robert Fung and the Monitor, and in the presence of counsel for Computershare Trust Company of Canada in its capacity as Trustee for the holders of Senior 9.375% Notes due December 23, 2011 issued by the Applicant and the Ad Hoc Committee of Beneficial Owners of the Senior Notes for Crystallex, decision having been reserved to this day:

**AD HOC COMMITTEE MOTION**

1.          **THIS COURT ORDERS** that the Ad Hoc Committee Motion is dismissed in its entirety.

2.          **THIS COURT ORDERS** that the costs of this motion, inclusive of taxes and disbursements be paid jointly and severally by Edesio Biffoni, Gerald Cantwell, Robert Danial, Justin Fine, Steven Kosson, Colin Murdoch, Grant Watson and David Werner as follows:

     (a)     $40,000 to the DIP Lender;

     (b)     $5,000 to the Applicant; and

     (c)     $5,000 to Marc Oppenheimer and Robert Fung.

**CONFIDENTIALITY**

3.          **THIS COURT ORDERS** that all materials filed in connection with this Motion and the Ad Hoc Committee Motion that have been labelled as "Confidential" (the "**Sealed Materials**") shall be sealed and not form any part of the public record in this proceeding.

- 3 -

4.       **THIS COURT ORDERS** that the Sealed Materials shall not be copied or disseminated beyond counsel except as authorized by the Applicant or by further order of this Court.

5.       **THIS COURT ORDERS** that, subject to the endorsement of this court dated June 7, 2016, any party may apply to the Court on proper notice to all parties in interest to modify the provisions in paragraphs 3 and 4 of this Order and nothing in this Order shall be deemed to prejudice their rights to seek such modification or to assert that the Sealed Materials are not confidential.

**This Order bears interest at 3% per annum.**

_____
(Signature of Judge)

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO:

JUN 1 2 2018

PER / PAR:

**IN THE MATTER OF** a Plan of Compromise or Arrangement of Crystallex International Corporation

| | | |
|---|---|---|
| **Crystallex International Corporation** | Applicant | Commercial List File No: CV-11-9532-00CL |

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

Proceeding commenced at Toronto

# ORDER

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, ON  M5H 3C2

Tim Pinos  LSUC#: 20027U
Tel:    416.869.5784
Fax:    416.350.6903
tpinos@casselsbrock.com

Ryan Jacobs  LSUC#: 59510J
Tel:    416.860.6465
Fax :   416.640.3189
rjacobs@casselsbrock.com

Shayne Kukulowicz  LSUC#: 30729S
Tel:    416.860.6463
Fax:    416.640.3176
skukulowicz@casselsbrock.com

Counsel to Tenor KRY Cooperatief U.A., Tenor Special Situation I, LLC and Luxembourg Investment Company 31 S.a.r.l.

**<u>EXHIBIT G</u>**

**Court of Appeal for Ontario's Ruling Affirming Denial of Committee Variance Motion**

# COURT OF APPEAL FOR ONTARIO

CITATION: Crystallex International Corporation (Re), 2018 ONCA 778
DATE: 20180925
DOCKET: M49312

Sharpe, Juriansz and Pepall JJ.A.

BETWEEN

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
CRYSTALLEX INTERNATIONAL CORPORATION

Applicants

Clifton P. Prophet and Nicholas Kluge, for the Moving Party, The Ad Hoc
Committee of Shareholders of Crystallex International Corporation

Timothy Pinos, Ryan C. Jacobs and Shayne Kukulowicz, for the Respondent, the
DIP Lender

Jay A. Swartz, James Doris and Robin Schwill for the Respondent, Crystallex
International Corporation

Aubrey E. Kauffman for the Respondents, Robert Fung and Marc Oppenheimer

Heard: In Writing

Application for leave to appeal from the order of Justice Glenn A. Hainey of the
Superior Court of Justice, dated May 22, 2018.

## REASONS FOR DECISION

[1]    The Ad Hoc Committee of Shareholders of Crystallex International
Corporation (the "Committee") seeks leave to appeal the order of the motion judge
dated May 22, 2018, which was made in the context of proceedings relating to

Page: 2

Crystallex International Corporation ("Crystallex") under the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended ("CCAA").

