**ADELSO ADRIANZA**

113 Washington Street – Newton, MA 02458 – U.S.A.
M: (859) 803-2279 | aaadrianza@gmail.com

November 17, 2021

The Honorable Judge L. Selber Silverstein
U.S. Bankruptcy Court – District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

Dear Judge Silverstein,

      This communication is in reference to Crystallex International Corporation (the "Company") and a motion (the "Motion") the undersigned (the "Movant") filed at the Delaware District Court (D.I. No. 404, Attachment 1) regarding Case No. Misc.-17-151-LPS, *Crystallex International Corporation v. Bolivarian Republic of Venezuela*. In the Motion the Movant asks the District Court for relief seeking to ensure that the property of the Company's Estate is protected and maximized in accordance with the Bankruptcy Code

      The Movant had previously written to the District Court and the Special Master to inform both about the erroneous assessment by the latter with regards to the outstanding balance on the money judgement owed to the Company by Venezuela (the "Republic") and requested its correction in the sales order to be presented to the District Court for approval. The Second Amended Sales Order proposal issued by the Special Master failed to reflect the full amount outstanding, which compelled to Movant to seek the relief requested in the Motion.

      Not pursuing the collection in full of the arbitration award as granted by the International Center for Settlement of Investments Disputes (ICSID), confirmed by the D.C. District Court and ratified by U.S. Courts all the way to the Supreme Court short-changes and harms the Estate and its residual owners, the shareholders, irreparably. In the Motion, the Movant prayed the Court to issue and order requiring an independent determination of the amount that needs to be collected through the proposed. And asked to be allowed to participate as an intervenor in the Court's proceeding to advance the Estate's and the Shareholders' interests.

I thank you in advance for your time and consideration.

Respectfully,

Adelso A. Adrianza

## Attachment 1

**Crystallex International Corporation v. Bolivarian Republic of Venezuela, No. 1:2017mc00151 – D.I. 404 (D. Del. 2021).**


**D.I. 404.0 Motion**

**D.I. 404.1 Proposed Order for The Outstanding Judgement Determination**

**D.I. 404.2 Proposed Order to Intervene**

**D.I. 404.3 Exhibit 1 - Outstanding Arbitration Award Page 1**

**D.I. 404.4 Exhibit 2 - Outstanding Arbitration Award Page 2**

**D.I. 404.5 Certificate of Service.**

FILED

NOV 17 2021

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2021 NOV 17 PM 3:59

-------------------------------------------------------------- x

CRYSTALLEX INTERNATIONAL : 
CORPORATION, :

Plaintiff, :
:
:    **Case No.: Misc. No. 17-151-LPS**
v. :
:
:
BOLIVARIAN REPUBLIC OF VENEZUELA, :
:
Defendant. :    **Ref. D.I. Nos. 348, 368 and 391.**

-------------------------------------------------------------- x

## MOTION TO INTERVENE AND FOR AN ORDER REQUIRING AN INDEPENDENT DETERMINATION OF THE AMOUNT THAT NEEDS TO BE COLLECTED TO SATISFY CRYSTALLEX'S JUDGMENT

Adelso Adrianza (the "Movant"), a shareholder of Crystallex International Corporation (the "Company"), Pro Se and on behalf of similarly situated U.S. shareholders (the "Shareholders"), respectfully moves this Court for an order…

    a)     Permitting the Movant to intervene in this action and to be heard regarding the collection in full of the judgement issued by this Court for the arbitration award (the "Award") against Venezuela (the "Republic"), and

    b)     Requiring an independent determination of the amount that needs to be collected to satisfy the Award in full as required by the ICSID Arbitration Panel decision as confirmed by the District Court for the District of Columbia,

pursuant to the Federal Rule of Civil Procedure 24 and 11 U.S.C. §§ 1501, 1507 and 1522.

## PRELIMINARY STATEMENT

1. In a letter to this Court (D.I. 368), the Movant pointed out that the Special Master's Report and Recommendation with regards to the proposal to collect and satisfy the Company's judgement

against Venezuela (D.I. 348 at para. 47. – 50.) included an erroneous assessment as to the amount that remains outstanding. The Special Masters' Second Revised Proposed Order establishing the sale and bidding procedures (D.I. 391.1) repeats the same error, despite an adjustment for $ 33 million, but nonetheless indicates the continued failure to undertake the due diligence required to fulfill the responsibilities involved.

