IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF DELAWARE

---

| | | |
|---|---|---|
| In re | : | Chapter 15 |
| **CRYSTALLEX INTERNATIONAL CORP.** | : | Case No. 11-14074 (LSS) |
| Debtor in a Foreign Proceeding. | : | Hearing Date: February 8, 2022, at 11:30 a.m. (ET) |
| | : | Objection Deadline: February 1, 2022, at 4:00 p.m. (ET) |

---

## OBJECTION TO THE FOREIGN REPRESENTATIVE'S MOTION FOR AN ORDER RECOGNIZING AND ENFORCING (I) THE CCAA ELEVENTH EXTENSION AND FIFTEENTH AMENDMENT ORDER; AND (II) THE CCAA TWELFTH EXTENSION AND SIXTEENTH AMENDMENT ORDER

Adelso Adrianza ("Movant"), a shareholder of the debtor (the "Debtor"), Pro Se and on behalf of similarly situated U.S. shareholders (the "Shareholders") respectfully submits this objection (the "Objection") to the Foreign Representative's request for relief in the *Motion for an Order Recognizing and Enforcing (I) The CCAA Eleventh Extension and Fifteenth Amendment Order; and (II) The CCAA Twelfth Extension And Sixteenth Amendment Order* (the "Motion For Relief") [Docket No. 363]. In support of the Objection, the Movant respectfully represents as follows.

### PRELIMINARY STATEMENT

1. The Movant filed a motion for an *Order Directing the Appointment of An Examiner and Independent Counsel for The Shareholders* [Docket No. 328] heard by this Court on August 20, 2021, in which he alleged harm to the Estate and the Shareholders perpetrated by the Self-Interested DIP/BOD and the Controlling DIP Lender as a result of actions and omissions particularized in the Motion as well as in prior and subsequent filings in this Court (see D.I. Nos. 313, 314, 326, 337 and 362). The actions and omissions particularized in the Motion involve:

- 1 -

a) Fraudulent Transfer of Tax Benefits,

b) Misappropriation, Misuse and Waste of Estate Property,

c) Illegal Post-petition Interest Payment on Unsecured Debt

d) Breach of The Loyalty and Care Duties by a Self-interested BOD,

e) Fraudulent Misrepresentations,

f) Distribution of the Estate's property using the MOD, which is in essence a structured dismissal that is not permissible under precedential U.S. case law (see *Czyzewski v. Jevic Holding Corp.*, No. 15-649, S. Ct., 2017 WL 1066259) and the Model Law.

3. To the above list of acts and omissions we now need to add additional harm to the Estate and the Shareholders through the Self-interested DIP/BOD's failure to pursue the full collection of the arbitration award and the costs incurred in legal actions in U.S. Courts pursuing the collection of the award and the judgement against Venezuela. The latest breach of the duties of care and loyalty on the part of the Self-interested DIP/BOD is particularized in the Movant's legal action in the District Court pursuing an independent determination of the amount the Foreign Representative needs to collect to satisfy its judgement [D.I. No. 362]. In summary, the Self-interested DIP/BOD has claimed an amount to be collected that excludes a) post-award interest, b) the recovery of the legal and professional fees and costs the Estate has incurred in pursuing the collection and c) payment for US$ 375 million in unsellable Venezuelan Securities the Company received at the end of 2018 as advanced payment on the failed Amended Settlement Agreement.

4. It seems illogical that a judgement creditor would decide to leave plenty of money on the table after spending ten years in insolvency, arbitration and collection proceedings that has cost it a pretty penny on debt service and a platoon of lawyers; its own and everybody else's. Yet, it is beyond question that the Estate is entitled to post-award interest and the recovery of the costs imposed on it by a judgement debtor required to meet its obligation by two ICSID arbitration panels and U.S. Courts all the way to the Supreme Court and, nonetheless, has used and abused the judicial

process to evade and delay meeting its responsibility. Why this is the case is but one more of the nested secrets the Foreign Representative has managed to wrap around the CCAA proceeding to advance the interests of the self-interested DIP/BOD and the Controlling DIP Lender.

5. The Motion taken under advisement by this Court involves direct and derivative claims against the Self-interested DIP/BOD for injuries to the Estate, the Movant and the Shareholders that sound in tort and represent violations of personal and constitutional rights. In addition, core and related-to issues that need to be addressed and reported by this Court require it to exercise its fact-finding authority to establish an independent basis of the facts in dispute and to reach a decision on the merits, the law and the equities involved.

