## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 15 |
| Crystallex International Corporation | Case No. 11-14074 (LSS) |
| Debtor in a Foreign Proceeding. | **Re: Dkt. Nos. 328, 363** |

## MEMORANDUM

I have two matters pending before me: (1) Mr. Adrianza's Motion for an Order Directing the Appointment of an Examiner and Independent Counsel for the Shareholders ("Examiner Motion")[1] and (2) the Foreign Representative's Motion for Entry of an Order Recognizing and Enforcing (I) the CCAA Eleventh Extension and Fifteenth Amendment Order; and (II) the CCAA Twelfth Extension and Sixteenth Amendment Order ("Recognition Motion").[2] Each party opposes the relief sought by the other. Hearings were held on August 20, 2021 and February 8, 2022. After each hearing, I requested the submission of additional documents and permitted certain additional submissions of legal authority.[3] Both matters are ripe for decision.

---

[1] Dkt. No. 328. Mr. Adrianza is appearing *pro se*. Other shareholders, also appearing *pro se*, support the Examiner Motion. Letter from Frank Sisca, Dkt. No. 335; Letter from David Pacheco, Dkt. No. 336; Letter from Glenn W. Herbert, Dkt. No. 338; Letter from Barry Hatch. Dkt. No. 342; Letter from Przemyslaw Kosinski, Dkt. No. 343; Letter from Greg Warren, Dkt. No. 345.

[2] Dkt. No. 363.

[3] Those submissions were made. Foreign Representative's Supplemental Objection to Motion for an Order Directing the Appointment of an Examiner and Independent Counsel for the Shareholders, Dkt. No. 359-1; Response to Foreign Representative's Supplemental Objection to Motion for an Order Directing the Appointment of an Examiner and Independent Counsel for the Shareholders, Dkt. No. 357. I also received a binder with the following documents filed in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-151-LPS (D. Del.): Motion of Adelso Adriana to Intervene and for an Order Requiring an Independent Determination of the Amount that Needs to be Collected to Satisfy Crystallex Judgment [D.I. 404, 11/17/21]; Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order [D.I. 345, 9/15/21]; Letter from

*Background*[4]

I have reviewed the documents and legal authority submitted. The filings show the following which is sufficient for me to rule on the two motions.[5]

1.      Crystallex International Corporation ("Crystallex") is a corporation organized under the laws of Ontario, Canada and headquartered in Ontario, Canadian. It has shareholders in Canada, the United States and perhaps other countries.

2.      On December 23, 2011, Crystallex was granted protection under the Companies' Creditors Arrangement Act (Canada) ("CCAA Proceedings"). That same day, Crystallex, as the Foreign Representative, commenced a chapter 15 case in this court ("Chapter 15 Case").

3.      The Foreign Representative contends that Crystallex's major, if not only, asset is an arbitration claim (now judgment) against the Bolivarian Republic of Venezuela based on the expropriation of the Las Cristinas gold project in 2011. Mr. Adrianza contends that Crystallex also owns mining data (or a claim for such) worth $340 million and has a $600 million tax loss carry forward.

4.      Crystallex's arbitration proceeded under the auspices of the Additional Facility of the International Center for Settlement of Investment Disputes, which granted an award in favor of Crystallex on April 4, 2016 in the amount of US$1.202 billion in damages,

---

Adelso Adriana [D.I. 368, 9/27/21]; Notice of Second Revised Proposed Sale Procedures Order [D.I. 391, 11/7/21]; Crystallex International Corporation's Opposition to Adelso Adrianza's Motion to Intervene and for an Order Requiring an Independent Determination of the Amount that Needs to be Collected to Satisfy Crystallex's Judgment [D.I. 414, 12/1/21]; Reply to Crystallex's Opposition to the Motion to Intervene and for an Order Requiring an Independent Determination of the Amount that Needs to Be Collected to Satisfy Crystallex's Judgment [D.I. 416, 12/7/21].

[4] I write for the benefit of the parties only, so a fulsome familiarity with the background knowledge is assumed.

[5] I am not making findings of fact. These matters are either not in dispute or reflect the dispute between the parties.

interest accrued at 6-month average U.S. dollar LIBOR plus 1% compounded annually, from April 13, 2008 to the date of the Final Award Order and post judgment interest from the date of the Final Award Order.

