## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF DELAWARE

-------------------------------------------------- x --------------------------------------------------

In re                                              :    Chapter 15
                                                   :
**CRYSTALLEX INTERNATIONAL CORP.**                 :
                                                   :
Debtor in a Foreign Proceeding.                    :    **Case No. 11-14074 (LSS)**
                                                   :
                                                   :
                                                   :
                                                   :    Re: Docket No. 474
                                                   :

-------------------------------------------------- x --------------------------------------------------

## LIMITED OBJECTION TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER RECOGNIZING AND ENFORCING SPECIFIED PROVISIONS OF THE CCAA FOURTEENTH EXTENSION AND EIGHTEENTH AMENDMENT ORDER AND THE MOVANT'S RESERVATION OF RIGHTS WITH RESPECT TO THE ABANDONMENT AND TRANSFER AT UNMDERVALUE OF ESTATE PROPERTY.

Adelso Adrianza, the Movant, a shareholder of the Debtor, pro se and on behalf of similarly situated U.S. Shareholders respectfully submits this limited objection (the "Limited Objection") to the Foreign Representative's For Entry of An Order Recognizing And Enforcing Specified Provisions Of The CCAA Fourteenth Extension And Eighteenth Amendment Order (the "Motion"); and the reservation of rights (the "Reservation Of Rights") with respect to abandoned, gifted and transferred at undervalue of Estate property. In support of thereto, the Movant respectfully represents as follows.

## I. INTRODUCTION

The Foreign Representative's motion (the "Motion") implies significant harm to the bankruptcy estate ("the Estate") and the shareholders (the "Shareholders") that the Court needs to be fully aware of to issue its decision based on the facts and the applicable law. While requesting relief seemingly limited to that previously granted by this Court (DEBK D.I. 373), the Foreign Representative's Motion does not account for events and actions that took place after the approval of the last credit agreement amendment and extension order. The Court diligently limited the scope

of the previous relief order to preempt constraining its authority to review and decide this case on the merits when it becomes justiciable. The events and actions involved implicate decisions by the Foreign Representative that run counter to procedural and statutory requirements that this Court alone has the authority to approve as they relate to property of the Estate under its jurisdiction.

The protection and distribution of estate property in accordance with the requirements of the Bankruptcy Code are conditions sine qua non for it to accomplish the purpose and policy objectives Congress pursued in enacting the statute. Any shortcomings in this regard undermines the integrity of the Code and the authority of the Bankruptcy Court to implement it as Congress saw fit. In the proposed order, the Foreign Representative makes a sweeping statement, i.e., "and the Court having determined that granting the relief requested by the Motion is in the best interests of the Debtor, the Debtor's creditors, and other parties in interest," which is hereinbelow contested as a misrepresentation.

## II. JURISDICTION

I.   This Court has authority to consider the Limited Objection and the Reservation of Rights pursuant to 28 U.S.C. § 157(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b) and a non-core proceeding pursuant to 28 U.S.C. § 157(c). The Court may enter a final order consistent with Article III of the United States Constitution in core proceedings under 28 U.S.C. § 157(b) and may also do so in non-core proceedings under § 157(c) with consent of the parties. The Movant has respectfully withheld such consent. Venue is proper in this District and Court pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are the Bankruptcy Code sections 105(a), 1501, 1506, 1507, 1521 and 1522.

## III. BACKGROUND

2.   This long-running case has a storied past recounted in detail multiple times in past filings

by the Foreign Representative, which would represent many pages of irrelevant information for present purposes. The relevant background can be summarized as follows:

3.  Crystallex International Corp. (the "Company") filed for Canadian CCAA bankruptcy protection in December 2011 to pursue a $3.8 billion arbitration award against Venezuela for the illegal cancellation of its gold mining operation contract with a state-owned enterprise.

4.  The company pursued and obtained DIP financing for $36 million to fund the arbitration case. The DIP loan amount was determined as sufficient to fund the entire arbitration process. Tenor Capital Management was selected as the DIP Lender and in the DIP Financing Agreement was granted 10% interest p.a. and a special payment set at 35% of the net arbitration proceeds (i.e., the award amount remaining after paying 100% of the proven debt, debt service, bankruptcy charges and costs and a management incentive plan (MIP)).

5.  The CCAA insolvency proceeding was wrapped up in secrecy from the start through profuse document sealing and redaction, and access to it was limited to interested parties that entered into a non-disclosure agreement that called for the appointment of legal counsel to have the opportunity, but not the right, to have access to pervasive "strategic and confidential" information. The purpose was to keep the Shareholders unaware of the actions and omissions contrary to their interests from the outset. Thus, the Shareholders were not given adequate notice of the CCAA and Chapter 15 filings and initial hearings, as required by the Chapter 15 Court in its Initial Order, and despite it being a cardinal requirement to afford interested parties the constitutionally guaranteed due process of law.

6.  The initial DIP loan was spent within a year and was followed by three additional loans that increased the DIP financing loan to $76 million and the DIP Lender's share of the NAP to 90%. This was the case despite the representations by the BOD/DIP that the CCAA filing was necessary to, among other reasons, protect the interests of the Shareholders from predatory lending terms

required by the unsecured noteholders, which, if agreed to, the BOD deemed contrary to their fiduciary duties.

