## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------ x ------------------------------

In re                                    :    Chapter 15

**CRYSTALLEX INTERNATIONAL CORP.**    :    **Case No. 11-14074 (LSS)**

Debtor in a Foreign Proceeding.      :    Hearing Date:
                                          May 1, 2026, at 11:00 a.m. (ET)

                                     :    Objection Deadline:
                                          April 10, 2026, at 4:00 p.m. (ET)

                                     :    Re: Docket Nos. 500, 492, 467, 372-73, 362, and 328.

------------------------------ x ------------------------------

## OBJECTION TO THE FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF AN ORDER RECOGNIZING AND ENFORCING SPECIFIED PROVISIONS OF THE CCAA SIXTEENTH EXTENSION AND TWENTIETH AMENDMENT ORDER

Adelso Adrianza, the Movant, a shareholder of the Debtor, pro se and on behalf of similarly situated U.S. Shareholders respectfully submits this objection (the "Objection") to the Foreign Representative's request for relief in the Motion for Entry of an Order Recognizing and Enforcing Specified Provisions of the CAAA Sixteenth Extension and Twentieth Amendment Order (D.I. No. 500, the "Relief Motion").[1] In support of the Objection, the Movant respectfully represents as follows.

### PRELIMINARY STATEMENT

1. The Relief Motion seeks this Court's recognition of the latest stay extension and the corresponding amendment to the DIP Financing Agreement as approved by the CCAA Court, as well as a stay waiver under FRBP Rule 4001(a)(4). The relief being sought is predicated on

---

[1] All capitalized terms used but not defined herein have the meaning given to them in the D.I. No. 328, 362, 467, and 492).

- 1 -

§§ 105, 1507, 1521, 1525, and 1527, and its narrative indicates that it fulfills all the statutory requisites for recognition. This, according to the Foreign Representative, gives the Court the authority and discretion to grant the relief sought based on comity under §§ 1507(b), and 1521(a), and the Court's equitable power under § 105(a) as well.

2. However, Paragraph 9 of the Relief Motion also pursues the re-recognition of the previous 19 amendments, albeit in an oblique manner. Thus, it seeks to advance the self-enrichment scheme that caused the harm to the Debtor and the Shareholders (the "Injured Parties") for which the Movant continues to seek redress in this Court. Furthermore, the relief requested is predicated on unavailable legal and comity bases, given the breaches of statutory law and violations of constitutional protections averred in the Pending Motion. Therefore, the Relief Motion must fail.

3. The Movant filed a motion in July 2021 for an Order Directing the Appointment of An Examiner and Independent Counsel for The Shareholders (D.I. No. 328, the "2021 Motion") heard by this Court in August 2021, in which he claimed harm to the Injured Parties perpetrated by the Self-Interested DIP/BOD and the Controlling DIP Lender (the "Colluding Parties") as a result of actions and omissions particularized in the 2021 Motion as well as in subsequent filings in this case. (D.I. Nos. 362, 467, and 492). The actions and omissions particularized in these filings include, amongst others:

A. Breach of the loyalty and care duties by a self-interested BOD in pursuit of self-enrichment,

B. Constructive fraud,

C. Distribution of the Debtor's property by means of a structured dismissal/sub-rosa plan,

D. Fraudulent misrepresentations,

E.  Fraudulent conversion of tax benefits,

F.  Illegal post-petition interest payment on unsecured debt,

G.  Misappropriation, misuse, waste, gifting, concealment, and abandonment of Debtor's property,

H.  Violation of statutory and constitutional protections of property rights.

4. The Court issued a Memorandum and Order (D.I. Nos. 372 and 373) in November 2022 in which it, amongst other things:

i.  Denied the 2021 Motion without prejudice until the controversy was ripe for judicial review.

ii.  Identified at least two issues that may be addressed once the Debtor's arbitration award is collected: whether the interest payable to the DIP Lender violates Canada's Criminal Code, and the appropriateness of transfers of property located in the U.S. under the Mechanics of Distribution.

iii.  Ordered that no transfer/disposition of the Net Arbitration Proceeds (NAP) be made without the Court's permission.