[2]    The Committee represents the interests of over 200 shareholders who together hold approximately 30% of Crystallex's common shares. The motion judge dismissed the Committee's motion for an order lifting the stay of proceedings, imposed by the Initial Order granted in the CCAA proceedings, to allow the shareholders to commence an action. The Committee wished to vary Debtor in Possession ("DIP") financing orders that had received court approval four to five years ago. The proposed action alleged oppression and breach of the criminal interest rate provisions in the *Criminal Code.*

[3]    When Crystallex sought CCAA protection in December 2011, its assets consisted of an arbitral claim for US$3.8 billion against the Bolivarian Republic of Venezuela for breach of an exclusive mining contract relating to the Las Cristinas gold mine.

[4]    Following an auction process supervised by the Monitor, Tenor KRY Cooperatief U.A., Tenor Special Situation 1, LLC, and Luxembourg Investment Company 31 S.a.r.l. (the "DIP Lender") were selected to provide the DIP financing. Pursuant to an initial credit agreement, the DIP Lender proposed to provide US$36 million to Crystallex to fund its arbitral claim against Venezuela in exchange for a 35% interest in Crystallex's potential recovery in that proceeding (the "Net

Page: 3

Arbitration Proceeds" or "NAP"). An agreement containing a management incentive plan also provided for the discretionary compensation of Crystallex management who would receive a percentage of the NAP if the arbitration was successful. Management included Robert Fung and Marc Oppenheiner, both directors of Crystallex (the "individual respondents"). Fung is now the Chairman and CEO of Crystallex and Oppenheimer was previously the company's CEO. On April 16, 2012, Newbould J. granted orders approving both agreements.

[5]     The Trustee of the Noteholders unsuccessfully appealed the April 16, 2012 orders to this court: *Crystallex International Corp. (Re)*, 2012 ONCA 404, 293 O.A.C. 102. Hoy J.A., as she then was, concluded, at paras. 71-72, that there was no basis to interfere with Newbould J.'s discretionary decision to approve the DIP financing and the management incentive plan.

[6]     On June 5, 2013, April 14, 2014, and December 18, 2014, Newbould J. granted orders amending the initial credit agreement. Those amendments collectively increased Crystallex's indebtedness to US$75 million and gave the DIP Lender an increasingly higher percentage interest in the NAP. The funding was primarily to enable the continuation of the arbitral proceedings. In the December 18, 2014 order, Newbould J. also approved a NAP transfer agreement which gave the individual respondents a further percentage of the NAP.

Page:  4

[7]    On April 4, 2016, Crystallex obtained an arbitral award of approximately US$1.4 billion against Venezuela. Subsequently, Venezuela and Crystallex entered into a settlement agreement which was approved by the motion judge on November 29, 2017.

[8]    The shareholders allege in their proposed action that the DIP financing amendments and the NAP transfer agreement severely diluted their interest in the arbitral award by assigning all but a small percentage of the proceeds to the DIP Lender and the individual respondents. They claim that these amendments were entered into in unfair disregard of and to the prejudice of the interests of the shareholders.

[9]    In its May 2018 motion, the Committee sought to vary the amending orders but did not impugn the initial orders approving the DIP financing and the management incentive plan. The Committee contended that the amending orders in 2013 and 2014 were granted without prior notice to the shareholders.

[10]   On May 22, 2018, the motion judge dismissed the shareholders' motion to lift the stay of proceedings, thus precluding the Committee from commencing the proposed action. He concluded that the orders granted by Newbould J. approving the DIP financing amendments and the NAP transfer agreement were final in nature and constituted a complete bar to the relief requested.

Page: 5

[11]   The motion judge concluded that there was no basis in law to vary the impugned amending orders. He noted that the limited circumstances for varying a final, issued and entered order are: the court's inherent jurisdiction to correct slips or errors in expression: r. 59.06(2) of the *Rules of Civil Procedure*; and r. 37.14 of the *Rules of Civil Procedure*.

[12]   He concluded that the Committee was not seeking to correct a slip or error but to overturn key provisions of the orders. He noted that the fairness and reasonableness of the terms had been determined at the time the orders were approved and at a time before the DIP Lender and Crystallex relied and acted upon them. Accordingly, he was not prepared to vary the orders on the basis of his inherent jurisdiction. Nor was he persuaded that the limited circumstances under r. 59.06(2) had been established. He concluded that this was not a case of fraud or newly discovered facts.