2. The letter in reference clearly pointed out the reasons why the indicated remaining balance on the Judgement was in error. It also pointed out the fact that the Company is in bankruptcy proceedings (CCAA in Ontario, Canada and Chapter 15 in Delaware) and, as a result, its estate (the "Estate") and its property is under the protection of the U.S. Bankruptcy Code and the Delaware Bankruptcy Court. In this regard, the Movant filed a motion at the Delaware Bankruptcy Court requesting the appointment of an examiner to investigate several alleged acts and omissions by the self-interested board of directors and debtor in possession (the "Self-interested" BOD/DIP") and the DIP lender (the "DIP Lender") that resulted in harm to the Estate and the Shareholders, as its residual owners, estimated at over of US$ 500 million. The appointment of an examiner is an indispensable step for the Bankruptcy Court to fulfill its fact-finding requirement through an independent and objective party.

3. The harm suffered by the Estate was caused by alleged actions and omissions particularized in the Motion (see DE Bankruptcy Court Case 1:11-bk-14074 (LSS), D.I. Nos. 328 and 357), which involved:

    a.     Fraudulent Transfer of Tax Benefits,

    b.     Misappropriation, Misuse and Waste of Estate Property,

    c.     Illegal Post-petition Interest Payment on Unsecured Debt,

    d.     Breach of The Loyalty and Care Duties by a Self-interested BOD,

    e.     Fraudulent Misrepresentations,

f. Distributing the Estate's property using the Mechanics of Distribution (MOD), which is in essence a structured dismissal that is not permissible under precedential U.S. case law (See Krzyzewski v. Jevic Holding Corp., No. 15 -649, S. Ct., 2017 WL 1066259) and the Model Law.

The Motion was heard on August 20, 2021, and the Court's request for supplemental information and the Movant's response was met by October 7, 2021. The Court will next determine the need for a second hearing or issue its decision.

4. The facts behind the actions and omissions by the Self-interested BOD/DIP with the approval of the Controlling DIP Lender disclosed in the letter to the Court (D.I. No. 368) are reiterated and further elaborated here below.

## SUMMARY OF ARGUMENT

5. The execution of a writ of attachment under Delaware law requires the exact determination of the outstanding amount that needs to be collected to satisfy a money judgement against a Delaware registered company. Yet, the Special Master decided to forgo the required due diligence and to rely on the amount provided by the Company. The need for an independent determination of the amount to be collected is also made necessary by the fact that the judgement creditor is in bankruptcy proceedings and the amount to be collected is property of the Estate and subject to the statutory requirements set forth in the Bankruptcy Code such as estate asset protection and maximization and compliance with the Absolute Priority Rule.

**Movant Is Entitled to Intervene as Of Right**

6. Rule 24(a)(2) affords a non-party the right to intervene in litigation upon proof of four elements:

(1) A timely application for leave to intervene,

(2) A sufficient interest in the litigation,

(3) A threat that the interest will be impaired or affected, as a practical matter, by the

disposition of the action, and

(4) Inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

(Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998)).

As the Third Circuit has emphasized, intervention is driven by pragmatic considerations, and motions to intervene must be resolved *"with an eye toward the 'elasticity' and 'flexibility' that [Federal] Rule [of Civil Procedure] 24 contemplates."* (*Pennsylvania v. President of United States of Am.*, 888 F.3d 52, 59, 62 (3d Cir. 2018)). This approach is appropriate in the instant case to ensure that the Court considers the interest of the Company's Estate and its residual owners, the Shareholders, whose interests are not adequately represented in this proceeding.

**The Outcome of This Action Will Directly Affect the Movant's and the Shareholders' Rights**

**7.** The Company's liquidating bankruptcy proceedings under Canada's CCAA insolvency statute as the main proceeding and Chapter 15 as the ancillary proceeding seek to distribute a) close to US$ 1 billion to the Controlling DIP lender (including 88% of Net Arbitration Award or NAP[1]) for its US$ 76 million DIP loan; a portion of which is to be shared with the Self-interested Directors under their Net Arbitration Award (NAP) Sharing Agreement, and b) to pay the unsecured debt principal plus interest at the contract rate (9.375%) and an additional 10% for the Noteholders' agreement not to pursue a plan of arrangement. The Canadian and U.S. bankruptcy statutes limit interest payment on unsecured debt to 5% and 0.14% (the current federal judgment rate), respectively.