6. The Motion for Relief pursues the Court's approval of extensions of the DIP Financing Agreement (the "Contract") that is one of the bases for the claims in the Motion, given that it is one of the means that the Self-interested DIP/BOD and the DIP Lender leveraged to harm the Movant and the Shareholders. Specifically, the Contract includes a distribution scheme (the Mechanics of Distribution, MOD) that misappropriates, misuses and wastes Estate property for the sole benefit of the Self-interested DIP/BOD and the DIP Lender. Further, it violates U.S. controlling law by imposing a structured dismissal and violating the Absolute Priority Rule (APR). In fact, the Contract, and its MOD stand for the absurd proposition that the Self-interested DIP/BOD, the DIP Lender and the CCAA Court can dispose of personal and constitutional rights of U.S. citizens by ignoring the protections the Constitution and its laws guarantee its citizens.

7. Left to their own devices, a company under the control of self-interested directors and a controlling DIP lender can have different goals and interests versus the bankruptcy estate, as is the case in this proceeding. Here, the Company, the DIP Lender and the Trustee are one and the same, since they all are present in and represented by the Company's Board of Directors and officers; two of whom are the DIP Lender's nominee Directors and leading partners - the CEO and

the COO, and two Interested Directors who are company insiders, whose interest in the outcome of the bankruptcy proceeding are closely tied to those of the DIP Lender.

8. The Contract between the Company and the DIP Lender is a financing contract that binds them to its terms and conditions, provided they do not breach applicable law. The Contract gives the DIP Lender the right to file a claim against the Estate for value bargained with the Self-interested Directors under contract law, but it does not control the operation of a bankruptcy proceeding under the Bankruptcy Code or any legitimate 21st. century insolvency law by any stretch of the imagination. Hence, the use of the MOD to allocate, distribute and dispose of the Estate's property as a proxy for a plan of liquidation is impermissible to the extent that it is not the result of a collective process and fails to meet the fair and reasonable standard required by law. Hence, it runs counter to the purpose and objectives Congress enacted the Bankruptcy Code for. The day that persons are allowed to bypass statutes such as the Code, enacted to ensure the protection of personal and constitutional rights of parties in interest, through contracts will be the day these statutes become superfluous.

## **JURISDICTION**

9. This Court has authority to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) and a non-core proceeding pursuant to 28 U.S.C. § 157(b)(5) and § 157(d). Venue is proper in this Court and in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are the Bankruptcy Code Sections 105(a), 1501, 1506, 1507, 1522.

## **LEGAL AND FACTUAL GROUNDS FOR OPPOSITION**

10. The Motion for Relief seeks to perpetuate the harm to the Estate and the Shareholders and is therefore impermissible. The Foreign Representative obtained this Court's approval on prior

Contract extensions and amendments through lack of transparency and reliance on the paramountcy of comity, which per the Foreign Representative, requires great deference to the CCAA Court's order independent of the facts of the case at any point in time. The reliance on prior order recognition is grossly misplaced given the issues and facts that this Court has become aware of over the last few months documented by substantial records on the case docket.

11. Independent of prior CCAA Court orders this court has recognized on the premise that the Foreign Representative was acting in good faith and honestly, the court cannot stand idle when that premise may no longer be taken at face value. In equity and at law, a court faced with facts that contradict the bases for previous CCAA Court order recognition through allegations of breaches of §§ 1501, 1506, 1507, and the parties harmed by the underlying acts and omissions request relief under § 1522, is required to pause and reassess the merits of continued recognition and additional relief. Persuasive caselaw points to this requirement (see *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir.2012) and *In re Cozumel Caribe*, S.A. de C.V. 508 B.R. 330 (Bankr. S.D.N.Y. 2014).

12. The case records (see D.I. Nos. 313, 314, 326, 337 and 362), point to the need for this Court to ensure adequate protection for the Estate and the Shareholders as required by §§ 1501, 1507 and 1522. Additional relief to the Foreign Representative is unwarranted before this Court has completed its fact-finding requirements and reached its conclusions of law thereon.[1] Persuasive caselaw underscores this requirement.

13. In *Jaffé v. Samsung Elecs. Co.*, the Fourth Circuit ruled that the bankruptcy court was required to ensure the interests of the debtor and other interested parties were sufficiently protected,

---

[1] In this context, the Court has yet to be provided some the information it required from the Foreign Representative as follows:
a) The notices served on the shareholders regarding the DIP orders and the proposed recognition order,
b) The NAP transfer agreement between the Board of Directors members and the DIP Lender,

as a prerequisite to awarding any relief under § 1521. The Court concluded as follows:

> "We believe that Jaffe's view of the relationship between§ 152l(a) and § 1522(a) is too myopic. While it is true that Jaffe 'never affirmatively requested rejection authority under§ 365,' he did request several forms of discretionary relief under§ 1521, among which was the privilege, pursuant to§ 152l(a)(5), to have the bankruptcy court entrust him with '[t]he administration or realization of all or part of the assets of [Qimonda] within the territorial jurisdiction of the United States,' specifically identifying the company's U.S. patents as among the U.S. assets he sought to control. And, as a prerequisite to awarding any§ 1521 relief, the court was required to ensure sufficient protection of the creditors and the debtor. Section 1522(a) states this explicitly, providing in relevant part, 'The court may grant relief under section ... 1521 ... only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.' 11 U.S.C. § 1522(a) (emphasis added). Additionally, the court was authorized to 'subject' any§ 1521 relief 'to conditions it considers appropriate.' Id. § 1522(b); see also H.R.Rep. No. 109-31, pt. 1, at 116 (describing§ 1522 as 'giv[ing] the bankruptcy court broad latitude to mold relief to meet specific circumstances, including appropriate responses if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors')."

### Public Policy v. Comity: The U.S. Experience

14. Congress adopted in Section 1506 the qualifier "manifestly" from the Public Policy Exception Article 6 of the Model Law but left open-ended the determination as to when this section should be invoked and applied. U.S. Bankruptcy Courts generally adopted the Model Law's guidance as to "to be interpreted restrictively" [versus domestic public policy] and its applicability as to "only intended to be invoked under exceptional circumstances" [to avoid hampering international cooperation unduly]. However, the Model Law provides no guidance on what "concerning matters of fundamental importance for the enacting State" encompasses, other that when recognition or relief "would contravene fundamental principles of law." [2] And so, U.S. Courts have developed a frame of reference through caselaw.

15. In re Vitro, S.A.B. de C.V., Case No. 11-33335-HDH-15 (Bankr. N.D. Tex. Jun. 21,

---

[2] Legislative Guide on Insolvency Law – UNICITRAL, 2005, para. 86-89.

2012), the Court framed the applicability of § 1506 by defining its contours in reference to comity considerations, as follows:

> "Vitro SAB urges the Court to defer in favor of the Enforcement Motion in the interests of comity. However, *"The principle of comity has never meant categorical deference to foreign proceedings. It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of the laws, public policies, or rights of the citizens of the United States."* In re Treco, 240 F.3d 148, 157 (2d Cir.2001); see also, Overseas Inns S.A., P.A. v. United States, 911 F.2d 1146 (5th Cir.1990) (comity was not accorded to Luxembourg bankruptcy plan that treated IRS as general, rather than priority, creditor); In re Schimmelpenninck, 183 F.3d 347, 365 (5th Cir.1999) ("foreign laws ... must not be repugnant to our laws and policies").

[Emphasis added.]

16. *In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547 (E.D.Va. 2010), 1:10cv26, in the appeal to the Bankruptcy Court decision, the District Court reviewed applicable caselaw and found three guiding principles for analyzing whether an action taken in a Chapter 15 proceeding is manifestly contrary to the public policy of the United States:

1) The mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy exception.
2) Deference to a foreign proceeding should not be afforded in a Chapter 15 proceeding where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections.
3) *An action should not be taken in a Chapter 15 proceeding where taking such action would frustrate a U.S. court's ability to administer the Chapter 15 proceeding and/or would impinge severely a U.S. constitutional or statutory right, particularly if a party continues to enjoy the benefits of the Chapter 15 proceeding.*
[Emphasis added.]

17. In *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96 (Bankr. S.D.N.Y. 2012), the Court was asked to rule on a motion to vacate the recognition of a Mexican insolvency proceeding that raised *"troubling questions about the conduct of a foreign representative in this chapter 15 case and in the ongoing Mexican proceeding and requires consideration of the Court's role in protecting U.S. creditors."* In its opinion, the Court denied the motion despite the troubling facts of the case

by concluding that the creditors were sufficiently protected as a temporary matter as long as an US$ eight million bank deposit under their control remain in the United States. The Court thereby postponed a decision on vacating its recognition order or denying additional relief as follows:

> "*If and when an order or judgment is entered in the Concurso Proceeding for which the Foreign Representative seeks recognition and enforcement, this Court can decide then whether to grant comity to the order or judgment.*" [p. 3].
>
> "CTIM also takes issue with actions of the Guarantors and the Foreign Representative seeking to invalidate or evade enforcement of the Guarantee Agreement. These issues do not implicate the Court's Recognition Order and are not properly before the Court. Although the *Foreign* Representative appeared in the District Court Action, the District Court's decision to extend comity to the Concurso Court's May 27 Order, and to continue to do so now, should not be controlled by the status of recognition in this chapter 15 case. *Neither the Recognition Order nor the Stay Decision in this case compels the District Court or any other court to extend comity to any decision or order in the Concurso Proceeding. See Cozumel Caribe, 482 B.R at 108–11 (holding that a grant of recognition does not mandate the extension of comity to a foreign law, court order, or judgment)*. Likewise, any other proceedings in Mexican courts seeking to invalidate the Guarantee Agreement do not bear on this Court's recognition of the Concurso Proceeding." [p. 11].