5.    On April 7, 2017, the United States District Court for the District of Columbia recognized the Final Award Order and entered Judgment in a Civil Action against Venezuela ("Judgment").[6]

6.    On June 19, 2017, Crystallex registered the Judgment in the United States District Court for the District of Delaware.  On August 14, 2017, Crystallex moved for an order authorizing a writ of attachment *fierci facias* to PDV Holding, Inc., a Delaware corporation, against its shares that are wholly owned by Petróleos de Venezuela, an alter ego of Venezuela ("PDVH Stock").  After significant litigation, that motion was eventually granted.  The Delaware District Court has appointed Robert B. Pincus, Esquire as a special master to conduct a sale of the PDVH Stock.  Mr. Pincus has retained Evercore as his Investment Banker to assist with the marketing and sale.  The extensive history of the case as well as the negotiations surrounding the proposed sale of the PDVH Stock are documented in several opinions of the Honorable Lenard P. Stark.  The most recent order regarding the sale was issued by the Delaware District Court on October 4, 2022.  As set forth in his opinions and reflected in that order, whether and when the PDVH Stock may be sold is complicated by, among other things, the necessity to deal with the Department of the Treasury's Office of Foreign Assets Control.

---

[6] The Judgment appears to have inadvertently omitted the award of post judgment interest from the date of the Final Award Oder.

7.    To fund the arbitration and collection proceedings against Venezuela,

Crystallex sought and obtained financing in the CCAA Proceedings.  The following chart as

well as the text below it and accompanying footnotes were supplied by the Foreign

Representative in his supplemental filing [Dkt. 359-1 at page 23 of 279] and appears to

accurately reflect the sequence of financing orders as well as their respective terms.

| Agreement | Date of Final Order by the CCAA Court | Date Recognition Order made in Ch. 15 | Principal Advanced | Interest | Additional Compensation |
|---|---|---|---|---|---|
| DIP Credit Agreement[A] | 4/16/2012 | 4/26/2012 [Docket No. 111] | US$36 million | 10% per annum, compounded semi-annually | 35% of Net Arbitration Proceeds[B] |
| Second Amendment Agreement[C] | 6/5/2013 | 6/19/2013 [Docket No. 125] | US$11.1 million | 10% per annum, compounded semi-annually | 14.874% of Net Arbitration Proceeds |
| Third Amendment Agreement[D] | 4/14/2014 | 4/28/2014 [Docket No. 138] | (a) US$12.1 million<br><br>(b) US$3.333 million | 10% per annum, compounded semi-annually | (a)  16.214% of Net Arbitration Proceeds<br><br>(b)  4.466% of Net Arbitration Proceeds |
| Fourth Amendment Agreement[E] | 12/18/2014 | 2/3/2015 [Docket No. 162] | US$13.2 million | 10% per annum, compounded semi-annually | 17.688% of Net Arbitration Proceeds[F] |

The DIP Credit Agreement has also been amended pursuant to orders made on the
following dates to, among other things, extend the maturity date of the DIP loan: (a) December 14,
2016; (b) May 25, 2017; (c) December 20, 2017; (d) February 27, 2018; (e) May 9, 2018; (f) October
31, 2018; (g) May 3, 2019; (h) November 4, 2019; (i) May 4, 2020; (j) November 3, 2020; and (l)
May 4, 2021.

[A]  Senior Secured Credit Agreement, dated as of April 23, 2012 (the "DIP Credit
Agreement").

[B]  Pursuant to the Waterfall found as Exhibit "F" to the DIP Credit Agreement, the "Net
Arbitration Proceeds" are calculated as the difference between the gross amount of any
Arbitration proceeds received by the Company and the aggregate of the first five levels
of the Waterfall (the "Net Arbitration Proceeds") being: (i) post-filing expenses, (ii)
taxes payable or required to be withheld, (ii) the principal amount of the DIP loan, (iv)

interest on the DIP loan, and (v) subject to the Override (as defined in the DIP Credit Agreement), all proven and allowed unsecured pre-filing claims against the Company.
<sup>C</sup> Second Credit Agreement Amendment Agreement, dated as of June 5, 2013.

C  Second Credit Agreement Amendment Agreement, dated as of June 5, 2013.
D  Third Credit Agreement Amendment Agreement, dated as of April 16, 2014.
E  Fourth Credit Agreement Amendment Agreement, dated as of March 12, 2015.
F  Subject to the Net Arbitration Proceeds Transfer Agreement.