7. The DIP Financing Agreement included terms that provide almost full control of the Company and the bankruptcy proceedings to the point that it prevented the debtor from paying the DIP loan, and the mere pursuit of alternative financing resulted in the debtor defaulting on the loan. It also required the appointment by the DIP Lender of two of the five BOD members: Tenor's founding partner and CEO, Robin Shah, and its Chief Operating Officer, Daniel Kochav. The DIP Lender obtained de facto control of the Company and its bankruptcy proceedings by entering into a NAP transfer agreement worth $100 million with two legacy board members, R. Fung, President and Chairman of the BOD, and M. Oppenheimer. The NAP transfer agreement compensated the two legacy BOD members for the 90% dilution of their share of the MIP that had been set up with a contribution of the lesser of up to $100 million or 25% of the Estate's share of the NAP to align the interests of eight company BOD members and executives with those of the Shareholders.

8. The ICSID arbitration panel granted the Company a $1.4 billion award and pre- and post-award interest at a commercial interest rate under the terms of the Canada-Venezuela investment protection treaty. The Company and the Republic entered two award settlement agreements in 2017 and 2018 that were soon after reneged on by Venezuela. The 2018 settlement agreement resulted in a contractual agreement under New York law that required the Republic to make an upfront payment in cash or fully liquid securities with a commitment to make the Company whole for any value loss up to the perfection of the Contract. (*See* Exhibit 1). Further, the contract required the Republic to compensate the Company for the legal cost and expense incurred as a result of the non-completion of the agreement, as well as 6% interest p.a. until full payment of the award. The collection judgement issued by the DC District Court granted post-award interest at the Title 28 U.S.C. § 1961(a) rate, then set at 1.02% p.a., grounded on the Merger Doctrine. The D.C. collection

Judgement was superseded by the terms and conditions of the Amended Settlement Agreement. It is well established that the terms of a contractual agreement entered into to settle a collection judgement court order redefine the parties' rights and obligations and abrogate or supersede those not carried forward in the revised agreement.

9. The initial payment on the Amended Settlement Agreement was made via $180 million in cash and Venezuelan securities with a purported $320 million market value. The Amended Settlement Agreement stipulated that the Initial payment required payment in "cash in U.S. dollars in immediately available fund and/or Liquid Securities." (*See*, Exhibit 1, p. 2). In the CCAA Monitor's 43rd. report to the CCAA Court, the company acknowledged the illiquidity and material loss of value on the securities received as payment from Venezuela, as follows:

> 19. Despite the lifting of the ban on trading Venezuela and PDVSA bonds in the secondary market, the prices for the securities received under the Initial Payment remain at discounted levels with very limited trading volume. The Applicant is engaging its professional advisor to develop a monetization strategy to maximize the value of these securities.

> 20. The Applicant has stated that liquidating any portion of these securities in the near future is not commercially reasonable.

10. In the judgement collection proceedings at the Delaware District Court, the Company represented to the Special Master that the balance of its arbitration award against Venezuela amounted to $990 million, after deducting the $500 payments received from the Republic, including the $320 million in Venezuelan securities the Company now acknowledges are worth substantially less. The $ 990 million determination by the Special Master is to be collected through the CITGO shares auction scheduled to be executed in July 2024. This amount reflects the post-award interest calculated based on the collection judgement issued by the DC District Court, which is significantly lower than the commercial interest rate established by the ICSID Award and the Amended Settlement Agreement Contract.

11. The Movant moved the Delaware District Court twice for orders authorizing him to

intervene in the judgement collection proceedings as the means to protect his and the shareholders interest in view of the Foreign Representative's misrepresentations on the amount the Company is required to collect from the CITGO auction process on behalf of the Estate. In the Second request for relief, the Movant also asked the District Court to protect the interests of the Estate and the Shareholders from irreparable harm by operation of the Delaware judgement collection statutory requirements, which foreclose all future action in pursuit of restitution once the judgement collection action is executed. (*See*, DEDC D.I. 1041, para. 13). Both requests for relief were denied by the Court under the presumption that the interests of the Company and the Shareholders are aligned in the pursuit of the maximum possible recovery. This was the same claim the Foreign Representative put forward in its opposition to the Movant's motions for relief.

## IV. LEGAL AND FACTUAL GROUNDS FOR OPPOSITION

12. In November 2021, the undersigned moved the Delaware District Court to allow him to intervene in the Judgement Collection proceeding with the Motion To Intervene And For An Order Requiring An Independent Determination Of The Amount That Needs To Be Collected To Satisfy Crystallex's Judgment. The Motion was predicated the Foreign Representative's submission to the Special Master of the incorrect collected and the to-be-collected amounts of the arbitration award (D.I. 361-362), which established the quantum to be collected on behalf of the Estate through the CITGO shares auction. Left uncorrected, the Special Master's determination would result in significant harm to the Estate by operation of the Delaware judgement collection statutory requirements, which foreclose recovery from the Judgement Debtor once the collection is executed (*See*, DEDC D.I. 1041, para. 13). The District Court denied the relief requested in an oral order (DEDC D.I. 426) grounded on its assessment, based on the Foreign Representative's representation, that the Movant "has not shown that Crystallex does not adequately represent his interests"; "Both Crystallex and Adrianza share the goal of 'maximizing Crystallex's recovery' and promoting value

for the shareholders, including Adrianza"; and "it is not even clear that Adrianza has any protectable interest in this litigation at all."