5. Movant pursued unsuccessful attempts to intervene in the judgment-collection proceedings in the United States District Court for the District of Delaware to protect the Injured Parties' interests, including by seeking redress for harm arising from the abandonment of claims against the Republic for breach of the Second Settlement Agreement. (D.I. 361, 362, 414, 416, 443, 467, 471, 473, and 485-1 & -2). The District Court denied intervention based on the Foreign Representative's assertions that: (i) "Mr. Adrianza's Motion [to intervene] should be denied as duplicative of his pending motion before the Delaware Bankruptcy Court." (D.I. 414 at 6); (ii)

"Mr. Adrianza has not demonstrated that any protectable interest would be affected or impaired by this litigation." *Id.* at 10; (iii) "Mr. Adrianza does not, and cannot, explain why Crystallex's objective is any different from his or any other shareholders'—to collect as much money on the judgment as possible." *Id.*; (iv) "Crystallex adequately represents Mr. Adrianza's interests," (D.I. 468 at 10); and (v) "[w]hatever misplaced disputes Mr. Adrianza may have with Crystallex's management, those issues can be properly addressed only by a court administering Crystallex's insolvency proceedings." *Id.* at 2.

6. After being denied the day in court to pursue redress at the District Court, on December 31, 2024, Movant filed the Motion for Relief from the Automatic Stay, to Appoint an Examiner, and to Provide Sufficient Protection, which remains pending before this Court. (D.I. 492, the "Pending Motion"). The Pending Motion is premised on the fact that this Court's November 28, 2022, Order (D.I. 372-73) was rendered ineffective by the Foreign Representative decision to abandon property valued at over $1 billion without the Court's authorization and in contravention of 11 U.S.C. §§ 362, 363, 1501, 1506, 1507, 1520, and 1522, to the detriment of the Injured Parties' interests. Concrete and irreversible harm shall occur upon the execution of the judgment-collection action at the Delaware District Court, by operation of Delaware law and pursuant to the Stock Purchase Agreement and related order approved by that court. (*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-151 (LPS) (D. Del. D.I. 2556, ¶ 14). The Foreign Representative decided to abandon, without this Court's authorization, the over-$1 billion claim against the Republic for its breach of the Second Settlement Agreement in early 2019, after failing to enforce the Debtor's rights for seven years. (D.I. 467-1 ¶ 6). This decision was taken even though, under the express terms of the agreement, the Republic's failure to honor it constitutes a breach as a matter of law. Movant incorporates by reference the Pending Motion

(D.I. 492) for background and factual context.

## JURISDICTION

7. This Court has the authority to consider the Objection pursuant to 28 U.S.C. § 157(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b) and a non-core proceeding pursuant to 28 U.S.C. § 157(c). The Court may enter a final order consistent with Article III of the United States Constitution in core proceedings under 28 U.S.C. § 157(b) and may also do so in non-core proceedings under § 157(c) with consent of the parties. Respectfully, the Movant withholds such consent. Venue is proper in this District and Court pursuant to 28 U.S.C. § 1410. The legal predicates for the relief requested herein are the Bankruptcy Code §§ 105(a), 1501, 1506, 1507, 1521, and 1522, and the Fifth Amendment of the Constitution.

## LEGAL AND FACTUAL BASES FOR THE OBJECTION

8. Beyond the stay extension approved by the CCAA Court, and a waiver of stay under FRBP Rule 4001(a)(4), Paragraph 9 of the Relief Motion (D.I. 500, para. 34) pursues the Court's re-recognition of the DIP Financing Agreement, which is the basis for the relief requested in the Pending Motion to redress the harm to the Injured Parties through violations of statutory and constitutional protections. Specifically, Exhibit F of the DIP Financing Agreement (the Distribution Plan) misappropriates, misuses, gifts, wastes, conceals, and abandons Debtor's property for the benefit of the Colluding Parties. Further, it breaches controlling U.S. law by imposing a structured dismissal/sub rosa plan that violates fundamental precepts of the Bankruptcy Code and disregards property rights by end-running protections guaranteed by U.S. law to its citizens. The Colluding Parties have relied on the DIP Financing Agreement to

implement their self-enrichment scheme through bad faith, abuse of the bankruptcy process, constructive fraud, fraudulent transfers, and other breaches of law.

9. Limiting the scope or delaying the recognition of the Relief Motion does not cause prejudice to the Debtor, the DIP Lender, or the other interested parties in this case. The Foreign Representative has indicated that "Crystallex does not anticipate receiving distributable proceeds until 2027, at the earliest." (D.I. 500, para. 23) (citing the Affidavit of Robert Fung, sworn November 24, 2025).[2] Further, the Foreign Representative's main contentions in support of the Relief Motion—that a) failure to obtain the stay extension will result in the Debtor's default on the DIP Financing Agreement, b) recognition of the motion advances the purpose of Chapter 15, and c) deference is due to the CCAA court order— are legally and factually baseless. First, as discussed in the section Threat of Default further below, default is an empty threat. The other two contentions fare no better for a straightforward reason: the Relief Motion cannot possibly advance the purpose of Chapter 15 and be recognized on comity grounds while being the means to advance a bankruptcy scheme that violates U.S. statutory and constitutional safeguards and preclude the Movant's right to pursue redress for harm caused by the DIP/BOD's acts and omissions.