[13]   Finally, he rejected the argument that the orders should be varied under r. 37.14 because the shareholders had insufficient or no notice of the motions to approve the amendments. He concluded, at para. 19, that service and notice were effected in compliance with the Initial Order and with s. 23 of the CCAA. Based on the shareholders' own materials, he concluded that they had been aware of the CCAA proceedings since early 2012. Any one of the complaining shareholders could have filed a notice of appearance and been added to the service list. Finally,

Page: 6

the Committee had not moved forthwith, as required by r. 37.14, to vary the orders that had been granted some four to five years earlier.

[14]   He also noted various legal barriers to variation of the orders. He observed that courts are loathe to vary a CCAA order if persons relying on the order would be materially prejudiced and that, in this case, the DIP Lender had relied in good faith on the court orders. Furthermore, the claims for oppression and for breach of the *Criminal Code* interest rate provisions were time-barred. He stated that the complaining shareholders had had ample opportunity to challenge or oppose the terms of the orders but had failed to act with reasonable diligence within the applicable limitation period.

[15]   Finally, he stated that the claims regarding the criminal interest rate were bound to fail because the DIP financing agreements did not require, and in fact prohibited, the payment of interest at a criminal interest rate.

**Discussion**

[16]   The test for leave to appeal from the decision of a judge supervising a CCAA proceeding is not contentious. The moving party must demonstrate serious and arguable grounds that justify the granting of leave. The court will consider whether the proposed appeal is: (i) *prima facie* meritorious and not frivolous; (ii) of significance to the practice; (iii) of significance to the proceeding, and (iv) whether

Page: 7

the appeal will unduly hinder the progress of the action: *Nortel Networks Corporation (Re)*, 2016 ONCA 332, 130 O.R. (3d) 481, at para. 34.

[17]   For the reasons that follow, we conclude that the applicant's motion founders on the first factor, a consideration of the *prima facie* merits of the proposed appeal.

[18]   The issue to be addressed on this leave to appeal motion is the motion judge's ability to vary the impugned orders. The motion judge was entitled to rely on the record before him. He fairly concluded that there was no slip or error in expression in the orders, nor had the shareholders alleged any fraud or newly discovered facts. In our view, there was no basis to vary the orders based on inherent jurisdiction or r. 59.06(2) of the Rules. The shareholders rely on *Clatney v. Quinn Thiele Mineault Grodzki LLP*, 2016 ONCA 377, 131 O.R. (3d) 511, a case involving variation of a consent order. Variation of such an order engages principles that differ from those applicable to variation based on inherent jurisdiction or r. 59.06(2). See *Hebditch v. Birnie*, 2017 ONCA 169, at para. 13.

[19]   Variation of an order pursuant to r. 37.14(1)(a) or (b) requires an absence of or insufficient notice. As the motion judge correctly observed, notice was effected in accordance with the Initial Order and with s. 23 of the CCAA. In this regard, the Monitor published notices of the CCAA proceeding and created a website on which it posted its reports, court orders, and motion materials. The Monitor issued a press release that identified the website's address. With one exception, all of the motion

Page: 8

materials disclosed the amounts of the additional loans and the proposed percentage of the NAP to be retained by the respondents.

[20]    None of the shareholders now represented by the Committee took any steps to be placed on the service list. They took no steps to participate and failed to attend the hearings in 2013 and 2014 when the orders in issue were granted. According to their own evidence, the shareholders knew of the CCAA proceeding since early 2012. The motion judge concluded that the shareholders had notice. In our view, he made no palpable and overriding error in this regard. The Committee has been unable to demonstrate that the motion judge exercised his discretion unreasonably or made any error in principle in dismissing its motion.

[21]    We are also of the view that the remaining factors to be considered on a motion for leave to appeal a CCAA order do not favour the Committee's position. The use of litigation funding agreements in CCAA proceedings may well be of importance to the insolvency bar. However, this is not the issue on which this leave to appeal motion turns. To challenge these agreements, the Committee must first overcome the hurdle of varying the orders granted by Newbould J. The issue regarding variation of these CCAA orders is not of public importance as the law on varying orders is neither new nor contentious. The motion judge's conclusion that there was no basis to vary the orders was a fact-specific determination which is of limited significance to the practice or to the public.

Page:  9

[22]    While we agree that the appeal may be of significance to the action, standing alone, this factor is insufficient to warrant granting leave to appeal: *Nortel Networks*, at para. 95.