8. Not pursuing the full collection of the arbitration award under the terms of ICSID Arbitration Panel and the Delaware judgement execution rules harms the Estate and its residual

---

[1] Represents the remaining balance of the award amount collected after paying all the outstanding secured and unsecured debt plus interest at the contract rate. The remaining 12% is to be used by the Estate to pay a Management Incentive Plan (25%) and the remaining 75% to cover the costs of the pursuit of the arbitration award and its collection, the bankruptcy proceedings and its own liquidation.

owners. Both the Estate and the Shareholders have been and continue to be inadequately represented by a self-interested BOD controlled by two directors appointed by the DIP lender and two shareholder-elected directors beholden to the DIP Lender through the NAP Sharing Agreement. This situation is driving a company with a $1.6 billion judgement and less than US$ 200 million in debt, including the US$ 76 million DIP loan, to liquidation under conditions that violate the U.S. Bankruptcy Code, the Model Law and U.S. public policy. Unattended, this situation will result in irreparable harm to the Estate and the over 300 hundred U.S. citizens that are beneficial owners of close to 30% of the Company's outstanding shares.

## STATEMENT OF FACTS

7. The Company pursued an arbitration award following the unlawful cancellation of is Mining Operation Agreement (MOA) with the Republic. The International Center for Settlement of Investment Disputes (ICSID) arbitration panel awarded the Company US$ 1.2 billion, US$ 184 million for pre-award interest and Six-Month USD LIBOR + 1% post-award interest until the Republic pays the award in full. The post-award interest owed through June 2021 is estimated at US$ 184 million. See Exhibits I and II.

8.- The Company received payments from the Republic and from the execution of a writ of attachment on a U.S. bank account owned by the Ministry of Defense that together totaled US$ 500 million at the time, which included Venezuelan securities whose market value then was US$ 319 million. These securities were and remain subject to the U.S. sanctions on the Republic and could not and may not be monetized until the sanctions are lifted. Thus, the actual effective payment amount received was US$ 181 million.

9.- The Canada - Venezuela Bilateral Investment Treaty sets forth the following expropriation and compensation rules:

**Article VII - Expropriation**
1. Investments or returns of investors of either Contracting Party shall not be

nationalized, expropriated or subjected to measures having an effect equivalent to nationalization or expropriation (hereinafter referred to as "expropriation") in the territory of the other Contracting Party, except for a public purpose, under due process of law, in a non-discriminatory manner *and against prompt, adequate and effective compensation.* Such compensation shall be based on the genuine value of the investment or returns expropriated immediately before the expropriation or at the time the proposed expropriation became public knowledge, whichever is the earlier, shall be payable from the date of expropriation with interest at a normal commercial rate. shall be paid without delay and shall be effectively realizable and freely transferable. [Emphasis added].

The US$ 319 million payment to the Company with Venezuelan securities was not adequate and effective compensation, given that the securities could not be monetized then and to this date due to the U.S. sanctions. Further, these securities are currently worth a fraction of their market value at the time of the transfer to the Company and are highly likely to sell for pennies on a dollar when these can be sold, if ever, given the remaining open question about their provenance. The Amended Settlement Agreement (the "Agreement") included a make-whole clause that protected the Company for any loss in value of the Venezuelan securities until the it was finalized.

10. The Republic reneged on the Agreement when it failed to provide the agreed upon security to guarantee the installment payments that had to be made over several years. Therefore, the Agreement became non-binding on the Company once the Republic failed to complete the transaction for which it had bargained. Furthermore, the payment made with Venezuelan securities was made ineffective by the terms of the Settlement Agreement. Exhibit III contains an excerpt of the Settlement Agreement with the following entry from its Section 1, which deals with terms and conditions:

1.      Initial Payment. On the date hereof as a condition precedent to the effectiveness of the provisions of this Agreement, Venezuela shall deliver (or cause to be delivered) to Crystallex (or its designee) cash in U.S. dollars in immediately available funds and / or Liquid Securities (as defined below) in an amount, in the case of cash, or with a Market Value (as defined below) in the case of Liquid Securities of at least U.S. $425,000,000 (the "Initial Payment")...

(i) "Liquid Securities" means public debt securities in U.S. dollar freely tradeable
in the United States and subject to publicly available pricing quotations.

[Emphasis added].