[Emphasis added.]

18.  *In re ABC Learning Centres Limited*, 728 F.3d 301 (3d Cir. 2013), the Third Circuit Court of Appeals analyzed the applicability of § 1506 in reference to an Australian insolvency proceeding seeking recognition as a Foreign Main Proceeding opposed by unsecured creditors on public policy grounds. In its analysis, the Third Circuit concluded that § 1506 is the exception, rather than the rule, as follows:

a)  It can be invoked only under "exceptional circumstances concerning matters of fundamental importance for the enacting state", given the presence of the word "Manifestly" in its text, which connotes its exceptional nature (Citing the UNICITRAL *Guide to Enactment of the*

*UNCITRAL Model Law on Cross–Border Insolvency*, ¶ 89, U.N. Doc A/CN.9/442 (1997)).

      b)    It applies "where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections", (citing *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 570 (E.D.Va.2010)),

      c)    It applies where recognition "would impinge severely a U.S. constitutional or statutory right." *Id.*

    19.    *In re Ephedra Products Liability Litigation* 349 B.R. 333 (S.D.N.Y. 2006), four individual claimants challenged the Canadian CCAA proceeding under the public policy exception because the Canadian Court did not afford them the right to a jury trial. The Court ruled against the objectors as follows:

> "The historic function of the jury to stand as a bulwark against government abuse plainly has limited application in the civil arena, and it is *[9] difficult to detect what unfairness a plaintiff suffers from having a civil case decided by a judge rather than a jury. Here, the objectors' primary claim of "prejudice" from the absence of a right to jury trial is simply that it will give them less of a bargaining position in negotiating a settlement of their claims than they would have if a jury — which, unlike the Claims Officer, would have no knowledge of competing claims — were asked to value their claims. See Tr., 7/6/2006, at 37, 40. Deprivation of such bargaining advantage hardly rises to the level of imposing on plaintiffs some fundamental unfairness.
>
> In any event, the Procedure here in issue, <u>as amended</u>, plainly affords claimants a fair and impartial proceeding. Nothing more is required by § 1506 or any other law."

The Court's reasons for denying the relief requested were then a) a jury by trial vs. by a judge did not rise to the level of procedural unfairness requiring the invocation and application of § 1506, and b) "… *the Court granted the Monitor's motion, contingent on the Ontario Court's approving certain amendments to the Procedure designed to assure greater clarity and procedural fairness.*"

**Public Policy v. Comity: The Canadian Experience**

    20.    In Canada, caselaw on the public police exception is limited, despite the fact the Canadian Parliament did not adopt the Model Law's "manifestly" qualifier in the corresponding

CCAA article (Art. 61(2)). Nonetheless, two court decisions shed good light on how courts north of the border approach the application of the public policy exception.

21. In *Actava TV, Inc. v. Matvil Corp.*, 2021 ONCA 105, the Ontario Court of Appeal (ONCA) refused to give effect to a letter of request ("LoR") from a U.S. court on the grounds of public policy and sovereignty. The ONCA undertook an extensive analysis of the importance of public policy and sovereignty when remedies available in a foreign jurisdiction exceed those that would be available in Canada and concluded as follows:

> [57]  Given the vastly more permissive rules governing discovery in the U.S., it is fair to conclude that reciprocity is not an even balance. However, as this court observed in *Appeal Enterprises Ltd. v. First National Bank of Chicago* (1984), 10 D.L.R. (4th) 317 (Ont. C.A.), at p. 319, *"the comity of nations upon which international legal assistance rests does not require precise reciprocity"* between the laws of Canada and the laws of the requesting state: see also Perlmutter, at para. 63. That said, differences in discovery between Canada and the U.S. highlight the need to be attentive to all of the elements in the LoR analysis including sovereignty and the justice of the request.