8.    The chart shows that the DIP Lenders have advanced US$75.733 million, with the last advance approved by the Canadian court in December 2014 and recognized by this court in February 2015. Counsel for the Foreign Representative represented that as of July 31, 2021 the DIP Lenders were owed principal and interest of approximately $162 million. In addition, the share of Net Arbitration Proceeds granted to the DIP Lenders now stands at 88.242%, subject to the sharing arrangement set forth in the Net Arbitration Proceeds Transfer Agreement.

9.    Counsel for the Foreign Representative also represented that the waterfall of priority in the CCAA Proceedings (which the parties have referred to as the Mechanics of Distribution) is as follows:

First:    Post filing expenses including any tax owed on the collection of the Judgment

Second:    DIP financing principal and interest

Third:    Unsecured creditors with post-filing interest

Fourth:    Amounts owed under a management incentive plan

Fifth:    Net Arbitration Proceeds

Sixth:    Equity

10.    Crystallex's unsecured creditors include holders of 9.375% Senior Unsecured Notes, which have participated in the CCAA Proceedings and the Chapter 15 Case through an ad hoc committee. While not entirely clear, the principal amount of the Notes (which appears to include some permitted pre- and post-petition filing fees and expenses) is

approximately CN$123.4 million. In 2013, Crystallex and the Ad Hoc Committee of Noteholders entered into a standstill agreement that, among other things, awarded the Noteholders and other general unsecured creditors increased interest on their respective claims, granted certain releases and provided that no party other than Crystallex could file a plan of arrangement in the CCAA Proceedings or bring a motion in the CCAA Proceedings without leave of the Canadian court.

11.    Certain shareholders have participated in the CCAA Proceedings. Those shareholders were (and, perhaps still are) represented by Gowling WLF (Canada) LLP. Gowlings sought appointment as committee counsel to a group of opt-in shareholders with funding to be on a contingency fee basis (presumably, but not specified to be, based on the recovery by those shareholders). Gowlings sought CN$50,000 for expenses related to providing notice to all shareholders of the formation of the committee and the ability to opt-in. In its application, Gowlings noted that there was a real prospect of recovery for shareholders in the CCAA Proceedings, but that shareholders needed advice with respect to the dilution of their interest in the arbitration proceeds, steps to be taken to realize on the Judgment and distribution of any proceeds. The request before the Canadian court was opposed by the DIP lender and Crystallex. In April 2016, the Canadian court ruled on the motion. In doing so, the court (among other things) recognized the Judgment, the Mechanics of Distribution and the "obvious prospects" that if the Judgment is collected in full "there will be some amount available for the shareholders." Nonetheless, the court did not grant the motion. The court determined that there was nothing preventing Gowlings and its current shareholder clients from forming an ad hoc committee, that Crystallex would not benefit directly from other shareholders joining those currently represented by

Gowlings, that the shareholders were sophisticated investors (some "well-heeled") and there

was no evidence that they were "vulnerable" or in need of the CN$50,000 to provide notice

to other shareholders. Ultimately, the court ruled that the shareholders "are quite able to do

this without Crystallex money and without a court order."

12.    Subsequently, in 2018, Gowlings (now, on behalf of over 200 shareholders)

sought leave of the Canadian court to bring a motion to vary the terms of the court's

previous orders approving the Second Amendment Agreement, Third Amendment

Agreement and the Fourth Amendment Agreement (as to both the increased percentage of

the Net Arbitration Proceeds and the Net Arbitration Transfer Agreement) all as identified

in the chart, above.[7] Gowlings asserted that Crystallex, its directors and the DIP lenders

acted in a manner that was oppressive, unfairly prejudicial to shareholders and in utter

disregard of shareholder interests in that they, among other things, failed to explore

alternatives after the original DIP loan was made. Further, Gowlings asserted that the

arrangements with the DIP lenders violates various Canadian laws, including section 347 of

the Canadian Criminal Code, which regulates interest rates.[8] Gowlings also asserted that

---

[7] The draft statement of claim referred to by Gowlings in its submission was not among the filings submitted to me.