13. In May 2023, the undersigned sent a letter to the Delaware District Court reiterating the impending harm to the Estate and the Shareholders as a result of the Foreign Representative's failure to protect the interests of the Estate and the Shareholders by abandoning, gifting and keeping overvalued legally enforceable property and rights (DEDC D.I. 556). The letter particularized the property, rights, value, legal basis and fiduciary duties that required the Foreign Representative to pursue the recovery of hundreds of millions of dollars owed to the Estate. These included a) post-award interest at the commercial rate, b) recovery of the mining data value, restitution for overvalued securities received as payment from the Republic, c) recovery of costs incurred as a result of the contractual agreements, as established by the arbitration panel or the Amended Settlement Agreement. The letter concluded with the request to the Court to be mindful of the impending irreparable harm to the Estate and the Shareholders and the need for measures to preempt it as a matter of justice.

14. In the Special Master's Motion Seeking Final Determination of The Attached Judgments (DEDC D.I. 1140) the Special Master asked the District Court to approve the final determination of Gold Reserve's collection judgement amount through the CITGO shares auction. In it, the Special Master determined that Gold Reserve was entitled to the commercial interested rate awarded by the arbitration panel. The ICSID award decision granted post-award interest based on:

> Post-award interest shall run on the total amount awarded under (ii) above at a rate of LIBOR plus 2%, compounded annually, from the date of the Award until payment in full.

15. The Company's ICSID award granted post-award interest at a commercial rate as follows:

> The Respondent is ordered to pay post-award interest on the amounts specified in subparagraph (d) and (e) above at the rate of the 6-month

average U.S. Dollar LIBOR + 1%, compounded annually, calculated from
the date of the Award until full payment.

The distinct difference between the Special Master post-award interest due determination is that Gold
Reserve specifically requested payment based on the ICSID award decision, whereas the Company
requested the interest payment at the much lower collection judgement order rate. The lower interest
payment request is predicated on the need of the DIP Lender and the Self-interested directors to avoid
exposure to the Canadian Criminal Interest Rate statute, which involves the cancellation of the DIP
Financing Agreement and up to five years jail terms for the people involved. Here it is important to
point out that the Criminal Interest Rate statute requires the determination of breaches to include all
payments and benefits received by the lender on account of the loan. In the instant case, the inclusion
of the DIP Lender's share of the NAP (90%) including the post-award at a commercial interest rate, the
20% interest gift to the unsecured noteholders, the value of the mining data gifted to Venezuela, the
legal costs and expenses incurred due to the Republic's decision to walk away from contractual
agreement per the ICSID or the Amended settlement Agreement carries significant economic and
personal risks for the parties involved.

16. This Court already established the statutory requirement to provide adequate protection
to the Movant and the Shareholders under § 1522 in its ruling in November 2022 (D.I. 372-373).
Further, it is blackletter law that Estate property and rights under the Court's jurisdiction must be
gather, protected and distributed according to the bankruptcy statute. This Court has also established
its jurisdiction on the proceeds from the arbitration award through the judgement collection
proceedings at the Delaware District Court. (D.I. 372-373). Further, the sale or disposition of estate
property outside of the ordinary course of business is pre-empted by the bankruptcy stay and requires
approval by the court with jurisdiction over the property and rights involved.

17. The property and rights waived, abandoned, gifted or otherwise disposed of through the
actions and omissions by the Foreign Representative in relation to the Estate's claim against the

Republic involve breaches of the bankruptcy stay and violations of §§ 1501(4), 1506, 1507(3) and 1507(4). This fact is made self-evident by the value of the Estate property and rights under the CCAA Court jurisdiction have been reduced to a point that it is no longer sufficient to cover the DIP loan and interest due on it, which the CCAA Monitor reported to be $202 million as October 31, 2023; while the available cash was reported to be $74 million, and the current market value of Venezuelan securities is estimated at one-third of their original value ($110 million).[1]

18.     The Foreign Representative's Motion proposes the extension of the Standstill Agreement, which requires 20% interest on the unsecured debt and represents a gift to the noteholders to refrain from proposing a plan of arrangement detrimental to the DIP Lender's interests. This is the case because both the Canadian and the U.S. bankruptcy statues currently allow for 5% interest p.a. and that the continued gift to the noteholders is to be funded with U.S. based property. Consequently, the use of U.S. based property for purposes in violation of the Bankruptcy Code and controlling caselaw[2], at the expense of the Estate and the Shareholders, and without this Court's explicit review and approval is a violation of the stay and the bankruptcy statute.

19.     Likewise, the failure by the Foreign Representative to marshal all of the Estate's property and rights (including the port-award interest at the commercial rate, the recovery of the mining data, the restitution for the full value of the Venezuelan securities and the recovery of the legal costs and expenses incurred as a result of the Republic's failure to abide by the ICSID arbitration award and/or the Amended Settlement Agreement) and deliver these to this Court for distribution according to the Bankruptcy Code represents violations of the bankruptcy statute.

20.     The impending irreparable harm to the Estate and the Shareholders particularized above requires this Court's protection as established by § 1522. In this context, the Movant's

---

[1] See, Monitor Report Nr. 42 on the CCAA case docket - https://documentcentre.ey.com/#/detail-engmt?eid=166.
[2] *See, In re ICL Holding Co.*, 802 F.3d 547 (3d Cir. 2015)

Reservation of Rights with respect to abandoned, gifted and/or transferred at undervalue of Estate property is necessary for this Court to be able to review and decide this case in due course on the merits; unimpeded by the onset of res judicata and equitable mootness as a result of the Foreign Representative's actions and omissions at the Delaware District Court proceeding.

## CONCLUSION

For all the reasons set forth herein, the Movant respectfully requests that the Court account for the foregoing facts and their implications in deciding the appropriate relief with respect to the Foreign Representative's Motion and the Movant's Reservation of Rights; and grant such other and further relief as it deems just and proper.