10. Mr. Fung's assertion that "distributions will not be possible until 2027, at the earliest", brings to mind one of Yogi Berra's Yogi-isms: "*It's tough to make predictions, especially about the future.*" *Id.* at 19. Proof of this is Mr. Fung's heretofore conviction about first, an imminent settlement agreement with the Republic, and then the imminent execution of

---

[2] *See* Robert Fung's affidavit dated November 24, 2025, at 29. E&Y CCAA Case Docket: Motion Materials / CCAA/ Motion Record Stay Extension and Sealing Order Volume 1 Part 1 - 24 Nov 2025. (https://documentcentre.ey.com/#/detail-engmt?eid=166).

the collection judgment. The initial conviction ended with two failed settlement agreements and the failure to pursue legal action against the Republic for its breach of the Second Settlement Agreement in early 2019. Likewise, the decision not to pursue legal action for breach of contract was predicated on the imminent execution of the collection judgment through the first PDVH/CITGO auction process in 2023-24, followed by the second auction process in 2025, which is currently under appeal. In both instances, the underlying rationale was that the breach-of-contract effort would become moot in light of the impending collection because a) once the arbitration award was settled or collected, it would extinguish all claims, and b) success in the breach of contract legal action would not guarantee collecting on it, given the limited value of the Republic's property in the U.S. versus the total value of the long list of senior lien claims on it. Mr. Fung's newly embraced pessimistic prediction arises after spending over 14 years and 160 million dollars (including nearly 15 million dollars in compensation and MIP advances made to Mr. Fung) on the old optimistic predictions. Now, like then, the prediction omits important considerations, such as: a) the Republic, with the help of the U.S. government, has been and can continue to be in the driver's seat until it is ready and able to reach a deal on its own terms—if it can, b) the primary, perfected lien on the PDVH/CITGO shares is not going anywhere until the Republic or somebody else pays for it, c) Venezuela cannot afford to lose control over CITGO and its substantial, deliberate and costly heavy crude oil refining capacity (over 900 thousand barrels a day) without constraining significantly its much needed fast economic recovery. This requires Venezuela to double its current crude oil production capacity of 1 million barrels per day—mostly high-sulfur, heavy crude oil that requires specialized refining technology—in the shortest possible time. Hence, Mr. Fung's latest prediction is likely to be as good as the previous one.

## I. **Grounds for the Objection**

11. The Movant respectfully sets forth the following grounds for the Objection to the Relief Motion:

## A. **The Relief Motion Fails to Meet the Statutory Thresholds Required for Additional Relief.**

12. The Foreign Representative's assertion that the Relief Motion meets the requirements for the Court's approval is counterfactual. The relief requested under §§ 105(a), 1507, and 1521 is unavailable. Section 1521(a) authorizes "appropriate relief" that is "necessary to effectuate the purposes of [chapter 15] and to protect the assets of the debtor." Appropriate relief is limited to relief that is ordinarily available under U.S. law and is conditioned by § 1522(a) by requiring the Court to ensure that "the interests of creditors and other interested entities, including the debtor, are sufficiently protected."

13. Additional assistance under § 1507 is reserved for extraordinary circumstances that require relief that may not be available under § 1521.[3] In determining the availability of relief under § 1521, bankruptcy courts must apply the five factors in Section 1507(b)—which include ensuring just treatment of all claim holders and preventing prejudice to U.S. creditors— and its appropriateness under § 1522. "[W]hile § 1507's broad grant of assistance is intended to be a "catch-all," it cannot be used to circumvent restrictions present in other parts of Chapter 15, nor to provide relief otherwise available under other provisions." *Id.* (quoting *In re Int'l Banking Corp. B.S.C.*, 439 B.R. at 626 n.10). Self-evidently, § 1507 cannot be invoked to circumvent its own purpose. The instant case fails to meet both requisites for several reasons, which are elaborated in the Motion to (I) Provide Sufficient Protection, (II) Issue a Declaratory Judgment,

---

[3] In re Vitro S.A.B. de CV, 701 F.3d 1031 (5th Cir. 2012), at 38.

and (III) Limit, Condition, or Modify the Relief to the Foreign Representative, and the Memorandum of Law (together, the "Supplemental Motion"), which Movant incorporates by reference to address comprehensively the governing law with respect to select issues.