[23]    Lastly, the motion judge accepted that varying the final orders would have a serious impact on the credit arrangements and would throw the CCAA proceedings into chaos. We see no basis on which to interfere with his conclusion.

[24]    In essence, this is a case of too little too late. Potentially interested stakeholders cannot sit idle and await the outcome of realization proceedings. They must act to protect their interests or suffer the attendant consequences.

[25]    In closing, we note that DIP financing was originally conceived as a means to fund operations while a company under CCAA protection restructured. The disposition of this motion should not be interpreted as an endorsement or a rejection of the amendments approved by Newbould J.

**Disposition**

[26]    The motion for leave to appeal is dismissed. The parties are to bear their own costs.

# **EXHIBIT H**

**OSB's Letter Dismissing Movant's Ethics Complaint**

Innovation, Science and
Economic Development Canada
Office of the Superintendent
of Bankruptcy Canada

Headquarters
via 235 Queen Street
Ottawa, Ontario
K1A 0H5
osb.ic.gc.ca

Innovation, Sciences et
Développement économique Canada
Bureau du surintendant
des faillites Canada

Administration centrale
via 235, rue Queen
Ottawa (Ontario)
K1A 0H5
bsf.ic.gc.ca

Reference Number: 78940

January 28, 2019

Adelso A. Adrianza
113 Washington Street
Newton, MA
02458- U.S.A.

Subject:  Complaint Against the Conduct of the Monitor in Crystallex International Corporation

Dear Mr. Adrianza:

I am writing in response to your correspondence of November 5, 2018, with regard to the conduct
of the Monitor appointed by the court to administer the company Crystallex International
Corporation (Crystallex) under the *Companies' Creditors Arrangement Act* (CCAA). In
particular, you raised concerns that the Monitor's responsibilities were compromised by the
unrestrained power of Crystallex and that the Monitor has aided and abetted Crystallex's interests
by preventing Crystallex's stakeholders from becoming aware of dealings detrimental to their
interests.

The Superintendent of Bankruptcy is responsible for maintaining a registry of all CCAA filings in
Canada and investigates complaints against Monitors.  Our office does not, however, have the
legal authority to review, comment on, nor could it change matters that are beyond the scope of
our legislative mandate.  As CCAA processes are court driven, all on-going matters and concerns
pertaining to the administration of a CCAA filing must be addressed by the court.

Our office undertook a detailed review of your complaint, the email and documents you provided
and forwarded copies to the Monitor for comment.  We also considered the issues you raised in
the context of the relevant provisions of the CCAA, the OSB's regulatory authority, the Code of
Ethics for trustees and pertinent information available from all sources. The results of our review
are provided below.

Responsibilities of the Monitor Compromised by Crystallex

The Monitor is appointed by the court in the initial CCAA order to handle the administrative
functions related to the CCAA proceeding. The Monitor is impartial and does not represent the
interests of any particular party in the CCAA proceeding.  As an officer of the court, the
Monitor's role is to monitor the company's business and financial affairs to ensure compliance
with the law, the court orders and terms of any plan of arrangement.  The roles and



responsibilities of the Monitor are specifically set out in sections 23-25 of the CCAA, which I have attached for your information.

An assessment of the information provided to us indicates that the Monitor observed and participated as appropriate in the CCAA proceedings and provided the court with its independent views, analysis and advice. The Monitor brought substantive matters before the court for approval and kept the court aware of competing views amongst stakeholders and Crystallex. In addition, interested stakeholders who chose to participate in the CCAA proceedings made submissions to the court as they deemed appropriate.

Following a review of all relevant documentation, it is our conclusion that the Monitor has met its responsibilities under the CCAA. There is no indication that these responsibilities were compromised by Crystallex.

Allegation of Aiding and Abetting Crystallex's Interests by Preventing Disclosure of Information

The CCAA Initial Order specifically addresses the disclosure of information in the Crystallex CCAA proceedings. Paragraph 29 of the CCAA Initial Order states "…In the case of information that the Monitor has been advised by the Applicant is confidential, the Monitor shall not provide such information to creditors or any other person unless otherwise directed by this Court or on such terms as the Monitor and the Applicant may agree."

At the request of Crystallex, the Monitor redacted information from its reports that Crystallex deemed to be confidential. This practice is consistent with the CCAA Initial Order.