11. Based on the foregoing, the Republic owes the Company at least US$ 1.376 billion for

the arbitration award, as follows:

| ICSID AWARD - BALANCE DUE (USD Millions) | |
| --- | --- |
| AWARD | $ 1,202.0 |
| PRE-AWARD INTEREST (THROUGH MARCH 2016) | $ 184.0 |
| **AWARD + PRE-AWARD INTEREST** | **$ 1,386.0** |
| POST-AWARD INTEREST (THROUGH JUNE 2021) | $ 184.2 |
| EFFECTIVE PAYMENTS + INTEREST CREDIT (SEE EXHIBIT 2) | $ (194.5) |
| **NET AWARD + INTEREST DUE** | **$ 1,375.8** |

However, the Special Masters' Second Revised Proposed Order reflects a significantly lower

outstanding judgement amount:

I. Crystallex's Judgment. Subject to paragraph 29 of this Order, Crystallex's
outstanding judgment is $969,999,752.93 as of August 9, 2021 ("Crystallex's
Judgment").4 The amount of Crystallex's Judgment for the purpose of any
satisfaction of payment shall be finalized pursuant to the procedures set forth in
this Order and any further order of the Court. [Emphasis added.]

12. The Republic is further indebted to the Company for a) the costs it forced upon the

Company to execute a judgment confirmed by every court the Republic took the case seeking to

reverse it or delay its payment. And b) the gifts it obtained from the Company for entering into

settlement agreements it reneged on just weeks after they were signed. In pursuit of a quick US$ 800

million windfall, the Self-interested Directors and the Controlling DIP Lender gifted non-

distributable property of the Estate. Conveniently, this property was never listed as Estate property

when the CCAA filing was done and was offered to the Republic on the side, for no consideration

and bundled in the failed settlement agreements without disclosing it. In contrast, Gold Reserve and

Rusoro Mining, two other companies whose gold mines were expropriated by the Republic, required

and obtained additional compensation worth hundreds of millions of dollars for their mining data in

settlement agreements they entered with the Republic before the Company did.

13. To date, the Company continues to obviate the existence of the non-distributable Estate property worth over US$ 300 million it gifted for the sole purpose of advancing the interests of the Self-interested BOD/DIP and the DIP Lender. In the Factum filed in the CCAA proceeding on November 10, 2021, the Company included the following statement:

> 6. *This is a unique liquidating CCAA proceeding, in which the only asset is the approximately USD $1.4 billion Award against the government of Venezuela and the proceeds Crystallex has received in respect of the Award to date.[10]*

> (See https://documentcentre.ey.com/api/Document/download?docId=34485&language=EN),

There is another glaring omission in the above statement: the post-award interest due, worth US$ 184 million through June 2021 (see Exhibit I), which the Company also had given up in the failed settlement agreements.

14. In rendering the award, the arbitration panel based its decision on the principle of full reparation provided by the Permanent Court of International Justice ("PCIJ") in *Chorzów* in the following terms:

> "*The essential principle contained in the actual notion of an illegal act—a principle which seems to be established by international practice and in particular by the decisions of arbitral tribunals—is that reparation must, as far as possible, wipe out all the consequences of the illegal act and re-establish the situation which would, in all probability, have existed if that act had not been committed.*"

> (See Crystallex International Corporation v. Bolivarian Republic of Venezuela, ICSID Case No. ARB(AF)/11/2 at 847).

The arbitration award was rendered in April 2016 and the Republic has yet to honor it despite having exhausted all legal efforts to first nullify it and then delay its enforcement. In the process, the Company has been forced to spend tens of millions of dollars defending and collecting the Award in U.S. Courts. Yet, for reasons unknown, the Company has given up its right and responsibility to seek the recovery of the expense forced upon it by the Republic through bad faith litigation under 105. Ch. Ct. R. 54(d) ("*[e]xcept when express provision*

*therefor is made either in a statute or these Rules, costs shall be allowed as of course to the prevailing party unless the Court otherwise directs*"). (See *Lynch v. Gonzalez*, 2020 WL 5587716 (Del. Ch. Sept. 18, 2020)).

## ARGUMENT

15.    The maxim "*No one can take advantage of his own wrong*" embodies the authority and responsibility of a court of law and equity to redress the harm inflicted on a party and to nullify the benefit obtained by the wrongdoer as a matter of law, justice and equity. In the instant case, both parties must bear their share of responsibility for their actions and omissions.

16. On the Company's side, the Self-interested BOD/DIP and the Controlling DIP Lender bent over backwards to reach settlement agreements in pursuit of their own interests at the expense of the Estate and its residual owners. The history and the facts supporting this assertion are well documented in the case docket (see for example D.I. Nos. 134 and 279). Actions such as the abandonment of restraining order approved by the NY Southern District Court on the Nomura Notes (worth US\$ 710 million), paying the DIP lender close to US\$ 1 billion for a 76 million DIP loan, the agreement between the Self-Interested Directors and the DIP Lender to share the windfall and their pre-filing agreement to propose and support the approval by the CCAA Court of the DIP Lender's loan under confiscatory terms underscore the issues involved.