> [41]  The statutory requirements for enforcing LoRs have been augmented by jurisprudence. The leading decision on LoRs in Canada is the 1981 decision of the Supreme Court in R. v. Zingre, [1981] 2 S.C.R. 392, a case involving a request for assistance from Switzerland. There, at pp. 400-1, Dickson J. (as he then was), wrote:

>> "As that great jurist, U.S. Chief Justice Marshall, observed in The Schooner Exchange v. M'Faddon & Others [(1812), 7 Cranch's Reports 116], at pp. 136-37, *the jurisdiction of a nation within its own territory is necessarily exclusive and absolute, susceptible of no limitation not imposed by itself, but common interest impels sovereigns to mutual intercourse and an interchange of good offices with each other*.

>> It is upon this comity of nations that international legal assistance rests. Thus, the courts of one jurisdiction will give effect to the laws and judicial decisions of another jurisdiction, not as a matter of obligation but out of mutual deference and respect. *A foreign request is given full force and effect unless it be contrary to the public policy of the jurisdiction to which the request is directed (see Gulf Oil Corporation v. Gulf Canada Limited et al. [[1980] 2 S.C.R. 39]) or otherwise prejudicial to the sovereignty or the citizens of the latter jurisdiction.*"

> [Emphasis added.]

22. In *Payless Holdings Inc. LLC*, Re, 2017 ONSC 2321, in a CCAA proceeding, The Ontario Superior Court (ONSC) refused to recognize a U.S. Interim DIP Order because the DIP credit agreement required the Canadian *Payless* entities to be guarantors and employ their assets as collateral for the indebtedness under the DIP facility. This was the case even though the Canadian entities were not borrowers under the pre-filing credit facility or the DIP facility and would not receive any advances under the DIP facility, and the *Payless* Canada Group assets were unencumbered. The recognition order was opposed by a group of landlords that faced material prejudice. The Court's view was that:

> [43] In my view, the grant of the DIP ABL Charge in exchange for benefits flowing to the parent company alters the status quo. *This would only be acceptable in a CCAA proceeding if arrangements were made to ensure that all affected creditor groups of the Payless Canada Group were protected to the extent that they could be no worse off if the Recognition Order is granted.*
>
> [48] Accordingly, I have not been persuaded that it is not appropriate to recognize the Interim DIP Order. I have not been satisfied that recognition of the Interim DIP Order and the granting of the DIP ABL Lenders' Charge is necessary for the protection of the property of the Payless Canada Group or the interest of the landlords of the *Payless* Canada Group.

[Emphasis added.]

23. The foregoing provides the bases for four main inferences:

   a) Like beauty, breaches of public policy are in the eyes of the beholder,

   b) Courts reach a public policy exception issue as a last resort. Applicability of the local statutes is the starting point and comity considerations are only reached if not precluded by the courts' statutory or public policy conclusions of law,

   c) Perfect is the enemy of good when considering extending comity to a foreign proceeding,

   d) Comity considerations are hence tantamount to tightrope walking with weighty

loads on both side of the pole.

**The Approval of Continued Case Record Sealing is Impermissible**

24. The Motion for Relief also seeks this Court's approval of continued sealing and redaction of case records the Foreign Representative deems "confidential." This request represents yet another demonstration of the contradictions posed by the CCAA proceedings. This is because:

a) The Foreign Representative asked the Delaware District Court the same relief based on the same arguments, which the Court denied, given the requirements for such an extraordinary relief:

> "The Court further believes that the public should have access to all information in the Proposed Order and Report. Crystallex brought its dispute with the Republic in a court of law, which is funded by the public and operates for the public's benefit. Maintaining the Court's integrity in the eyes of the public is of paramount importance. See, e.g., Littlejohn v. BIC Corp., 851 F.2d 673,678 (3d Cir. 1988) ("The public's exercise of its common law access right in civil cases promotes .and the quality of justice dispensed by the court."); see also Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 (3d Cir. 1993) ("[T]he very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.") (Internal quotation marks omitted). Accordingly, the strong presumption is that court filings -especially those necessary to and affecting the Court's exercise of judicial power -will be available to the public. See, e.g., LEAP Sys., Inc. v. 8 Case 1:17-mc-00151-LPS Document 337 Filed 09/08/21 Page 9 of 11 Page ID #: 8852 MoneyTrax, Inc., 638 F.3d 216, 220 (3d Cir. 2011) ("[A] strong presumption in favor of accessibility attaches to almost all documents created in the course of civil proceedings.") (Internal quotation marks omitted)."