[8] Section 347 of the Criminal Code, RSC 1985 c C-46, in relevant part, provides:

> (1) Despite any other Act of Parliament, everyone who enters into an agreement or arrangement to receive interest at a criminal rate, or receives a payment or partial payment of interest at a criminal rate, is
> (a) guilty of an indictable offence and liable to imprisonment for a term not exceeding five years; or
> (b) guilty of an offence punishable on summary conviction and liable to a fine not exceeding $25,000 or to imprisonment for a term not exceeding six months or to both.
>
> (2) In this section,
>                              *    *    *

the orders were entered without any effective notice to shareholders. This application was

opposed by the DIP Lenders, certain directors, individually and (it appears) Crystallex. The

Canadian court dismissed the application. In doing so, the court ruled that: (i) notice of the

orders approving the second, third and fourth amendments to the DIP Credit Agreement

were effected in compliance with the CCAA and relevant orders in the CCAA Proceedings,

(ii) any shareholder could have filed a notice of appearance to be added to the service list in

the CCAA Proceedings, (iii) the orders the shareholders sought to vary were long final and

(iv) money was loaned in reliance on them. As for the allegations that the orders violated

the Canadian Criminal Code, the court held that the DIP credit agreement specifically (and

on its face) prohibits the payment of interest at a criminal rate. Notwithstanding, the court

held that any claim for actual receipt of interest by the DIP lender at a criminal rate of

interest is premature until it is known what interest will actually be paid, including the

timing and quantum "so as to permit calculation of the effective rate of interest."[9]

---

*criminal rate* means an effective annual rate of interest calculated in accordance with generally accepted actuarial practices and principles that exceeds sixty per cent on the credit advanced under an agreement or arrangement; (*taux criminel*)

\*   \*   \*

**interest** means the aggregate of all charges and expenses, whether in the form of a fee, fine, penalty, commission or other similar charge or expense or in any other form, paid or payable for the advancing of credit under an agreement or arrangement, by or on behalf of the person to whom the credit is or is to be advanced, irrespective of the person to whom any such charges and expenses are to be paid or payable, but does not include any repayment of credit advanced or any insurance charge, official fee, overdraft charge, required deposit balance or, in the case of a mortgage transaction, any amount required to be paid on account of property taxes.

\*   \*   \*

[9] The DIP lenders also made this argument in their factum submitted to the Canadian court.

*Discussion*

## A. The Examiner Motion

By the Examiner Motion, Mr. Adrianza seeks to have this court appoint an examiner as well as independent counsel for shareholders (which Crystallex and I have treated as a request for an equity committee). Among other things, Mr. Adrianza argues that an examiner is warranted to review the circumstances of what he terms a self-interested board that violated its duties of care and loyalty in connection with the DIP financing and a fraudulent transfer of a tax loss carryforward to the lenders. He also argues that there was no effective representation of shareholders in the CCAA Proceedings as the Canadian court denied the various motions and many of the filings were under seal. Mr. Adrianza also complains that individuals cannot participate *pro se* in CCAA Proceedings, which makes participation cost prohibitive. The Foreign Representative responds that there is no legal authority under chapter 15 for this court to appoint an examiner or have the UST appoint an equity committee as the Foreign Representative was not (at the time) asking for any relief and only a Foreign Representative can do so.

I reject the Foreign Representative's argument that nothing in chapter 15 permits the court to grant the relief sought in the Examiner Motion. As I ruled in *Better Place*, § 1522[10]

---

[10]  11 U.S.C. § 1522 provides:
    (a) The court may grant relief under section 1519 or 1521, or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.
    (b) The court may subject relief granted under section 1519 or 1521, or the operation of the debtor's business under section 1520(a)(3), to conditions it considers appropriate, including the giving of security or the filing of a bond.
    (c) The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief.
    (d) Section 1104(d) shall apply to the appointment of an examiner under this chapter. Any examiner shall comply with the qualification requirements imposed on a trustee by section 322.

permits the court to condition relief granted under § 1519 or § 1521 and it permits the court
to modify or terminate relief previously granted under those sections upon the request of the
Foreign Representative or an entity affected by the relief previously granted.[11] Here, prior to
the filing of the Examiner Motion, the Foreign Representative had asked for, and was
granted, relief under both sections 1519 and 1521, accordingly, I may modify or terminate
that relief. If I can modify or terminate it, I can certainly take the lesser step of conditioning
the previous relief granted. But, if I am wrong, it is of no moment. Subsequent to the filing
of the Examiner Motion, the Foreign Representative has sought further relief under § 1521
in the Recognition Motion.[12]

    Notwithstanding that I can grant the relief requested in the Examiner Motion, I am
not convinced that I should grant it at this time. As recognized by the Canadian courts (trial
and appellate), serious questions exist about whether any of the previous orders entered in
the CCAA Proceedings can and/or should be disturbed after so many years. During the
hearings, I expressed similar concerns with respect to orders entered in the Chapter 15