Respectfully submitted,

Dated: May 6, 2024.
Watertown, Massachusetts

*Adelso Adrianza*
Adelso Adrianza, Pro Se
$ Repton Cir. Unit 4210
Watertown, MA 02472
aaadrianza@gmail.com
(859) 803-2279

## CERTIFICATE OF SERVICE

I, Adelso Adrianza, hereby certify that on this 6th. Day of May 2024, I caused copies of the Motion For Entry Of An Order Recognizing And Enforcing Specified Provisions Of The CCAA Fourteenth Extension And Eighteenth Amendment Order And The Movant's Reservation Of Rights With Respect To The Abandonment, Gifting And Transfer At Undervalue of Estate Property pursuant to 11 U.S.C. §§ 105(a), 1501, 1506, 1507, 1522, respectively, to be served on the parties listed below by courier or otherwise indicated:

Via UPS Delivery:

Mr. Matthew Barry Lunn, Esq. Young, Conaway, Stargatt & Taylor
1000 West Street, Fl. 17, P.O. Box 391
Wilmington, DE 19899

Mr. Byron Steel, Counsel for the Special Master
Potter Anderson & Corroon, LLP
1313 North Market Street, 6th Fl.
Wilmington, DE 19801

*Adelso Adrianza*
Adelso A. Adrianza

## EXHIBIT 1

### Amended Settlement Agreement Between
### Crystallex International Corporation and Venezuela

## AMENDED AND RESTATED CONTRACT OF TRANSACTION AND SETTLEMENT

This Amended and Restated Contract of Transaction and Settlement (this "Agreement") is made and entered into as of the 10th day of September 2018 by and among the Bolivarian Republic of Venezuela (the Bolivarian Republic of Venezuela, together with all instrumentalities thereof involved in the actions described herein, "Venezuela") and Crystallex International Corporation ("Crystallex"). This Agreement constitutes an amendment and restatement of the Contract of Transaction and Settlement, dated as of November 15, 2017, entered into among the parties hereto (the "Original Settlement Agreement").

### RECITALS

WHEREAS, on April 4, 2016, an arbitral tribunal rendered a final award in an arbitration between Crystallex and Venezuela, pursuant to the Arbitration (Additional Facility) Rules of the International Centre for Settlement of Investment Disputes, and the July 1, 1996 Agreement between the Government of Canada and the Government of the Republic of Venezuela for the Promotion and Protection of Investments, ICSID Case No. ARB(AF)/11/2 (the "Award"). The Award provided that Venezuela owed Crystallex U.S. $1.202 billion, plus interest.

WHEREAS, on April 7, 2017, the United States District Court for the District of Columbia issued a judgment confirming the Award in an action styled *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 16-0661 (RC) (the "DC Judgment").

WHEREAS, the parties hereto have previously entered into the Original Settlement Agreement, which was subsequently modified to clarify the intentions of the parties.

WHEREAS, Venezuela made several payments for a total amount of U.S. $74,638,998.43.

WHEREAS, on August 9, 2018, the United States District Court for the District of Delaware issued an order authorizing the attachment of the shares of PDV Holding Inc. (the "Writ of Attachment") with respect to the enforcement of the DC Judgment in an action styled *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-151-LPS (D. Del.) (the "Delaware Order"), and the Writ of Attachment was served on August 24, 2018.

WHEREAS, the parties hereto consider that it is in their best interest and mutual benefit to amend and restate the Original Settlement Agreement to provide for the terms and conditions of a temporary stay of the Writ of Attachment and the DC Judgment as well as for a potential revised final settlement with respect to the payment of the Award, and to that end are entering into this Agreement.

### AGREEMENT

NOW THEREFORE, in exchange for the mutual promises made herein, and for good and sufficient consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:



 

1. <u>Initial Payment</u>.  On the date hereof, as a condition precedent to the effectiveness of the provisions of this Agreement, Venezuela shall deliver (or cause to be delivered) to Crystallex (or its designee) cash in U.S. dollars in immediately available funds and/or Liquid Securities (as defined below) in an amount, in the case of cash, or with a Market Value (as defined below) in the case of Liquid Securities of at least U.S. $425,000,000 (the "<u>Initial Payment</u>") in accordance with the payment instructions set forth on <u>Annex A</u> hereto or such other payment instructions specified in writing (including electronic communication) from time to time by Crystallex in its sole discretion, which amount shall be applied to the outstanding amount of the Award.  With respect to any Liquid Securities delivered as part of such payment, such delivery shall be deemed to be applied to the outstanding amount of the Award in an amount equal to the Market Value of such securities, regardless of whether the ultimate proceeds or realization in respect of such securities is less than or greater than such Market Value; *provided* that (x) with respect to any Liquid Securities sold by Crystallex prior to the date that is six months after the Initial Payment is made, the amount of the Initial Payment shall be deemed to be increased or reduced, as applicable, by an amount equal to the Proceeds Adjustment Factor (as defined below) and (y) any such sale by Crystallex during such six-month period shall be conducted in a commercially reasonable manner and Crystallex shall provide to Venezuela commercially reasonable evidence of the relevant sales and amounts and pricing for the same.  It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered pursuant to the Initial Payment until the Temporary Stay of Execution in Section 2 below is achieved.  As used herein (i) "<u>Liquid Securities</u>" means public debt securities in U.S. dollars freely tradeable in the United States and subject to publicly available pricing quotations; (ii) "<u>Market Value</u>", with respect to any Liquid Securities, means the volume weighted average price of such Liquid Securities over the 30-trading-day period ending immediately prior to the date such Liquid Securities are delivered pursuant to the terms of this Agreement or, if, in the reasonable judgment of Crystallex, such volume weighted average price is not available or sufficient liquidity does not exist for the such volume weighted average price to be a commercially reasonable measure of the current market value of the Liquid Securities, such market value as of such date as is determined in a commercially reasonable manner by Crystallex; and (iii) "<u>Proceeds Adjustment Factor</u>" means the amount by which the aggregate sale proceeds received by Crystallex for any Liquid Securities delivered as part of the Initial Payment (such amount, the "<u>Liquid Securities Proceeds Amount</u>") exceeds or is less than the Market Value of such Liquid Securities determined at the time of such delivery, with any excess to be deemed to increase the amount of the Initial Payment (and decrease the Deferred Settlement Amount (as defined below) accordingly) and any shortfall to be deemed to reduce to the amount of the Initial Payment (and increase the Deferred Settlement Amount accordingly).  It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered in accordance with the Initial Payment, until the Temporary Stay Period, as defined in Section 2 of this Agreement, is commenced.  In the event that the Temporary Stay Period is not commenced, Crystallex will return the cash or Liquid Securities delivered in accordance with the Initial Payment.