14. Further, the stay waiver under FRBP 4001(a)(3) in the Relief Motion (D.I. 500, para. 40) must involve extraordinary circumstances that need to be adequately justified. The Relief Motion fails to do so. This is especially the case given the pendency of the relief requested in the Pending Motion (D.I. 492). Granting the stay waiver would deprive the Shareholders of adequate protection in violation of § 361 and Fifth Amendment principles, because the claims of harm to the interests and rights of the Debtor and the Shareholders remain unresolved.

15. The Foreign Representative's contention that the Court "… may enter a final order consistent with Article III of the United States Constitution" is legally unfounded. (D.I. 500, para.1). The Pending Motion (D.I. 492) seeks redress for harm to private rights not resolvable through the claims process ("Stern Claims") that require Article III Jurisdiction. *See Stern v. Marshall*, 564 U.S. 462 (2011) (determining that Article I bankruptcy courts lack constitutional authority to enter final judgments on counterclaims not resolved by the bankruptcy proceedings, even if statutory law classifies them as "core proceedings"); *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014) (holding that if all parties consent, the bankruptcy court can enter final judgment, bypassing the need for district court review). As the case record shows, the Movant has, to date, respectfully withheld consent to the entry of final orders or judgments by the Court if the Court determines that it cannot enter such orders or judgments consistent with Article III.

**B. The Proposed Stay Extension and Waiver Operate to Foreclose Pending Adversary Claims.**

16.   The Relief Motion treats the resolution of the adversarial claims as a default event, granting releases that are plan-level determinations dressed up as financing conditions. Paragraph 9 of the Relief Motion seeks to reaffirm the validity of every prior DIP Financing Agreement amendment, which includes embedded provisions that would:

i.   Make the Pending Motion (D.I. 492) constitute an event of default upon its granting,

ii.   Release or waive claims related to the conduct underlying the statutory and constitutional rights violations, or

iii.   Lock in the structured dismissal/sub-rosa plan distribution scheme (the Distribution Plan) for the benefit of the Colluding Parties before the adversarial claims are adjudicated.

17.   Recognition of the Relief Motion would effectively determine the outcome of the Movant's and the similarly situated equity holders' adversary rights without ever receiving the statutory and constitutional protections to which they are entitled. A DIP loan may be rejected as a sub rosa plan "if the terms of the loan include concessions to creditors or parties in interest that are unauthorized under, or in conflict with, provisions under the Bankruptcy Code." *In re LATAM Airlines Grp. S.A.*, 2020 WL 5506407 (Bankr. S.D.N.Y. Sept. 10, 2020). In this regard, one may ask the Special Representative to explain the purpose of reapproving and re-recognizing the Distribution Plan, given that the CCAA court and the Ontario Court of Appeal have determined that it is not a plan of distribution. *See* the Supplemental Motion—Memorandum of Law, at 10.

18.   Controlling conclusions of law by the Third Circuit make the recognition of the Relief Motion as proposed unreachable. To wit,

> Where Rule 7001 "require[s] an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one." Id. at 242. "The mandatory nature" of this due process right "trump[s] [the] finality" of confirmed plans. Id. at 238.

Thus, Szostek stands for the rule that "plans that would not be confirmable due to provisions that do not conform to applicable law will nonetheless be given effect if an objection is not raised before entry of the confirmation order." In re Bryant, 323 B.R. 635, 639 (Bankr.E.D.Pa.2005). This principle is tempered only by considerations of procedural due process, which, of course, concern the notice given to creditors of the confirmation proceedings and their opportunity to object to the terms of the plan. Under the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. The fundamental requirements of due process are notice and an opportunity to respond. Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir.1995).

*In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008), at 245.

### C. Lack of Candor Makes the Relief Motion Suspect.

19.    The lack of condor, notorious in the instant case from the outset, warrants pause for consideration. Four aspects are relevant here:

### 1. *Continued Sealing.*

20.    The stay motion approved by the CCAA Court includes the sealing and redaction of documents and information justifying it, which are:

i.    Not part of the request for recognition by the Chapter 15 Court;

ii.    Not accessible by stakeholders not represented by legal counsel in the Canadian proceeding.

### 2. *There is no Amended Version of the Complete Credit Agreement in the Case Records that Certify its Final Content.*

21.    As with the previous motions to amend and extend the stay, the current and prior versions of the DIP Credit Agreement and its Exhibit F (Lender Additional Compensation Provisions) are conspicuously absent from both the CCCA and Chapter 15 motions and case records. To the Movant's knowledge, the DIP Credit Agreement and its exhibits were first and last made public in January 2023 (D.I. 383), following this Court's decision to require the unsealing of the so-called "confidential" data. The Exhibit F of the proposed 20th. Amendment

to the DIP Credit can be found buried in the E&Y CCAA case records (Motion Record Stay Extension and Sealing Order, Volume 2, Part 2 - 24 Nov 2025, at 479) under a new name: Lender Additional Compensation and Additional Principal Compensation Provisions. (*See* Exhibit 1).