The Monitor served notice to Crystallex's creditors and published notices in the Globe and Mail and the Wall Street Journal to inform stakeholders of the CCAA proceedings. Furthermore, the Monitor maintains a publicly available website with information regarding the proceedings. This website is found at: https://documentcentre.eycan.com/Pages/Main.aspx?SID=229&Redirect=1

Interested parties may contact the Monitor to be added to the service list to receive motion materials, Monitor's reports and court orders. Stakeholders and interested parties may also apply to the court for the release of information Crystallex has deemed confidential.

After careful analysis of this issue, we are unable to conclude that the Monitor prevented the disclosure of information to the detriment of Crystallex's stakeholders.

On the basis of the information available from all sources, our office has completed its review of your concerns. The OSB is satisfied that the Monitor administered the Crystallex proceedings in accordance with the CCAA and the Code of Ethics for trustees. The complaint file has been closed accordingly.

If you require further information or advice, you may wish to consult a lawyer with experience in Canadian insolvency matters. They will be able to counsel you on your rights and options, and provide you with an explanation of any applicable case law.

Thank you for bringing this matter to our attention.

Sincerely,

Rachel Rajput

cc. Mr. Brian Denega, EY

Enclosure:
- CCAA – ss. 23-25

*Companies' Creditors Arrangement*
**PART III** General
Classes of Creditors
**Sections 22-23**

*Arrangements avec les créanciers des compagnies*
**PARTIE III** Dispositions générales
Catégories de créanciers
**Articles 22-23**

sanctioned, and the extent to which the creditors would recover their claims by exercising those remedies; and

**(d)** any further criteria, consistent with those set out in paragraphs (a) to (c), that are prescribed.

#### Related creditors

**(3)** A creditor who is related to the company may vote against, but not for, a compromise or arrangement relating to the company.

1997, c. 12, s. 126; 2005, c. 47, s. 131; 2007, c. 36, s. 71.

#### Class — creditors having equity claims

**22.1** Despite subsection 22(1), creditors having equity claims are to be in the same class of creditors in relation to those claims unless the court orders otherwise and may not, as members of that class, vote at any meeting unless the court orders otherwise.

2005, c. 47, s. 131; 2007, c. 36, s. 71.

## Monitors

#### Duties and functions

**23 (1)** The monitor shall

**(a)** except as otherwise ordered by the court, when an order is made on the initial application in respect of a debtor company,

**(i)** publish, without delay after the order is made, once a week for two consecutive weeks, or as otherwise directed by the court, in one or more newspapers in Canada specified by the court, a notice containing the prescribed information, and

**(ii)** within five days after the day on which the order is made,

**(A)** make the order publicly available in the prescribed manner,

**(B)** send, in the prescribed manner, a notice to every known creditor who has a claim against the company of more than $1,000 advising them that the order is publicly available, and

**(C)** prepare a list, showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner;

**c)** les voies de droit ouvertes aux créanciers, abstraction faite de la transaction ou de l'arrangement, et la mesure dans laquelle il pourrait être satisfait à leurs réclamations s'ils s'en prévalaient;

**d)** tous autres critères réglementaires compatibles avec ceux énumérés aux alinéas a) à c).

#### Créancier lié

**(3)** Le créancier lié à la compagnie peut voter contre, mais non pour, l'acceptation de la transaction ou de l'arrangement.

1997, ch. 12, art. 126; 2005, ch. 47, art. 131; 2007, ch. 36, art. 71.

#### Catégorie de créanciers ayant des réclamations relatives à des capitaux propres

**22.1** Malgré le paragraphe 22(1), les créanciers qui ont des réclamations relatives à des capitaux propres font partie d'une même catégorie de créanciers relativement à ces réclamations, sauf ordonnance contraire du tribunal, et ne peuvent à ce titre voter à aucune assemblée, sauf ordonnance contraire du tribunal.

2005, ch. 47, art. 131; 2007, ch. 36, art. 71.