17. On the Republic's side, not only did it cancel the MOA illegally, but it has since then allowed and benefited from gold production and export sales from the expropriated gold mine operations worth an undisclosed amount of money, given that Venezuelan gold exports are also subject to the U.S. sanctions. Furthermore, the Republic undertook an unyielding legal pursuit to delay meeting its obligations despite losing every action it pursued in the U.S. Courts all the way to the Supreme Court.

## JURISDICTION

18.- This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b). Venue is proper in this Court and in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are the Bankruptcy Code sections l05(a), 150l(a)(3), (a)(4) and (a)(5), 1507(b)(3) and (b)(4).

## STANDING

19. As beneficial owners of the Company' shares and residual owners of the Estate, the Movant and the Shareholders have Article III standing under Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992), premised on a party having "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Standing is reasserted by the U.S. Supreme Court decision in in Czyzewski v. Jevic Holding Corp., No. 15-649, S. Ct., 2017 WL 1066259):

> Consequently, the Bankruptcy Court's approval of the structured dismissal cost petitioners something. They lost a chance to obtain a settlement that respected their priority. Or, if not that, they lost the power to bring their own lawsuit on a claim that had a settlement value of $3.7 million. For standing purposes, a loss of even a small amount of money is ordinarily an "injury." See, e.g., McGowan v. Maryland, 366 U. S. 420, 430–431 (1961) (finding that appellants fined $5 plus costs had standing to assert an Establishment Clause challenge). And the ruling before us could well have cost petitioners considerably more. See Clinton v. City of New York, 524 U. S. 417, 430–431 (1998) (imposition of a "substantial contingent liability" qualifies as an injury). A decision in petitioners' favor is likely to redress that loss. We accordingly conclude that petitioners have standing. (p. 11), [Emphasis added].

## **PRAYER FOR RELIEF**

20. WHEREFORE the Movant prays that this Court:

    I. Permit the Movant to intervene in this action and to be heard regarding the protection of the Movant and the Shareholders' interest as residual owners of the Estate,

    II. Issue an order requiring an independent determination of the amount that needs to be

collected to satisfy in full the Company's judgement against the Republic and the protection and

maximization of the value of the debtor's assets in accordance with § 1501, and

III. Grant such further and other relief as this Court deems just and proper.

## **CONCLUSION**

For all the reasons set forth herein, the Movant respectfully requests that the Court grant the

relief sought in the Motion.

Respectfully submitted,

Dated:  November 15, 2021,
Newton, Massachusetts.

Adelso Adrianza, Pro Se
113 Washington Street
Newton, MA 02458
aaadrianza@gmail.com
(859) 803-2279

- 11 -

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**



---------------------------------------------------------- x -----------------------------------------

CRYSTALLEX INTERNATIONAL
CORPORATION,

        Plaintiff,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

        Defendant.

---------------------------------------------------------- x -----------------------------------------

Case No.: Misc. No. 17-151-LPS

**[PROPOSED] ORDER REQUIRING AN INDEPENDENT DETERMINATION OF THE**
**OUTSTANDING BALANCE DUE AND TO BE COLLECTED TO SATISFY**
**CRYSTALLEX'S MONEY JUDGEMENT AGAINST VENEZUELA**

Now before the Court is the motion of Adelso Adrianza (the "Movant") for an order requiring

an independent determination of the outstanding balance due (the "Determination") to satisfy the

money judgement issued to Crystallex International Corporation (the "Company") against Venezuela

(the "Republic") for the arbitration award (the "Award") and to be collected via the auction of stock

of CITGO Petroleum Corporation (the "Judgement Property") that is the purpose of above-captioned

action.

IT IS THEREFORE ORDERED that:

1. The Movant's Motion to require an independent determination of the outstanding balance
   due to satisfy the money judgment is GRANTED, and

2. The Special Master is ordered to recommend, engage and assist the selected independent

   expert professional assigned to conduct the required determination within a pre-approved

   reasonable timeframe and professional fees budget,

- 1 -

3.  The Special Master shall be required to inform the Court about a material change amount required to satisfy the Company's judgement per the Determination and request the approval of the corresponding amendment to the Sales Order,

4.  The District Courts, including the Bankruptcy Courts, shall retain jurisdiction to enforce the execution and collection in full of the Company's judgement and to redress a material shortfall determined post-execution if the Courts deem it just and proper.

IT IS SO ORDERED.