*Crystallex International Corporation v. Bolivarian Republic of Venezuela*, 1:17-mc-00151-LPS, D.I. 337.

b) The CCAA Court under Justice Hainey and with the Monitor's support denied the Company's request for continued case record sealing and redactions on the grounds that the bases for the request did not pass the test required by controlling Canadian caselaw (the *Sierra Club v. Canada* decision by the Supreme Court). The Company and the DIP Lender appealed the CCAA Court's decision to the Ontario Court of Appeals, which confirmed the decision of the court below.

c) A few months later, the CCAA Court under Justice Conway, who replaced Justice

Hainey following his death, with the Monitor's support approved the continued sealing and redaction of "confidential' information based on the same facts and arguments. In the Court's reasons (see https://documentcentre.ey.com/#/detail-engmt?eid=166, CCAA Orders: *The Endorsement of the Honorable Justice Conway* – 08 Oct. 2021) it concluded as follows:

> "I have considered the test for sealing in Sierra Club of Canada v. Canada (Minister of Finance), 2002 SCC 41 and Sherman Estate v. Donovan, 2021 SCC 25. In my view, the sealing of this information meets the test. There is serious risk to an important public interest if this information is publicly disclosed. Crystallex is engaged in intensive protracted enforcement efforts to seek enforcement of a huge award, all for the benefit of its stakeholders in this CCAA proceeding. The information in question is commercially sensitive, is related directly to these enforcement efforts, and could seriously compromise Crystallex's position in the pursuit of those efforts. As noted by Chief Justice Morawetz in *Cash Store Financial Services Inc.*, 2021 ONSC 7143, at para. 19 and 25, there is a public interest in not placing a CCAA debtor at a tactical disadvantage in its litigation. That applies with equal force here."

Oddly enough, the decision by a Justice sitting in a case in the same Superior Court dealing with a case that turned on different facts was more persuasive than that of the Justice that had presided over the actual proceeding and the court above (the ONCA) that endorsed it.

25. Notably, much of the "confidential" information the Foreign Representative sought then and seeks now to seal on the grounds that it could curtail the efforts to collect the award have been made public by the Foreign Representative, save for two key exceptions: 1) the NAP Sharing Agreement between the Directors and the DIP Lender, and 2) the justification for spending close to US$ 200 million of the Estate's property for the sole benefit of the Self-interested DIP/BOD and the Controlling DIP Lender. Not surprisingly, the much-hyped harm the company anticipated would befall it once the "confidential" information became public knowledge has seemingly passed unnoticed.

26. The fact that the same court can reach different conclusions at low under the same circumstances and facts, in which the court above concurred with the initial decision should not be set aside as an infrequent event. As a matter of fact, such contradictions are not few and far in-

between in the CCAA proceeding. As an example, one other relevant contradiction will make this clear: the protection of the Shareholders' interests, or lack thereof, as follows.

27. The Company's CCAA filing was predicated on the need to protect the Estate and its shareholders. The CCAA Court under Justice Newbould endorsed the purpose and objectives of the case by reaching the conclusion that with a US$ 3.8 billion arbitration claim and total debt just over US$ 120 million required the Court to protect the interests of the shareholders. The Court based its decision on information provided in sworn affidavits by R. Fung, the Company's President and Chairman of the Board. One particular quotation drove this conclusion:

> "[24] Crystallex has spent over $500 million on the project. In the event that Crystallex only recovered that amount without interest and without any compensation for the loss of the ability to develop the project, Crystallex would still have more than enough to pay all of its debts and have substantial value left over for its shareholders."
>
> (See https://documentcentre.ey.com/#/detail-engmt?eid=166, CCAA Orders: Reasons of Justice Newbould re: Initial Order – 27 Dec. 2011).

28. A request in Oct. 2015 by nine shareholders that sought the appointment of a Shareholders' Committee (the "Committee") was never heard formally and, therefore, unappealable. Despite his previous conclusion about the need to protect the shareholders' interests, in the Reasons of Justice Newbould re: Initial Order – 27 Dec. 2011, Justice Newbould blocked the appointment of the Shareholders' Committee that sought to advance the shareholders' interests. This despite the by then self-evident inadequate representation by a self-interested DIP/BOD under the control of the DIP lender, with four out of five Directors on the Company's BOD, whose economic interests were intertwined with those of the DIP Lender's. The fifth Director is appointed with the DIP Lender's approval as a condition sine qua non and both share the same legal counsel. The DIP Lender's control of the Self-Interested DIP/BOD is made self-evident by the terms of the Credit Agreement, its representatives on the BOD (Mr. Shah, Tenor CEO and founding partner, and Mr. D. Kochav, Tenor's COO and senior partner) and the contingent compensation to two legacy Directors (Mr. R.

Fung and Mr. M. Oppenheimer) through a CCAA Court-approved US$ 100 million NAP Sharing Agreement dated Dec. 18, 2014.