---

[11] *In Re Better Place, Inc.*, Case No. 13-11814, 2018 Bankr. LEXIS 322 * 16-18 and n. 41 (Feb. 5,
2018) discussing and citing *Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14, 26 (4th Cir. 2013) ("We believe
that Jaffe's view of the relationship between § 1521(a) and § 1522(a) is too myopic. While it is true
that Jaffe 'never affirmatively requested rejection authority under § 365,' he did request several forms
of discretionary relief under § 1521, among which was the privilege, pursuant to § 1521(a)(5), to
have the bankruptcy court entrust him with '[t]he administration or realization of all or part of the
assets of [Qimonda] within the territorial jurisdiction of the United States,' specifically identifying
the company's U.S. patents as among the U.S. assets he sought to control. And, as a prerequisite to
awarding *any* § 1521 relief, the court was *required* to ensure sufficient protection of the creditors and
the debtor. Section 1522(a) states this explicitly, providing in relevant part, 'The court may grant
relief under section . . . 1521. . . *only if* the interests of the creditors and other interested entities,
including the debtor, are sufficiently protected.' 11 U.S.C. § 1522(a) (emphasis added).
Additionally, the court was authorized to 'subject' any § 1521 relief 'to conditions it considers
appropriate.' *Id.* § 1522(b); *see also* H.R.Rep. No. 109-31, pt. 1, at 1, at 116 (describing § 1522 as
'giv[ing] the bankruptcy court broad latitude to mold relief to meet specific circumstances, including
appropriate responses if it is shown that the foreign proceeding is seriously and unjustifiably injuring
United States creditors').").

[12] The Foreign Representative states that the statutory predicates for the relief requested in the
Recognition Motion are sections 105, 1507, 1521, 1525 and 1527.

Case.[13]  And, as even Mr. Adrianza recognizes until any proceeds from the sale of the PDVH Stock are collected, we are talking in hypotheticals regarding the actual outcome of the DIP lending.[14]  Further, I have no evidence that the interests of Crystallex and its shareholders are not aligned at this time in respect of maximizing recoveries on the PDVH Stock.

But, at least two issues may be appropriate to address once proceeds from the sale of the PDVH Stock are available.  First, the Canadian court concluded that it is premature to consider whether the arrangement with the DIP lenders establishes an effective interest rate that violates Canada's Criminal Code.  This Chapter 15 Case has been pending for eleven years, the collection proceedings have been pending for five years and the timing of the sale of the PDVH Stock is uncertain.  Whether the effective rate of interest under the DIP Credit Agreement will turn out to be more than 60% is unknown.

Second, it appears that this court must determine whether any transfer under the Mechanics of Distribution (or otherwise) is appropriate as it relates to assets located in the United States.[15]  Section § 1520(a)(2) provides:

(a) *Upon recognition* of a foreign proceeding that is a foreign main proceeding—

---

[13] *See e.g.* Aug. 20, 2021 Hr'g Tr. 50:18-53:9.

[14] Aug. 20, 2021 Hr'g Tr. 4: 12-19.

[15] At argument, I asked whether the Foreign Representative planned to seek permission from the Canadian court or this court before making a distribution of any recoveries on the Judgment.  In a supplemental response, the Foreign Representative stated that "The Foreign Representative understands that the Debtor must make the appropriate application as Canadian Court approval of any material distributions will be required by both the Debtor's board of directors and the Monitor." Dkt. No. 359-1 n.5.  This answer is less than satisfactory as it appears to leave that decision to the Debtor's board and the Monitor rather than the Canadian court or the CCAA statute.  In its supplemental filing the Foreign Representative did not address whether it would seek approval of this court prior to any distribution.

       (2)  sections 363, 549, and 552 apply to a transfer of an interest of the debtor in
       property that is within the territorial jurisdiction of the United States to the same
       extent that the section would apply to property of an estate.[16]

This provision automatically applies upon recognition.  It establishes that the court

presiding over the chapter 15 proceedings has *in rem* jurisdiction over a debtor's assets in the

United States and charges that court (not the court presiding over the foreign main

proceeding) with the responsibility to approve transfers of those assets.[17]  At a minimum, the

proceeds from the sale of the PDVH Stock appear to be property within the territorial

jurisdiction of the United States.  Section 1502(8) provides:

       (8)  "within the territorial jurisdiction of the United States", when used with reference
       to property of a debtor, refers to tangible property located within the territory of
       the United States and *intangible property deemed under applicable nonbankruptcy law*
       *to be located within that territory, including any property subject to attachment or*
       *garnishment that may properly be seized or garnished by an action in a Federal or State*
       *court in the United States.*[18]

       Previous orders of this court recognizing orders in the CCAA Proceedings and/or

approving the financing arrangements do not appear to reference either section § 1520(a)(2)

or § 363.  Rather, per the applicable motions and/or applications, the DIP lenders appear to

have insisted upon approval/recognition of the financing arrangements by this court in

---

[16] 11 U.S.C. § 1520(a)(2) (emphasis supplied).