2.        <u>Temporary Stay of Execution Proceedings</u>.  Subject to receipt of the Initial Payment as provided above, and subject to the terms of Section 6 below, Crystallex shall suspend all affirmative efforts to execute upon the Writ of Attachment, and any other efforts to



2



execute upon or otherwise seek to enforce the DC Judgment, from the date of this Agreement until January 10th, 2019 (the date 120 days after the date hereof) (such period, the "Temporary Stay Period"). Such suspension shall not require Crystallex to take any steps to remove or lift the Writ of Attachment. The parties agree that no party shall take any step to execute upon or disturb the Writ of Attachment during the Temporary Stay Period. For the avoidance of doubt, Venezuela (including PDVSA and its subsidiaries) agrees to take all necessary steps to stay its appeal without prejudice of the Delaware Order during the Temporary Stay Period.

3.    [Intentionally Omitted].

4.    Final Settlement Requirements. Prior to the end of the Temporary Stay Period, Venezuela shall satisfy the following requirements (the "Final Settlement Requirements"):

a.    Venezuela shall provide to Crystallex first-priority, valid, enforceable and perfected liens on collateral which shall constitute Liquid Securities (unless Crystallex and Venezuela agree otherwise, each in their sole discretion, and in writing) and which shall have a Market Value as of the Final Settlement Effective Date (or, if Crystallex accepts collateral other than Liquid Securities in its sole discretion, the orderly liquidation value thereof as of the Final Settlement Effective Date as determined in a manner acceptable to Crystallex) of 120% of the Deferred Settlement Amount (as defined below) ("Acceptable Collateral"), pursuant to collateral documentation satisfactory to Crystallex in its commercially reasonable discretion that is substantially customary for an international secured indebtedness transaction similar to the transactions contemplated hereby that is secured by such type(s) of collateral, and take all reasonable and appropriate actions to ensure the validity, enforceability, perfection and priority of such collateral interest, including the holding of such Liquid Securities in an account in the name of or otherwise under the control of Crystallex or its designee; and

b.    Venezuela will execute and deliver a note (the "Settlement Note"), together with the related documentation of secured indebtedness (together with the Settlement Note and the related collateral documentation described in clause (a) above, the "Final Settlement Documentation"), which will evidence and govern its obligations and the obligations of its applicable affiliates with respect to the payment of the remaining balance of the Award and related guarantees. The Final Settlement Documentation will contain the terms and conditions described in Annex B hereto and, otherwise, must be in form and substance satisfactory to Crystallex in its commercially reasonable judgment.

Notwithstanding the foregoing, on or prior to the date that is 120 days after the date hereof (the "Interim Deadline"), if the requirements of clauses (a) and (b) of this Section 4 have not been satisfied in full on or prior to such date, Venezuela shall nonetheless execute and deliver all applicable Final Settlement Documentation, which shall identify the Acceptable Collateral to be provided, and which shall be effective and binding, but the Acceptable Collateral to be delivered under the Final Settlement Documentation may be delivered (and the other requirements of clause (a) above may be satisfied) at any time prior to the end of the Temporary Stay Period. Upon the execution and delivery of the Final Settlement Documentation, the remaining amount owing by Venezuela in respect of the Award shall be deemed to be an amount equal to U.S. $1,4,632,217.00, reduced or increased by any Proceeds Adjustment Factor if applicable as provided above (and less any additional amounts paid by or on behalf of the Republic to

3



Crystallex in respect of the Award after the date of this Agreement other than the Initial Payment) (such amount, as reduced or increased if applicable, the "<u>Deferred Settlement Amount</u>"), and shall be payable in installments as described under the heading "Payment Installments" in <u>Annex B</u> hereto, pursuant to the terms of the Settlement Terms Sheet.

In the event that Venezuela does not make a payment on date it is due, in accordance with the provisions of the Settlement Note, it will have a remediation period of 30 consecutive days to remedy the situation, provided that this remediation period can only be used once per calendar year. Any other delay that occurs within the same period will be considered an Event of Default for all purposes of the Settlement Note.