22. Federal Rules of Evidence (FRE) 1002 and 1006 require that the case records provide a clean consolidated version, or a clear, traceable compilation of all amendments. The instant case provides neither. A motion seeking approval and recognition of changes to a billion-plus-dollar contractual agreement is generally supported by a version of the post-amendment contract, as the means to memorialize the sanctioned changes and keep the case records true to form and transparent. With 20 amendments to date (and counting) and incomplete records, the requirement for a clear, traceable compilation of all amendments is a contradiction in terms.

### 3. *There is no Public Record of Recent Changes to the Distribution Plan.*

23. As far as the Movant is aware, no motion seeking approval and recognition of changes to the Distribution Plan has been filed and approved after the unsealing of the last DIP Credit Agreement (D.I. 383). Yet, the Exhibit F version included in the motion record documents filed in the CCAA court as support for the latest stay extension request shows several significant changes to the Distribution Plan:[4]

    i. Section Order of Application of Arbitration Proceeds:

        a. Sub-section f.—Lender's share of the NAP

            ■ Added part (ii)—Additional Principal Compensation Amount (New),

            ■ Changed the NAP share calculation method.

        b. Sub-section g.—MIP share of the NAP calculation

            ■ Changed the NAP share calculation method.

---

[4] See Exhibit 1.

ii.  Section Override Provision (New):

- Incorporated a new NAP calculation and allocation method that results in a new DIP Lender compensation entitlement styled Additional Principal Compensation Amount.

24.    The changes to Exhibit F affect the payment of principal and interest to the unsecured Noteholders, including interest under the Standstill Agreement, and the funding of the MIP. The reduction of the DIP Lender's 88.242% NAP share (D.I. 372 at 8) to 49.874% appears to be the result of the allocation and assignment of 38.368% to the Noteholders and the MIP. Further, the size of the assigned NAP amount implies that the Standstill Agreement's interest calculation has been based on the 20% p.a. interest rate (the 9.375% contractual rate of the Noteholders' financing Agreement plus the additional 10.675% interest rate of the Standstill Agreement) to date. The implications here are noteworthy. First, the change to the Distribution Plan requires CCAA Court approval and recognition by this Court. Second, the Interest Stops rule limits post-filing interest on unsecured debt to 5% p.a. (BIA s. 143), applicable to CCAA proceedings[5] in a solvent-debtor case in the absence of a consensual plan of arrangement that stipulates otherwise. Tellingly, clause (e) of the section Order of Application of Arbitration Proceeds (formerly known as Mechanics of Distribution) indicates that "… to satisfy such unsecured claims, … which, for greater certainty, *shall include all amounts payable pursuant to the Standstill order or such lesser amount as may be required pursuant to a CCAA plan …*" (Emphasis added).

25.    Of note, the CCAA court filings related to the instant stay extension refer to the Noteholders' request to resolve the open claims and issues regarding the determination of the

---

[5] *See Re Nortel Networks Corporation*, 2015 ONCA 681.

quantum of their claims within the first quarter of 2026. Robert Fung's November 24, 2025, affidavit in support of the CCAA stay extension motion indicates that negotiations between the DIP Lender and the Ad Hoc Committee of Noteholders in this respect were ongoing. (See *supra.* n.2, para. 12). However, there is no public record of a settlement agreement and court approval in this regard. The Additional Principal Compensation Amount (14.874%) plus the DIP Lender Additional Compensation (35%) is indicated to be the DIP Lender's remaining share of the NAP (49.874%). The Additional Principle Compensation Amount is a new entitlement concept. The foregoing appears to be a harbinger of things to come, including a CCAA plan proposal.

### 4.  *The Threat of Default is a Practical Nullity.*

26.    The distinct reasons for this include:

i.  The DIP Lender cannot effectuate the threatened default if the stay is not extended/waived. The consequential legal and economic issues involved with the default preclude it.

ii.  The collection judgment lien on the PDVH shares is neither transferable nor tradeable unless approved by the Delaware District Court and authorized by OFAC.

iii.  The DIP Lender cannot execute the default without CCAA court approval and Chapter 15 recognition.

iv.  Default on the DIP Credit Agreement would place the Company in a legal limbo for an extended time period, which would derail the judgment collection action at the Delaware District Court.