## Contrôleurs

#### Attributions

**23 (1)** Le contrôleur est tenu :

**a)** à moins que le tribunal n'en ordonne autrement, lorsqu'il rend une ordonnance à l'égard de la demande initiale visant une compagnie débitrice :

**(i)** de publier, sans délai après le prononcé de l'ordonnance, une fois par semaine pendant deux semaines consécutives, ou selon les modalités qui y sont prévues, dans le journal ou les journaux au Canada qui y sont précisés, un avis contenant les renseignements réglementaires,

**(ii)** dans les cinq jours suivant la date du prononcé de l'ordonnance :

**(A)** de rendre l'ordonnance publique selon les modalités réglementaires,

**(B)** d'envoyer un avis, selon les modalités réglementaires, à chaque créancier connu ayant une réclamation supérieure à mille dollars les informant que l'ordonnance a été rendue publique,

**(C)** d'établir la liste des nom et adresse de chacun de ces créanciers et des montants estimés des réclamations et de la rendre publique selon les modalités réglementaires;

Companies' Creditors Arrangement
**PART III** General
Monitors
**Section 23**

Arrangements avec les créanciers des compagnies
**PARTIE III** Dispositions générales
Contrôleurs
**Article 23**

**(b)** review the company's cash-flow statement as to its reasonableness and file a report with the court on the monitor's findings;

**(c)** make, or cause to be made, any appraisal or investigation the monitor considers necessary to determine with reasonable accuracy the state of the company's business and financial affairs and the cause of its financial difficulties or insolvency and file a report with the court on the monitor's findings;

**(d)** file a report with the court on the state of the company's business and financial affairs — containing the prescribed information, if any —

(i) without delay after ascertaining a material adverse change in the company's projected cash-flow or financial circumstances,

(ii) not later than 45 days, or any longer period that the court may specify, after the day on which each of the company's fiscal quarters ends, and

(iii) at any other time that the court may order;

**(d.1)** file a report with the court on the state of the company's business and financial affairs — containing the monitor's opinion as to the reasonableness of a decision, if any, to include in a compromise or arrangement a provision that sections 38 and 95 to 101 of the *Bankruptcy and Insolvency Act* do not apply in respect of the compromise or arrangement and containing the prescribed information, if any — at least seven days before the day on which the meeting of creditors referred to in section 4 or 5 is to be held;

**(e)** advise the company's creditors of the filing of the report referred to in any of paragraphs (b) to (d.1);

**(f)** file with the Superintendent of Bankruptcy, in the prescribed manner and at the prescribed time, a copy of the documents specified in the regulations;

**(f.1)** for the purpose of defraying the expenses of the Superintendent of Bankruptcy incurred in performing his or her functions under this Act, pay the prescribed levy at the prescribed time to the Superintendent for deposit with the Receiver General;

**(g)** attend court proceedings held under this Act that relate to the company, and meetings of the company's creditors, if the monitor considers that his or her attendance is necessary for the fulfilment of his or her duties or functions;

**(h)** if the monitor is of the opinion that it would be more beneficial to the company's creditors if

**b)** de réviser l'état de l'évolution de l'encaisse de la compagnie, en ce qui a trait à sa justification, et de déposer auprès du tribunal un rapport où il présente ses conclusions;

**c)** de faire ou de faire faire toute évaluation ou investigation qu'il estime nécessaire pour établir l'état des affaires financières et autres de la compagnie et les causes des difficultés financières ou de l'insolvabilité de celle-ci, et de déposer auprès du tribunal un rapport où il présente ses conclusions;

**d)** de déposer auprès du tribunal un rapport portant sur l'état des affaires financières et autres de la compagnie et contenant les renseignements réglementaires :

(i) dès qu'il note un changement défavorable important au chapitre des projections relatives à l'encaisse ou de la situation financière de la compagnie,

(ii) au plus tard quarante-cinq jours — ou le nombre de jours supérieur que le tribunal fixe — après la fin de chaque trimestre d'exercice,

(iii) à tout autre moment fixé par ordonnance du tribunal;

**d.1)** de déposer auprès du tribunal, au moins sept jours avant la date de la tenue de l'assemblée des créanciers au titre des articles 4 ou 5, un rapport portant sur l'état des affaires financières et autres de la compagnie, contenant notamment son opinion sur le caractère raisonnable de la décision d'inclure dans la transaction ou l'arrangement une disposition prévoyant la non-application à celle-ci des articles 38 et 95 à 101 de la *Loi sur la faillite et l'insolvabilité*, et contenant les renseignements réglementaires;

**e)** d'informer les créanciers de la compagnie du dépôt du rapport visé à l'un ou l'autre des alinéas b) à d.1);

**f)** de déposer auprès du surintendant des faillites, selon les modalités réglementaires, de temps et autre, une copie des documents précisés par règlement;