_____

UNITED STATES DISTRICT JUDGE



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x ----------------------------------------------------------

**CRYSTALLEX INTERNATIONAL**          :
**CORPORATION,**
                                      :
    **Plaintiff,**                  :
                                      :    **Case No.: Misc. No. 17-151-LPS**
    **v.**                           :
                                      :
**BOLIVARIAN REPUBLIC OF VENEZUELA,** :
                                      :
    **Defendant.**                    :

---------------------------------------------------------------- x ----------------------------------------------------------

### [PROPOSED] ORDER GRANTING ADELSO ADRIANZA'S MOTION TO INTERVENE

Now before the Court is the motion of Adelso Adrianza (the "Movant") to intervene in the above-captioned action as of right or, in the alternative, permissively pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B) (the "Motion to Intervene"). The Court finds that the Movant is entitled to intervene as of right pursuant to Rule 24(a)(2), and that, in the Court's discretion, the Movant should be allowed to intervene permissively pursuant to Rule 24(b)(1)(B).

IT IS THEREFORE ORDERED that:

    1. The Movant's Motion to Intervene is GRANTED; and

    2. The Movant shall be deemed a party in this action and shall have all of the rights attendant to that designation regarding: (a) the right to be notified of, and to participate in, all future proceedings in this case, (b) the right to participate in the determination of the outstanding balance of Crystallex International Corporation (the "Company") judgement against the Republic for the arbitration award (the "Award") to be satisfied via the auction relating to the common stock of PDV Holding, Inc. owned by Petróleos de Venezuela, S.A. that is the purpose of this action (the "Judgement Property"), (c) the right to present briefs and evidence on the outstanding judgement amount to be collected for

the benefit of the Company's estate (the "Estate"), and (d) the right to appeal from any adverse decisions to the Interests of the Estate and its residual owners: the Movant and similarly situated U.S. beneficial owners of the Company's stock

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

**Crystallex International Corporation
Outstanding Arbitration Award
Page 1**

FILED

NOV 17 2021

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

EXHIBIT I

CRYSTALLEX INTERNATIONAL CORP.
OUTSTANDING ARBITRATION AWARD

## POST-AWARD INTEREST DUE

| DATE | DESCRIPTION | INTEREST DAYS | BASE RATE | 6-MONTH USD LIBOR | USD LIBOR + 1% | INTEREST DUE | CUM AWARD + INTEREST | CUM INTEREST |
|------|-------------|--------------|-----------|-------------------|----------------|--------------|----------------------|--------------|
| | From | To | | | | | | |
| 3/11/2016 | 12/31/2016 | 295 | 1.0000% | 1.3118% | 2.3118% | $ 25.9 | $ 1,411.9 | $ 25.9 |
| 1/1/2017 | 12/31/2017 | 364 | 1.0000% | 1.8370% | 2.8370% | $ 39.2 | $ 1,451.1 | $ 65.1 |
| 1/1/2018 | 12/31/2018 | 364 | 1.0000% | 2.8760% | 3.8760% | $ 53.6 | $ 1,504.7 | $ 118.7 |
| 1/1/2019 | 12/31/2019 | 364 | 1.0000% | 1.9120% | 2.9120% | $ 40.2 | $ 1,544.9 | $ 158.9 |
| 1/1/2020 | 12/31/2020 | 365 | 1.0000% | 0.2580% | 1.2580% | $ 17.4 | $ 1,562.4 | $ 176.4 |
| 1/1/2021 | 6/30/2021 | 180 | 1.0000% | 0.1480% | 1.1480% | $ 7.8 | $ 1,570.2 | $ 184.2 |
| | | | | | | | | $ 184.2 |

POST-AWARD INTEREST DUE (BEFORE CREDIT FOR PAYMENTS MADE - SEE EXHIBIT B).

### ICSID AWARD - BALANCE DUE (USD Millions)

| | |
|---|---|
| AWARD | $ 1,202.0 |
| PRE-AWARD INTEREST (THROUGH MARCH 2016) | $ 184.0 |
| **AWARD + PRE-AWARD INTEREST** | **$ 1,386.0** |
| POST-AWARD INTEREST (THROUGH JUNE 2021) | $ 184.2 |
| EFFECTIVE PAYMENTS + INTEREST CREDIT (SEE EXHIBIT 2) | $ (194.5) |
| **NET AWARD + INTEREST DUE** | **$ 1,375.8** |

### POST-AWARD INTEREST TERMS

961 f. The Respondent is ordered to pay post-award interest on the amounts specified in subparagraph (d) and (e) above at the rate of the 6-month average U.S. Dollar LIBOR + 1%, compounded annually, calculated from the date of the Award until full payment.