29. Incontrovertible evidence of the inadequate representation of the Shareholders' interests by the Self-interested DIP/BOD were self-evident. First, the Controlling DIP Lender had by then been granted a share of the NAP above 80%. This was the case despite two undisputable facts:

a) The CCAA Court had endorsed the Company's insolvency filing on the grounds that it was necessary to protect the interests of the shareholders and later approved a motion by the DIP/BOD that proposed the terms and conditions of the DIP financing auction that expressly provided that:

> "*In no circumstance shall the Lender Back-End Entitlement involve, or contemplate directly or indirectly, either (i) an acquisition of control of Crystallex, (ii) an acquisition of any interest in the Arbitration Proceeding, or (iii) a receipt of value exceeding a minority of the Arbitration Proceed s*" were made after the BOD and the DIP Lender had negotiated and agreed on the terms under which the DIP loan would be made."

[Emphasis added.]

b) The Self-Interested DIP/ BOD had misrepresented its funding requirements and misguided the CCAA Court and the Shareholders by seeking the approval of the US$ 35 million DIP Loan as the amount required to pursue the arbitration award, which per ICSID and specialized arbitration publications takes on average four to five years and five million dollars per year. The Self-interested DIP/BOD spent the US$ 35 million loan in just over a year and obtained three additional loans over the next three years that increased the total DIP Loan to over US$ 76 million and the DIP Lender's share of the NAP to over 80%.

c) To advance their own interests, the Self-Interested DIP/BOD and the Controlling DIP Lender relied on wholesale court records sealing and redaction approved by the CCAA Court based on the same argument used since the filing: that the Company would be severely prejudiced by the

disclosure of its arbitration and collection efforts if such "confidential" information became public.

30. The process followed by the CCAA Court leading to the denial of the motionless request to appoint a court-sanction Committee was odd, to say the least. The CCAA Court had previously issued an order directing that no party was to bring a motion in the CCAA proceedings without leave of the Court after consultation with the Monitor. Hence, legal counsel for the nine shareholders asked the Court to consider a to-be proposed motion to approve the Committee. The first in-chambers hearing took place with the Monitor and legal counsel for the DIP/BOD, the DIP Lender, and other interested parties, including counsel for Mr. Tony Reyes, a Canadian shareholder. No opposition was put forward, which seemingly left the door open for the to-be proposed motion.

31. A second in-chambers hearing, with the same counsel and the Monitor in attendance, was held to present the motion with an opt-out approach to seek the shareholders' representation. All present, including the Justice Newbould, opposed the motion for various reasons that can be summarized as the Committee representing an unnecessary nuisance. In denying the Court's leave to file the Shareholders' Committee motion, in Apr. 2016, Justice Newbould justified the decision as follows:

> "The Applicants state in their Factum that the order sought 'will legitimize the purpose for which the committee has been formed." I agree with Crystallex, the DIP Lender and Mr. Reyes, a shareholder that opposes the motion, that the court at this stage should remain neutral as to the prospects of any litigation that the committee might see fit to bring, and that to make the order sought will be used by the committee to legitimize its purpose in the eyes of the shareholders by referring to the order made establishing the committee. The court should avoid that if at all possible and be completely neutral on the prospect of future litigation that would have to be decided by the court."

(See https://documentcentre.ey.com/#/detail-engmt?eid=166, CCAA Orders: Endorsement of Justice Newbould – 10 Apr. 2016, p. 5).

32. Notably, the shareholder that sided with the Self-interested DIP/BOD and the Controlling DIP Lender in opposing the establishment of the Shareholders' Committee, Mr. Tony Reyes, is a Canadian Bankruptcy lawyer who endorsed all of the Company's and the DIP Lenders'

motions until he was required to disclose that he was an investor in Tenor Capital Management's funds. Mr. Reyes has not participated in the CCAA proceeding ever since. Additionally, the CCAA Court failed miserably in its pursuit to remaining neutral by taking the side of the Self-interested DIP/BOD and the Controlling DIP Lender.

33. A third and final in-chambers hearing was held in which Gowling WLG presented a motion to appoint the Committee as an ad hoc committee, with Gowling WLG as legal counsel on a contingent fee basis, on an opt-in basis (to counter strong opposition to an opt-out approach), which was never approved.

34. The foregoing is but one example of the several procedural issues allowed by the CCAA Court that have denied the Shareholders the statutorily required protection of their interests and the opportunity to protect their personal rights. The procedural issues, the supporting facts, and the supporting facts have been particularized in several case docket entries (see D.I. Nos. 313, 314, 326, 337 and 362).