[17] *In re Elpida Memory, Inc.*, 2012 WL 6090194, at *7 (Bankr. D. Del. Nov. 20, 2012) ("In essence,
the Model Law follows an *in rem* division of labor between competing sovereignties—tasking the
domestic courts with responsibility over and for assets in their jurisdiction.  Chapter 15's legislative
history leads to the same conclusion as the plain meaning analysis—the sound exercise of business
judgment test is applicable" [to a motion to approve the transfer of a patent license and technology
agreement and a motion to approve the sale of certain patents]).

[18] 11 U.S.C. § 1502(8) (emphasis supplied).  *Compare In re Fairfield Sentry Ltd*, 768 F.3d 239 (2d Cir.
2014) ("the sale of the SIPA Claim is a 'transfer of an interest of the debtor in property within the
territorial jurisdiction of the United States' within the meaning of 11 U.S.C. § 1520(a)(2).  The
language of the statute makes it plain that the bankruptcy court was required to conduct a section
363 review.  Deference to the BVI Court was not required.  We remand to the district court with
instructions to remand to the bankruptcy court to conduct the section 363 review.").

order to receive § 364(e) protection. Whether those approvals already suffice or whether further approval is necessary has not been briefed by the parties.

Accordingly, while I am not granting the Examiner Motion at this time (without prejudice to a later renewal), I am placing certain conditions on the relief previously granted and the relief the Foreign Representative requests in the Recognition Motion.[19] One, no proceeds of the sale of the PDVH Stock that the District Court awards to Crystallex can be transferred out of the United States without the permission of this court.[20] Two, no further transfer/disposition of Net Arbitration Proceeds can be made without the permission of this court. The order imposing the conditions will also address documents that have been sealed in the Chapter 15 Case.

## B. The Recognition Motion

By the Recognition Motion, the Foreign Representative asks that I recognize two orders of the Canadian court. The first is the Canadian court's order dated May 4, 2021, which extends the original stay of proceedings against Crystallex and approves a Fifteenth Credit Agreement Amendment to the DIP Credit Agreement. This fifteenth amendment extends the maturity date to November 5, 2021. There is no fee associated with this amendment. It also permits certain documents to be filed under seal pending motion practice in the CCAA Proceedings. The second is the Canadian court's order dated

---

[19] *Compare In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 336 (Bankr. S.D.N.Y. 2014) (denying a motion to vacate recognition of a Mexican insolvency proceeding and finding: "CTIM holds approximately $8 million in an account in New York; it has not alleged that the Foreign Debtors or the Non-Debtor Affiliates hold any other property in the United States. Whether its claim is $27 million or $103 million, CTIM's interests are sufficiently protected as long as the funds remain in the New York account.").

[20] At least one other judgment creditor has intervened in the Delaware District Court attachment proceedings claiming an interest in the proceeds of the sale of the PDVH Stock. I assume the Delaware District Court will resolve any inter-judgment creditor issues in the event there is not sufficient proceeds to satisfy all judgment creditors.

November 18, 2021, which extends the original stay of proceedings against Crystallex and approves a Sixteenth Amendment to the DIP Credit Agreement. This amendment extends the maturity date to November 18, 2022. There is no fee associated with this amendment. It, too, permits certain documents to be filed under seal in the CCAA Proceedings, but in more limited circumstances. Mr. Adrianza objects to the Recognition Order in light of his Examiner Motion. He also argues that the court should no longer permit sealing of documents in the Chapter 15 Case.

Having considered the Recognition Motion and the arguments made at the hearing, I will enter a simple order recognizing the extension of the maturity date of the DIP Credit Agreement, the waiver of defaults and certain other relief granted/conditions imposed by the Canadian court. Given my ruling, I will not (and, as I expressed at the hearing see no reason to) re-confirm or re-recognize previous orders of this court or the Canadian court related to the DIP financing.

An order will follow.

Dated: November 28, 2022

Laurie Selber Silverstein
United States Bankruptcy Judge