     5.    <u>Final Settlement Effective Date</u>.  If the Final Settlement Requirements have been satisfied on or prior to the end of the Temporary Stay Period, then it is agreed that, on the date such requirements are satisfied (the "<u>Final Settlement Effective Date</u>"):

    a.    Crystallex will request the Court to (i) lift the Writ of Attachment over the shares of PDV Holding, Inc., (ii) seek to suspend any further action to execute upon the Writ of Attachment and will not cause the shares of PDV Holding, Inc. to be sold pursuant to the Writ of Attachment so long as no event of default has occurred; and (iii) seek to suspend all other pending actions that seek to impose the DC Judgment;

    b.    Except as otherwise expressly provision herein, all obligations of Venezuela in respect of or relating to the Award shall be as set forth in, and shall be governed by the Final Settlement Documentation.

    6.    <u>Termination of Temporary Stay</u>.  If Venezuela fails to satisfy the Final Settlement Requirements by the end of the Termination Stay Period or fails to execute and deliver the Final Settlement Documentation as provided in the on or prior to the Interim Deadline as required by Section 4, then:

    i.    The Temporary Stay Period shall automatically terminate; and

    ii.    Crystallex may immediately recommence any actions stayed pursuant to Section 2 above, may seek to execute upon the Writ of Attachment, and may, in the sole, absolute and unfettered discretion of Crystallex, exercise any and all other rights, powers, privileges and remedies granted to or otherwise available to Crystallex at law, in equity, or otherwise, including under the Settlement Note and/or otherwise in respect of the Award (for the avoidance of doubt, not limited to amounts owing pursuant to the Settlement Note).

    7.    <u>Non-Impairment</u>.  Except as expressly provided herein, nothing in this Agreement, shall alter, impair, or affect any of Crystallex's rights, powers, privileges or remedies under or otherwise existing in respect of the Award and/or the DC Judgment, and the parties acknowledge that the Award and the DC Judgment shall remain in full force and effect, except if the Final Settlement Requirements have been met, in which case, Crystallex will suspend the enforcement of the Award and/or the DC Judgment in accordance with the terms herein.





4

8.    No Waiver. No failure to exercise, and no delay in exercising, any right, power, or remedy hereunder shall waive or otherwise impair any right, power, or remedy which Crystallex may have. Nor shall any such delay be taken as acquiescence to any breach or default under this Agreement. Nor shall any waiver of any breach or default of Venezuela hereunder be deemed a waiver of any default or breach subsequently occurring. The rights and remedies herein specified are cumulative and not exclusive of any rights or remedies which Crystallex would otherwise have.

9.    Taxes. Venezuela acknowledges that the amount of the Award paid pursuant to this Agreement including the Settlement Terms Sheet is net of all applicable Venezuelan taxes. If such Venezuelan taxes are payable on payments of the Award, the amount of the Award to be paid by Venezuela to Crystallex will be grossed up by the amount of such applicable taxes, and such grossed up amount on account of such taxes shall be deemed to be and have been deducted from such increased amount, and paid by Venezuela to the Venezuelan tax authorities on behalf of Crystallex. At Crystallex's request, and if applicable, Venezuela will promptly deliver evidence of the payment of such Venezuelan taxes as may be requested or required by the Canada Revenue Agency to enable Crystallex to successfully claim a foreign tax credit (or deduction) under the Income Tax Act (Canada) in respect of all such Venezuelan taxes payable and paid.

10.    Authority. Subject to the next sentence, each party represents and warrants that it has full power and authority to enter into and deliver this Agreement and to enter into all of the commitments it has made herein, that the person signing this Agreement on its behalf has the authority to do so, and that this Agreement is enforceable in accordance with its terms. Notwithstanding anything to the contrary in this Agreement, Crystallex shall require the prior approval of the Court in Canada for this Agreement to become effective, and it is agreed that if such approval is not obtained within 5 business days after the date of this Agreement, this Agreement shall terminate and be of no further force and effect between the parties hereto, in which case Crystallex must immediately return the cash or Liquid Securities delivered in accordance with the Initial Payment established in section 1 of this document.

11.    Confidentiality. Except as expressly permitted or required in this Agreement, the terms of this Agreement and the content of all negotiations in relation to it (except for the fact that the parties hereto have signed this Agreement) shall be kept confidential by each of the parties hereto and their respective advisors, who will not reveal or disclose to any third party, including, without limitation, the arbitral tribunal that issued the Award, the International Centre for Settlement of Investment Disputes, U.S. jurisdictions or other jurisdictions, without the prior written consent of the other party hereto, except for:

   a.  auditors, legal, financial and tax advisors, consultants and banks of each of the parties hereto, under conditions that preserve the confidentiality of the terms of this Agreement and the content of the negotiations in relation to it;

   b.  to the extent that such revelation or disclosure is required by applicable laws or regulations, or in any legal proceeding (having previously requested confidential treatment to the extent that it was permitted by the court, authority or the tribunal



5



in question), or in compliance with or in response to an order issued by a competent court, tribunal or governmental authority; or

c.   to the extent that such revelation or disclosure is necessary for the purpose of implementing or executing this Agreement, provided that the best efforts are made to request the application of conditions that preserve the confidentiality of the terms of this Agreement and the content of the negotiations in relation to it.

12.    Further Assurances.  The parties agree that they shall take such further action and shall execute and deliver such additional documents and instruments as Crystallex may reasonably request in order to implement or otherwise effectuate the terms of this Agreement. To the extent necessary to implement or otherwise effectuate the terms of the Agreement, Venezuela shall cause its applicable affiliated entities to execute documents referenced or required by this Agreement.

13.    Service of Process:   The parties hereby agree that notice or service for any purpose under this Agreement, including for purposes of commencing any legal proceeding, shall be made in writing to the following persons

If to Crystallex, to it at:

Fax: +1.416.203.0099
Address: 8 King Street East, Suite 1201, Toronto, Ontario M5C 1B5, Canada
Phone: +1.416.777.7339 (Direct); +1.416.203.2448 (Main)
Email: Rfung@crystallex.com
Attention:  Robert Fung, Chairman and CEO

If to Venezuela, to it at:

Address:  Av. Los Ilustres con Calle Francisco Lazo Martí Edificio Procuraduría General de la República, Urbanización Santa Mónica, Caracas, República Bolivariana                                   de                                   Venezuela
Phone: +58.212.5975972
Email: rmunoz@pgr.gob.ve
Attention: Reinaldo Muñoz Pedroza, Procurado General de la República

Such notice or legal process may be personally served, electronically mailed or sent by facsimile or courier service and shall be deemed to have been given when delivered in person or by courier service and signed for against receipt thereof or upon receipt of facsimile or electronic mail.

14.    Procedural Agreement.  In case of default of payment or collateral in the terms referred to in the Agreement, Venezuela agrees not to assert any defense or argument under 28 U.S.C. §§ 1602 et seq., by way of motion or other pleading in any suit, action or proceeding (i) in connection with or arising out of this Agreement or (ii) seeking to confirm, enforce or otherwise collect upon the Award, whether through service of notice, attachment prior to

6





judgment, attachment in aid of execution, with respect to itself or its property or from attachment either prior to judgment or in aid of execution.

15.   **Governing Law**.  This Agreement shall be governed by New York law, without regard to choice of law rules thereof that might apply the laws of any jurisdiction.

16.   **Venue**.  Each party hereby submits to the exclusive jurisdiction of the federal and state courts sitting in the City and County of New York for any action or proceeding relating to this Agreement, and expressly waives any objection it may have to such jurisdiction or the inconvenience of such forum.  Each party hereby expressly waives any immunity from the jurisdiction of such courts over any suit, action or proceeding that may be brought in connection with this Agreement.  Each party hereby irrevocably waives, to the fullest extent permitted by the applicable law, any objection that they may now or hereafter have to the laying of the venue of any such proceedings brought in such a court, any claim that any such proceeding brought in such a court has been brought in an inconvenient forum and any right of objection based on place of residence or domicile.

17.   **Interpretation of the Agreement**.  No party shall be entitled to have any wording of this Agreement construed against any other party in the event of any dispute arising in connection with this Agreement, including, without limitation, on the basis of a party's capacity as principal drafter hereof.

18.   **Amendment and Restatement**.  This Agreement shall constitute an amendment and restatement of, and not a novation of, the Original Settlement Agreement.  All obligations under the parties under the Original Settlement Agreement shall be continued as modified hereby.

19.   **Amendment; Assignments**.  This Agreement may not be amended, changed, modified, released, or discharged except by a writing signed by duly authorized representatives of each of the parties hereto or their successors or permitted assigns.  Neither this Agreement nor any rights or obligations under this Agreement may be assigned, transferred or delegated by either party to any other person, without the prior consent of the other party to this Agreement.  Any attempted or purported assignment, transfer or delegation without such prior written consent shall be *ab initio* null and void.

20.   **Entire Agreement**.  This Agreement constitutes the entire agreement and understanding between the parties with respect to its subject matter and supersedes all prior and contemporaneous oral and written agreements and understandings relating to its subject matter.  Each of the parties warrants and represents that it has relied upon its own judgment and that of its legal counsel regarding the consideration for and terms of this Agreement and that no statements or representations, written or oral, made by any other of the parties, their agents, employees, or legal counsel have influenced or induced that party to execute this Agreement:

21.   **Counterparts**.  This Agreement may be executed in any number of counterparts, including by facsimile or PDF signatures, each of which when executed and delivered will be deemed to be an original and all of which, taken together, will be deemed to be one and the same instrument.





7

[Signature pages follow.]



8





IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

BOLIVARIAN REPUBLIC OF VENEZUELA



By:
Name: *Victor N. Cano P.*
Title: *Ministro del Poder Popular de*
Date: *Desarrollo Minero Ecológico*
*Septiembre 10, 2018*

*Reinaldo Muñoz Pedroza*
*Procurador General (E)*

*September 10, 2018*

CRYSTALLEX INTERNATIONAL CORP.

By:
Name:   Robert A. Fung
Title:    Chairman and CEO
Date:    September 10, 2018

Procuraduría General de la República
Procurador General (E)



**Crystallex**
International Corporation



9

Annex A

Payment Instructions

Please pay via MT103 to Swift Code:  PNBPUS3NNYC, Institution name: WELLS FARGO
BANK, N.A., 375 PARK AVENUE, NY 4080, NEW YORK, NY UNITED STATES
To pay swift code: *CIBCCATT (CANADIAN IMPERIAL BANK OF COMMERCE TORONTO,
CANADA)*
CIBC
TRANSIT 03202
40 Dundas St. West, Suite 700 Toronto, Ontario
Canada M5G 2C2

<u>Beneficiary Information</u>

Beneficiary Account Number:         426 11846 10

Beneficiary Name:                           Crystallex International Corporation
8 King Street East, Suite 1201, Toronto, Ontario, M5C1B5, Canada

Venezuela to confirm the above payment instructions the day prior to any payment under this
Agreement or any Final Settlement Documentation.

For the avoidance of doubt, Crystallex may, at its sole discretion, by notice to Venezuela (which
may be in the form of electronic communication), modify the payment instructions above.  Upon
such notice, this Annex A shall be deemed modified without any further action by any party.





10

**ANNEX B**
**Settlement Terms Sheet**

*Capitalized terms used and not otherwise defined in this Annex B shall have the meaning assigned thereto in the Agreement to which this Annex B is attached.*

| | |
|---|---|
| Note Issuer | Venezuela. |
| Holder | Crystallex. |
| Note Principal Amount | The Deferred Settlement Amount, equivalent to U.S. $814,632,217.00. |
| Collateral | The Settlement Note will be secured by the Acceptable Collateral as agreed to pursuant to the terms of Section 4 of the Agreement. |
| Payment Installments | The principal amount of the Settlement Note will be repayable (x) in four installments each representing an amount equal to U.S. $18,750,000, payable on February 28, 2019, April 30, 2019, June 30, 2019 and August 31, 2019, (y) in six installments each representing an amount equal to U.S. $100,000,000, payable on March 29, 2019, June 28, 2019, October 31, 2019, March 31, 2020, June 30, 2020 and October 30, 2020 and (z) 24 monthly installments each representing an amount equal to U.S. $5,818,009, payable on the last business day of each month, commencing March 31, 2019 and ending February 28, 2021; *provided* that if any Proceeds Adjustment Factor shall become applicable after the Final Settlement Date as described in Section 1 of the Agreement, then the amount of the March 29, 2019 installment shall be increased or reduced accordingly to reflect the increased or reduced principal amount of the Settlement Note as a result of the application of such Proceeds Adjustment Factor. |
| Interest | Obligations under the Settlement Note will not generate interest, except all amounts with respect to the Settlement Note not paid when due (including an acceleration) and will accrue interest at a monthly rate of 0.5%, compounded monthly, until all are paid in full. Said default interest will be paid on demand. |
| Prepayments | Optional prepayments of the Settlement Note will be permitted at any time, without premium or penalty. <br><br> Mandatory prepayments of the Settlement Note will be required with (i) net proceeds of dispositions of any Collateral, and (ii) upon other customary circumstances depending on the nature of the Acceptable Collateral provided. All prepayments shall be applied to installments in inverse order of maturity. |
| Representations and Warranties | The Final Settlement Documentation will include representations and warranties customary for transactions of this type and others to be agreed. |
| Covenants | The Final Settlement Documentation will include customary covenants, reflecting the nature of the Acceptable Collateral, acceptable to Crystallex in its commercially reasonable discretion. |



11



| | |
|---|---|
| Events of Default | The Final Settlement Documentation will include events of default with respect to the following: (1) non-payment of any amount when due, (2) breach of covenants and other obligations, (2) material inaccuracy of representations and warranties (3) invalidity or lack of perfection of collateral, (4) repudiation or invalidity of the note, collateral or supporting documentation, and (5) other events of default as may be appropriate and customary depending on the nature of the Collateral. |
| Taxes | All payments of the Award paid pursuant to the Settlement Note will be required to be made free and clear of, and without deduction or withholding for, any taxes, except as required by applicable law; and customary gross-up and related obligations will apply if the Issuer is required by applicable law to deduct or withhold any taxes from such payments. At the Holder's request, and if applicable, Venezuela will promptly deliver evidence of the payment of such withholding taxes as may be requested or required by Canada Revenue Agency to enable the Holder to successfully claim a foreign tax credit (or deduction) under the Income Tax Act (Canada) in respect of all such Venezuelan taxes payable and paid. |
| Remedies; Pari Passu Treatment; Enforcement Expenses | In addition to all other rights and remedies available to Holder while any event of default exists, including acceleration of the Settlement Note and foreclosure and other remedies with respect to the collateral under the Final Settlement Documentation or applicable law, upon the occurrence of an event of default, Crystallex may seek to enforce the DC Judgment, including by way of recommencement of any action stayed pursuant to Section 5 of the Agreement, without further notice to the Republic.<br><br>In the event of default exists, the Issuer will not be permitted to (a) make payment of any other external indebtedness sooner or to a greater extent than all payments are made that are due and payable in respect of the Settlement Terms Sheet, and (b) refinance, restructure or exchange any external indebtedness without offering Crystallex the opportunity to opt-in and participate in any such refinancing, restructuring or exchange on terms at least as favorable as the terms applicable to the holders of such other external indebtedness.    In such event, such payment may be made in cash or in securities that are freely tradable in the United States or European Union (which may include public debt obligations issued as part of any restructuring process) with a market value (as determined by a leading international investment bank chosen by Crystallex) equal or greater to the amount then owed under the Settlement Terms Sheet as previously in effect.<br><br>The Issuer will be required to pay or reimburse the Holder upon demand for all out-of-pocket costs and expenses, including attorneys' fees and expenses, incurred by Holder in connection with (a) the collection of sums payable under the Final Settlement Documentation and (b) the exercise or enforcement of any of Holder's rights, powers or remedies under the Final |





| | Settlement Documentation or applicable law. |
|---|---|
| Governing Law, Waiver of Jury Trial, Consent to Jurisdiction and Service of Process, Procedural Agreement | The Final Settlement Documentation will be governed by New York law. The Final Settlement Documentation will contain the usual provisions on the waiver of a jury trial, presentation to the exclusive jurisdiction of New York, the notification of process and the designation of the process agent, and waiver of exemptions under 28 U.S.C. §§ 1602 et seq. |





13