## II. Possible Ways Forward.

27.    To move this case forward, the Court can follow several paths, including:

i. Decide the Relief Motion by…

a)  Limiting the relief to the Foreign Representative to what is necessary and

appropriate to advance the purpose of Chapter 15, while preserving the Shareholders' right to seek redress for harm to their interests.

Or,

b) Conditioning the recognition of the relief requested on a carve-out or express reservation of the Debtor and the Shareholders' rights under the Movant's Pending Motion (D.I. 492) and the Supplemental Motion (to be filed in conjunction with the Objection).

And

ii. Set the hearing date to review the Pending Motion.

### REQUEST FOR RELIEF

Movant respectfully requests that the Court grant the relief enumerated below:

i. Sustain the Objection.

ii. Limit the relief to the Foreign Representative to what may be appropriate to advance this case, while preserving the Shareholders' right to seek redress for harm to their interests.

iii. Require the unsealing and unredacting of case records that do not meet the Court's previously issued guidelines for confidential records, and the posting of the DIP Financing Agreement and its exhibits that reflect the previously approved and proposed amendments on the case records, as a measure necessary to maintain a complete and up-to-date docket.

iv. Grant such other and further relief as is just and proper.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Movant respectfully requests that the Court: I) sustain this Objection; II) schedule the hearing for the Pending Motion; and III) grant such other and further relief as is just and proper.

Respectfully submitted,

Dated:  April 7, 2026.
Newton, Massachusetts

*Adelso A. Adrianza*

Adelso Adrianza, pro se
4 Repton Cir. Unit 4210
Watertown, MA 02472
aaadrianza@gmail.com
(859) 803-2279

## CERTIFICATE OF SERVICE

I, Adelso Adrianza, hereby certify that on this 7th Day of April 2026, I caused copies of

the Objection to The Foreign Representatives' Motion for Entry of an Order Recognizing and

Enforcing Specified Provisions of the CCAA Sixteenth Extension and Twentieth Amendment

Order Pursuant to 11 U.S.C. §§ 105, 1507, 1521, 1525, and 1527, to be served on the parties listed

below by courier or otherwise indicated:

Via UPS Delivery:

Matthew Barry Lunn, Esq.
Young, Conaway, Stargatt & Taylor
1000 West Street, Fl. 17, P.O. Box 391
Wilmington, DE 19899

*Adelso A. Adrianza*
Adelso A. Adrianza

U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
CRYSTALLEX INTERNATIONAL CORP.
Case No. 11-14074 (LSS)

## EXHIBIT 1

## **DIP Credit Agreement**

## **Exhibit F**

## **Lender Additional Compensation**

## EXHIBIT 1

Volume 2 - Motion Record of the Applicant - Crystallex International Corp - Part 2

This is **Exhibit "Q"** referred to in the Affidavit of Robert Fung sworn by Robert Fung at the City of Toronto, in the Province of Ontario, before me on November 24, 2025 in accordance with O. Reg. 431/20, Administering Oath or Declaration Remotely.

_Commissioner for Taking Affidavits (or as may be)_

**ALISA MCMASTER (LSO#78071W)**

480

2.

## EXHIBIT F

### Schedule "B"

LENDER ADDITIONAL COMPENSATION AND
ADDITIONAL PRINCIPAL COMPENSATION AMOUNT PROVISIONS

| | |
|---|---|
| **ADDITIONAL COMPENSATION:** | As additional compensation for the Loan, the Borrower shall pay to the Lender and the Lender shall be entitled to receive an amount equal to 35% of the Net Arbitration Proceeds (such amount, the "**Lender Additional Compensation**") and, pursuant to the amendment agreement dated as of June 5, 2013 between the Borrower and the Lender, an additional amount equivalent to 14.874% of the Net Arbitration Proceeds (such amount, the "**Additional Principal Compensation Amount**") and all interest earned on deposits in the Additional Compensation Cash Collateral Account, which Lender Additional Compensation amounts and Additional Principal Compensation Amount amounts shall be paid to the Lender (or deposited to the Additional Compensation Cash Collateral Account) in the order and priority set forth in the section of this Exhibit F titled "Order of Application of Arbitration Proceeds".  The Borrower shall deposit to the Additional Compensation Cash Collateral Account an amount equal thereto within two Business Days after the Borrower receives the Arbitration Proceeds. |
| | The Lender's entitlement to the Lender Additional Compensation and the Additional Principal Compensation Amount shall become effective as provided for in the Agreement; provided, however, that the Lender shall not be deemed to have received any amount of Additional Lender Compensation or Additional Principal Compensation Amount until such amount has been paid to the Lender on the applicable Annual Payment Dates as defined and described below, in accordance with the section of this Exhibit F titled "Order of Application of Arbitration Proceeds". |
| **ORDER OF APPLICATION OF ARBITRATION PROCEEDS:** | If the Borrower receives any Arbitration Proceeds during the CCAA Case, then promptly upon such receipt and before distribution or application thereof, the Borrower shall calculate and determine the amounts thereof that are to be distributed and applied as hereinafter provided in this section of this Exhibit F and shall submit a statement setting out such calculation and determination to the Lender and the Monitor for their approval, and if the Lender and Monitor fail to give such approval or disagree as to whether it should be given, then the Borrower shall submit such statement to the CCAA Court.  Within five (5) Business Days after the Borrower obtains such approval in writing from the Lender and the Monitor or the CCAA Court, as the case may be, or, if the CCAA Case has been terminated, within five (5) Business Days after the Borrower receives the Arbitration Proceeds, the Borrower shall distribute and apply all such Arbitration Proceeds received by it in the following descending order as follows: |

(a)   first, to pay any then accrued and unpaid post-filing expenses reasonably incurred by the Borrower, including those in respect of the Arbitration Proceeding or the Reorganization Proceedings, and all in accordance with the Budget (but, for certainty, the Borrower shall not be reimbursed for any expenses then paid);

(b)   second, to pay any taxes, payable or required to be withheld by the Borrower or by any government in respect of the settlement, judgment or collection in relation to the Arbitration Proceeding, as determined at such time by an independent international accounting firm acceptable to the Borrower and the Lender;

(c)   third, to pay into the Principal Cash Collateral Account an amount so that the aggregate amount in such account is equivalent to the principal amount of the Loan then outstanding and subsequently to pay to the Lender at the time or times provided herein, all outstanding principal and interest accruing thereon after the date of such deposit owing by the Borrower under the Loan, until paid in full (the date upon which the full amount is deposited therein, the **"Principal Cash Collateralization Date"**) ;

(d)   fourth, to pay directly to the Lender the then unpaid interest accrued to the Principal Cash Collateralization Date and owing to the Lender and any unpaid expenses and other indemnity amounts then payable to the Lender;

(e)   fifth, to pay an amount equivalent to all of the proven and allowed unsecured claims against the Borrower (including all allowed Prefiling Unsecured Creditor claims, which may include post-filing interest, subject to the limitation set out in Section 7.19(b) or (c)), to satisfy such unsecured claims (or into reserve accounts to provide for the payment of claims that remain contingent, unliquidated or disputed) which, for greater certainty, shall include all amounts payable pursuant to the Standstill Order or such lesser amount as may be required pursuant to a CCAA Plan, (the difference between the gross amount of the Arbitration Proceeds and aggregate of the amounts referred to in clauses (a), (b), (c), (d) and (e) under this Section is referred to as the **"Net Arbitration Proceeds"**);

(f)   sixth, a total amount equivalent to:

(i)   35% of the Net Arbitration Proceeds, being the

4.

Lender Additional Compensation; and in addition,

(ii)   14.874% of the Net Arbitration Proceeds, being the Additional Principal Compensation Amount,

shall be calculated in accordance with section (a) of the following section titled "Override Provision" and such amount shall be paid into the Additional Compensation Cash Collateral Account (the date of such payment being the **"Lender Additional Compensation Cash Collateralization Date"**), and on each Annual Payment Date (as hereinafter defined), the funds standing to the credit of the Additional Compensation Cash Collateral Account shall be used to pay the Lender Additional Compensation  and the Additional Principal Compensation Amount to the Lender in compliance with applicable law;

(g)   seventh, the amounts provided for in the MIP shall be calculated in accordance with section (a) of the following section titled "Override Provision" and such amount may be paid to management of the Company in accordance with the MIP; and

(h)   eighth, the remaining balance of the Arbitration Proceeds may be paid to the Borrower in accordance with applicable law.

From and after the Principal Cash Collateralization Date until such time as the outstanding principal amount of the Loan has been repaid to the Lender in full and the Lender Additional Compensation, the Additional Principal Compensation Amount and any other amount owing to the Lender hereunder have been paid in full, the Borrower shall pay annually to the Lender on each anniversary of the Borrowing Date for the Initial Loan (each such anniversary, an **"Annual Payment Date"**) (i) interest as herein provided on the outstanding principal amount of the Loan and other interest and compound interest as provided by this Agreement and (ii) subject to the following sentence, any remaining unpaid amounts owing in respect of the Lender Additional Compensation and in respect of the Additional Principal Compensation Amount.  The aggregate amount payable by the Borrower under clauses (i) and (ii) above on each Annual Payment Date shall not exceed the Cap. As used herein, the **"Cap"**, as of each Annual Payment Date, means an amount equal to the lesser of (x) an amount equivalent to Criminal Code "interest" (as defined in Section 10.13 of this Agreement) on the principal amount of the Loan then outstanding calculated at an effective annual rate of interest equal to 59.9% calculated in accordance with the generally accepted actuarial principles as set forth in subsection 347(4) of the *Criminal Code* (Canada) from the date of each advance (or from (but excluding) the next preceding Annual Payment Date in respect of any advance made before such next preceding

Annual Payment Date) to and including such Annual Payment Date and (y) an amount equal to the aggregate of the unpaid balance of the Lender Additional Compensation, the Additional Principal Compensation Amount, fees in respect of and interest on the Loan, and any other amounts constituting "interest" as defined in subsection 347(2) of the *Criminal Code* (Canada)) payable to the Lender on or prior to such Annual Payment Date. The effective annual rate of interest referred to in (x) above shall be set forth in and based on a certificate of a Fellow of the Canadian Institute of Actuaries as contemplated by subsection 347(4) of the *Criminal Code* (Canada) provided to the Borrower and the Lender with respect to and as at such Annual Payment Date. In the event that the remaining balance of the amount owing in respect of the Lender Additional Compensation and in respect of the Additional Principal Compensation Amount exceeds the Cap on any Annual Payment Date, then the payment of such remaining balance shall be deferred until the next succeeding Annual Payment Date, and so on each year until paid in full, subject, in each case, to the Cap.

For greater certainty, and without prejudice to the Security Documents or any security interest granted therein, nothing in this Exhibit F shall operate as or be construed as an assignment of or transfer to any Person by the Borrower of any right, title or interest of the Borrower in or to the Arbitration Entitlement or any claims asserted in the Arbitration Proceedings.

**OVERRIDE PROVISION:**    The following shall apply to the section to this Exhibit F titled "Order of Application of Arbitration Proceeds" notwithstanding any other provision of such section:

(a)    solely for the purposes of the calculation of the amounts payable pursuant to subsections (f) and (g) of such section and for no other purpose, the total amount of the proven and allowed unsecured claims referred to in subsection (e) of such section to be deducted from the gross amount of the Arbitration Proceeds in determining the amount of the "Net Arbitration Proceeds" shall be deemed to be equal to the sum of (A) the principal amount of the Senior Notes (being US$104,135,273.97) plus 9.375% per annum simple interest accruing thereon from and after May 20, 2013 (but, for greater certainty, excluding all interest on the Senior Notes accrued from the CCAA Filing Date to May 20, 2013, all additional interest in excess of 9.375% per annum accruing on the Senior Notes from and after May 20, 2013 in accordance with the Standstill Order, and any Additional Amounts (as such term is defined in the first supplemental trust indenture to the trust indenture dated December 23, 2004 issued by the Borrower) payable by the Borrower and excluding any other amount) and (B) the principal amount of any other unsecured pre-filing claim unrelated to the Senior Notes that is now or hereinafter determined to be a proven claim in accordance

**PUBLIC**

484

7.

Proceeds" shall be subject to the provisions of the Standstill Order where applicable.

**CASH COLLATERAL ACCOUNTS:**

Each of the "Principal Cash Collateral Account", and the "Additional Compensation Cash Collateral Account" shall be a Cash Collateral Account of the Borrower, which Cash Collateral Account shall be pledged to the Lender as security for all outstanding Obligations owed to the Lender under this Agreement, including in respect of the Lender Additional Compensation. The Borrower shall pay to the Lender all interest earned on each amount deposited to a Cash Collateral Account. At the Lender's request, the Borrower's interests in such Cash Collateral Accounts shall be transferred to a special purpose vehicle acceptable to the Lender in its sole discretion. Such special purpose vehicle shall be a newly incorporated wholly-owned Subsidiary of the Borrower which shall provide the Lender with a guarantee of all Obligations, security interests in all its assets, a control agreement and other ancillary documents required by the Lender. All equity of such entity shall be pledged to the Lender as additional security for all Obligations. All such documents shall be in form and substance satisfactory to the Lender and the Borrower.

**NO VOLUNTARY PREPAYMENT OR REPAYMENT RIGHT:**

The Borrower shall not be entitled, under any circumstances, to prepay or repay voluntarily any principal amount of the Loan before the Maturity Date (as extended by the Lender from time to time as provided by Section 3.19) except as provided by Section 3.2(b). Except as provided by Section 3.2(b) but despite any other provision of this Agreement or any other Credit Document, the principal amount of the Loan shall not, under any circumstances, be prepaid or repaid without the Lender's prior written consent, whether or not an Event of Default has then occurred.