**f.1)** afin de défrayer le surintendant des faillites des dépenses engagées par lui dans l'exercice de ses attributions prévues par la présente loi, de lui verser, pour dépôt auprès du receveur général, le prélèvement réglementaire, et ce au moment prévu par les règlements;

**g)** d'assister aux audiences du tribunal tenues dans le cadre de toute procédure intentée sous le régime de la

Companies' Creditors Arrangement
**PART III** General
Monitors
**Sections 23-26**

*Arrangements avec les créanciers des compagnies*
**PARTIE III** Dispositions générales
Contrôleurs
**Articles 23-26**

proceedings in respect of the company were taken under the *Bankruptcy and Insolvency Act*, so advise the court without delay after coming to that opinion;

**(i)** advise the court on the reasonableness and fairness of any compromise or arrangement that is proposed between the company and its creditors;

**(j)** make the prescribed documents publicly available in the prescribed manner and at the prescribed time and provide the company's creditors with information as to how they may access those documents; and

**(k)** carry out any other functions in relation to the company that the court may direct.

**Monitor not liable**

**(2)** If the monitor acts in good faith and takes reasonable care in preparing the report referred to in any of paragraphs (1)(b) to (d.1), the monitor is not liable for loss or damage to any person resulting from that person's reliance on the report.

2005, c. 47, s. 131; 2007, c. 36, s. 72.

**Right of access**

**24** For the purposes of monitoring the company's business and financial affairs, the monitor shall have access to the company's property, including the premises, books, records, data, including data in electronic form, and other financial documents of the company, to the extent that is necessary to adequately assess the company's business and financial affairs.

2005, c. 47, s. 131.

**Obligation to act honestly and in good faith**

**25** In exercising any of his or her powers or in performing any of his or her duties and functions, the monitor must act honestly and in good faith and comply with the Code of Ethics referred to in section 13.5 of the *Bankruptcy and Insolvency Act*.

2005, c. 47, s. 131.

## Powers, Duties and Functions of Superintendent of Bankruptcy

**Public records**

**26 (1)** The Superintendent of Bankruptcy must keep, or cause to be kept, in the form that he or she considers

présente loi relativement à la compagnie et aux assemblées de créanciers de celle-ci, s'il estime que sa présence est nécessaire à l'exercice de ses attributions;

**h)** dès qu'il conclut qu'il serait plus avantageux pour les créanciers qu'une procédure visant la compagnie soit intentée sous le régime de la *Loi sur la faillite et l'insolvabilité*, d'en aviser le tribunal;

**i)** de conseiller le tribunal sur le caractère juste et équitable de toute transaction ou de tout arrangement proposés entre la compagnie et ses créanciers;

**j)** de rendre publics selon les modalités réglementaires, de temps et autres, les documents réglementaires et de fournir aux créanciers de la compagnie des renseignements sur les modalités d'accès à ces documents;

**k)** d'accomplir à l'égard de la compagnie tout ce que le tribunal lui ordonne de faire.

**Non-responsabilité du contrôleur**

**(2)** S'il agit de bonne foi et prend toutes les précautions voulues pour bien établir le rapport visé à l'un ou l'autre des alinéas (1)b) à d.1), le contrôleur ne peut être tenu pour responsable des dommages ou pertes subis par la personne qui s'y fie.

2005, ch. 47, art. 131; 2007, ch. 36, art. 72.

**Droit d'accès aux biens**

**24** Dans le cadre de la surveillance des affaires financières et autres de la compagnie et dans la mesure où cela s'impose pour lui permettre de les évaluer adéquatement, le contrôleur a accès aux biens de celle-ci, notamment les locaux, livres, données sur support électronique ou autre, registres et autres documents financiers.

2005, ch. 47, art. 131.

**Diligence**

**25** Le contrôleur doit, dans l'exercice de ses attributions, agir avec intégrité et de bonne foi et se conformer au code de déontologie mentionné à l'article 13.5 de la *Loi sur la faillite et l'insolvabilité*.

2005, ch. 47, art. 131.

## Attributions du surintendant des faillites

**Registres publics**

**26 (1)** Le surintendant des faillites conserve ou fait conserver, en la forme qu'il estime indiquée et pendant la