| INTEREST AWARD: | START DATE: | 3/11/2016 |
|---|---|---|
| | RATE: | 6-Month USD LIBOR + 1% |

| Sources: | Post-award interest terms: 6-Month USD LIBOR + 1% - | ICSID Award - https://www.italaw.com/sites/default/files/case-documents/italaw7194.pdf https://www.global-rates.com/en/interest-rates/libor/american-dollar/american-dollar.aspx |
|---|---|---|

**EXHIBIT II**

**Crystallex International Corporation**
**Outstanding Arbitration Award**
**Page 2**

FILED

NOV 17 2021

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

EXHIBIT II

**CRYSTALLEX INTERNATIONAL CORP.**
**OUTSTANDING ARBITRATION AWARD**

| DATE | | INTEREST DAYS | BASE RATE | 6-MONTH USD LIBOR | INTEREST RATE % | PMTS. ISSUED | EFFECTIVE PMTS. RECEIVED | CUM CASH PMTS. | INTEREST CREDIT | CUM INT. CREDIT | CUM INT. + PMTS. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| From | To | | | | | | | | | | |
| 2/16/2018 | 12/31/2018 | 318 | 1.000% | 2.876% | 3.876% | $ 5.2 | $ 5.2 | $ 5.2 | $ 0.2 | $ 0.2 | $ 5.4 |
| 3/5/2018 | 12/31/2018 | 301 | 1.000% | 2.876% | 3.876% | $ 5.0 | $ 5.0 | $ 10.2 | $ 0.2 | $ 0.3 | $ 10.6 |
| 4/10/2018 | 12/31/2018 | 265 | 1.000% | 2.876% | 3.876% | $ 20.8 | $ 20.8 | $ 31.1 | $ 0.6 | $ 0.9 | $ 32.0 |
| 4/13/2018 | 12/31/2018 | 262 | 1.000% | 2.876% | 3.876% | $ 15.1 | $ 15.1 | $ 46.1 | $ 0.4 | $ 1.3 | $ 47.5 |
| 8/31/2018 | 12/31/2018 | 122 | 1.000% | 2.876% | 3.876% | $ 29.7 | $ 29.7 | $ 75.8 | $ 0.4 | $ 1.7 | $ 77.6 |
| 10/2/2018 | 12/31/2018 | 90 | 1.000% | 2.876% | 3.876% | $ 319.6 | | $ 75.8 | $ 3.1 | $ 4.8 | $ 80.6 |
| 10/15/2018 | 12/31/2018 | 77 | 1.000% | 2.876% | 3.876% | $ 52.9 | $ 52.9 | $ 128.7 | $ 0.4 | $ 5.2 | $ 134.0 |
| 11/23/2018 | 12/31/2018 | 38 | 1.000% | 2.876% | 3.876% | $ 51.8 | $ 51.8 | $ 180.5 | $ 0.2 | $ 5.4 | $ 185.9 |
| 1/1/2019 | 12/31/2019 | 364 | 1.000% | 1.912% | 2.912% | | | $ 180.5 | $ 5.2 | $ 10.7 | $ 191.2 |
| 1/1/2020 | 12/31/2020 | 365 | 1.000% | 0.258% | 1.258% | | | $ 180.5 | $ 2.3 | $ 12.9 | $ 193.4 |
| 1/1/2021 | 6/30/2021 | 180 | 1.000% | 0.148% | 1.148% | | | $ 180.5 | $ 1.0 | $ 14.0 | $ 194.5 |
| | | | | | | $ 500.1 | $ 180.5 | | | | |

**TOTAL EFFECTIVE PAYMENTS + INTEREST** $ 194.5
**TOTAL EFFECTIVE PAYMENTS** $ 180.5
**TOTAL INTEREST CREDIT** $ 14.0

Sources:
Venezuelan payments: Delaware District Court Case 1:17-mc-00151-LPS, D.I. 348 p. 25
Post-award interest terms: ICSID Award - https://www.italaw.com/sites/default/files/case-documents/italaw7194.pdf
6-Month USD LIBOR + 1% - https://www.global-rates.com/en/interest-rates/libor/american-dollar/american-dollar.aspx

**EXIBIT III**

FILED

NOV 17 2021

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**Crystallex International Corporation**
**Amended And Restated Contract of Transaction and Settlement**
**Dated September 10, 2018**
**EXCERPT**

**EXHIBIT III**

**Crystallex International Corporation**

**AMENDED AND RESTATED CONTRACT OF TRANSACTION AND SETTLEMENT**
**Dated September 10, 2018**

**EXCERPT**

**Initial Payment**. On the date hereof as a condition precedent to the effectiveness of the provisions of this Agreement, <u>Venezuela shall deliver (or cause to be delivered) to Crystallex (or its designee) cash in U.S. dollars in immediately available fund s and /or Liquid Securities</u> (as defined below) in an amount, in the case of cash, or with a Market Value (as defined below) in the case of Liquid Securities of at least U.S. $425,000,000 (the "Initial Payment") in accordance with the payment instructions set forth on <u>Annex A</u> hereto or such other payment instructions specified in writing (including electronic, communication) from time to time by Crystallex in its sole discretion, which amount shall be applied to the outstanding amount of the Award. With respect to any Liquid Securities delivered as part of such payment, such delivery shall be deemed to be applied to the outstanding amount of the Award in an amount equal to the Market Value of such securities, regardless of whether the ultimate proceeds or realization in respect of such securities is less than or greater than such Market Value; *provided* that (x) with respect to any Liquid Securities sold by Crystallex prior to the date that is six months after the Initial Payment is made, the amount of the Initial Payment shall be deemed to be increased or reduced, as applicable, by an amount equal to the Proceeds Adjustment Factor (as defined below) and (y) any such sale by Crystallex during such six-month period shall be conducted in a commercially reasonable manner and Crystallex ' s provide to Venezuela commercially reasonable evidence of the relevant sales and amounts and pricing for the same. It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered pursuant to the Initial Payment until the Temporary Stay of Execution in Section 2 below is achieved. As used herein <u>(i) "Liquid Securities"</u> means public <u>debt securities in U.S. dollar freely tradeable in the United States and subject to publicly available pricing quotations;</u> "<u>Market Value</u>", with respect to any Liquid Securities, means the volume weighted average price of such Liquid Securities over the 30-trading-day period ending immediately prior to the date such Liquid Securities are delivered pursuant to the terms of this Agreement or, if, in the reasonable judgment of Crystal lex, such volume weighted average price is not available or sufficient liquidity does not exist for the such volume weighted average price to be a commercially reasonable measure of the current market value of the Liquid Securities, such market value as of such date as is determined in a commercially reasonable manner by Crystallex; and (iii) "<u>Proceeds Adjustment Factor</u>" means the amount by which the aggregate sale proceeds received by Crystallex for any Liquid Securities delivered as part of the Initial Payment (such amount, the "<u>Liquid Securities Proceeds Amount</u>") exceeds or is less than the Market Value of such Liquid Securities determined at the time of such delivery, with any excess to be deemed to increase the amount of the Initial Payment(and decrease the

EXHIBIT C 1 | P a g e

Deferred Settlement Amount (as defined below) accordingly) and any shortfall to be deemed to reduce the amount of the Initial Payment (and increase the Deferred Settlement Amount accordingly). It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered in accordance with the Initial Payment, until the Temporary Stay Period, as defined in Section 2 of this Agreement is not commenced. In the event that the Temporary Stay Period is not commenced, Crystallex will return the cash or Liquid Securities delivered in accordance with the Initial Payment.

EXHIBIT C 2 | P a g e

## CERTIFICATE OF SERVICE

I, Adelso Adrianza, hereby certify that on this 15th day of November 2021 I caused copies of the *Motion To Intervene And For An Order Requiring An Independent Determination Of The Amount That Needs To Be Collected To Satisfy Crystallex's Judgment* pursuant to the Federal Rule of Civil Procedure 24 and 11 U.S.C. §§ 1501, 1507 and 1522, to be served on the parties listed below by courier or otherwise indicated:

Mr. Travis S. Hunter, Esq.
Richards, Layton & Finger, PA
920 N King Street
Wilmington, DE 19801

*Attorneys for Plaintiff*
*Crystallex International Corporation*

Mr. A. Thompson Bayliss, Esq.
Abrams & Bayliss, LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

*Attorney for Defendant*
*Bolivarian Republic of Venezuela*

Mr. Kenneth J. Nachbar, Esq.
Potter Anderson & Corroon, LLP
1201 North Market Street
Wilmington, DE 19801

*Attorneys for PDV Holding, Inc. and*
*CITGO Petroleum Corporation*

Mr. Robert B. Pincus, Esq.
Special Master
108 Rockford Gove Lane
Wilmington, DE 19806

Adelso A. Adrianza

- 1 -

Adelso Adrianza
113 Washington Street
Newton, MA 02458



US Bankruptcy Court Clerk
824 North Market Street, Floor 3
Wilmington, DE 19801