35. There can be no doubt about the Self-interested DIP/BOD's responsibility and legal requirement to protect the interests of the Estate and the Shareholders, and that their failure to do so impinges on personal rights that sound in tort redressable through legal action. It is highly unlikely that the Self-interested DIP/BOD will pursue the required remedies and, therefore, this task will be left for the Liquidation Trustee or the Shareholders, as residual owners of the Estate, to do. Relatedly, *In re Wilton Armetale, Inc.*, 968 F.3d 273 (3d Cir. 2020) (the "Third Circuit Opinion"), the Court reached the following conclusion of law:

> *"AHR has statutory authority to bring the claims at issue in the North Mill Adversary because the causes of action were both pursued by AHR pre-petition and abandoned post-petition by the Trustee. Once abandoned, the causes of action ceased to be property of the estate and thus may be pursued by AHR on its own behalf."*

36. The grounds for such an action have been made clear in controlling and persuasive

- 17 -

caselaw, as follows:

> "*A bankruptcy or reorganization trustee has a duty to exercise that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances.*" In re Ridgen, 795 F.2d 727 (9th Cir. 1986), (citing In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir. 1983))."
>
> "*Beyond the statutory duties, bankruptcy trustees owe to the beneficiaries of the estate the usual common law trust duties, such as the duty of loyalty, which proscribes self-dealing.*" In re Markos Gurnee P'ship, 182 B.R. 211, 219 (Bankr. N.D. Ill.1995), (citing Mosser v. Darrow, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951) ("*Equity tolerates in bankruptcy trustees no interest adverse to the trust.*"))."
>
> "*Respondents also ignore that, if a debtor remains in possession -- that is, if a trustee is not appointed -- the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession.* CFTC v. Weintraub, 471 U.S. 343 (1985), (citing Wolfv. Weinstein, 372 U.S. 633,372 U.S. 649-652 (1963))."

[Emphasis Added.]

## OBJECTION

37. The Movant respectfully puts forward the following objections to the Motion for Relief:

### A. Recognition of the CCAA Orders Is Inappropriate Under Sections 105, 1501, 1506, 1507, and 1522

27. The relief sought is unwarranted before the Court has the opportunity to complete its fact-finding requirements and established the bases at law or in equity to properly issue a decision on the facts and the merits. The Motion for Relief pursues the continued recognition of Foreign Main Proceeding court orders approving extensions of a DIP financing contract that is planned to be but cannot be the bases for the Estate's property distribution under the Bankruptcy Code and the Model Law.

28. Section 1522 requires this Court to deny or modify the relief requested by the Foreign Representative when the interests of the Estate and stakeholders are not sufficiently protected, as is the case here:

> 1522(a) The court may grant relief under section 1519 or 1521 or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.
>
> 1522(c) The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief.

Any modification to the Motion for Relief would be misplaced as it would involve changes to the Contract's MOD, which is purported to control the operation of the bankruptcy proceedings on both sides of the border, which cannot be allowed without breaching the Bankruptcy Code, binding U.S. caselaw (see Czyzewski v. Jevic Holding Corp., No. 15-649, S. Ct., 2017 WL 1066259) and injuring the U.S. shareholders' personal and constitutional rights.

**B.      Recognition of the CCAA Orders Is Inconsistent with Public Policy**

29.     The procedural issues in the CCAA proceedings and the breaches of law and prejudice against the Shareholders allowed by the CCAA Court further negate the recognition of the Motion for Relief and its lineage under § 1506 as they breach fundamental rights protected by the Constitution and unwaivable statutory rules and requirements that are conditions sine qua non at law and in equity.

## CONCLUSION

For all the reasons set forth herein, the Movant respectfully requests that the Court deny the Motion for Relief and grant such other and further relief as it deems just and proper.

Respectfully submitted,

Dated: January 28, 2022,
Newton, Massachusetts

Adelso Adrianza, Pro Se
113 Washington Street
Newton, MA 02458
aaadrianza@gmail.com
(859) 803-2279

## CERTIFICATE OF SERVICE

I, Adelso Adrianza, hereby certify that on this 28th. Day of January 2022, I caused copies of the Objection to The Foreign Representatives' Motion for An Order Recognizing and Enforcing (I) The CCAA Eleventh Extension and Fifteenth Amendment Order; And (II) The CCAA Twelfth Extension and Sixteenth Amendment Order Pursuant to Sections 11 U.S.C. §§ 105(a), 1501, 1506, 1507, 1522, respectively, to be served on the parties listed below by courier or otherwise indicated:

Via UPS Delivery:

Matthew Barry Lunn, Esq. Young, Conaway, Stargatt & Taylor
1000 West Street, Fl. 17, P.O. Box 391
Wilmington, DE 19899

Adelso A. Adrianza

*FILED 2022 FEB -1 AM 10:54 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE*